ALLMTN, APPEAL, TERMED

# U.S. District Court
## District of Colorado (Denver)
### CIVIL DOCKET FOR CASE #: 1:08−cv−02188−LTB−CBS

Cohen v. Busch
Assigned to: Judge Lewis T. Babcock
Referred to: Magistrate Judge Craig B. Shaffer
Demand: $9,999,000
 Case in other court:  USCA, 09−01510
                       USCA, 10−01076
                       USCA, 10−01283
Cause: 28:1331 Federal Question: Bivens Act

Date Filed: 10/09/2008
Date Terminated: 07/08/2010
Jury Demand: None
Nature of Suit: 555 Prison Condition
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Solomon Ben−Tov Cohen**    represented by    **Solomon Ben−Tov Cohen**
#36792−013
ENGLEWOOD
FEDERAL CORRECTIONAL
INSTITUTION
Inmate Mail/Parcels
9595 WEST QUINCY AVENUE
LITTLETON, CO 80123
PRO SE

V.

**Defendant**

**John Doe**
*U.S. Capitol Police Special Agent,*
*Washington, District of Columbia*
*TERMINATED: 02/17/2009*

**Defendant**

**Henry Waxman**    represented by    **Katherine E. McCarron**
*Representative, United States Congress*    U.S. House of Representatives
*TERMINATED: 10/21/2009*    Office of the General Counsel
219 Cannon House Office Building
Washington, DC 20515
202−225−9700
Fax: 202−226−1360
Email: katherine.mccarron@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Capitol Police**    represented by    **Marcy Elizabeth Cook**
*TERMINATED: 10/21/2009*    U.S. Attorney's Office−Denver
1225 17th Street East

Seventeenth Street Plaza
#700
Denver, CO 80202
303–454–0171
Fax: 303–454–0404
Email: marcy.cook@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Fred Busch**                                       represented by   **Marcy Elizabeth Cook**
*Agent, US Capitol Police*                                            (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/09/2008 | 3 | 6 | Prisoner COMPLAINT against John Doe, filed by Solomon Ben–Tov Cohen.(llk, ) (Entered: 10/09/2008) |
| 10/31/2008 | 6 | 83 | AMENDED COMPLAINT against John Doe, filed by Solomon Ben–Tov Cohen.(jjh, ) (Entered: 10/31/2008) |
| 02/17/2009 | 12 | 105 | AMENDED COMPLAINT against Henry Waxman, US Capitol Police, Fred Bush, filed by Solomon Ben–Tov Cohen.(sah, ) (Entered: 02/17/2009) |
| 04/21/2009 | 20 | 133 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* by Defendant US Capitol Police. (Cook, Marcy) (Entered: 04/21/2009) |
| 05/04/2009 | 24 | 139 | MOTION to Dismiss by Defendant Henry Waxman. (McCarron, Katherine) (Entered: 05/04/2009) |
| 05/04/2009 | 25 | 142 | BRIEF in Support re 24 MOTION to Dismiss filed by Defendant Henry Waxman. (Attachments: # 1 Appendix)(McCarron, Katherine) (Entered: 05/04/2009) |
| 08/12/2009 | 55 | 172 | RESPONSE to 20 Defendant US Capitol Police MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed by Plaintiff Solomon Ben–Tov Cohen. (erv, ) (Entered: 08/13/2009) |
| 08/12/2009 | 56 | 175 | Opposition RESPONSE to 24 Hon Henry A. Waxman's MOTION to Dismiss filed by Plaintiff Solomon Ben–Tov Cohen. (Attachments: # 1 Memorandum in Support of Opposition to Motion to Dismiss)(Exhibit 6 submitted conventionally, placed in an envelope and put in over sized documents)(erv, ) (Entered: 08/13/2009) |
| 08/27/2009 | 58 | 247 | REPLY to Response to 24 MOTION to Dismiss filed by Defendant Henry Waxman. (McCarron, Katherine) (Entered: 08/27/2009) |
| 08/27/2009 | 59 | 257 | REPLY to Response to 20 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by Defendant US Capitol Police. (Cook, Marcy) (Entered: 08/27/2009) |
| 09/21/2009 | 60 | 260 | RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE recommending 24 MOTION to Dismiss filed by Henry Waxman be granted and Defendant Waxman be dismissed for this civil action, without prejudice to Mr. |

| | | | |
|---|---|---|---|
| | | | Cohen refiling his claims in another venue; and recommending 20 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by US Capitol Police be granted and Defendant U.S. Capitiol Police be dismissed with prejudice from this civil action by Magistrate Judge Craig B. Shaffer on 9/21/2009. (cbscd) (Entered: 09/21/2009) |
| 10/05/2009 | 61 | 276 | MOTION to Dismiss for Lack of Jurisdiction *[Personal]*, MOTION to Dismiss by Defendant Fred Busch. (Cook, Marcy) (Entered: 10/05/2009) |
| 10/21/2009 | 67 | 291 | ORDER. The recommendation 60 is accepted as follows: The Motion to Dismiss of Defendant Henry Waxman 24 is GRANTED and Defendant Waxman is dismissed from this civil action, without prejudice to Plaintiff refiling his claims in another venue. Defendant the U.S. Capitol Polices Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) 20 is GRANTED and Defendant U.S. Capitol Police is dismissed without prejudice from this civil action. By Judge Lewis T. Babcock on 10/21/2009.(sah, ) (Entered: 10/21/2009) |
| 10/27/2009 | 71 | 292 | (STRICKEN) OBJECTION to 60 Report and Recommendations filed by Plaintiff Solomon Ben–Tov Cohen. (sah, ) Modified on 11/12/2009 to STRIKE pursuant to the order dated 11/12/2009 (sah, ). (Entered: 10/28/2009) |
| 11/03/2009 | 72 | 293 | APPEAL OF ORDER (Objection) to 67 Order on Report and Recommendations, Order on Motion to Dismiss, by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 11/03/2009) |
| 11/04/2009 | 73 | 314 | ORDER. Plaintiffs Appeal of Order 72 filed 11/03/2009, which is construed as a Motion to Reconsider is DENIED. By Judge Lewis T. Babcock on 11/04/2009. (sah, ) (Entered: 11/04/2009) |
| 11/10/2009 | 74 | 315 | RESPONSE to Objection to 60 REPORT AND RECOMMENDATIONS re 24 MOTION to Dismiss filed by Henry Waxman, 20 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant US Capitol Police. (Cook, Marcy) Modified on 11/12/2009 to duplicate text(sah2, ). (Entered: 11/10/2009) |
| 11/12/2009 | 76 | 318 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 75 Notice of Appeal, filed by Solomon Ben–Tov Cohen to the U.S. Court of Appeals. (Pro se; Fee not paid; 1915 motion not filed) (Attachments: # 1 Docket Sheet, # 2 Preliminary Record including Notice of Appeal)(bjrsl, ) (Entered: 11/12/2009) |
| 11/12/2009 | 77 | 332 | ORDER. Plaintiffs pro se Objection to 60 Report and Recommendation 71 is STRICKEN AS UNTIMELY. By Judge Lewis T. Babcock on 11/12/2009. (sah, ) (Entered: 11/12/2009) |
| 12/16/2009 | 84 | 333 | MOTION to Appoint Counsel by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 12/16/2009) |
| 12/21/2009 | 85 | 336 | MOTION to Change Venue by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 12/21/2009) |
| 12/30/2009 | 88 | 339 | ORDER denying 84 Motion for the Appointment of Counsel by Magistrate Judge Craig B. Shaffer on 12/30/2009.(cbscd) (Entered: 12/30/2009) |
| 01/05/2010 | 89 | 342 | |

| | | | |
|---|---|---|---|
| | | | RESPONSE to 61 Fred Busch's MOTION to Dismiss filed by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 01/06/2010) |
| 01/11/2010 | 90 | 380 | RESPONSE to 85 MOTION to Change Venue filed by Defendant Fred Busch. (Cook, Marcy) (Entered: 01/11/2010) |
| 01/11/2010 | 91 | 386 | OBJECTION/Appeal of Magistrate Judge Decision to District Court re 88 Order on Motion to Appoint Counsel by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 01/11/2010) |
| 01/11/2010 | 92 | 387 | MOTION to Recuse Hon US District Judge Lewis T. Babcock by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 01/11/2010) |
| 01/13/2010 | 94 | 391 | ORDER. Plaintiffs appeal 91 is DENIED. By Judge Lewis T. Babcock on 01/13/2010.(sah, ) (Entered: 01/13/2010) |
| 01/15/2010 | 95 | 392 | RESPONSE to 92 MOTION for Recusal filed by Defendant Fred Busch. (Cook, Marcy) (Entered: 01/15/2010) |
| 01/19/2010 | 96 | 396 | REPLY to Response to 61 MOTION to Dismiss for Lack of Jurisdiction *[Personal]* filed by Defendant Fred Busch. (Cook, Marcy) (Entered: 01/19/2010) |
| 01/20/2010 | 97 | 402 | MOTION to Amend 12 Amended Complaint by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 01/20/2010) |
| 01/21/2010 | 98 | 409 | ORDER denying 92 Plaintiff's Motion for Recusal, by Judge Lewis T. Babcock on 1/21/10.(jak, ) (Entered: 01/21/2010) |
| 01/28/2010 | 100 | 411 | RESPONSE to 97 MOTION to Amend/Correct/Modify 12 Amended Complaint filed by Defendant Fred Busch. (Cook, Marcy) (Entered: 01/28/2010) |
| 01/29/2010 | 101 | 415 | BRIEF in Opposition to 61 MOTION to Dismiss for Lack of Jurisdiction [Personal] filed by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 02/01/2010) |
| 02/08/2010 | 103 | 432 | MOTION to Amend 101 Brief in Opposition to Motion by Plaintiff Solomon Ben–Tov Cohen. (Attachments: # 1 Memorandum of Law)(sah, ) (Entered: 02/09/2010) |
| 02/08/2010 | 104 | 451 | MOTION for Entry of Judgment under Rule 54(b) by Plaintiff Solomon Ben–Tov Cohen. (sah, ) (Entered: 02/09/2010) |
| 02/11/2010 | 107 | 462 | ORDER granting 103 "Motion to Amend Memorandum of Law and Points." Plaintiff's "Memorandum of Law and Points in Opposition to Defendant Fred Busch's Motion to Dismiss" (doc. # 103–2) is hereby accepted as Plaintiff's Amended Response to "Defendant Fred Busch's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)" (doc. # 61). By Magistrate Judge Craig B. Shaffer on 02/11/2010.TEXT ONLY ENTRY – NO DOCUMENT ATTACHED (cbslc1) (Entered: 02/11/2010) |
| 02/11/2010 | 108 | 463 | RESPONSE to 61 MOTION to Dismiss for Lack of Jurisdiction [Personal] filed by Plaintiff Solomon Ben–Tov Cohen. (actually entitled: Memorandum of Law and Points In Opposition to Defendant Fred Bush's Motion to Dismiss). Pursuant to the Order dated 02/11/2010 document was docketed as a response. |

4

| | | | (sah, ) (Entered: 02/12/2010) |
|---|---|---|---|
| 02/16/2010 | 109 | 480 | STATUS REPORT by Defendant Fred Busch. (Cook, Marcy) (Entered: 02/16/2010) |
| 02/24/2010 | 110 | 483 | RESPONSE to 104 MOTION for Entry of Judgment under Rule 54(b) filed by Defendant Fred Busch. (Cook, Marcy) (Entered: 02/24/2010) |
| 02/25/2010 | 112 | 490 | ORDER denying 104 Motion for Entry of Judgment under Rule 54(b). By Judge Lewis T. Babcock on 02/25/2010.(sah, ) (Entered: 02/26/2010) |
| 03/10/2010 | 113 | 491 | Letter which is being treated as a NOTICE OF APPEAL as to 112 Order on Motion for Entry of Judgment under Rule 54(b) by Plaintiff Solomon Ben–Tov Cohen. Fee Status: Pro se; Fee not paid; 1915 motion not filed. Notice mailed to all counsel on 03/11/10. (Attachments: # 1 Envelope)(bjrsl, ) (Entered: 03/11/2010) |
| 05/10/2010 | 119 | 493 | Recommendation Of United States Magistrate Judge. Defendant Fred Buschs Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) either be GRANTED pursuant to Fed. R. Civ. P. 12(b)(2) and this civil action be dismissed in its entirety for lack of personal jurisdiction over Defendant Busch or alternatively be GRANTED in part and DENIED in part pursuant to Fed. R.Civ. P. 12(b)(6) and all claims in the Second Amended Prisoner Complaint 12 be dismissed except the Fourth Amendment claim for arrest without probable cause.Mr. Cohens Motion for Change of Venue (filed 12/21/2009) 85 be DENIED. Mr. Cohens Motion to Amend Complaint (filed 01/20/2010) 97 be DENIED. By Magistrate Judge Craig B. Shaffer on 05/10/2010. (Attachments: # 1 Westlaw)(sah, ) (Entered: 05/10/2010) |
| 05/24/2010 | 125 | 534 | OBJECTION to 119 Report and Recommendations filed by Defendant Fred Busch. (Cook, Marcy) (Entered: 05/24/2010) |
| 06/23/2010 | 126 | 538 | ORDER re 119 Recommendation of United States Magistrate Judge. Defendant Fred Buschs Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) 61 is GRANTED and the action is DISMISSED IN ITS ENTIRETY. Plaintiffs Motion for Change of Venue 85 is DENIED. Plaintiffs Motion to Amend Complaint 97 is DENIED. By Judge Lewis T. Babcock on 06/23/2010.(sah, ) (Entered: 06/23/2010) |
| 07/06/2010 | 127 | 540 | NOTICE OF APPEAL as to 67 Order on Report and Recommendations, Order on Motion to Dismiss, 126] Order on Motion to Dismiss/Lack of Jurisdiction, Order on Motion to Change Venue, Order on Motion to Amend/Correct/Modify, Order on Report and Recommendations, by Plaintiff Solomon Ben–Tov Cohen. Fee Status: Fee not paid; 1915 motion not filed. Notice mailed to all counsel on 07/07/10. (Attachments: # 1 Envelope)(bjrsl, ) (Entered: 07/07/2010) |
| 07/08/2010 | 131 | 543 | JUDGMENT by Clerk. Defendant Fred Buschs Motion to Dismiss Pursuant toFed. R. Civ. P. 12(b)(2) 61 is granted. Judgment is entered for Defendant and against the Plaintiff and the action is dismissed in its entirety. Signed on 07/08/2010. (sah, ) (Entered: 07/08/2010) |
| 08/09/2010 | 134 | 545 | ORDER denying 133 Motion for Leave to Appeal in Forma Pauperis re 127 Notice of Appeal by Solomon Ben–Tov Cohen, by Judge Lewis T. Babcock on 08/09/10.(bjrsl, ) (Entered: 08/09/2010) |

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No.  **'08 - CV - 02188**

(To be supplied by the court)

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT - 8 2008

GREGORY C. LANGHAM
CLERK

Solomon BEN-TOV COHEN, MA (Contab) , Plaintiff,
Pro-SE

v.

US CAPITOL POLICE SPECIAL AGENT JOHN DOE
WASHINGTONE, DISTRICT OF COLUMBIA

_____ ,

_____ ,

_____ ,

_____ ,

_____ ,

_____ ,

**RECEIVED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 25 2008

GREGORY C. LANGHAM
CLERK

_____ , Defendant(s).

(List each named defendant on a separate line.)

### PRISONER COMPLAINT

(Rev. 1/30/07)

## A. PARTIES

1. *SOLOMON BEN-TOV COHEN MA(contd) Pro-SE, INMATE ID L2580*
(Plaintiff's name, prisoner identification number, and complete mailing address)
*ALIEN #77 309 675, AURORA/ICE PROCESSING CENTER*
*11901 E30th AVE, AURORA, CO 80010.*

2. *UNITED STATES*

a. *CAPITOL POLICE SPECIAL AGENT JOHN DOE*
(Name, title, and address of first defendant) *TEL: (202) 225-3976*
*OFFICE OF REP. HENRY WAXMAN, 2204 RAYBURN HOUSE OFFICE BLDG*
At the time the claim(s) alleged in this complaint arose, was this defendant acting under *WASHINGTON*
color of state law? ✓ Yes ✓ No (CHECK ONE). Briefly explain your answer: *DC 20515*
*PLAINTIFF IS UNSURE. # DISTRICT OF COLUMBIA*
*IS NOT A STATE.*

3. _____
(Name, title, and address of second defendant)

_____

At the time the claim(s) alleged in this complaint arose, was this defendant acting under
color of state law? ___ Yes ___ No (CHECK ONE). Briefly explain your answer:

_____

_____

4. _____
(Name, title, and address of third defendant)

_____

At the time the claim(s) alleged in this complaint arose, was this defendant acting under
color of state law? ___ Yes ___ No (CHECK ONE). Briefly explain your answer:

_____

_____

(If you are suing more than three defendants, use extra paper to provide the information
requested above for each additional defendant. The information about additional defendants
should be labeled "A. PARTIES.")

(Rev. 1/30/07)

2

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claim(s) pursuant to: (check one if applicable)

       ___   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

       ✓   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

   28 U.S.C. §1361, 28 U.S.C. §1346 (FEDERAL TORT ACT)

   403 U.S. 388 (1971), 28 U.S.C. §2201, 28 USC §1391(e) 1,2
   5 U.S.C. 701 et seq and such Statutes as Honorable Court, shall
   decide apply to this Action.

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case. If more space is needed to describe the nature of the case, use extra paper to complete this section. The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE." *UNITED STATES OF PLAINTIFF'S ARREST*

Defendant, Capitol Police special Agent, John Doe, who refused to give his name, illegally, wrongfully and maliciously arrested Plaintiff, Solomon Ben-Tov COHEN, in the office of Congressman Henry Waxman, without reason, at the Rayburn House Office Building, 2 days before Thanksgiving, Nov 25th 2003 on a false and fabricated charge of "making threats against a Congressman". Plaintiff had been advised to seek a Letter of Support from the Congressman by immigration lawyer, Neville Asherson, of Asherson, Darbinian & Klein, Beverly Hills, California. Defendant immediately dropped the charge and handed Plaintiff to Immigration & Customs Enforcement

(Rev. 1/30/07)  Agents ("ICE")[3] who took Plaintiff into custody
    — see additional sheets —

8

# D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1. Claim One: Defendant, on Tuesday November 25th 2003 illegally

   Supporting Facts: arrested PLAINTIFF in the office of Representative Henry Waxman in Washington DC.

Defendant soon dropped the false charge of "making Threats against a Congressman". PLAINTIFF was never brought before a Judge. At no time did PLAINTIFF make any manner of threat against anyone or make demands. Zaharee Goodman, a member of the Congressman's staff is a witness.

PLAINTIFF holds Congressman Henry Waxman in high esteem.

Plaintiff believes the Congressman to be Jewish, like himself.

(Rev. 1/30/07)                    4

2.   Claim Two: DEFENDANT violated PLAINTIFF's Civil Rights

Supporting Facts: ~~when~~ in calling Department of Homeland Security Immigration & Customs Enforcement to come and arrest PLAINTIFF — See Exhibit 1.

DEFENDANT had no right to use information given by PLAINTIFF to Congressman Waxman against him.

DEFENDANT realized at the end of interviewing PLAINTIFF that he, the DEFENDANT, had made an error, by which time it was too late.

He could not cancel what he had done, calling ICE.

(Rev. 1/30/07)                                 5

3. Claim Three: DEFENDANT ~~violated~~ wrongly accused PLAINTIFF

Supporting Facts: in COLORADO and is defaming and injuring PLAINTIFF.

On December 7th 2007, DEFENDANT telephoned staff member Sarah Morgan, LSW at COLORADO MENTAL HEALTH INSTITUTE AT Pueblo ("CMHIP"). to which Defendant had been ordered for Competency Restoration and ~~falsely~~ repeated ~~false~~ accusation that Plaintiff "had made Threats against a Congressman". This was in a report sent to Honorable Judge Sheila Rappaport at Denver District Court. At CMHIP, Plaintiff was taught about his rights under the US Constitution and its Amendments and his Rights. Dr Gray wrote a glowing report/ evaluation. All criminal charges against PLAINTIFF were dropped by the DISTRICT ATTORNEY.

(Rev. 1/30/07)

6

—see additional sheets—

11

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1.  Name(s) of defendant(s) in prior lawsuit:

    MICHAEL MUKASEY ATTORNEY GENERAL OF THE UNITED STATES

2.  Docket number and court name:

    '08-CV-01844-LTB-CBS
    US DISTRICT COURT, DISTRICT OF COLORADO

3.  Claims raised in prior lawsuit:

    APPLICATION FOR WRIT OF HABEAS CORPUS

4.  Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

    PENDING

5.  If the prior lawsuit was dismissed, when was it dismissed and why?

    N/A

6.  Result(s) of any appeal in the prior lawsuit:

    N/A

    - see additional sheets -

## F. ADMINISTRATIVE RELIEF

1.  Is there a formal grievance procedure at the institution in which you are confined?
    ✓ Yes ___ No (CHECK ONE).

2.  Did you exhaust available administrative remedies? ✓ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)                    7

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

PLAINTIFF respectfully asks this Honorable court to :-

1) Issue an injunction preventing DEFENDANT from making any manner of accusation against Plaintiff - and to compel

2) AWARD PLAINTIFF damages of $20 million for wrongful arrest, violation of his civil rights, periods of incarceration, damage/injury to physical and emotional health, suffering, loss of US $3.4 million loss of earnings etc and more.

3) AWARD costs associated with this ACTION.

### DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on    09/28/2008
                    (Date)

_____
(Prisoner's Original Signature)

(Rev. 1/30/07)                    8

# ADDITIONAL SHEETS

## C. NATURE OF THE CASE (continued)- additional sheet 1

Defendant, as a result, was held for four months without being brought before a Judge. Defendant was physically abused and became seriously ill- see Exhibit 1.

Defendant violated Plaintiff's Civil Rights.

Plaintiff is once again incarcerated and deprived of his liberty because of his illegal arrest by Defendant.

Defendant by his actions has ruined Plaintiff's life. Plaintiff is seeking substantial damages and help in reversing the damage done and restoration of his Civil Rights.

On December 7th 2007, Defendant telephoned Sarah Morgan LSW at Colorado Mental Health Institute at Pueblo, Colorado and repeated false accusation that Plaintiff "had made threats against a Congressman". Plaintiff had been sent there for competency restoration and learned about the US Constitution and his rights. Dr Gray at CMHIP carried out an independent evaluation of Plaintiff and wrote a glowing report. Charges Plaintiff faced were dismissed.

Defendant through ignorance is causing a political crisis. Plaintiff who is Jewish has been forced to ask officially for asylum from the United Kingdom after escaping illegal and unjustified detention order by Queen Elizabeth II.

The President, George Bush is a personal friend of the Queen Elizabeth II.

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 16

## C. NATURE OF THE CASE (continued)- additional sheet 2

Department of Homeland Security informed British Consulate in Washington DC, Vice Consul Graham Wise, that Plaintiff had asked for asylum from the UK.

Defendant has suffered a year and a half total detention as a consequence of Defendant's actions. Defendant is being held without Bond and is facing lengthy detention of up to two years in pursuit of his asylum case. In the United States since lawyers are advising that The President and the Attorney General will not allow his genuine asylum claim to go through.

As a result of being forced to officially ask for asylum, Plaintiff alleges that Queen Elizabeth II and her Privy Council compelled the *Cayman Chief Justice honorable Anthony Smellie* in February 2007 – re: Gazelle Global Fund Limited- see Exhibit 5- to make a terrible ruling withdrawing, the protection of his Court ending all monetary support. Monthly payments of $7,500 a month to Plaintiff and payment of root canals treatments were terminated in order to make him lose his teeth by not paying Washington DC oral surgeon Dr Goodman, force him from his Washington DC apartment, prevent him from hiring a lawyer to win his asylum case against her and place $3.4 Million out of the Plaintiff's reach by sending $3.4 Million to a Trustee, Dr Markus Wanger, www.iuf.li who refuses to give Plaintiff any of his money. Plaintiff is the beneficiary of a Foreign Grantor Trust established by his sister. As a result, Plaintiff is indigent. The Cayman Chief Justice who ordered this is under the control of The Queen and her Privy Council. Evidence will be produced in due course.

## C. NATURE OF THE CASE (continued)- additional sheet 3

Plaintiff's elderly mother in England provides Plaintiff with $50 a week out of her old age pension.

Defendant has caused much pain and suffering to the Plaintiff and his parents.

BACKGROUND

Plaintiff, Solomon Ben- Tov COHEN MA (*Cantab*) Pro-SE is a citizen of the United Kingdom and non- permanent resident of the United States since 1990.

Plaintiff moved to the United States in May 1990.

Plaintiff was born in London into an immigration Jewish family.

[ Plaintiff's parents are Jews who were born in Egypt, stateless, and forced to flee

- see www.hsje.com 'Historical Society of Jews from Egypt'. Plaintiff has relatives who were granted Greencards ("the quota") and who reside since 1949 in Brooklyn, New York.]

Plaintiff was educated at Trinity College, CAMBRIDGE with an Honors Master's degree in mathematics and is also a trained concert violinist having studied with world famous *Professor Yfrah Neaman* and soloist *Alfredo Campoli*.

Plaintiff lived and filed Federal, New York State and New York City taxes from the year 1990. In November 1994 the United States Department of Labor issued a Labor Certificate to C K Partners Inc, certifying that qualified U.S. workers are not available for the position that the company is planning to offer to Plaintiff . H1- B visa was granted because the Plaintiff with a MASTERS Degree in Mathematics from CAMBRIDGE UNIVERSITY [Honors] is an expert in global equity and derivative

*EXHIBIT* 4

## C. NATURE OF THE CASE (continued)- additional sheet 4

markets: London Stock Exchange [Registered Representative, Registered Dealer], London Traded Options Market ("LTOM") [Registered Options Dealer], London International Financial Futures Exchange ("LIFFE"), Paris Bourse, Paris Options Market ("MONEP"), Amsterdam Options Exchange, New York Stock Exchange ("NYSE"),

Chicago Board Options Exchange ("CBOE")  and other exchanges. Plaintiff's H1-B was obtained by immigration lawyer Richard Newman, New York City, NY.

In 1996 Plaintiff was featured in Barron's 01/27/96 and 01/29/ 96 as top performing hedge fund advisor and full color page in Financial Trader magazine – see Exhibit 3.

Full chapter on the Plaintiff's life and career are in book: *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind". Plaintiff hand- delivered the Congressman's Beverly Hills, CA office copy of *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind" which Plaintiff signed and dedicated to Congressman Henry Waxman with a letter asking for the Congressman's support in becoming a US Citizen after 10+ years in the United States

- see Exhibit 4. 7.

The President, George Bush severely curtailed the rights of expert H1- B workers in the aftermath of 9-11.

## C. NATURE OF THE CASE (continued)- additional sheet 5

| VISA TYPE | DATE ISSUED | WHERE ISSUED |
|-----------|-------------|--------------|
| B1/ B2 | 1987- to date | LONDON |
| F1 | 1992- 1992 | BERMUDA |
| H1- B | 1994  - 1997 | LONDON |

Plaintiff qualified for an Extra- ordinary ability GREENCARD but decided to defer applying for this.

| H1- B | renewed | 1997- 12/21/2000 |
|-------|---------|------------------|

During a visit back to the United Kingdom Queen Elizabeth II ordered Plaintiff's detention at a private psychiatric clinic with little chance of release, for writing a political, satirical comedy (play) about her and the royal family. This play about the UK was written in the United States and is copyrighted with The Library of Congress.

## RESIDENCY IN THE UNITED STATES

Plaintiff has lived in the United States since May 1990.

## SUMMARY OF ASYLUM CASE

Plaintiff is recognized as one of the top stockmarket traders/ hedge fund managers After handing delivering a copy of his political satirical comedy and 3 color photos of Plaintiff with Princess Diana taken by a royal photographer in 1992 – see Exhibit 2.

19

## C. NATURE OF THE CASE (continued)- additional sheet 6

to Buckingham Palace,, located a 15 minute walk from the apartment the Plaintiff used to own at 3 Garrick House Carrington Street London W1, three hours later, a doctor, social worker and police came to Plaintiff's Apartment Plaintiff and Dr Wiseman told

Plaintiff that he was ordering his detention at a private psychiatric clinic because of the play. Dr Wiseman had the play in his hands. This detention was illegal.

His detention was purely POLITICAL.

Plaintiff was not released after 72 hours as required by law. No *Habeas Corpus*. Plaintiff's Appeal Hearing after 9 days was "cancelled".

Coutts & Co, private bank with whom Plaintiff had had an account for more than 20 years notified Plaintiff that they were closing his bank account. Coutts are the bankers to The Queen. Mortgage subsidiary then threatened to foreclose on his £70,000 mortgage on apartment worth £200,000.

Plaintiff never returned to his London apartment. It was sold by Plaintiff in 2001.

Plaintiff managed to escape and with the help of a friend and fled to Switzerland.

The UK asked the Swiss Government to send him back, and the Swiss Government refused. Granted a three month residence permit only. Plaintiff received help from THE PINK CROSS in Berne and through them, human Rights lawyer, Fuersprecher Werner Spirig. At a meeting with the British Vice Consul at the Consulate in Berne, the lawyer was lied to in an attempt to trick Plaintiff into

## C. NATURE OF THE CASE (continued)- additional sheet 7

returning to the UK. However, UK Metropolitan Police office Timothy Glover warned Plaintiff by email that he was on a police Missing Persons list.

Plaintiff was in Switzerland when his H1- B expired on 12/21/2000 in total disarray as he fled with only the clothes he was wearing. Plaintiff's New York Immigration lawyer did not know how to reach Plaintiff and as a direct result of persecution, did not apply for Plaintiff's Extra- ordinary Ability Greencard.

RETURN TO USA

On a visit to UK in 2002, Plaintiff was advised to leave by mental health lawyer Richard Almond of *Victor Lissack & Roscoe*, London, and eminent psychiatrist Dr Colin Brewer.

Plaintiff re- entered United States on June 21st 2002 on a new passport which did not contain his visas- under the Visa Waiver Pilot Program.

Immigration Attorney, Aly Bolour Wilshire Blvd, Los Angeles CA was paid $1,000 by Plaintiff in 2002 but did no work whatsoever. As a result, Plaintiff, fearing persecution, became an "overstay".

*Asherson, Darbinian & Klein* would not accept Plaintiff as a client without the Letter of Support from a Congressman which would allow him to adjust his status without having to ask for asylum, based on 10+ years as a resident and tax- payer in the United States and because of his outstanding abilities as a trader and years of charitable donations to

21

## C. NATURE OF THE CASE (continued)- additional sheet 8

US charities such as: *GMHC (New York) AmFar (American Foundation for AIDS Research), Human Rights Campaign Fund, March of Dimes*, and others.

In Washington DC, Plaintiff had rejected the offer of an appointment made by a member of the Congressman's staff because if fell on Jewish Holyday Yom Kippur and wanted to make an appointment for a different day. Plaintiff did not make any threats whatsoever. Nor was Plaintiff asked to leave and would have been happy to do so.

Plaintiff had previously hand- delivered to Representative Henry Waxman's constituency office in Beverly Hills, CA a copy of the published book in which Plaintiff am featured and interviewed as one of the top ten stockmarket traders/ hedge fund managers in the US- *'Bulls Bears & Millionaires'* by Robert Koppel published by Dearborn Chapter Four- *'Solomon's Mind'*- see Exhibit #. 7

The initial contact with the Congressman's office was a phone call made the Plaintiff together with his gay US Citizen partner, Scott Soderstrom from his home at 1513 Lucile Avenue, Silverlake CA 90026. Plaintiff wanted to make a $1,000 donation however this was declined. Scott was being evicted by his landlord who claimed that he needed the house to live in. Scott was a member of a Rock Band that became famous and released several records.

At the Rayburn Office Building, Plaintiff cleared security. Once in the reception of Congressman Waxman's office, the Special Agent told Plaintiff that that the Congressman kept his own diary. The Special Agent refused to allow the Plaintiff to

Appellate Case: 10-1388   Document: 21   Date Filed: 08/16/2010   Page: 23

## C. NATURE OF THE CASE (continued)- additional sheet 9

leave. Plaintiff asked to make a phone call and, in front of the Special Agent, Plaintiff made a phone call to Brian McMahon of Woodrow Wilson Drive, Hollywood Hills, CA,

the friend in California, who had made donations through his publishing company to the Congressman's Re- Election Campaign and knew Representative Waxman, who unfortunately had already left his office for the *Thanksgiving* Holiday.

Special Agent then asked Plaintiff to turn around and handcuffed Plaintiff handcuffs in front of Zahava Goldman, a Jewish member of Congressman Henry Waxman's staff who is a witness. He led Plaintiff out of the building, telling the Officer on the door : " *making threats against a Congressman*" . The arrest was completely unnecessary and the charge fabricated. The Special Agent took Plaintiff to his office.

Defendant violated the Privilege under which Plaintiff was to see or arrange to meet with Congressman Henry Waxman, to ask for a Letter of Support in order to help his immigration case.

Defendant had no reason to arrest the Plaintiff.

### INTERVIEW

Defendant took Plaintiff to his office and proceeded to interview him.

Defendant had copies of Plaintiff's Federal, NY State and New York City tax returns in front of him. Plaintiff was unable to register for California taxes because of his lack of immigration status.

# C.NATURE OF THE CASE (continued)- additional sheet 10

As Defendant knew he had acted illegally / was violating Plaintiff's civil rights, he refused to provide the Plaintiff with his name.

Defendant told Plaintiff that he had been trying to contact him and mentioned the *Hotel Bel Air*, a very exclusive hotel in Bel Air, California where Plaintiff had stayed. Plaintiff was no longer staying at the *Hotel Bel Air* when the Defendant was trying to reach him.

Defendant had Plaintiff's email address but did not use it.

Solomon: *Why didn't you email me and tell me not to come, if Congressman Henry Waxman did not want to see me?*

Special Agent John Doe: (retorted): *I wasn't going to give you my email address..(by sending an email).*

Defendant dropped the charge and handed Plaintiff to **Immigration & Customs Enforcement** and he was taken to jail.

Plaintiff asked for asylum. British Consulate were notified by ICE.

## DETENTION

| | |
|---|---|
| November- December 24th 2003 | Rappahannock Regional Jail, VA |
| December 24th 2003- January 2004 | Pamunkey Regional Jail, VA |
| January – February 2004 | Hampton Roads Regional Jail, VA |
| February- March 2004 | Piedmont Regional Jail, VA |

RELEASED ON PAROLE/ BOND$3,000

Appellate Case: 10-1383   Document: 21   Date Filed: 08/16/2010   Page: 25

**C.NATURE OF THE CASE** (continued)- additional sheet 11

## ABUSE WHILST IN DETENTION

Plaintiff was abused by Sergeant Lowther , Pamunkey Regional Jail who was already facing charges pressed by Attorney General John Ashcroft. Plaintiff lost 30 lbs in one month and was placed on double meal trays by the jail doctor. Plaintiff was stripped naked in a cell when ICE came to collect Plaintiff and took Plaintiff to Hamptons Roads Regional Jail, VA. Palintiff was denied use of telephone to call any attorneys by Sgt Lowther.

## COURT HEARINGS

March 2004          Hon Judge Bryant      Arlington VA          No attorney

*Via Videoconference* from Piedmont Regional Jail, VA

## D. CAUSE OF ACTION (continued) – additional sheet 1

4. <u>Claim Four:</u> Defendant was unaware of Plaintiff's original letter to the Congressman and gift of a copy of *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind" which Plainitff signed and dedicated to Congressman Henry Waxman and which he had delivered to the Congressman's Beverly Hills, CA office.   Defendant shouldn't have interfered.

5. <u>Claim Five:</u> Defendant before, during and after interviewing Plaintiff refused to give his name because he knew his conduct was illegal. This is illegal.

   Supporting Fact: Had the Defendant given his name Plaintiff would be able to file a complaint and Defendant's name would appear in this COMPLAINT/ ACTION instead of as Special Agent John Doe.

6. <u>Claim Six:</u> Defendant violated the Privilege under which Plaintiff was to see or arrange to meet with Congressman Henry Waxman, to ask for a Letter of Support in order to help his immigration case.

   Supporting Facts: Defendant had Plaintiff arrested by ICE. He prevented the Congressman's staff from seeing letters from Plaintiff.

Appellate Case: 10-1282   Document 21   Date Filed: 08/16/2010   Page: 27

## D. CAUSE OF ACTION (continued) – additional sheet 2

7. <u>Claim Seven:</u> Defendant was willfully negligent.

Supporting Facts: Defendant admitted to Plaintiff during the course of interviewing him in his office after the arrest that he had not been aware of what had been submitted to the Congressman's office in Beverly Hills CA. Defendant took subsequent communications out of context.

8. <u>Claim Eight:</u> Defendant violated Plaintiff's civil rights. Defendant had copies of Plaintiff's US Federal, New York State and City tax returns in his office. California law and immigration status prevented Plaintiff from registering and paying California taxes for 2002.

Supporting Facts: Defendant told Plaintiff that he pulled his letters thereby preventing Congressman Henry Waxman's staff from reading them- but not letters sent to the constituency office in Beverly Hills CA. Defendant's job is to ensure that the Congressman's mail is safe ie anthrax- free. He is abusing his position in censoring mail to the Congressman's staff. His political judgment is not equal to theirs or to that of the Congressman himself. It is for the staff to decide how to respond to mail. How can they respond if they do not even know that the mail has been received. Mail from Plaintiff was **not** referred to the Defendant as threatening.

**D. CAUSE OF ACTION** (continued) – additional sheet 3

9. <u>Claim Nine:</u> Defendant denied Congressman Waxman the opportunity to make a decision on whether to support Plaintiff by writing a Letter of Support.

   Supporting Facts: Plaintiff has been receiving general emails from the Congressman's office *every week* 2003- to- date.

10. <u>Claim Tenth:</u> Plaintiff alleges that Defendant is preventing him from obtaining support from US Senators.

    Supporting Facts: Exhibit 6 is a very good letter from Senator John McCain to a fellow detainee. Plaintiff, despite his exemplary financial skills has received no reply from Senators he has written to asking for similar support.

## E. PREVIOUS LAWSUITS (continued) - additional sheet 1

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes ____ No.

2. Name of defendants in prior lawsuit:

Jason Clemens, Immigration Agent
Shana Martin, Assistant Chief Counsel
Department of Homeland Security

3. Docket number and court name:

**' 08- cv- 01991-BnB**
US DISTRICT COURT, DISTRICT OF COLORADO

4. Claims raised in prior lawsuit:

Making false statement, Perjury
Civil Rights violations

5. Disposition of prior lawsuit:

Pending

6. If prior lawsuit was dismissed when was it dismissed and why?

N/A

7. Result of any appeal in the prior lawsuit:

N/A

**E. PREVIOUS LAWSUITS** (continued)- additional sheet 2

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes____No.

1. Name of defendants in prior lawsuit:

   Denver County Jail,CO and Chaplain Rev John Scott

2. Docket number and court name:

   **1:08-cv-00978-BNB**
   US DISTRICT COURT, DISTRICT OF COLORADO

3. Claims raised in prior lawsuit:

   i.   Denial of kosher food- 1st Amendment violation
   ii.  request for additional law library time

4. Disposition of prior lawsuit:

   Abandoned/ Dismissed

5. If prior lawsuit was dismissed when was it dismissed and why?

   Denver County Jail granted both after lawsuit was filed and criminal charges dropped. Official reason:
   failure to notify change of address.

6. Result of any appeal in the prior lawsuit:

   N/A

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Letter from Department of Homeland Security Acting Field Director re: arrest |
| 2 | Photo of HRH Princess Diana speaking with Plaintiff |
| 3 | Re- print of full page feature on Plaintiff – *FINANCIAL TRADER* Magazine |
| 4 | Copy of Plaintiff's work visa and Labor Certification |
| 5 | Copy of email informing Plaintiff of Cayman Chief Justice's decision |
| 6 | Copy of confidential letter from Senator John McCain to fellow detainee |
| 7 | Chapter 4- Book: "*BULLS, BEARS & MILLIONAIRES*" by Robert Koppel  Published by Dearborn |

# EXIHIBIT 1

U.S. Department of Homeland Security
4420 North Fairfax Drive
Arlington, Virginia 22203

*Detention & Removal Operations*



**U.S. Immigration
and Customs
Enforcement**

March 30, 2004

Ms. Nadia Ezzelarab, Esq.
4001 N. Ninth Street Suite 222
Arlington, VA  22203
Fax (703) 243-1494

Re: Solomon B. Cohen
Parole Request, A# 77 309 675

Dear Ms. Ezzelarab:

I have considered your request for the release of Mr. Solomon B. Cohen from BICE custody.

A review of the case indicates that Mr. Cohen is a citizen of the UK, and a Visa Waiver overstay in the United States. Mr. Cohen was apprehended and detained by ICE investigators, after a referral by the U.S. Capital Police. A Notice of Referral to the Immigration Judge (Form I-863) was issued and served on the court. Mr. Cohen has an asylum claim pending with the Immigration Court in Arlington, Virginia.

The decision to release, or parole an individual from detention is discretionary. Under policy, however, an individual is statutorily eligible for parole and should generally be paroled whenever the individual can establish he or she is likely to appear for all hearings or other immigration matters and that he or she poses no danger to the community. Due to his emergent medical condition and need to be treated for his apparent re-occurring cancer, I have considered your request. Your request for the release of Mr. Cohen is granted after posting a $3,000 bond. Mr. Cohen is hereby ordered to attend his next hearing on 4/23/04 at the Washington, Arlington, Virginia Immigration Court.

Sincerely,

Neil Acri
Interim Deputy Field Director
Washington Field Office

# EXIHIBIT 2



## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### OFFICE OF THE CLERK

GREGORY C. LANGHAM
CLERK OF COURT

Room A-105
Alfred A. Arraj United States
Courthouse
901 19ᵗʰ Street
Denver, Colorado 80294
Phone(303) 844-3433
www.cod.uscourts.gov

This is the best quality copy of the following documentS

Clerks Office
United States District Court

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 36



# EXIHIBIT 3



# FINANCIAL TRADER

## TOP PERFORMER

# SOLOMON'S CHOICE

### — BY LINDA KESLAR

"MY LOVES ARE THE THREE M'S: math, music and money" says Solomon Cohen, who, at 35, is scoring high in all three of his passions. His Gazelle Global Fund soared 296.9 percent last year and earned the distinction as the top-performing hedge fund of 1995. An event-driven fund of thus far $7 million-plus Gazelle, thus named by Cohen because the species "moves upwards and forwards at great speed," gained one of its biggest windfalls last year from positions taken in Dr Pepper 7-Up, following Cadbury Schweppes takeover bid. With potential investors now ringing up constantly, Cohen hopes to push the offshore fund into the $100 million range, and says he's got 40 institutions interested in lining up to build that pool. Moreover, Cohen is also setting up several other specialty offshore funds, including one based on trading systems that certainly taps his knack for complex equations. "We've developed proprietary mathematically based tests that alert us to unusual trading patterns highly correlated to significant directional moves in equity prices. We use software that subjects thousands of equities to these tests on a closing price basis and creates a ranked list of the top ten long and short situations."

With so much going on, Cohen sometimes finds it better to work out of home, a spacious loft in lower Manhattan, instead of going to the office to face constant interruptions. "I concentrate better here," he explains, and even takes time out during the day to play a Beethoven sonata or two on his magnificent Bechstein grand piano.

"This was a teenage dream," says the London-bred Cohen, who has studied both piano and violin since adolescence and won a scholarship to the prestigious Guildhall School of Music after graduating from Cambridge with a masters in mathematics. For two years he studied violin and conducting, and then was forced with making a gut-wrenching choice: to pursue a career in music or finance.

"It was a difficult decision," he says. "If I went into music I knew I'd be struggling financially for years, even if I had a successful career. So I decided to make money first and then maybe pursue a career in music."

The son of a math professor who also consulted for financial firms in London's City, Cohen was no stranger to the intricacies of the financial world. His parents rewarded him with a few hundred dollars worth of British Petroleum stock when he was just a teenager and at 16, he had the audacity to question the chairman at the company's annual meeting, who referred him to one of the company's directors. "He actually did take the time to answer my questions after the meeting," he recalls with a grin.

At the age of 21, Cohen was trading options between classes, and went on to his first job as a pro at James Capel in 1987, where he met David Heron, now the head of derivatives trading at Smith Newcourt, a new subsidiary of Merrill Lynch. Heron taught him a thing or two about arbitrage in the swell of the U.K. merger wave of the 1980s. "David was my mentor, someone I really admire and I learned a great deal from him," says Cohen, who honed his skills as a proprietary trader for the firm. While the City suffered after the 1987 stock market crash, Cohen was non-plussed by the event. "The crash wasn't frightening. Tremendous opportunities opened up because of the tremendous mispricings."

"In 1989, I stood on the floor of the options exchange in San Francisco in the SmithKline pit at the time the company was merging with Beecham of the U.K., and said 'God, there must be great arbitrage opportunities between Beecham in London and SmithKline here.' I suddenly became aware of the link between these things traded separately in different places. That's when I decided to take the strategies that I had used in the U.K. market and use them globally."

He set up CK Partners in 1994, and off hours, he pursues his passion for music through classical jam sessions with friends. "I love what I do," he says, enthusiastically describing all the economic factors which he believes will continue to feed a global merger wave and opportunities for event-driven hedge fund managers as himself. "There's a powerful logic in companies combining to create truly global brands," he says. "I think the consolidation and globalization is going to take place and continue to for some time to come." ∎



"If I went into music, I knew I'd be struggling financially for years, even if I had a successful career. So I decided to make money first and then, maybe, pursue a career in music," says CK Partners' Solomon Cohen.

## TRACK RECORD

| CK PARTNERS INC. | |
| --- | --- |
| 1996 (first quarter) | 19.7% |
| 1995 | 296.9% |
| 1994 (6 mos.) | -5.7% |
| *Cumulative Return:* | *271.5%* |

SOURCE: CK PARTNERS

# EXIHIBIT 4

# THE UNITED STATES OF AMERICA

EAC-95-023-50155

**PETITION FOR A NONIMMIGRANT WORKER**

| RECEIPT DATE | PRIORITY DATE | PETITIONER |
|---|---|---|
| November 3, 1994 | | C K PARTNERS |

| NOTICE DATE | PAGE | BENEFICIARY |
|---|---|---|
| December 21, 1994 | 1 of 1 | COHEN, SOLOMON |

C K PARTNERS
C/O RICHARD A NEWMAN
122 EAST 42ND STREET SUITE 810
NEW YORK NY 10168

Notice Type: Approval Notice
Class: H1B
Valid from 12/21/94 to 12/21/97

Courtesy Copy: Original sent to: NEWMAN, RICHARD A

This courtesy notice is to advise you of action taken on this case. The official notice has been mailed to the attorney or representative indicated above. Any relevant documentation included in the notice was also mailed as part of the official notice.

The above petition and change of status have been approved. The status of the named foreign worker(s) in this classification is valid as indicated above. The foreign worker(s) can work for the petitioner, but only as detailed in the petition and for the period authorized. Any change in employment requires a new petition. Since this employment authorization stems from the filing of this petition, separate employment authorization documentation is not required. Please contact the IRS with any questions about tax withholding.

The petitioner should keep the upper portion of this notice. The lower portion should be given to the worker. He or she should keep the right part with his or her Form I-94, *Arrival-Departure Record*. This should be turned in with the I-94 when departing the U.S. The left part is for his or her records. A person granted a change of status who leaves the U.S. must normally obtain a visa in the new classification before returning. The left part can be used in applying for the new visa. If a visa is not required, he or she should present it, along with any other required documentation, when applying for reentry in this new classification at a port of entry or pre-flight inspection station. The petitioner may also file Form I-824, *Application for Action on an Approved Application or Petition*, with this office to request that we notify a consulate, port of entry, or pre-flight inspection office of this approval.

This courtesy copy may not be used in lieu of official notification to demonstrate the filing or processing action taken on this case.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
EASTERN SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone: (802) 527-3160



Form I-797C (Rev. 09/07/93)N

Immigration and Naturalization Service     **Notice of Action**

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER | | CASE TYPE I129 |
|---|---|---|
| EAC-98-052-50844 | | PETITION FOR A NONIMMIGRANT WORKER |

| RECEIPT DATE | PRIORITY DATE | PETITIONER |
|---|---|---|
| December 12, 1997 | | CK PARTNERS |

| NOTICE DATE | PAGE | BENEFICIARY |
|---|---|---|
| December 22, 1997 | 1 of 1 | COHEN, SOLOMON B. |

CK PARTNERS
C/O RICHARD A NEWMAN ESQ
122 E 42ND ST SUITE 810
NEW YORK NY 10168

Notice Type: Approval Notice
Class: H1B1
Valid from 12/22/97 to 12/21/00



Courtesy Copy: Original sent to: NEWMAN, RICHARD A

This courtesy notice is to advise you of action taken on this case. The official notice has been mailed to the attorney or representative indicated above. Any related documentation included in the notice was also mailed as part of the official notice.

The above petition and extension of stay have been approved. The status of the named foreign worker(s) in this classification is valid as indicated above. The foreign worker(s) can work for the petitioner, but only as detailed in the petition and for the period authorized. Any change in employment requires a new petition. Since this employment authorization stems from the filing of this petition, separate employment authorization documentation is not required. Please contact the IRS with any questions about tax withholding.

The petitioner should keep the upper portion of this notice. The lower portion should be given to the worker. He or she should keep the right part with his or her Form I-94, Arrival-Departure Record. This should be turned in with the I-94 when departing the U.S. The left part is for his or her records. A person granted an extension of stay who leaves the U.S. must normally obtain a new visa before returning. The left part can be used in applying for the new visa. If a visa is not required, he or she should present it, along with any other required documentation, when applying for reentry in this new classification at a port of entry or pre-flight inspection station. The petitioner may also file Form I-824, Application for Action on an Approved Application or Petition, with this office to request that we notify a consulate, port of entry, or pre-flight inspection office of this approval.

This courtesy copy may not be used in lieu of official notification to demonstrate the filing or processing action taken on this case.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone: (802) 527-3160

Form I-797C (Rev. 09/07/93)N

# RICHARD A. NEWMAN
## ATTORNEY AT LAW

122 East 42nd Street
Suite 810
New York, NY   10168

Tel: (212) 986-0947
         (212) 986-7585

Fax: (212) 972-1061

December 9, 1997

Immigration & Naturalization Service
Vermont Service Center
75 Lower Weldon Street
St. Albans, VT 05479-0001

RE:   I-129 Petition to extend H-1B Visa
          Status for Solomon COHEN

Gentlemen:

In support of the I-129 petition by C.K. Partners, Inc. to extend the H-1B status of Mr. Solomon Cohen, we herewith submit the following, in duplicate:

1. Form I-129. and H-1 Supplement.
2. ETA 9035/Labor Condition Application.
3. Letter from C.K. Partners, Inc.
4. Education Evaluation.
5. Certificate of Academic Record of Bachelors and Masters Degrees from the University of Cambridge and Master of Arts Degree The University of Cambridge.
6. Letter from Seth Akabas, Attorney at Law.
7. Memorandum regarding registration by Richard A. Newman, Attorney At Law.
8. Part 11 of the Investment Advisory Services stating requirements and exemptions for registration.
9. G-28.
10. Check for $125.00.

Please be advised that the petitioning company and its employees are not required to be registered under federal or state laws regulating investment and investment consulting firms. The petitioner has fewer than fifteen (15) employees and does not advertise. As such, they are not required to register under the Investment Advisors Act. In addition, the petitioner does not effect securities transactions or hold securities for clients, and does not offer to buy or sell securities. Further, the petitioner does not make commissions on the sale of securities. As such, the petitioner is not required to register as a broker/dealer under the Securities Exchange Act of 1934.

Please see petitioner's letter along with attorneys' supporting letters.

42

# NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

| In re: | DATE |
|---|---|
| ☒ Form I-129/H-1B Extension | |
| | FILE No. |

I hereby enter my appearance as attorney for (or representative of ), and at the request of, the following named person(s).

| NAME | | | | ☒ Petitioner ☐ Applicant |
|---|---|---|---|---|
| C.K. Partners | | | | ☐ Beneficiary |

| ADDRESS (Apt. No.) | (Number & Street) | (City) | (State) | (Zip Code) |
|---|---|---|---|---|
| 43 East 20th Street, New York, NY 10003 | | | | |

| NAME | | | | ☐ Petitioner ☐ Applicant |
|---|---|---|---|---|
| Solomon Cohen | | | | ☒ Beneficiary |

| ADDRESS (Apt. No.) | (Number & Street) | (City) | (State) | (Zip Code) |
|---|---|---|---|---|
| 511 Avenue of the Americas, #211, New York, NY 10011 | | | | |

Check Applicable Item(s) below:

☒ 1.   I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia

New York State                Appellate Division                            and am not under a court or administrative agency order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.
*(Name of Court)*

☐ 2.   I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3.   I am associated with_____
The attorney of record who previously filed a notice of appearance in this case and my appearance is at his request. *(If you check this item, also check item 1 or 2 whichever is appropriate.)*

☐ 4.   Others (Explain fully.)

| SIGNATURE | COMPLETE ADDRESS 122 East 42nd Street Suite 810 New York, NY 10168 |
|---|---|
| NAME (Type or Print) Richard A. Newman | TELEPHONE NUMBER (212) 986-0947 |

PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS:

Richard A. Newman, Esq.

*(Name of Attorney or Representative)*

THE ABOVE CONSENT TO DISCLOSE IS IN CONNECTION WITH THE FOLLOWING MATTER:

| NAME OF PERSON CONSENTING | SIGNATURE OF PERSON CONSENTING | DATE |
|---|---|---|
| Peter Keramas President/Director | *Peter Keramas* | 12/7/97 |

*(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for premanent residence.)*

| Form G-28 (Rev. 10-25-79)N | (Over) | UNITED STATES DEPARTMENT OF JUSTICE Immigration and Naturalization Service |
|---|---|---|

Case 1:08-cv-02188-LTB-CBS   Document 3   Filed 10/09/08   Page 39 of 77

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 44

**RICHARD A. NEWMAN**
**ATTORNEY AT LAW**
122 EAST 42ND ST. SUITE 810
NEW YORK, NY. 10168

1725

1-7040/2260
43

12/09/97        19____

PAY
TO THE
ORDER OF____ Immigration & Naturalization Service _____ | $ 125.00

_One Hundred and Twenty-five only_____ DOLLARS

≡EMIGRANT
EMIGRANT SAVINGS BANK
5 EAST 42ND STREET. NEW YORK, NY 10017

FOR___ COHEN, Solomon/I-129/H-1B Extention

⑈0001725⑈ ⑆226070403⑈ 764304727 2⑈

44



**CAMBRIDGE**

Reference:

University Registry
The Old Schools
Cambridge CB2 1TN

Direct Dialling (0223) 33..........
Fax: (0223) 332332

## CERTIFICATE OF ACADEMICAL RECORD

I hereby certify as correct the following particulars of the academical record of

**SOLOMON BEN-TOV COHEN**, of Trinity College

| | |
|---|---|
| Michaelmas Term 1979 | : Matriculated |
| Easter Term 1980 | : Mathematical Tripos, Part IA, Honours, Class 3 |
| Easter Term 1981 | : Mathematical Tripos, Part IB, Honours, Class 3 |
| Easter Term 1983 | : Mathematical Tripos, Part II, Honours, Junior Optime (= Class 3) |
| 24 June 1983 | : B.A. Degree |
| 2 May 1987 | : M.A. Degree |

**REGISTRARY OF THE UNIVERSITY**

Registrary's Clerk
10 June 1994

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 46

**U.S. Department of Justice**
Immigration and Naturalization Service

For sale by the Superintendent of Documents
U.S. Government Printing Office
Washington, DC 20402

OMB #1115-0168
**Petition for a Nonimmigrant Worker**

**START HERE - Please Type or Print**

| | FOR INS USE ONLY |
|---|---|

## Part 1.  Information about the employer filing this petition.
If the employer is an individual, use the top name line.  Organizations should use the second line.

| Family Name | | Given Name | | Middle Initial |
|---|---|---|---|---|

**Company or Organization Name**   C.K. PARTNERS, INC.

**Address - Attn:**   c/o Richard A. Newman, Esq.

| Street Number and Name   122 East 42nd Street | Apt. #Suite 810 |
|---|---|

| City   New York | State or Province   New York |
|---|---|

| Country   USA | ZIP/Postal Code   10168 |
|---|---|

**IRS Tax #**   13-3768612

FOR INS USE ONLY:
- Returned
- Receipt
- Resubmitted
- Reloc Sent
- Reloc Rec'd

## Part 2.  Information about this Petition.
(See instructions to determine the fee).

1. **Requested Nonimmigrant Classification:**
(write classification symbol at right)   H-1B

2. **Basis for Classification (check one)**
   a. ☐ New employment
   b. ☒ Continuation of previously approved employment without change
   c. ☐ Change in previously approved employment
   d. ☐ New concurrent employment

3. **Prior petition.** If you checked other than "New Employment" in item 2. (above) give the most recent prior petition number for the worker(s):   EAC-95-023-50155

4. **Requested Action:** (check one)
   a. ☐ Notify the office in Part 4 so the person(s) can obtain a visa or be admitted (NOTE: a petition is not required for an E-1, E-2, or R visa).
   b. ☐ Change the person(s) status and extend their stay since they are all now in the U.S. in another status (see instructions for limitations).  This is available only where you check "New Employment" in item 2, above.
   c. ☒ Extend or amend the stay of the person(s) since they now hold this status.

5. **Total number of workers in petition:**   One (1)

(See instructions for where more than one worker can be included.)

Interviewed
☐ Petitioner
☐ Beneficiary

Class: ____
# of Workers: ____
Priority Number: ____
Validity Dates: From ____   To ____

☐ Classification Approved
☐ Consulate/POE/PFI Notified
At: ____
☐ Extension Granted
☐ COS/Extension Granted

Partial Approval (explain)

Action Block

## Part 3.  Information about the person(s) you are filing for.
Complete the blocks below. Use the continuation sheet to name each person included in this petition.

If an entertainment group, give their group name.

| Family Name   COHEN | Given Name   Solomon | Middle Initial   B |
|---|---|---|

| Date of Birth (Month/Day/Year)   12/24/60 | Country of Birth   United Kingdom |
|---|---|

| Social Security #  | A #  |
|---|---|

If in the United States, complete the following:

| Date of Arrival (Month/Day/Year)   10/20/97 | I-94 #   375219379 05 |
|---|---|

| Current Nonimmigrant Status   H-1B | Expires (Month/Day/Year)   12/21/97 |
|---|---|

**To Be Completed by Attorney or Representative, if any**
☐ Fill in box if G-28 is attached to represent the applicant

VOLAG#

ATTY State License #

Form I-129 (Rev. 12/11/91) N          **Continued on back.**          46

## Part. 4. Processing Information.

If the person named in Part 3 is outside the U.S. or a requested extension of stay or change of status cannot be granted, give the U.S. consulate or inspection facility you want notified if this petition is approved.

| Type of Office (check one): | ☒ Consulate | ☐ Pre-flight inspection | ☐ Port of Entry |
|---|---|---|---|

Office Address (City)   Hamilton, Bermuda                                    U.S. State or Foreign Country

Person's Foreign Address   48 Par-la-villa Road, Apt. 394, Hamilton, HM11 Bermuda

| | | |
|---|---|---|
| Does each person in this petition have a valid passport? | ☐ Not required to have passport | ☐ No - explain on separate paper   ☒ Yes |
| Are you filing any other petitions with this one? | ☒ No | ☐ Yes - How many? _____ |
| Are applications for replacement/initial I-94's being filed with this petition? | ☒ No | ☐ Yes - How many? _____ |
| Are applications by dependents being filed with this petition? | ☒ No | ☐ Yes - How many? _____ |
| Is any person in this petition in exclusion or deportation proceedings? | ☒ No | ☐ Yes - explain on separate paper |
| Have you ever filed an immigrant petition for any person in this petition? | ☒ No | ☐ Yes - explain on separate paper |

If you indicated you were filing a new petition in Part 2, within the past 7 years has any person in this petition:

1) ever been given the classification you are now requesting?  ☐ No   N/A   ☐ Yes - explain on separate paper
2) ever been denied the classification you are now requesting?  ☐ No   N/A   ☐ Yes - explain on separate paper

If you are filing for an entertainment group, has any person in this petition not been with the group for at least 1 year?   ☐ No   N/A   ☐ Yes - explain on separate paper

## Part 5. Basic Information about the proposed employment and employer.

Attach the supplement relating to the classification you are requesting.

| Job Title | Investment Consultant | Nontechnical Description of Job | Provide research and consultat regarding investment of assets (see attach letter). |
|---|---|---|---|

Address where the person(s) will work if different from the address in Part 1.   43 East 20th Street, New York, NY 10003

| Is this a full-time position? | ☐ No - Hours per week | ☒ Yes | Wages per week or per year | $60,000/yr |
|---|---|---|---|---|
| Other Compensation (Explain)   Normal benefits | Value per week or per year   Varies | Dates of Intended employment   From: 12/22/97   To: 12/21/2000 | | |

| Type of Petitioner - check one: | ☐ U.S. citizen or permanent resident | ☒ Organization | ☐ Other - explain on separate paper |
|---|---|---|---|

| Type of Business: | Investment Research, Analysis and Consultation. | Year established: | 1994 |
|---|---|---|---|
| Current Number Employees | 2 | Gross Annual Income | $250 million fund volume | Net Annual Income | $300,000.00 |

## Part 6. Signature.

*Read the information on penalties in the instructions before completing this section.*

I certify, under penalty of perjury under the laws of the United States of America, that this petition, and the evidence submitted with it, is all true and correct. If filing this on behalf of an organization, I certify that I am empowered to do so by that organization. If this petition is to extend a prior petition, I certify that the proposed employment is under the same terms and conditions as in the prior approved petition. I authorize the release of any information from my records, or from the petitioning organization's records, which the Immigration and Naturalization Service needs to determine eligibility for the benefit being sought.

| Signature and title | President/ Director | Print Name   Peter Keramas | Date   12/7/97 |
|---|---|---|---|

Please Note: If you do not completely fill out this form and the required supplement, or fail to submit required documents listed in the instructions, then the person(s) filed for may not be found eligible for the requested benefit, and this petition may be denied.

## Part 7. Signature of person preparing form if other than above.

I declare that I prepared this petition at the request of the above person and it is based on all information of which I have any knowledge.

| Signature   Signed | Print Name   Richard A. Newman, Esq. | Date   12/09/97 | |
|---|---|---|---|

Firm Name Address   Richard A. Newman, Esq., 122 East 42nd Street, Suite 810, New York, NY 10168

**U.S. Department of Justice**

Immigration and Naturalization Service

OMB #1115-0168

**H Classification**
Supplement to Form I-129

| Name of person or organization filing petition: | Name of person or total number of workers or trainees you are filing for: |
|---|---|
| C.K. PARTNERS, INC. | COHEN, Solomon |

List the alien's and any dependent family members; prior periods of stay in H classification in the U.S. for the last six years. Be sure to list only those periods in which the alien and/or family members were actually in the U.S. in an H classification. If more space is needed, attach an additional sheet.

H-1B: 12/21/94 to present.

Classification sought (check one):

- [ ] H-1A Registered Professional nurse
- [X] H-1B1 Specialty occupation
- [ ] H-1B2 Exceptional services relating to a cooperative research and development project administered by the U.S. Department of Defense
- [ ] H-1B3 Artist, entertainer or fashion model of national or international acclaim

- [ ] H-1B4 Artist or entertainer in unique or traditional art form
- [ ] H-1B5 Athlete
- [ ] H-1BS Essential Support Personnel for H-1B entertainer or athlete
- [ ] H-2A Agricultural worker
- [ ] H-2B Nonagricultural worker
- [ ] H-3 Trainee
- [ ] H-3 Special education exchange visitor program

## Section 1. Complete this section if filing for H-1A or H-1B classification.

Describe the proposed duties

Provide quantitative analysis of investment instruments and provide consultation to corporate investor fund clients regarding investment of assets. (See attached letter.)

Alien's present occupation and summary of prior work experience

Investment Analyst/Consultant:   over eleven (11) years of experience with analysis of financial markets and investment instruments plus providing advice and consultation with investment firms. Bachelor's degree in Mathematics and Masters degree from University of Cambridge (1983 and 1987, respectively). (See attached letter.)

Statement for H-1B specialty occupations only:

By filing this petition, I agree to the terms of the labor condition application for the duration of the alien's authorized period of stay for H-1B employment.

Petitioner's Signature _Peter Kramarz_   Date 12/7/97

Statement for H-1B specialty occupations and DOD projects:

As an authorized official of the employer, I certify that the employer will be liable for the reasonable costs of return transportation of the alien abroad if the alien is dismissed from employment by the employer before the end of the period of authorized stay.

Signature of authorized official of employer _Peter Kramarz_   Date 12/7/97

Statement for H-1B DOD projects only:

I certify that the alien will be working on a cooperative research and development project or a coproduction project under a reciprocal Government-to-Government agreement administered by the Department of Defense.

DOD project manager's signature _____   Date _____

## Section 2. Complete this section if filing for H-2A or H-2B classification.

| Employment is: (check one) | Temporary need is: (check one) |
|---|---|
| [ ] Seasonal | [ ] Unpredictable |
| [ ] Peakload | [ ] Periodic |
| [ ] Intermittent | [ ] Recurrent annually |
| [ ] One-time occurrence | |

Explain your temporary need for the alien's services (attach a separate paper if additional space is needed).

Form I-129 Supplement H (12/11/91) N

**Continued on back.**

10/29/1997  11:48    2129721861                  BALL  BAKER  LEAKE                        PAGE  02

**Labor Condition Application**          **U.S. Department of Labor**
**for H-1B Nonimmigrants**               Employment and Training Administration
                                         U.S. Employment Service

| 1. Full Legal Name of Employer | 5. Employer's Address (No., Street, City, State, and ZIP Code) | OMB Approval No.: 1205-0310 |
|---|---|---|
| C.K. PARTNERS, INC. | 43 East 20th Street | Expiration Date: 11-30-97 |
| 2. Federal Employer I.D. Number | New York, NY  10003 | |
| 13-3768612 | | |
| 3. Employer's Telephone No. | 6. Address Where Documentation Is Kept (If different from item 5) | |
| ( 212 ) 505-3392 | | |
| 4. Employer's FAX No. | Same as in item #5.   NOV 0 6 1997 | |
| ( 212 ) 979-2970 | | |

7. OCCUPATIONAL INFORMATION (Use attachment if additional space is needed)

(a) Three-digit Occupational Group Code (From Appendix 2): __160__   (b) Job Title (Check Box If Part-Time): __Investment Consultant__ ☐

| (c) No. of H-1B nonimmigrants | (d) Rate of Pay | (e) Prevailing Wage Rate and its Source (See Instructions) | (f) Period of Employment From   To | (g) Location(s) Where H-1B Nonimmigrants Will Work (See Instructions) |
|---|---|---|---|---|
| One | $60,000/yr | $55,000/yr ☐SESA ☐Other:_____ | 12/22/97-12/21/2000 | 43 E. 20th Street |
| | $ | $ ☐SESA ☐Other:_____ | _____ _____ | New York, NY 10003 |

8. EMPLOYER LABOR CONDITION STATEMENTS (Employers are required to develop and maintain documentation supporting labor condition statements 8(a) and 8(d). Employers are further required to make available for public examination a copy of the labor condition application and necessary supporting documentation within one (1) working day after the date on which the application is filed with DOL. Check each box to indicate that the employer will comply with each statement.)

8 (a)   H-1B nonimmigrants will be paid at least the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question or the prevailing wage level for the occupation in the area of employment, whichever is higher.

8 (b)   The employment of H-1B nonimmigrants will not adversely affect the working conditions of workers similarly employed in the area of intended employment.

8 (c)   On the date this application is signed and submitted, there is not a strike, lockout or work stoppage in the course of a labor dispute in the occupation in which H-1B nonimmigrants will be employed at the place of employment. If such a strike or lockout occurs after this application is submitted, I will notify ETA within 3 days of the occurrence of such a strike or lockout and the application will not be used in support of petition filings with INS for H-1B nonimmigrants to work in the same occupation at the place of employment until ETA determines the strike or lockout has ceased.

8 (d)   A copy of this application has been, or will be, provided to each H-1B nonimmigrant employed pursuant to this application, and, as of this date, notice of this application has been provided to workers employed in the occupation in which H-1B nonimmigrants will be employed: (check appropriate box)

☐ (i)   Notice of this filing has been provided to the bargaining representative of workers in the occupation in which H-1B nonimmigrants will be employed; or

☒ (ii)   There is no such bargaining representative; therefore, a notice of this filing has been posted and was, or will remain, posted for 10 days in at least two conspicuous locations where H-1B nonimmigrants will be employed.

9. DECLARATION OF EMPLOYER. Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the information provided on this form is true and correct. In addition, I declare that I will comply with the Department of Labor regulations governing this program and, in particular, that I will make this application, supporting documentation, and other records, files and documents available to officials of the Department of Labor, upon such official's request, during any investigation under this application or the Immigration and Nationality Act.

| Peter Karamas, President/Director | [signature] | 10/4/97 |
|---|---|---|
| Name and Title of Hiring or Other Designated Official | Signature | Date |

Complaints alleging misrepresentation of material facts in the labor condition application and/or failure to comply with the terms of the labor condition application may be filed with any office of the Wage and Hour Division of the United States Department of Labor.

AN APPLICATION CERTIFIED BY DOL MUST BE FILED IN SUPPORT OF AN H-1B VISA PETITION WITH THE INS.

**FOR U.S. GOVERNMENT AGENCY USE ONLY:**  By virtue of my signature below, I acknowledge that this application is hereby certified and will be valid from ___12/22/97___ through ___12/21/2000___

| [signature] Theresa DeHaan, Certifying Officer | 336499 | NOV 1 6 1997 |
|---|---|---|
| Signature and Title of Authorized DOL Official | ETA Case No. | Date |

Subsequent DOL Action:   Suspended _____ (date)   Invalidated _____ (date)   Withdrawn _____ (date)

The Department of Labor is not the guarantor of the accuracy, truthfulness or adequacy of a certified labor condition application.

Public reporting burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of U.S. Employment Service, Department of Labor, Room N-4470 and/or the Office of Info. Policy, DOL, Room N-1301, 200 Constitution Avenue, N.W., Washington, DC 20210. (1205-0310).

DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES         ETA 9035 (Rev. Dec. 1994)



November 24, 1997

Immigration & Naturalization Service
Vermont Service Center
75 Lower Welden Street
St. Albans, VT  05479-0001

Re:   I-129 Petition to Extend H-1B Visa
Status for Solomon COHEN

Gentlemen:

We submit this letter in support of the I-129 petition to extend H-1B nonimmigrant classification on behalf of Mr. Solomon Cohen pursuant to Section 101(a)(15)(H)(i)(B) on the Immigration & Nationality Act, as amended. The undersigned is the President/Director of C.K. Partners, Inc. and, as such, is qualified to make statements on the corporate behalf.

## ABOUT THE COMPANY

C.K. Partners, Inc. ("the Company"), located in New York City, engages in financial investment research and consulting. The Company performs investment and financial analysis and provides advice to corporations for investment of their assets. The Company works to create arbitrage strategies, manages mathematical modelling and investment software development, and provides advice on foreign equities, bonds and derivatives. The Company supports its recommendations through quantitative research and analysis of derivatives and securities markets and maintains a watchful eye on the financial markets in the United States, London, Tokyo and other markets throughout the world.

## POSITION OFFERED

Mr. Cohen will continue employment in the position of Investment Consultant with the Company. In this capacity, he will provide consultation to corporate clientele with regard to investment of their assets. He will create profitable arbitrage strategies, research mathematical models and evaluate derivative products. He will analyze economic and statistical data on U.S. and foreign securities. He will compile data and provide reports for

111 East 14th Street, Suite 188 . New York, NY 10003  Tel (212) 505-3392  Fax (212) 979-2970



use by the Company offering performance statistics and market information. He will formulate and devise quantitative research methods, and study information and statistics from all available sources including trade periodicals, business charts, graphs and corporate financial statements. He will also research and analyze information on prices, products and services, analyze statistics and provide consultation in light of market performance. He will provide regular research reports forecasting trends and fluctuations in the U.S. and foreign securities markets.

## SPECIALTY OCCUPATION

The position of Investment Consultant is a "specialty occupation" within the meaning of Section 214 of the Immigration & Nationality Act, as amended, in that the position requires the theoretical and practical application of a body of highly specialized knowledge for providing investment advice and consultation by conducting research of financial markets information. In addition, successful fulfillment of the duties requires the attainment of at least a bachelor's degree or its equivalent.

Furthermore, the duties of the position can be found in the Dictionary of Occupational Titles under the "professional occupations" group code number of "160" as indicated on the Labor Condition Application (see attached).

## BENEFICIARY'S QUALIFICATIONS

Mr. Cohen is highly qualified to continue in the offered position based upon his advanced education in Mathematics from the United Kingdom. On June 24, 1983, he was awarded a Bachelor of Arts Degree in Mathematics from Trinity College in the University of Cambridge. On May 2, 1987, he was awarded a Masters of Arts Degree also from Trinity College in the University of Cambridge.

In addition to his education, he has extensive experience analyzing and evaluating highly specialized investment products and providing consultation in the investment field. From 1986 to 1987, he worked for James Capel & Co. in England as a proprietary trader in the area of risk management. Since 1987, he has successfully worked with arbitrage, securities and derivatives conducting investment consulting with London & Sussex Capital Plc in London and with London & Sussex International Ltd. in Bermuda.

Since the end of December 1994, Mr. Cohen has been employed as an Investment Consultant with C.K. Partners under H-1B status.

111 East 14th Street, Suite 188 . New York, NY 10003  Tel (212) 505-3392  Fax (212) 979-2970



## POSITION REQUIREMENTS

The position of Investment Consultant requires specialized knowledge plus advanced skills and abilities which can only be obtained through an educational program at the university degree level. Therefore, we require that the employee have at least a bachelor's degree or its equivalent in a quantitative field such as mathematics, or a degree in economics or finance with experience in arbitrage and derivatives markets. Such degree provides the advanced level of education necessary to research and evaluate arbitrage deals and innovative financial products such as derivatives interest rate deals based on mathematical models. An advanced education also ensures that the employee can analyze and evaluate such data on both practical and theoretical levels and forecast market trends. Mr. Cohen's Bachelor of Arts degree Mathematics provides the advanced level of education necessary to research and analyze financial and economic data, and to evaluate innovative securities deals and derivative products. Mr. Cohen also has a Master of Arts degree from the University of Cambridge.

The Company and its employees are not required to be registered under federal or state laws regulating investment and investment consulting firms. The Company has fewer than fifteen (15) employees and does not advertise. As such, we are not required to register under the Investment Advisors Act. In addition, the Company does not effect securities transactions or hold securities for clients, and does not offer to buy or sell securities. Further, the Company does not make commissions on the sale of securities. As such, the Company is not required to register as a broker/dealer under the Securities Exchange Act of 1934.

## DOCUMENTS

For your reference, we have enclosed Mr. Cohen's educational documents, education evaluation report and current H-1B approval notice.

Thank you for your consideration.

Very truly yours,

Peter Keramas
President/Director

111 East 14th Street, Suite 188 . New York, NY 10003   Tel (212) 505-3392   Fax (212) 979-2970

**Foundation for International Services, Inc.**

Queen Anne Square, Suite 503
200 West Mercer Street
Seattle, Washington 98119-3958 USA

Telephone: 206-298-0171
Facsimile: 206-298-0173
E-Mail: FIS@BIX.COM

## EVALUATION REPORT

Name:  COHEN, Solomon Ben-Tov

Date:  July 9, 1994

Country:  England

Ref:  12193/WEJ

Purpose of Evaluation:  Immigration

1.  Copy of the Certificate of Academical Record from the University of Cambridge in England certifying that Solomon Ben-Tov Cohen of Trinity College was awarded the Bachelor of Arts Degree on June 24, 1983 and the Master of Arts Degree on May 2, 1987.  The subjects completed for the bachelor's degree were also listed and indicated the major field of study as mathematics.  This document which was dated June 10, 1994 was signed by the Registrary of the University and the Registrary's Clerk and is equivalent to a bachelor's degree in mathematics and a master of arts degree from an accredited college or university in the United States.  A copy of the diploma for the Degree of Master of Arts was also submitted.

2.  In summary, it is the judgment of the Foundation that Solomon Ben-Tov Cohen has the equivalent of a bachelor's degree in mathematics and a master's of arts degree from an accredited college or university in the United States.

3.  The Foundation's evaluations serve as suggested guidelines and are advisory in nature.  Under no circumstance does the Foundation desire to encroach on the individual autonomy, residence requirements or internal policies of educational institutions.  The documents submitted were photocopies, but this evaluator sees no reason to doubt their authenticity.

4.  The materials used in this evaluation were the Commonwealth Universities Yearbook, the World Education Series publication titled United Kingdom and college catalogs.

*James H. Glover*

James H. Glover
Evaluator



# UNIVERSITY OF CAMBRIDGE

I hereby certify that

SOLOMON BEN-TOV COHEN

of               Trinity College

in the University of Cambridge was at a full

Congregation holden in the Senate House on

2  May  1987               admitted to the Degree

of MASTER of ARTS

Witness my hand this  2nd  day of  May

one thousand nine hundred and  eighty-seven

*Registrary of the University*

*Registrary's Clerk*





# AKABAS & COHEN
### ATTORNEYS AT LAW
1500 BROADWAY
21ST FLOOR
NEW YORK, NY 10036
(212) 869-2249
TELECOPIER (212) 354-6468

December 13, 1994

BY HAND

Richard A. Newman, Esq.
Attorney At Law
122 East 42nd Street, Suite #810
New York, NY 10168

Re:   C.K. Partners, Inc.

Dear Mr. Newman:

You have inquired whether C.K. Partners, Inc., a New York corporation (the "Company"), is required to register (i) as an investment adviser with the Securities and Exchange Commission under the Investment Advisers Act of 1940 or with the Attorney General of New York State under applicable New York State law, or (ii) as a broker/dealer under the Securities Exchange Act of 1934 and the rules of the National Association of Securities Dealers, Inc. or with the Department of Law of New York State under applicable New York State law, and whether an employee of the Company conducting the business of the Company as described below would be independently required to effect either of such registrations.

I understand that the facts are as follows:

1.   The Company employs two persons and maintains its principal office in New York City.   The Company's sole business is providing investment advice to one client, Gazelle Fund Managers (Bermuda) Ltd., which principally is the manager and adviser of The Gazelle Global Fund Limited (the "Fund"). The Company does not hold itself out to the public as an investment adviser and does not advertise its services.

2.   The Fund is a foreign corporation with its principal office in the Cayman Islands.   The Fund is not registered as an investment company under the Investment Company Act of 1940 and has no United States citizens, residents or corporations as investors and makes no offerings to any such persons or within the United States or its territories.   The Fund does purchase securities of U.S. corporations and some of its transactions are effected through a registered broker/dealer in New York City, UBS Securities.

AKABAS & COHEN
ATTORNEYS AT LAW
December 13, 1994
Page 2

3.     In rendering its services, the Company does not offer or solicit offers to buy or sell securities, does not effect securities transactions for the account of others, and does not take possession of any securities for clients.  The Company's compensation for its advice is not based in any way on the volume of transactions with regard to which it provides advice or the amount of brokerage commissions generated by such transactions.

Based upon the foregoing facts, it does not appear that the Company is currently required to register as an investment adviser with the Securities and Exchange Commission under the Investment Advisers Act of 1940 or with the Attorney General of New York State under applicable New York State law, or as a broker/dealer under the Securities Exchange Act of 1934 and the rules of the National Association of Securities Dealers, Inc. or with the Department of Law of New York State under applicable New York State law, and it does not appear that an employee of the Company conducting the business of the Company as described herein would be independently required to effect either of such registrations.

If you have any question about this matter, please do not hesitate to call me.

Very truly yours,

Seth A. Akabas

SAA/wpm

# RICHARD A. NEWMAN
ATTORNEY AT LAW

122 East 42nd Street
Suite 810
New York, NY   10168

Tel: (212) 986-0947
(212) 986-7585

Fax: (212) 972-1061

December 15, 1994

Immigration & Naturalization Service
Eastern Servic Center
75 Lower Weldon Street
St. Albans, VT 05479-0001

Re:   I-129 Petition for Change of Status to H-1B Visa
for COHEN, Solomon
EAC-95-023-50155

Gentlemen:

In response to your letter dated November 17, 1994, we herewith submit the following information to establish that the petitioner, C.K. Partners, Inc., and its employees do not require registration under relevant federal and state laws regulating investment and investment consulting firms.

1.     C.K. Partners, Inc. was established for the purpose of providing investment research and consulting to international clients for investments in offshore funds. They presently have one client, the Gazelle Fund Managers (Bermuda) Ltd. for whom they act as advisors to The Gazelle Global Fund Limited. The petitioner does not advertise and will not have 15 or more clients in the future. The Gazelle Global Fund Limited does not have U.S. investors and does not offer its securities to U.S. citizens.

2.     We spoke with Mr. Robert Anthony of the Securities and Exchange Commission (SEC) who advised that pursuant to the relevant laws concerning registration and licensing, the company was not required to register, nor were their employees required to register or be licensed.

The company has fewer than 15 clients and does not advertise, and is therefore, not required to register under the Investment Advisors Act.

The company does not act effect securities transactions or hold securities for clients, and does not offer to buy or sell securities. Further, the company does not make commissions on the sale of securities. Therefore, the company is not required to register as a broker/dealer under the Securities Exchange Act of 1934.

Since the company is not a broker/dealer, the rules of the National Association of Securities Dealers, Inc. (NASD) do not apply and registration or licensing is not required.

The petitioner had contacted Mr. Anthony when they were first establishing their business to obtain his advice and assistance and to ensure that they could conduct their consulting business without the requirement of registration.  We were advised that a written letter from the SEC regarding this matter would require approximately six (6) months.

3.    We also spoke with Mr. Eric Zanier from the New York State Attorney General's Office, Department of Law, Investor Protection and Securities Section.  Mr. Zanier advised that C.K. Partners, Inc. does not require registration in that the firm has fewer than forty (40) clients.  He further advised that the location of the company in New York State has no bearing on whether they require registration.  We herewith provide a copy of Part 11 of the Investment Advisory Services which states the requirements (Sec. 11.1) and exemptions (Sec. 11.2) for registration and notification with New York State.  Please note that the petitioner is exempted from registration and notification pursuant to Sec. 11.2(a)(5).

3.    We then contacted Mr. Seth Akabas, an esteemed and distinguished securities attorney in New York, who is engaged in SEC and investment matters and issues including registration, licensing and bringing companies public.  Mr. Akabas herewith provides an advisory letter in response to our inquiry with him confirming that C.K. Partners, Inc. and the employees of the company engaged in consulting activities would not be required to register under the relevant federal or state laws and regulations.

Thank you for your consideration.

Very truly yours,

Richard A. Newman

RAN/jhp

# PART 11

## INVESTMENT ADVISORY SERVICES

(Statutory authority: General Business Law, art. 23-A, as amd. by L. 1960, ch. 961)

Sec.
11.1   General provisions and definitions
11.2   Exemptions
11.3   Financial statements

Sec.
11.4   Distribution of investment advisor
          statement
11.5   Transition to new regulations

### Historical Note

Part (§ 11.1) repealed, new Part (§§ 11.1-11.5)
filed Nov. 28, 1977 eff. Nov. 28, 1977.

**Section 11.1   General provisions and definitions.**   (a)   *Effective date.* This Part shall become effective November 28, 1977.

(b)   *Short title.* Chapter 961 of the Laws of 1960, when referred to in all rules and regulations promulgated by the Attorney General relating thereto, shall be referred to as the "New York Investment Advisor Act".

(c)   *Administration.* The Securities Bureau of the Department of Law shall be responsible for the administration of the New York Investment Advisor Act. Whenever in this Part there is reference to a submission or filing with the Department of Law, this shall mean the Securities Bureau, 120 Broadway, New York, NY   10271.

(d)   *Forms.* Unless otherwise provided by this Part, each and every person proposing to do business within or from the State of New York as an investment advisor should complete and file with the Department of Law a copy of the investment advisor statement (form NY-ADV-1), together with the supplementary schedules required therein prior to doing business in the State of New York. A copy of such form is shown in Appendix 3 of this Title.

(e)   *Time for filing.* An investment advisor application, notification or interim application should be filed with the Department of Law no less than 10 days prior to the proposed start of business in the State of New York.

(f)   *Where registration required.* All investment advisors with more than 40 clients in the State of New York must make application to register as an investment advisor by completing and filing the investment advisor statement (form NY-ADV-1) with the Department of Law as an application for registration and paying the required fees. Where a person previously filed a notification form because such person had fewer than 41 clients, an application to register as an investment advisor must be filed within 30 days of obtaining more than 40 clients.

(g)   All other persons, unless otherwise exempted, may complete and file the investment advisor statement (form NY-ADV-1) with the Department of Law as a notification form.

–1–

ing part of the calendar year in which it is submitted. A registered investment advisor may terminate its registration by filing form NY-ADV-2.

(i) Renewal of registration. A renewal application is executed on the same form as the original registration application and may be submitted any time after November first of the calendar year in which the current registration is effective. Such application should contain complete answers to all questions and not merely statements that there are no changes since the last registration.

(j) Supplemental statements. If the information contained in the investment advisor statement becomes inaccurate or incomplete in any material respect, a supplemental statement and the appropriate filing fee should be submitted to the Department of Law promptly after the material change takes place. The amendment should be submitted on form NY-ADV-2, together with a filing fee. A copy of such form is shown in Appendix 3 of this Title.

(k) Interim registration. Where registrant has substantially completed an application for registration as an investment advisor or renewal thereof, but does not have all of the answers to the questions or all of the required attachments, an application should be made for an interim registration for a period of 90 days using form NY-ADV-1. Interim registration will last for a period of 90 calendar days. A new completely answered registration statement together with a new filing fee should be submitted before the expiration of the interim statement, or a new 90-day interim filing should be made together with a new check for the interim filing fee.

(l) Filing fees. Filing fee for an original, a renewal, or an interim registration statement is $200. Filing fee for a supplemental statement is $50. Checks should be made payable to the New York State Department of Law and need not be certified.

(m) Filing of investment advisory literature and advertisements. (1) All investment advisors who shall sell to clients or prospective clients investment advisory literature in this State, shall mail or transmit to the Department of Law on the date of the first general distribution to the investing public one copy of such literature.

(2) Every investment advisor who shall in this State, publish, give publication to, or make general distribution of any notice, circular, advertisement, form letter or other advertising communication for the purpose of soliciting investment advisory accounts or clients, whether in writing or by radio or television broadcast, shall file with the Department of Law one copy thereof as promptly as is reasonably possible, but not later than five days after such advertisement, notice, circular, letter or other advertising communication has been made.

(3) Investment supervisory services, and that part of any regular investment advisory business constituting the same, are not required to file with the Department of Law under the foregoing paragraphs personalized letters, presentations or other literature, issued in servicing of investment supervisory accounts, distributed to clients.

(n) Filing letter. When and if the Attorney General accepts the registration of applicant, a letter to that effect will be sent to the applicant together with a receipt for the filing fee.

(o) Definitions. (1) General distribution shall mean a distribution to more than 40 persons in this State at any one time.

(2) Investment advisor shall mean any person who, for compensation, engages in the business of advising members of the public, either directly or through publications or writings within or from the State of New York, as to the value of securities or as to the advisability of investing in, purchasing, or selling or holding securities, or who, for

—2—

reports concerning securities to members of the public within or from the State of New York.

(3)  Investment supervisory service shall mean any person giving continuous advice as to the investment of funds on the basis of individual needs of each client.

(4)  Person shall mean a natural person, corporation, company, partnership, trus or association.

## Historical Note

Sec. repealed, new filed Nov. 28, 1977; amd. filed June 14, 1982 eff. June 14, 1982. Amended (d), (f)-(l).

**11.2  Exemptions.**  (a)  The following investment advisors are exempted from the registration and notification provisions of the Investment Advisor Act and the regula tions issued thereunder:

(1)  a bank or trust company;

(2)  a lawyer, accountant, engineer or teacher whose performance of these service is solely incidental to the practice of this profession;

(3)  a broker or dealer whose performance of these services is solely incidental to the conduct of its business as broker or dealer and who receives no special compensa tion for them;

(4)  an investment advisor whose clients are all investment companies registered under the Investment Company Act of 1940;

(5)  an investment advisor with less than 15 clients in the State of New York; and

(6)  a publisher of any bona fide newspaper or news magazine.

(b)  The following investment advisors are exempted from the registration provision and the advertising and literature filing provisions of the Investment Advisor Act and the regulations issued thereunder, but may file a notification form as provided herein prior to commencing business within or from the State of New York:

(1)  a person who sells investment advisory services to more than 14 but not more than 40 persons in this State;

(2)  a person who gathers raw data from one or more sources and publishes it in chart form without comment as an information source to investors; and

(3)  a person who renders investment advice for compensation solely in the form of seminars attended by more than 40 persons in this State.

(c)  The Attorney General may, on application, grant an exemption from the require ment of filing the investment advisor statement (form NY-ADV-1) on an annual renewal of registration, and in lieu thereof accept filing on a substantially similar form promul gated by the Securities and Exchange Commission.

## Historical Note

Sec. filed Nov. 28, 1977; amd. filed June 14, 1982 eff. June 14, 1982. Amended (b)(1) and (c).

**11.3  Financial statements.**  (a)  Financial statements of an investment advisor shal shall be prepared in accordance with generally accepted accounting principles. Each investment advisor filing an investment advisor statement shall submit a balance sheet a of the close of its last fiscal or calendar year as prepared by the advisor's accountant or by management. Where the financial statements are more than 90 days old, within 90 day after completion of its fiscal or calendar year, the advisor shall amend its registration by filing current financial statements as of the last day of such year on form NY-ADV-2 supplemental statement.

(b)  On the advisor's initial registration, where the financial statements submitted are more than 90 days old, an interim balance sheet no more than 90 days old shall also be submitted.

(c)   The statements shall be prepared in accordance with generally accepted accoun ing principles, including reserves or liability for unfulfilled subscriptions. Statemen which are not prepared by an independent public accountant must contain a certificati as to their accuracy by management.

### Historical Note

Sec. filed Nov. 28, 1977; amd. filed June 14, 1982
eff. June 14, 1982. Amended (a).

**11.4   Distribution of investment advisor statement.**   Each New York client of investment advisor registered in the State of New York shall annually be sent a sta ment indicating that New York State clients may obtain from the investment advis either a copy of the investment advisor statement (form NY-ADV-1) and all exhib thereto as filed with the Department of Law, or a substantially similar form prom gated by the Securities and Exchange Commission, or a publication containing all of t information set forth therein. Such documentation must be furnished to clients w request it in writing within seven days of the receipt of the request. A nominal char may be made for such copy.

### Historical Note

Sec. filed Nov. 28, 1977; amd. filed June 14, 1982
eff. June 14, 1982.

**11.5   Transition to new regulations.**   Investment advisors registered with the I partment of Law for the calendar year 1977 shall file their renewal statements on fo IA-1 on or before April 5, 1978. Investment advisors not registered with the Departm of Law for the calendar year 1977 and filing only a notification may file such notificati on or before April 5, 1978.

### Historical Note

Sec. filed Nov. 28, 1977 eff. Nov. 28, 1977.

—4—

# EXIHIBIT 5

From: Dudley Cottingham <drc@cml.bm>

To: Cohensb1@aol.com

Cc: jayne.mitten@dla.ky; sfeierabend@gloor-sieger.ch

Subject: Re: OGIERS

Date: Mon, 26 Feb 2007 10:23 pm

---

Solomon

I tied unsuccessfully to reach you by phone today because I had the following e mail from Chris Russell:

"The question of the continuation or discharge of the Court Appointed Guardianship came before the Cayman Court this morning. The Court has decided that it has done all that it can to assist Solomon and that the Guardianship should  therefore be discharged. Accordingly I am no longer Solomon's Guardian here in Cayman, and my role is at an end."

"The Court also made other orders concerning the funds held here in Cayman. Diamond Law Associates will no doubt be contacting Solomon about the effects of these orders, but in short, the requirement that the funds  be retained in Cayman will no longer apply. The place where the funds are to be held is a matter for the trustee of the Corinne Diaz Trust to decide in accordance with his duties as trustee. The Court also expressed the view that the financial protection of Solomon and the responsibility for ensuring that trust funds are properly used by Solomon was  a matter for his trustee and not  the Court."

As I understand it this will mean that the Cayman court will no longer be affording you any protection and Dr Wanger,as your trustee,will decide what should be done with the trust funds.

I therefore suggest you instruct Stefan to represent you and ensure your interests are protected.

As you know I have no legal standing in connection with the Leitchenstein trust and I am unable to answer the questions you pose.

Miles Howarth is periodically sending me faxes and registered letters to which I have not responded.Should I send these to Stefan to respond to?

Dudley

---

Cohensb1@aol.com                               To drc@cml.bm

02/26/2007 08:40 PM                            cc jayne.mitten@dla.ky, sfeierabend@gloor-sieger.ch
                                              Subject OGIERS

Dudley

I cannot work with Christopher Russell.

Nothing personal- but I signed a FEE AGREEMENT and he did not represent  me.

Then I was forced to flee from my home because of threat end use of LEGAL  GUARDIANSHIP powers.

# EXIHIBIT 6

JOHN McCAIN
ARIZONA

COMMITTEE ON ARMED SERVICES

COMMITTEE ON COMMERCE,
SCIENCE, AND TRANSPORTATION

COMMITTEE ON INDIAN AFFAIRS

# United States Senate

241 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510-0303
(202) 224-2235

5353 NORTH 16TH STREET
SUITE 105
PHOENIX, AZ 85016
(602) 952-2410

4703 SOUTH LAKESHORE DRIVE
SUITE 1
TEMPE, AZ 85282
(480) 897-6289

407 WEST CONGRESS STREET
SUITE 103
TUCSON, AZ 85701
(520) 670-6334

TELEPHONE FOR HEARING IMPAIRED
(602) 952-0170

July 29, 2008

Mr. Darison Orung
Aurora ICE Processing Center
11901 East 30th Ave
Aurora, CO 80010-1525

Dear Mr. Orung:

Thank you for contacting me regarding your immigration concerns. I would very much like to be of assistance.

However, it is the customary practice of the U.S. Senate to allow a Senator from the constituent's home state to assist him or her. Therefore, I have forwarded your correspondence to Senator Ken Salazar. I am confident that he will provide you with the appropriate assistance.

Again, thank you for contacting me. I hope your situation can be favorably resolved.

Sincerely,

John McCain
United States Senator

JM/xgg

PRINTED ON RECYCLED PAPER

# EXIHIBIT 7

Case: 09-cv-02188-TS-CBS Document 3 Filed 10/06/09 Page 65 of 17
Appellate Case: 10-1223 Document: 21 Date Filed: 08/16/01 Page: 0

_ve de la crème_ Koppel has assembled this time are as varied as modern financial
There are floor traders, "upstairs" traders, fund managers, and even a manager of
raders, herself a onetime options trader. Some trade securities, some trade futures,
e options, some trade them all. These distinctions aside, in telling respects they
gly the same. . . . More than anything else, this is a book about adversity and fail-
ltimately, redemption. . . . This is fascinating reading for anyone who aspires to
write about, or trade in financial markets. In essence, these interviews amount to a
sightful, refreshing, and often irreverent first-person accounts of one of the most
turbulent, and exciting periods in the history of modern finance."

From the Introduction by T. Eric "Rick" Kilcollin, President and CEO
Chicago Mercantile Exchange

for _BULLS, BEARS, AND MILLIONAIRES:_

_rs, and Millionaires_ doesn't just attempt to demystify the world of trading, it
souls of those who reside in it. It's insightful, honest, and entertaining—a fasci-
for both veteran traders and interested observers of the markets."

William J. Brodsky, Chairman and CEO
Chicago Board Options Exchange

if you are eavesdropping on compelling tales, not about trading, but about the
se roots and incredible forces that drive these people so."

Stephen Franklin
_Chicago Tribune_

_, and Millionaires_ brings the trading world to life like never before. Bob
rviews reveal the stories of some of the world's top traders, many of whom over-
erable odds before achieving their success. I highly recommend this book."

John F. (Jack) Sandner, Chairman
Chicago Mercantile Exchange

knowledge of trading and gift for writing allow him to reveal the mind and
ome of the outstanding traders of our generation."

Solomon Cohen, CEO
CK Partners

_and Millionaires_ gives the reader a rare glimpse into the world of the profes-
r. Written by one who has 'been there, done that.' Bob Koppel uncovers the much
actors that ultimately determine success or failure in the high stakes arena of
t reading for anyone who thinks successful speculation results from simply
rts and watching _Wall Street Week . . ._"

Scott A. Foster, President
Dominion Capital Management, Inc.

ISBN 0-7931-2393-3

born
cial Publishing, Inc.®

_Bulls, Bears, and Millionaires_

Koppel





_Bulls, Bea_

_Milliona_

War Stories
of the
Trading Life

$29.95

kes to be a successful trader? What
ig on the rise and fall of the markets?
une and lose it in a single moment?
or successful trading is? *Bulls, Bears,*
ok that will reveal everything about
the highs to the lows, from fantastic
from chaos to discipline and the

censored—like the trading floor—
*ares* tells the stories of some of the
personal interviews with the
these men and women describe
e trading theater, where pulsating
shouts, and pushing, shoving bodies
hergy that fuels the furious buying
market."

der Robert Koppel's skillfully con-
to traders' innermost desires, their
and the qualities they must develop
this most pressurized and competi-
read about astounding wealth,
stresses on the body, and unique
imagined could help one succeed in

emarkable insight into the collec-
this group of millionaires and
eculate not only on markets and
on themselves. Their everyday
se, panic, fear, greed, and resent-
are discipline, focus, and confi-
bf

ago Mercantile Exchange, who
to *win,* as athlete or trader, as his

hose partner once captured a
him to his bed, in a scene straight

alks about what it's like to lose
his opinion, "commodity trading
d scenario."

se skill with sleight of hand serves
r, where "it is not reality that mat-
eality."

akes time out during the trading
as on his Bechstein piano because

*Bulls, Bears, and Millionaires* offers a rar
the minds of the best traders in the world,
field they struggle to dominate. If you are a
will find the interviews intriguing and insig
many parallels to your own life and invalua
strategies for success. If you have never tra
fascinated by the field and its players, this
expose the drama and excitement as never
ing you wondering what kind of trader you



## ABOUT THE AUTHOR

A trader for 15 years on the floor of the Chica
Mercantile Exchange, Robert Koppel is a rec
authority on the psychology of trading. His pr
books include *The Innergame of Trading* (Ir
*The Outer Game of Trading* (Irwin, 1994), an
*Intuitive Trader* (Wiley, 1996). He holds adva
degrees in philosophy and group behavior fro
Columbia University.

*Praise for* Bulls, Bears, and Millionaires

*ulls, Bears, and Millionaires* is a unique look at the trading
er. The 'war stories' presented range from humorous to tragic
ightful and inspirational."

—Marshall Stein, Director
Chicago Mercantile Exchange

hat's the key to making it as a trader? Ultimately, the trader
efuse to be anything else but a trader. That's the lesson to be
ed from Koppel's *Bulls, Bears, and Millionaires*. Real tales
real traders that walk you through their personal stories, liv-
rough the low points to find success on the other side."

—Thomas Hartle, Editor
Technical Analysis of Stocks and Commodities

n interviewer who understands the meaning of an
de . . . Koppel, who is also a knowledgeable trader, is very
in *Bulls, Bears, and Millionaires* at extracting the best ideas
ther successful traders! The end result . . . How can the
and interviewee best articulate the intangible attitude and
ed direction of a good trader's methods of winning at trad-
New traders by inference will be able to understand them-
s better and define accurately what they wish their own
g framework to be . . . particularly their mental attitude."

—Tim Slater, Managing Director
Dow Jones Telerate, Inc.

he fascinating stories in *Bulls, Bears, and Millionaires* reveal
t takes to succeed at business and in life. The golden thread
the core of these diverse and distinctive traders is incredible
tence; willingness to learn from a harsh taskmaster--the mar-
self; the ability to submerge their egos; learning from mis-
accepting responsibilities for their decisions; and being
lined about keeping their perspective in the midst of two
powerful human traits--greed and fear. If you are serious
t investing, I highly recommend this book for insight into the
acter, resilience and risk tolerance required to keep your head
e all others around you are losing theirs."

—Linda Chandler, Former Senior Vice President,
Sutro & Co., and Author of *Winning Strategies
for Capital Formation*

# CONTENTS

*Foreword* viii
*Preface* x
*Acknowledgments* xi
*Introduction* xii

1. A Personal Tale — 1
2. Chairman Jack *Jack Sandner* — 8
3. Rocket Man *Mike Dever* — 16
4. Solomon's Mind *Solomon Cohen* — 33
5. Fly on a Rhino's Back *Timothy McAuliffe* — 47
6. Trading Suits Him *Larry Rosenberg* — 56
7. Tennis Anyone? *William H. "Toby" Crabel* — 68
8. Hook, Line, and Sinker *Dennis Weinmann* — 75
9. Seeing Is Believing *David M. Gordon* — 87
10. A View from the Bridge *Marshall Stein* — 96
11. Trades to the Beat of Her Own Drummond *Robin Mesch* — 106
12. Is There an Austrian Magician in the House? *Scott A. Foster* — 116
13. Learn to Learn *A. Thomas Shanks* — 129
14. Lady Luck *Arlene Busch* — 139
15. The Comeback Kid *Jerry Letterman* — 149
16. West of Eden *David Lansburgh* — 157
17. Tom's Edge *Tom Grossman* — 167
18. Hard Times and Losin' It *Bryan Gindoff* — 179
19. Momma Said There'd Be Days Like This *Angelo Reynolds* — 188
20. Futures and Options — 198

*Index* 204

ase the ice ball theory. The ice ball theory is that in five bil-years, the sun will have burned out and the Earth will be one ice ball, and who's going to give a damn about my pitching 1?" When you get down to it you might as well go out, do what you want to do, and make damn sure it is the best you possi-can do. Don't get overblown by the significance of it, because niversal terms it is trivial. And in the end, that will be success.

# Solomon's Mind

## Solomon Cohen

*Mr. Cohen runs CK Partners, Inc., in New York City, investment advisers to the Gazelle Global Fund Limited. The Gazelle Fund was the top-performing equities fund in 1995. Born in London, he studied mathematics at Cambridge and music at the Guildhall School of Music. He worked at James Capel & Co. in derivative sales and proprietary trading before leaving to start his own firm.*

**Q:** What first attracted you to trading?

**Solomon:** I started trading at the age of 16. But I think to really answer that question, you have to understand the character of the city of London—by which I mean the square mile—where the Stock Exchange, the Bank of England, Lloyds, and most of the other financial institutions are located, in a labyrinth of medieval lanes with names like Bread Street and Pudding Lane, a place with its own police force and governing body.

The city brings together a very odd mix of people: East End boys—I don't mean that in any derogatory sense, just in a descriptive way—people who have come straight from the fruit and veg-etable market to deal in stocks and bonds; and very educated upper-class people who have come from schools like Eton; and a third group, Jews. The city is one of the few places where in the past few hundred years Jews came and were able to set up posi-tions to become a very successful and respected group with quite a strong identity. And you had institutions in the city where there

were some very clear divisions—a bank like Rothschilds, which was a very Jewish institution, and a bank like Barings, which was very English and blue-blooded; a firm like Smith Brothers and a firm like Cazenove. These different people had to learn how to respect each other and do business together. And the city was a place full of mystery and intrigue and tradition and tribalism; full of danger for the unwary but also offering great rewards for the astute and the daring. And all of this totally fascinated me, and I very much wanted to be a part of this world.

*Q:* What was the part that you found most fascinating? Was it the dealing aspect of it? Was it making money? Was it the social relationships? Or was it just being part of this great "theater"?

*Solomon:* Well, part of it was discovering at a young age the idea that things could be traded, transactions could be carried out verbally in things that were totally abstract, and that these dealings could yield forth so much money, money on a scale which is nothing like everyday life. That's something that fascinated me. My interest in mathematics is something which developed after that.

*Q:* Are you still attracted to trading for the same reasons?

*Solomon:* The city of London has changed a lot in the last ten years, but it still retains an element of the type of place that it was, but you know, there isn't a trading floor anymore where people congregate to transact business. I would say now that the ability to trade land, buildings, factories, whole workforces anywhere in the world with a phone call or with a touch of a computer button is the ultimate in mathematical abstraction—and to have this at your fingertips on an electronic screen!

*Q:* What is it about that that you find so fascinating?

*Solomon:* Well, obviously, there's something immensely powerful about it. I mean, if you had to build a factory, it would take years or a long time to create a company, and now, instantaneously and in an abstract way, you can own it and there's almost no physical side to all of this. It's almost like a virtual world in that everything you do exists really on computer or on paper. It's almost like moving mountains!

*Q:* Abstract mountains.

*Solomon:* Yes. Move incredible things really with the strength of a phone call.

*Q:* Do you think there was anything in your personal background that prepared you for trading? You know, you touched on the math—we haven't yet spoken about the music—and you have mentioned your fascination with the dealing part of it. So what specifically would you say is unique about your experience that prepared you to trade?

*Solomon:* I seem to have been born with some sort of instinct.

*Q:* An intuition?

*Solomon:* Yes. I remember visiting the Eiffel Tower with my parents when I was seven years old. When I came down, realizing that the ticket my parents purchased hadn't been collected, I went up to somebody and offered them the ticket. In actuality, I just meant to give it to them, but they gave me money for it!

*Q:* Well, that wasn't so much a question of converting the abstract. It was more converting the concrete into cash!

*Solomon:* I can't really tell you where that came from. Perhaps my ancestors were the money changers in the temple in Jerusalem if you go back a few thousand years. You know, that's where the name "Cohen" comes from, I mean, officiating in the temple; I don't know about money changing!

*Q:* Of course, the Hebrew translation for Cohen is priest. The Cohens were the people who officiated at the holy temple. Are you saying that this part of your background prepared you for trading? I mean, do you feel like there's something religious or culturally influenced about what you do?

*Solomon:* Well, the money changing was a joke.

*Q:* Right, but in my experience a lot of truth gets expressed in joke form.

*Solomon:* Yes. *Priest* is actually not the most accurate translation of Cohen. They actually would have served about two days out of the year, but the rest of the time they were more in the role of sage, judge, or doctor. Their obligation was pretty much to serve the community.

*Q:* Yes, I know my ancestors served your ancestors! My ancestors were Levites, so way back when, we ministered to your needs!

*Solomon:* They're the ones that used to sing as well.

*Q:* That's right. There's a whole biblical book written about is—Leviticus.

*Solomon:* Well, you're also quite right. I think the fact that ews were very respected in the city, hired for their skills, their financial skills, is something that stood out for me.

*Q:* So you saw this in a personal sense as an opportunity perhaps for individual recognition or achievement?

*Solomon:* Yes, I would say that is definitely true.

*Q:* I must say, Solomon, I've heard that same sentiment expressed on a number of occasions. There is a trader whom I interviewed for *The Innergame of Trading,* Jeffrey Silverman; you may know of him—who basically said something very similar to what you've expressed. He grew up in Omaha, Nebraska, in the 1950s, and said being Jewish in Nebraska then did not present too many opportunities. What really opened his eyes for the first time was when he was in grade school, and he read the biography of Bernard Baruch. He said his life changed from that day forward. I have heard similar reports before. I guess all I was trying to establish was that this connection was significant for you and who you are today.

*Solomon:* Yes, I think at that age and at that time, that's definitely true.

*Q:* Is it still true?

*Solomon:* Not really. London has opened up so much, and these divisions really changed quite a lot. In fact, an important aspect of my trading now is the global perspective. So the divisions I spoke about earlier are starting to become blurred and to a large extent don't really exist anymore. They used to be very clear-cut, and that was something that was very striking. As I said before, there were firms that employed no Jews and there were firms that employed mainly Jews.

*Q:* So is it fair to say in the same sense that Jeff Silverman did that you viewed trading as an avenue that would allow you to cross borders and to go beyond the stereotypical divisions and the arbitrary categories and conventions of the time? I mean, as you were thinking about trading, was that one of the things that it held out for you, the ability to transcend your normal possibilities?

*Solomon:* I think that came later. It wasn't there initially, because the whole idea of financial markets was still viewed with a certain amount of disdain, I would say. I mean, in England, for a long time, money has been seen as something which is at worst dirty, but definitely not polite.

*Q:* Well, in my experience, its cleanliness is determined by who possesses it!

*Solomon:* Well, you know, there was an attitude that money was to be inherited rather than made.

*Q:* Well of course! One of the worst things you could do from that perspective was actually to earn your own money! It's so much more refined to actually get it from someone else.

Don't get me wrong. I wouldn't have minded inheritance, it just didn't happen for me that way!

*Solomon:* It is amusing. I mean, the thing that I notice as I travel around the world, and go onto the floor of different markets around the world, is how each society has its own code and set of values and its own way of thinking and doing business. Sometimes it's a strength and sometimes it's a weakness. But now we have traders from one country operating in another, and that's really started to change the entire structure and outlook of indigenous markets.

*Q:* Let's talk about the Gazelle Global Fund for a second. In 1995 it was up 297 percent and had the distinction of being the top-performing hedge fund in the world. Could you tell me a little bit about the history and thinking behind the fund?

*Solomon:* Well, in the mid-80s, I worked for James Capel, a large securities firm in London, working with big institutions and helping them to use derivatives in their trading. As I walked around the trading floor I suddenly discovered all these amazing opportunities to make money because I understood what people in different areas of the firm were doing. And so I was able to persuade my boss that I should move to proprietary trading, where I could carry out transactions on behalf of the firm for profit. And after awhile in developing my own strategies and implementing them successfully, I decided to leave and set up my own company. I just thought setting up a hedge fund was the next logical step. In fact, I would say that much of the hedge fund industry,

certainly the people coming into that business over the last year or two, are skilled people who have been carrying out proprietary trades for big investment houses, and now that the technology and capital is more easily available, have been able to set up their own firms.

*Q:* How did you choose the name *Gazelle*?

*Solomon:* I thought long and hard about a name for the firm. I mean, a name is important.

*Q:* It doesn't sound very Jewish!

*Solomon:* Well, you know, there is something in Jewish tradition that the choice of name is supposed to influence outcomes.

*Q:* I know, but Gazelle sounds too much like a sacrificial offering! I don't know how that relates specifically to a fund.

*Solomon:* Well, gazelles are elegant...

*Q:* Fast-moving . . .

*Solomon:* . . . nimble animals that can leap forward and upward quickly.

*Q:* Which you've certainly been doing.

*Solomon:* Yeah, I'm happy to say that that's true.

*Q:* You mentioned something about your background earlier, the incident where you sold the unused Eiffel Tower ticket; I think it kind of begs a question. Do you think your great trading is more of a natural endowment or a set of learned skills?

*Solomon:* Ultimately, I think it's both, in the same way that you have to have talent to be a musician, but you also need training from the hands of the master.

*Q:* Talk a little bit about your music. You have a master's degree in mathematics from Cambridge, and you also you won a scholarship to the Guildhall School of Music. I've heard you take time out during the trading day to play Beethoven sonatas on your Bechstein piano. Is there any truth to that?

*Solomon:* Yes, that's absolutely true, and it's so helpful to break up the routine and stress of the day.

*Q:* It changes your state of mind and allows you to just get focused back on the trading?

*Solomon:* Yes, absolutely, there's something very spiritual and head-clearing about it.

*Q:* Let's return to the question of whether you feel trading is more of a learned skill or a natural endowment. You said that you felt in your case it was a combination of the two, so the skill set is as important as the intuition. Is that it?

*Solomon:* Yes, I think for me that's true. I mean, there are traders that I know who are completely intuitive, and others who are much more scientific.

*Q:* And they are equally successful?

*Solomon:* I think the intuitive traders are probably more volatile, their performance is more volatile. The scientific people tend to be more narrowly focused. Then all of a sudden, they'll be taken completely by surprise by something that doesn't conform to their model. I can give you an example of this.

I believe it was 1988, people were coming into the options market in London and paying very extravagant premiums for call options on a large mining company. There was one trader who is extremely well respected in the market, who is regarded as a very clever man, a real expert in a mathematical sense on options. This market maker sold a great deal of these options. According to his model, he sold them at inflated prices. On the other hand, there was another well-known character in the London market—an intuitive trader, it's better not to mention names—who the day before sold these same options. All this happened the day before Yom Kippur, and he decided—he was Jewish—that something didn't look right and he covered the entire position. He hedged his short calls one for one with stock.

On Yom Kippur, a takeover bid came out for that company. And the scientific trader, staying true to his model, lost quite a bit of money. He just lacked the flexibility or intuition to move.

*Q:* Solomon, over your trading career, are there any memorable characters that stand out?

*Solomon:* David Heron, my old boss at James Capel, was someone who I respected and admired a great deal.

*Q:* What is it about him that stood out?

*Solomon:* I had never seen someone quite like him before. He was immensely successful, and I had the opportunity to observe him at close hand for some time. I was struck by the fact that whatever he was doing, there was always this calm professionalism

about the way that he went about his business—always calm, everything without emotion. Never trading and then keeping his fingers crossed hoping things would work out, but rather having considered all the possibilities, so that when something went wrong, it was an outcome that had already been considered. There was something rather panther-like about the way in which he operated, very sleek and sure-footed.

*Q:* Panther-like rather than gazelle-like?

*Solomon:* Yes, I would say that that's true.

*Q:* In what respect? I think of both gazelles and panthers as being sure-footed, sleek, and elegant and moving quickly and upwardly, but there certainly is something more predatory about a panther. Is that what you were trying to imply?

*Solomon:* I think there's an element of that. I'm not sure I want to say too much more on that subject. That's the aspect of markets I find least attractive!

*Q:* The predatory aspects.

*Solomon:* Yes.

*Q:* When you were at James Capel, you witnessed the 1987 stock market crash.

*Solomon:* Actually, I had left a month before.

*Q:* What was your response to the crash?

*Solomon:* I wasn't completely taken by surprise. We had had a very sharp fall in the London market at the end of July—I think it was associated with bad trade figures. The market then rebounded, and I decided to sell out. If you were paying close attention, there were a lot of indications that the astronomical rise in the market was not going to last forever. Having said that, I must add that when the crash actually came, it was quite a shocking experience. To witness this meltdown environment was very scary! It was just the idea that the unthinkable can actually happen.

*Q:* And that there was opportunity in that situation?

*Solomon:* Well, yes, of course. There was opportunity in that situation, but I think ever since I've been mindful that there's always a possibility of something of that kind occurring, and therefore when I stretch my dealings, rather than making a great deal of money nine times out of ten and then going bankrupt on the tenth time, it's better to make a little bit less each time but to take your place at the table.

*Q:* As they say on the trading floors of Chicago, just make sure you have enough to be able to walk through that turnstile tomorrow. That's the idea, isn't it?

*Solomon:* Yes, because once you're out, you're out for good.

*Q:* What do you think is your greatest strength as a trader?

*Solomon:* It's the combination of all the skills that I have. There's an intuitive feel for the market and the ability to think very mathematically and precisely, understanding the psychology of markets and of the individuals who are behind the markets. Recognizing that information is not evenly distributed across the markets, and knowing with analyzed information I can usually come up with the right conclusion.

*Q:* What do you think is your greatest weakness as a trader?

*Solomon:* That is a very powerful question. My greatest weakness is possessing unrelenting high standards.

*Q:* That's a good weakness to have!

*Solomon:* In some ways.

*Q:* What untoward consequences do you identify?

*Solomon:* Well, I think it means overachieving in some areas at times to the expense of overall happiness.

*Q:* Well, you know, your investors are happy that you have this kind of weakness, because if you didn't, maybe they would only be looking at 97 percent or 197 percent return instead of the 297 percent return you delivered. So I don't think they're complaining about your high standards, do you?

*Solomon:* Probably not. But the people who work for me or do business with me are!

*Q:* Let's talk a little about that, Solomon. What effect does your trading have on your social relationships? We haven't discussed if you're married or not.

*Solomon:* Only to Gazelle.

*Q:* What's that?

*Solomon:* Only to the Gazelle.

*Q:* Oh, to the Gazelle! It's sounding more and more Jewish as you mention its name!

*Solomon:* Let's hope no one accuses me of bestiality. I should make it clear we're talking about a virtual gazelle!

The way I tend to work is like a musician who will prepare intensely for a concert, give a performance, and then take time off. I tend to have intense bursts of concentration where I give everything. I can only sustain that for a certain period of time, and that's why I run an event-driven fund as opposed to something which requires a lower level of attention or dedication consistently day-in, day-out. The consequence of that is, there are many times when I have to be up at 2:00 or 3:00 in the morning. There have been periods where I actually traded London, New York, and Australia during the same day. That is a little bit tough trading three time zones. But then at the end of that trade, once I've brought the deal to a successful conclusion and we've earned a good rate of return, I can then give myself the luxury of a break where I will have quite a bit of time to do whatever I want.

I think that the biggest complaint of a lot of successful people is that no matter how much money they make or how good they are, they're still going to be limited to perhaps four weeks of vacation a year and still have to put in incredibly long days. And the only time people ever really get to do something wonderful—go to South America or go on a safari or something—is when they change jobs or get a few months off in between.

*Q:* What is the most wonderful thing you've ever done?

*Solomon:* I think the most wonderful thing I've ever done was spend six months traveling around the world, and as I went around to all the different places, New York, Chicago, San Francisco, Los Angeles, Hong Kong, Tokyo, Sydney, and so on, I always followed the same formula: I met people that I knew in the markets and I went onto the trading floors of the markets in those places. I also looked up distant relatives—amazingly I've got them in a multitude of places—as well as meeting people and seeing friends. That experience changed me. Just as a result of that experience I left London and decided to live in New York.

*Q:* How did you change?

*Solomon:* Well, if you spend most of your life in the place where you were born, that's pretty much all you know. As you

travel, you start to put your own culture in some kind of perspective.

*Q:* You had mentioned earlier that trading gave you the ability to cross intellectual borders and categories, and now you are saying as a result of your travels, of crossing physical borders, you developed a deeper sense of who you are and how to operate. Is that correct?

*Solomon:* It was crossing borders that gave me new opportunities to trade. That trip really transformed the way I thought of doing business, by making me aware of opportunities in markets all over the world—seeing similarities and noticing differences; efficiencies and inefficiencies; strengths and weaknesses on a psychological level, on a business level. This global perspective, it's just been immensely valuable for me and has given me a sense of what I can accomplish.

*Q:* What has been the funniest moment for you as a trader?

*Solomon:* I think one of the funniest things that occurred to me was at James Capel. There was a bank of 30 dealers who would transact whatever you wanted to do with other participants in the market. I approached the desk with an order, and before I'd even opened my mouth, the head trader said, "And I'll have a fiver PA," which means, "Whatever Cohen's doing I want to buy 5,000 for my own account not even knowing what the stock is." That really made me laugh!

*Q:* It must have also made you feel pretty damn proud!

*Solomon:* The immediate question that popped into my mind was, what if I was about to sell short?

*Q:* Well, I have a feeling he was going to go short then, don't you?

*Solomon:* A lot of them didn't really understand what I was doing. They admired me, but I think some people were also afraid of me.

*Q:* What were they afraid of?

*Solomon:* I think people are afraid of things that they don't understand or maybe they felt somehow they would be taken advantage of in some way.

There was this dealer—I had spotted a great opportunity in his area which was outside of the product that I traded, and I was

trying to explain it to him. And, you know, he kept questioning me and then became quite angry. I just left him. About three weeks later, he came up to me, and he said, "Solomon, do you remember that trade you wanted me to do? Now I understand it! That would have been a marvelous trade." It was something which was mathematical and guaranteed to work out. You see, he was afraid or resistant to consider the logic, reasoning. and structure behind what I was trying to do.

*Q:* Do you think traders process information differently from most people?

*Solomon:* Yes, I think we think very quickly and very effectively. We're used to making decisions on the spot because we have to. We have to absorb and process information very rapidly. If we can't get a precise answer to something, we immediately establish a range of possibilities. And I get frustrated if a friend's coming over and I ask, "What time are you coming?" and they say, "I don't know" because I'm used to crisp, efficient answers.

*Q:* Personally, I hate that also. I mean, I was raised in a family where you could answer "yes" or "no," but you could never answer "I don't know." That was just an unacceptable answer, and it is frustrating when you get it sometimes! A trader needs precision in his responses.

*Q:* What has trading taught you about yourself?

*Solomon:* Trading has taught me different things about myself at different times, according to how the situation has gone. It has taught me that I can be very disciplined, that I don't have to have external constraints imposed on me. It's taught me that I'm very self-reliant. Often I can put together the jigsaw puzzle, even though some pieces are missing and will have an insight into a trade which other traders don't perceive. Sometimes I realize I've been arrogant in the way I've done something.

It's interesting how trading teaches us something about ourselves that we don't necessarily want to know but the information is always very instructive.

I am always thinking about my trading. I look back and analyze how things have gone, why I took certain decisions, what I did with information that was available to me, how I have interacted

with other people in the marketplace, and it's always a learning experience.

*Q:* What do you think distinguishes you from everyone else in the market?

*Solomon:* I am the way that I am. It's something which is completely natural and instinctive. It's not something that I really think about. When I get into a discussion with a broker or a dealer about the way they want to handle a deal, I can see some clear differences between us.

If I had to generalize it, I would say that I think diagrammatically, in terms of abstract structure. Others tend to be more focused on detail, on smaller perspectives. Sometimes I feel like I'm looking at the whole room, while others are squinting through a keyhole.

*Q:* That's a very interesting way to put it. And the music and the mathematics? Do these give you a greater ability to see the entire room and not get lost squinting in the keyhole?

*Solomon:* Absolutely, because both mathematics and music are about structure and about the ability to see structures. If you think about algebra and how, you know, we arrive at general solutions to problems, it can be widely applied to a whole range of things. So we're looking for patterns and symmetry, and from there you can work down and apply concepts to individual situations.

*Q:* And the music?

*Solomon:* The music is also about structure.

*Q:* It's about structure, like mathematics, but in this case of music. It's about transcending structure, isn't it?

*Solomon:* In what way?

*Q:* Well, I mean music obviously has a structural base, as does mathematics. But to really understand a musical composition in some sense is to go beyond the structure of the piece to its transcendent essence.

*Solomon:* Well, often people don't see the structure in music. I mean just recently my father was saying, listening to something that Beethoven composed, "God, this is so wonderful. I don't know how somebody could have created this!" In fact, the music represents a combination of creative force, you know, something raw and original; however, there's a pattern which is followed.

And there is a structure and a method to develop the idea musically.

Without this structure, the music would appear without form. It would not be a sonata or a symphony; it would merely be chaotic!

*Q:* But of course it is this very structure, the key if you will, which allows you to experience the whole room that transcends the structure itself.

*Solomon:* Yes. An important aspect of music that we haven't touched on is its ability to stir up powerful emotions, which is really the opposite of good trading. You don't want to let your emotions have an impact on your decisions.

*Q:* So does the actual playing of Beethoven sonatas during the trading day allow you to gratify those emotional needs, so you can approach your trading paradoxically with greater detachment and discipline?

*Solomon:* Definitely. I think I would go crazy if my entire life was spent in front of a trading screen!

*Q:* It's nice to sit down in front of a Bechstein also, isn't it?

*Solomon:* Yeah. It has always been a dream of mine to have one.

*Q:* Mine, too.

*Solomon:* Beautiful instruments. But, you know they're not so easy to come by in America.

*Q:* Neither is a return of 297 percent.

---

# Fly on a Rhino's Back

## Timothy McAuliffe

*Mr. McAuliffe is a member of the International Monetary Market. He has been a member and floor trader at the Chicago Mercantile Exchange since 1982.*

*Q:* What first attracted you to trading?

*Tim:* I used to gamble with other traders at racquetball. They were members of the Chicago Board of Trade, Mercantile Exchange, and Board Options Exchange.

*Q:* So your initial experience with traders was on the racquetball court?

*Tim:* I belonged to a health club when I first started to play racquetball. It was just for the fun of the game, and then one day an old-time trader, Sammy Carl, took me aside and said, "Timmy boy, you're too old to lace up your sneakers and play for nothing." So I started playing for $5 a game, and it was always double or nothing. Eventually the stakes got up to $7,000 a game with large side bets!

*Q:* This was against traders?

*Tim:* Traders and brokers, and given the size of the bets, I was playing with some very successful market makers. At some point, one of the traders suggested that I should try the markets.

*From Solomon Ben- Tov COHEN MA (Cantab) Pro- SE*

COPY

**ID L2580 ALIEN # 77 309 675
AURORA/ I.C.E.PROCESSING CENTER
11901 E30TH AVE
AURORA
CO 80010- 1525**

LEGAL MAIL

Zahava Goldman, <u>Attn: Capitol Police Special Agent John Doe</u>
Office of Representative Henry Waxman
225 Rayburn Office Building,
Constitution Ave SE,
Washington
District of Columbia

September 21, 2008

WITHOUT PREJUDICE

Dear Ms Goldman

Re: Wrongful Arrest in your office

Please give the attached exhibits/ documents to the Capitol Police Special Agent
working in your office, who wrongfully arrested me before Thanksgiving, November
2003.

Thank you for your help.

Sincerely


**Solomon B Cohen**

## PROOF OF SERVICE

I hereby certify that a correct copy of the foregoing exhibits/ documents were sent by US Postal Service First Class mail to:-

*US*   Capitol Police Special Agent John Doe

Office of Representative Henry Waxman

2204 Rayburn House Office Building, ,

Washington, DC 20515


and

Zahava Goldman, Attn: *US* Capitol Police Special Agent John Doe

Office of Representative Henry Waxman

2204 Rayburn House Office Building, ,

Washington, DC 20515


on ___09/23___ , 20_08_ .

Signed: _____

Dated: _09/23/2008_

Solomon Ben- Tov COHEN MA(*Cantab*) Pro- SE

Appellate Case: 10-1283     Document: 01 # 77 3091675   Date Filed: 08/16/2010     Page: 83

SOLOMON B COHEN MA (*Cantab*) Pro-SE

AURORA/ I.C.E.PROCESSING CENTER

11901 E30TH AVE

AURORA

CO 80010- 1525

Tel: (303) 361- 6612 West Core

LEGAL MAIL

Mr Gregory C Langham
Clerk of the Court
UNITED STATES DISTRICT COURT
901 19th St Room A105
Denver
CO 80294- 3589.

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 3 1 2008

GREGORY C. LANGHAM
CLERK

October 30th, 2008

Re: Civil Action No 08-cv-02188-BnB

Dear Mr Langham

Please find enclosed two copies of my Amended Complaint in compliance with Honorable Magistrate Judge Boland's Order.

I have not included the Exhibits as I relieve the Court has these, but can do so if required.

Thanking you for your attention,

Sincerely

**Solomon B Cohen**

Enc

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. '08 – cv – 02188 – BnB

(To be supplied by the court)

SOLOMON BEN-TOV COHEN M4(Cohen) , Plaintiff,

Pro -SE

V.

SPECIAL AGENT JOHN DOE ,

UNITED STATES CAPITOL POLICE

_____,

_____,

_____,

_____,

_____,

_____ , Defendant(s).

(List each named defendant on a separate line.)

_____

## PRISONER COMPLAINT

_____

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 3 1 2008

GREGORY C. LANGHAM
CLERK

(Rev. 1/30/07)

## A. PARTIES

1. Solomon Ben-Tov COHEN MA (Cantab) Pro-SE, Inmate ID#L2580, Alien#
(Plaintiff's name, prisoner identification number, and complete mailing address)
77309675. Aurora/ICE Processing Center.11901E30th ave, Aurora,CO,80010.


2. United States Capitol Police Sp. Agent John DOE. Office of Represen-
tative Henry Waxman. 2204 Rayburn House  Office Building, Washington
(Name, title, and address of first defendant)
DC  20515. Tel (202) 225 3976, Fax (202) 225 4099

At the time the claim(s) alleged in this complaint arose, was this defendant acting under
color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

UNDER COLOR OF FEDERAL AND DISTRICT OF COLUMBIA LAW.


3. _____
(Name, title, and address of second defendant)

At the time the claim(s) alleged in this complaint arose, was this defendant acting under
color of state law? ___ Yes ___ No (CHECK ONE).  Briefly explain your answer:


4. _____
(Name, title, and address of third defendant)

At the time the claim(s) alleged in this complaint arose, was this defendant acting under
color of state law? ___ Yes ___ No (CHECK ONE).  Briefly explain your answer:


(If you are suing more than three defendants, use extra paper to provide the information
requested above for each additional defendant. The information about additional defendants
should be labeled "A. PARTIES.")

(Rev. 1/30/07)                                    2

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claim(s) pursuant to: (check one if applicable)

   _____   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

   ✓   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any) 28 U.S.C. § 1343

   i. This action is brought under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of The US Constitution and Title 42U. S. C. section 1983

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case. If more space is needed to describe the nature of the case, use extra paper to complete this section. The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

ii.   Plaintiff, Solomon Ben- Tov COHEN MA (*Cantab*) Pro- SE, is a resident of and tax- payer in the United States since 1990, owns land in California and, was a resident of the City of West Hollywood, State of California at all material times.

iii.   Defendant, Special Agent John Doe were at all material times and is a Special Agent of the United States Capitol Police assigned to in the office of Congressman Henry Waxman at the Rayburn Office Building, Washington District of Columbia. The Defendant is sued individually and in his official capacity.

iv.   Plaintiff traveled from West Hollywood, California to Washington District of Columbia, to complain to Representative Henry Waxman that Deputy Sheriff Gosset and members of the Los Angeles Fire Department paramedics had assaulted Plaintiff in his bedroom at 908 N Harper, West Hollywood, CA, carried out an illegal eviction and to ask for a Letter of Support in connection with an application for an Extra-ordinary Ability Greencard.

v.   Defendant, United States Capitol Police Special Agent John Doe who refused to give his name, illegally wrongfully and maliciously arrested Plaintiff in the office of Congressman Henry Waxman at the Rayburn Office Building, Washington, District of Columbia on November 25th 2003 on a fabricated and false charge of " *making threats against a Congressman*".      -see additional sheets.

(Rev. 1/30/07)                    3

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1.   Claim One: _____

The actions of the Defendant, acting under color of Federal and District of Columbia law, constitute a violation of Plaintiff's right to be secure in his person against unreasonable seizure as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States, an invasion of Plaintiff's right to be free from deprivation of his liberty without due process of law as guaranteed by the Fifth, Sixth and fourteenth Amendments to the Constitution of the United States, and Plaintiff's right under the first amendment to the Constitution and laws of the United States of right to freedom of expression and to petition the government for a redress of grievance.

Supporting Facts:

This plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through v) inclusive of this complaint with the same force and effect as if fully set forth herein.

vi.   On November 25th 2003, in the office of Representative Henry Waxman, Rayburn Office Building, Washington District of Columbia, the Defendant, United States Capitol Police Special Agent John Doe who refused to give his name, illegally wrongfully and maliciously arrested Plaintiff in the office of Congressman Henry on a fabricated and false charge of " *making threats against the Congressman*" without warrant, without probable case and without cause whatsoever.

-see   next page -

(Rev. 1/30/07)                              4

## D. CAUSE OF ACTION      sheet 2

Claim One: (*contd*)

vii.   At no time did Plaintiff make any manner of threat against anyone or make demands or refuse to leave.

viii.   Defendant then took Plaintiff in handcuffs out of the Congressman's office and detained him in his office, although there were no grounds for his arrest.

ix.   No criminal charges were ever filed against the Plaintiff with or in support of the seizure and detention to which Plaintiff was subjected as set forth hereinabove.

x.   Plaintiff was never taken before a judge, never allowed to post bail to effect his release from confinement, and was in incarcerated for four months.

xi.   Plaintiff was incarcerated as follows:

| | |
|---|---|
| November- December 24th 2003 | Rappahannock Regional Jail, VA |
| December 24th 2003- January 2004 | Pamunkey Regional Jail, VA |
| January – February 2004 | Hampton Roads Regional Jail, VA |
| February- March 30th 2004 | Piedmont Regional Jail, VA |

xii.   As a proximate result of Defendant's unlawful arrest and imprisonment, plaintiff was greatly humiliated, injured in his reputation, became sick, and has suffered great pain and mental anguish, all to plaintiff's damage.

xiii.   Plaintiff lost 30 lbs of lean muscle mass in one month, developed blood in his stool, and more. Medical records will be obtained by subpoena.

xiv.   Plaintiff was paroled because of the damage to his health- see Exhibit 1.

2.   Claim Two:   _____

That as a result of the false arrest and imprisonment, Plaintiff under the jurisdiction of the United States, was subjected to deprivations of his rights, privileges, and immunities secured by the Constitution of the United States and the laws of the United States, sustained deprivations of his personal liberty, invasions of his privacy, in violation of the Ninth Amendment to the Constitution of the United States and violations of his civil rights, has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation in violation of the Laws of the State of Colorado and the District of Columbia, was prevented from attending to his usual duties and underwent psychological treatment.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xiv) inclusive of this complaint with the same force and effect as if fully set forth herein.

xv.   On December 7th 2007, Defendant telephoned Sarah Morgan LSW at Colorado Mental Health Institute at Pueblo, Colorado ("CMHIP") to which Defendant had been ordered for Competency Restoration and repeated false accusation that Plaintiff "had made threats against a Congressman". This was in a report sent to Honorable Judge Sheila Rappaport at Denver District Court.

(Rev. 1/30/07)                                    5

3.   Claim Three: _____

That by reason of the Defendant's acts, Plaintiff was caused to suffer extreme mental distress, humiliation, embarrassment, extreme shock and nervousness, and underwent psychiatric care, and has suffered permanent damage to his physical, emotional and mental health.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xv) inclusive of this complaint with the same force and effect as if fully set forth herein.

xvi.   Plaintiff was previously on the top ten stock market traders and top performing hedge fund advisor in the United States featured in Barron's 01/27/96 and 01/29/96, full color page in Financial Trader magazine – see Exhibit 3 and book: 'Bulls Bears & Millionaires' by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind". - see Exhibit 7.

xvii.   Plaintiff traded $250,000,000 of securities & derivatives a year, cleared through Merrill Lynch, audited by PriceWaterhouseCoopers and earned as much as $500,000 a year as stated in his tax returns.

xviii.   The psychiatrist at the Colorado Mental Health Institute at Pueblo opined that Plaintiff will never be able to work as a stock market trader again. State psychologist, however, disagreed.

xix.   Plaintiff's licensed hedge Fund, The Gazelle Global Fund Limited, was placed into voluntary solvent liquidation, depriving him of his business, because he could not travel.

(Rev. 1/30/07)                                 6

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE).  If your answer is "Yes," complete this section of the form.  If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit.  The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1.   Name(s) of defendant(s) in prior lawsuit:

MICHAEL MUKASEY, ATTORNEY GENERAL OF THE UNITED STATES

2.   Docket number and court name:

'08-CV-01644-LJB-CBS
US DISTRICT COURT, DISTRICT OF COLORADO

3.   Claims raised in prior lawsuit:

APPLICATION FOR WRIT OF HABEAS CORPUS

4.   Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

PENDING

5.   If the prior lawsuit was dismissed, when was it dismissed and why?

N/A

6.   Result(s) of any appeal in the prior lawsuit:

N/A

## F. ADMINISTRATIVE RELIEF

1.   Is there a formal grievance procedure at the institution in which you are confined?

✓ Yes ___ No (CHECK ONE).

2.   Did you exhaust available administrative remedies? ✓ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)                    7

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

WHEREFORE, Plaintiff prays that the Court grant him all compensatory, exemplary and punitive damages to which he is entitled, award him costs and suit herein as well as a reasonable attorneys' fee, and the Plaintiff further prays for such other and further relief against the Defendant as may be just and proper.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on    *October 30/t 2008*
                    (Date)

_____
(Prisoner's Original Signature)

(Rev. 1/30/07)                     8

# ADDITIONAL
# SHEETS

**C. NATURE OF THE CASE** (continued)- additional sheet 1

BACKGROUND

Plaintiff, Solomon Ben- Tov COHEN MA (*Cantab*) Pro-SE is a citizen of the United Kingdom and resident of the United States since 1990.

Plaintiff was educated at Trinity College, CAMBRIDGE with an Honors Master's degree in mathematics and is also a trained concert violinist having studied with world famous *Professor Yfrah Neaman* and soloist *Alfredo Campoli.*

In November 1994 the United States Department of Labor issued a Exhibit 4- Labor Certificate to C K Partners Inc, certifying that qualified U.S. workers are not available for the position that the company is planning to offer to Plaintiff. H1- B visa was granted because the Plaintiff with a MASTERS Degree in Mathematics from CAMBRIDGE UNIVERSITY [Honors] is an expert in global equity and derivative markets: London Stock Exchange [Registered Representative, Registered Dealer], London Traded Options Market ("LTOM") [Registered Options Dealer], London International Financial Futures Exchange ("LIFFE"), Paris Bourse, Paris Options Market ("MONEP"), Amsterdam Options Exchange, New York Stock Exchange ("NYSE"), Chicago Board Options Exchange ("CBOE")  and other exchanges. Plaintiff's H1- B was obtained by immigration lawyer Richard Newman, New York City, NY.

In 1996 Plaintiff was featured in Barron's 01/27/96 and 01/29/ 96 as top performing hedge fund advisor and full color page in Financial Trader magazine – see Exhibit 3.

## C. NATURE OF THE CASE (continued)- additional sheet 2

Full chapter on the Plaintiff's life and career are in book: *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind". Plaintiff hand- delivered the Congressman's Beverly Hills, CA office copy of *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind" which Plaintiff signed and dedicated to Congressman Henry Waxman with a letter asking for the Congressman's support in becoming a US Citizen after 10+ years in the United States- see Exhibit 7.

Plaintiff is a donor to UK and US charities such as: *GMHC (New York) AmFar (American Foundation for AIDS Research), Human Rights Campaign Fund, March of Dimes*, and others – and was presented to Her Royal Highness Princess Diana in connection with his charitable donations- see Exhibit 2.

## D. CAUSE OF ACTION      additional sheet 1

Claim Four:          Defendant violated privilege under which Plaintiff communicated with Congressman, secured by First and Sixth Amendments to the Constitution of the United States.

Plaintiff's communications with Congressman Henry Waxman are and were covered by the same privilege as communicating with a lawyer, priest or Rabbi.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xix) inclusive of this complaint with the same force and effect as if fully set forth herein.

xx.    Defendant violated privilege and used information that Plaintiff's work status has accidently been allowed to expire through no fault of his own, by using that information to have Plaintiff arrested by Immigration & Customs Enforcement.

xxi.   Plaintiff would never have communicated with the Congressman had he known this information would be used to arrest him.

## D. CAUSE OF ACTION     additional sheet 2

Claim Five:

xxii.  The wrongful acts of the Defendant complained of herein were undertaken maliciously and include, without limitation, the following:

1) Intentionally arresting the Plaintiff when the Defendant knew or should have known there were no grounds nor probable cause for his arrest;

2) The failure of the Defendant to interview witnesses who substantiated the plaintiff's account of his activities;

3) The failure of the Defendant to take into account facts which they knew cleared the plaintiff; and

4) The intent of the Defendant from the beginning of his investigation to charge the Plaintiff with a crime;

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxi) inclusive of this complaint with the same force and effect as if fully set forth herein.

## D. CAUSE OF ACTION     additional sheet 3

Claim Six:

Plaintiff was damaged by reason thereof in at least the following respects:

1. Loss of personal freedom;

2. Payment of $150,000 is necessary for bond and attorneys' fees;

3. Pain and suffering, both physical and emotional; and

4. Loss of reputation in the business community.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxi) inclusive of this complaint with the same force and effect as if fully set forth herein.

## D. CAUSE OF ACTION     additional sheet 4

<u>Claim Seven:</u>

xxiii.    The Defendant conspired to prevent Congressman Henry Waxman or his staff learning of criminal acts by Deputy Gosset and others, violated the due process and other civil rights of the Plaintiff and to charge him with a crime which he did not commit in order to cover up wrongdoing by other police officers.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxii) inclusive of this complaint with the same force and effect as if fully set forth herein.

xxiv.    Defendant told Plaintiff that he prevented the Congressman of his staff from reading Plaintiff's mail/ communications.

## D. CAUSE OF ACTION      additional sheet 5

Claim Eight:                Defendant refused to give Plaintiff his name or badge number in as
is required by law, despite several requests from Plaintiff.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and
every allegation contained in paragraphs i) through xxiv) inclusive of this complaint with
the same force and effect as if fully set forth herein.

The acts, conduct and behavior of the defendant were performed knowingly,
intentionally and maliciously, by reason of which plaintiff is entitled to punitive damages.

## D. CAUSE OF ACTION     additional sheet 6

Claim Nine:          The investigation conducted by the Defendant and their actions taken

thereon were taken in bad faith or, in the alternative, negligently, and the plaintiff

was damaged by reason thereof in at least the following respects:

Supporting Facts:


Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and

every allegation contained in paragraphs i) through xxiv) inclusive of this complaint with

the same force and effect as if fully set forth herein.


Defendant had Plaintiff's email but did not use it to contact Plaintiff or to tell him

not to come to the Congressman's office.

## E. PREVIOUS LAWSUITS (continued) - additional sheet 1

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes____No.

1. Name of Defendants in prior lawsuit:

Jason Clemens, Immigration Agent
Shana Martin, Assistant Chief Counsel
Department of Homeland Security

2. Docket number and court name:

**' 08- cv- 01991-ZLW**
US DISTRICT COURT, DISTRICT OF COLORADO

3. Claims raised in prior lawsuit:

Making false statement, Perjury
Civil Rights violations

4. Disposition of prior lawsuit:

Dismissed

5. If prior lawsuit was dismissed when was it dismissed and why?

*Heck v Humphrey*

6. Result of any appeal in the prior lawsuit:

Denied Leave to Appeal

**E. PREVIOUS LAWSUITS** (continued) - additional sheet 2

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes____No.

1. Name of Defendant in prior lawsuit:

Denver County Jail,CO and
Chaplain Rev John Scott

2. Docket number and court name:

**1:08-cv-00978-ZLW**
US DISTRICT COURT, DISTRICT OF
COLORADO

3. Claims raised in prior lawsuit:

i.  Denial of kosher food- 1st Amendment violation
ii. request for additional law library time

4. Disposition of prior lawsuit:

Abandoned/ Dismissed

5. If prior lawsuit was dismissed when was it dismissed and why?

Denver County Jail granted both after lawsuit was filed and criminal charges dropped. Official reason:
failure to notify change of address.

6. Result of any appeal in the prior lawsuit:

N/A

**E. PREVIOUS LAWSUITS** (continued) - additional sheet 3

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? __X__ Yes_____No.

7. Name of Defendant in prior lawsuit:

Katherine Davis, HSA
Aurora/ ICE Detention Facillity

8. Docket number and court name:

**1:08-cv-02089-ZLW**
US DISTRICT COURT, DISTRICT OF
COLORADO

9. Claims raised in prior lawsuit:

Denial of medication

10. Disposition of prior lawsuit:

Withdrawn

11. If prior lawsuit was dismissed when was it dismissed and why?

N/A

12. Result of any appeal in the prior lawsuit:

N/A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. '08 - cv - 02188 - LTB-CBS
(To be supplied by the court)

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

FEB 17 2009

GREGORY C. LANGHAM
CLERK

SOLOMON BEN-TOV COHEN , Plaintiff,
pro-se

v.

REPRESENTATIVE HENRY WAXMAN,
UNITED STATES CONGRESS

US CAPITOL POLICE ,

FRED BUSH, AGENT ,
US CAPITOL POLICE

_____ ,

_____ ,

_____ ,

_____ ,

_____ , Defendant(s).

(List each named defendant on a separate line.)

_____

AMENDED PRISONER COMPLAINT

_____

(Rev. 1/30/07)

## A. PARTIES

1. SOLOMON BEN-TOV COHEN pro-se INMATE # L2580
(Plaintiff's name, prisoner identification number, and complete mailing address)
GEO DETENTION FACILITY, 11901 E 30th AVE, AURORA
STATE OF COLORADO, 80010-1525

2. REPRESENTATIVE HENRY WAXMAN, US CONGRESSMAN
(Name, title, and address of first defendant)
WASHINGTON, DISTRICT OF COLUMBIA
2204 RAYBURN OFFICE BUILDING, CONSTITUTION AVE 20515

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ✓ Yes ___ No (CHECK ONE). Briefly explain your answer:

DISTRICT OF COLUMBIA AND FEDERAL LAW

3. UNITED STATES CAPITOL POLICE, OFFICE OF GENERAL COUNSEL
(Name, title, and address of second defendant)
20510
119 'D' ST NE, WASHINGTON, DISTRICT OF COLUMBIA

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ✓ Yes ___ No (CHECK ONE). Briefly explain your answer:

DISTRICT OF COLUMBIA AND FEDERAL LAW

4. FRED BUSH, AGENT, US CAPITOL POLICE
(Name, title, and address of third defendant)
20510
119 'D' ST NE, WASHINGTON, DISTRICT OF COLUMBIA

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ✓ Yes ___ No (CHECK ONE). Briefly explain your answer:

DISTRICT OF COLUMBIA AND FEDERAL LAW

(If you are suing more than three defendants, use extra paper to provide the information requested above for each additional defendant. The information about additional defendants should be labeled "A. PARTIES.")

(Rev. 1/30/07)                    2

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claim(s) pursuant to: (check one if applicable)

_____ 28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

✓ 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

(i) 28 USC §1343; 42 USC §1983 THIS ACTION IS BROUGHT UNDER 28 USC§1343 AND 1st, 4th, 5th, 6th, 8th, 9th, & 14th AMENDMENTS TO US CONSTITUTION AND STATE OF COLORADO AND DISTRICT OF COLUMBIA LAW.

## C. NATURE OF THE CASE

BRIEFLY state the background of your case. If more space is needed to describe the nature of the case, use extra paper to complete this section. The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

ii.   Plaintiff, Solomon Ben- Tov COHEN Pro- SE, is a resident of and tax- payer in the United States since 1990, owns land in California and, was and is a resident of the City of West Hollywood, State of California at all material times.

iii.   Defendant, Representative Henry Waxman, United States Congress was at all material times and is a the Congressman for the District of California in which Plaintiff, partner Scott Soderstrom and Plaintiff's US citizen relatives live.. The Defendant is sued individually and in his official capacity.

iv.   Defendant, Agent Fred Bush was at all material times and is a Agent of the United States Capitol Police, Washington District of Columbia. The Defendant is sued individually and in his official capacity

v.   Defendant, US Capitol Police, Washington District of Columbia is sued as employer of Defendant named in paragraph iv.

vi.   Plaintiff traveled from West Hollywood, California to Washington District of Columbia, to complain to Representative Henry Waxman that Deputy Sheriff Gosset and members of the Los

### C. NATURE OF THE CASE- ~~additional sheet~~ 1   *Page 2*

Los Angeles Fire Department paramedics had assaulted Plaintiff in his bedroom at 908 N Harper, West Hollywood, CA, carried out an illegal eviction and to ask for a Letter of Support in connection with an application for an Extra-ordinary Ability Greencard, as New York City landlords in September 1999 forced Plaintiff to leave his home of 5 years using threats, stole his passport with his work visa and, blacklisted Plaintiff on landlords database for writing a letter to New York City Loft Board who immediately notified landlords, who also live in the building.

vii.     Meeting with Defendant Representative Henry Waxman had been approved by Constituency Plaintiff hand- delivered the Congressman's Hollywood, CA office copy of *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind" which Plaintiff signed and dedicated to Congressman Henry Waxman with a letter asking for the Congressman's support in becoming a US Citizen after 10+ years in the United States- see Exhibit 7.

viii.    A staff member in Washington DC office during a telephone call, offered Plaintiff an appointment on Yom Kippur, which Plaintiff rejected in a phone conversation 4 days earlier, Plaintiff wanted to make a different appointment.

ix.     Defendant, United States Capitol Police Agent Fred Bush, illegally wrongfully and maliciously arrested Plaintiff in the office of Defendant representative Henry Waxman at the Rayburn Office Building, Washington, District of Columbia on November 25th 2003 on a fabricated and false charge of " *making threats against a Congressman*" which he later dropped.

x.     US Capitol Police-  Cathy Gardner, Office of Professional Responsibility- has failed to send Plaintiff complaint forms despite repeated requests and promises that the form had been sent. Plaintiff has exhausted available remedy.

xi.      This Action is for damages for wrongful arrest, denial of 1st Amendment rights to petition Government, conspiracy to wrongfully arrest, defamation of character, physical injury and emotional anguish brought against Representative Henry Waxman, Agent Fred Bush of the US Capitol Police, and US Capitol Police.     -see further additional sheets at end

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

The actions of the Defendants, acting under color of Federal and District of Columbia law,

1. Claim One: _____

Supporting Facts:

constitute a violation of Plaintiff's right to be secure in his person against unreasonable seizure as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States, an invasion of Plaintiff's right to be free from deprivation of his liberty without due process of law as guaranteed by the Fifth, Sixth and fourteenth Amendments to the Constitution of the United States, and Plaintiff's right under the First Amendment to the Constitution and laws of the United States of right to freedom of expression and to petition the government for a redress of grievance.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through x) inclusive of this complaint with the same force and effect as if fully set forth herein.

xii.   On November 25th 2003, in the office of Representative Henry Waxman, Rayburn Office Building, Washington District of Columbia, the Defendant, United States Capitol Police Agent Fred Bush acting, it is alleged,   on direct instructions from Defendant Representative Henry Waxman, illegally wrongfully and maliciously arrested Plaintiff in the Defendant Congressman's office on a fabricated and false charge of "*making threats against the Congressman*" without warrant, without probable case and without cause whatsoever.

xiii.   Fred Bush did not allow Plaintiff to leave either Congressman's office nor his office after dropping false charges -see next page.

(Rev. 1/30/07)                                     4

## D. CAUSE OF ACTION        sheet 2

Claim One: (*contd*)

xiv.   At no time did Plaintiff make any manner of threat against anyone or make demands or refuse to leave.

xv.   Defendant then took Plaintiff in handcuffs out of the Congressman's office and detained him in his office, although there were no grounds for his arrest.

xvi.   No criminal charges were ever filed against the Plaintiff with or in support of the seizure and detention to which Plaintiff was subjected as set forth hereinabove.

xvii.   Plaintiff was never taken before a judge, never allowed to post bail to effect his release from confinement, and was in incarcerated for four months.

xviii.   Plaintiff was incarcerated as follows:

| | |
|---|---|
| November- December 24th 2003 | Rappahannock Regional Jail, VA |
| December 24th 2003- January 2004 | Pamunkey Regional Jail, VA |
| January – February 2004 | Hampton Roads Regional Jail, VA |
| February- March 30th 2004 | Piedmont Regional Jail, VA |

xix.   As a proximate result of Defendant's unlawful arrest and imprisonment, plaintiff was greatly humiliated, injured in his reputation, became sick, and has suffered great pain and mental anguish, all to plaintiff's damage.

xx.   Plaintiff lost 30 lbs of lean muscle mass in one month, developed blood in his stool, and more. Medical records will be obtained by subpoena.

xxi.   Plaintiff was paroled because of the damage to his health- see Exhibit 1.

2.   Claim Two:

That as a result of the false arrest and imprisonment, Plaintiff under the jurisdiction of the United States, was subjected to deprivations of his rights, privileges, and immunities secured by the Constitution of the United States and the laws of the United States, sustained deprivations of his personal liberty, invasions of his privacy, in violation of rights secured by US Constitution and its amendements of the United States and violations of his civil rights, has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation in violation of the Laws of the State of Colorado and the District of Columbia, was prevented from attending to his usual duties and underwent psychological treatment.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xiv) inclusive of this complaint with the same force and effect as if fully set forth herein.

xxii.   On December 7th 2007, Defendant US Capitol Police telephoned Sarah Morgan LSW at Colorado Mental Health Institute at Pueblo, Colorado ("CMHIP") to which Defendant had been ordered for Competency Restoration and repeated false accusation that Plaintiff "*had made threats against a Congressman*". This false and very damaging statement was included a report sent to Honorable Judge Sheila Rappaport at Denver District Court.

xxiii.   Charges were dismissed. Prior to this Competency Restoration, Plaintiff was not fit to file this Complaint/ Action.

(Rev. 1/30/07)                                  5

3. Claim Three: _____

 

That by reason of the Defendant's acts, Plaintiff was caused to suffer extreme mental distress, humiliation, embarrassment, extreme shock and nervousness, and underwent psychiatric care, and has suffered permanent damage to his physical, emotional and mental health.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through x) inclusive of this complaint with the same force and effect as if fully set forth herein.

xxiv. Plaintiff was previously on the top ten stock market traders and top performing hedge fund advisor in the United States featured in Barron's 01/27/96 and 01/29/ 96, full color page in Financial Trader magazine – see Exhibit 3 and book: *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind". - see Exhibit 7.

xxv. Plaintiff traded $250,000,000 of securities & derivatives a year, cleared through Merrill Lynch, audited by PriceWaterhouseCoopers and earned as much as $500,000 a year as stated in his tax returns.

xxvi. The psychiatrist at the Colorado Mental Health Institute at Pueblo opined that Plaintiff will never be able to work as a stock market trader again. State psychologist, however, disagreed.

xxvii. Plaintiff's licensed hedge Fund, The Gazelle Global Fund Limited, was placed into voluntary solvent liquidation, depriving him of his business, because he could not travel.

(Rev. 1/30/07)                                6

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE).  If your answer is "Yes," complete this section of the form.  If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit.  The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1.  Name(s) of defendant(s) in prior lawsuit:

MICHAEL MUKASEY, ATTORNEY GENERAL OF THE UNITED STATES

2.  Docket number and court name:

'08-CV-01844-LTB-CBS UNITED STATES DISTRICT COURT STATE OF COLORADO

3.  Claims raised in prior lawsuit:

APPLICATION FOR WRIT OF HABEAS CORPUS

4.  Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

PENDING

5.  If the prior lawsuit was dismissed, when was it dismissed and why?

N/A

6.  Result(s) of any appeal in the prior lawsuit:

N/A

SEE ADDITIONAL SHEETS

## F. ADMINISTRATIVE RELIEF

1.  Is there a formal grievance procedure at the institution in which you are confined? ✓ Yes ___ No (CHECK ONE).

2.  Did you exhaust available administrative remedies? ✓ Yes ___ No (CHECK ONE).

OFFICE OF PROFESSIONAL RESPONSIBILITY, CATHY GARDNER CLAIMS SHE HAS SENT COMPLAINT FORMS 3 TIMES SINCE END DEC 2008. NONE HAS BEEN RECEIVED TO FILE COMPLAINT. (202) 512-2170. EXHAUSTED ✓

(Rev. 1/30/07)

**E. PREVIOUS LAWSUITS**  (continued) - additional sheet 1

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were
incarcerated? _X_ Yes_____No.

1.  Name of Defendants in prior lawsuit:

Jason Clemens, Immigration Agent
Shana Martin, Assistant Chief Counsel
Department of Homeland Security

4.  Docket number and court name:

**' 08- cv- 01991-ZLW**
US DISTRICT COURT, DISTRICT OF
COLORADO

5.  Claims raised in prior lawsuit:

Making false statement, Perjury
Civil Rights violations

6.  Disposition of prior lawsuit:

Dismissed

7.  If prior lawsuit was dismissed when was
it dismissed and why?

*Heck v Humphrey*

8.  Result of any appeal in the prior lawsuit:

Appeal pending 08- 1394

**E. PREVIOUS LAWSUITS** (continued) - additional sheet 2

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?  _X_ Yes____No.

1. Name of Defendant in prior lawsuit:

   Denver County Jail, CO and
   Chaplain Rev John Scott

2. Docket number and court name:

   **1:08-cv-00978-ZLW**
   US DISTRICT COURT, DISTRICT OF
   COLORADO

3. Claims raised in prior lawsuit:

   i.    Denial of kosher food- 1st
         <u>Amendment violation</u>
   ii.    request for additional law <u>library</u>
         <u>time</u>

4. Disposition of prior lawsuit:

   Withdrawn/ abandoned

5. If prior lawsuit was dismissed when was
   it dismissed and why?

   Denver County Jail granted both after
   lawsuit was filed and criminal charges
   dropped. Official reason:
   failure to notify change of address.

6. Result of any appeal in the prior lawsuit:

   N/A

**E. PREVIOUS LAWSUITS** (continued) - additional sheet 3

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes___ No.

1. Name of Defendant in prior lawsuit:

    Katherine Davis, HSA
    Aurora/ ICE Detention Facility

2. Docket number and court name:

    **1:08-cv-02089-ZLW**
    US DISTRICT COURT, DISTRICT OF
    COLORADO

3. Claims raised in prior lawsuit:

    Denial of medication

4. Disposition of prior lawsuit:

    Withdrawn after settlement

5. If prior lawsuit was dismissed when was
   it dismissed and why?

    N/A

6. Result of any appeal in the prior lawsuit:

    N/A

**E. PREVIOUS LAWSUITS**  (continued) - additional sheet 4

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?  _X_ Yes____No.

1.  Name of Defendants in prior lawsuit:  Hodges, Fuller, Prose, Morrissey et al

2.  Docket number and court name:  **1:08-cv-02806-BnB**
US DISTRICT COURT, DISTRICT OF COLORADO

3.  Claims raised in prior lawsuit:  Wrongful arrest, malicious prosecution, false imprisonment

4.  Disposition of prior lawsuit:  Pending

5.  If prior lawsuit was dismissed when was it dismissed and why?  N/A

6.  Result of any appeal in the prior lawsuit:  N/A

**E. PREVIOUS LAWSUITS** (continued) - additional sheet 5

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes____ No.

1. Name of Defendants in prior lawsuit:

   United States District Court

2. Docket number and court name:

   09- 1045
   US COURT OF APPEALS FOR 10TH CIRCUIT

3. Claims raised in prior lawsuit:

   Application for Writ of Mandamus

4. Disposition of prior lawsuit:

   Pending

5. If prior lawsuit was dismissed when was it dismissed and why?

   N/A

6. Result of any appeal in the prior lawsuit:

   N/A

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

WHEREFORE, Plaintiff prays that the Court grant him all compensatory, exemplary and punitive damages to which he is entitled, award him costs and suit herein as well as a reasonable attorneys' fee, and the Plaintiff further prays for such other and further relief against the Defendant as may be just and proper.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on ___02 - 12 -09___
(Date)

_____
(Prisoner's Original Signature)

(Rev. 1/30/07)                    8

# ADDITIONAL SHEETS

**C. NATURE OF THE CASE** (continued)- additional sheet 1

BACKGROUND

Plaintiff, Solomon Ben- Tov COHEN MA (*Cantab*) Pro-SE is a citizen of the United Kingdom and resident of the United States since 1990.

Plaintiff was educated at Trinity College, CAMBRIDGE with an Honors Master's degree in mathematics and is also a trained concert violinist having studied with world famous *Professor Yfrah Neaman* and soloist *Alfredo Campoli*.

In November 1994 the United States Department of Labor issued a Exhibit 4- Labor Certificate to C K Partners Inc, certifying that qualified U.S. workers are not available for the position that the company is planning to offer to Plaintiff. H1- B visa was granted because the Plaintiff with a MASTERS Degree in Mathematics from CAMBRIDGE UNIVERSITY [Honors] is an expert in global equity and derivative markets: London Stock Exchange [Registered Representative, Registered Dealer], London Traded Options Market ("LTOM") [Registered Options Dealer], London International Financial Futures Exchange ("LIFFE"), Paris Bourse, Paris Options Market ("MONEP"), Amsterdam Options Exchange, New York Stock Exchange ("NYSE"), Chicago Board Options Exchange ("CBOE")  and other exchanges. Plaintiff's H1- B was obtained by immigration lawyer Richard Newman, New York City, NY.

In 1996 Plaintiff was featured in Barron's 01/27/96 and 01/29/ 96 as top performing hedge fund advisor and full color page in Financial Trader magazine – see Exhibit 3.

**C. NATURE OF THE CASE** (continued)- additional sheet 2

Full chapter on the Plaintiff's life and career are in book: *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind". Plaintiff hand- delivered the Congressman's Beverly Hills, CA office copy of *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind" which Plaintiff signed and dedicated to Congressman Henry Waxman with a letter asking for the Congressman's support in becoming a US Citizen after 10+ years in the United States- see Exhibit 7.

Plaintiff is a donor to UK and US charities such as: *GMHC (New York) AmFar (American Foundation for AIDS Research), Human Rights Campaign Fund, March of Dimes*, and others – and was presented to Her Royal Highness Princess Diana in connection with his charitable donations- see Exhibit 2.

**D. CAUSE OF ACTION**     additional sheet 1

Claim Four:        Defendant violated privilege under which Plaintiff communicated with Congressman, secured by First and Sixth Amendments to the Constitution of the United States.

Plaintiff's communications with Congressman Henry Waxman are and were covered by the same privilege as communicating with a lawyer, priest or Rabbi.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xix) inclusive of this complaint with the same force and effect as if fully set forth herein.

xxxv.   Defendant violated privilege and used information that Plaintiff's work status has accidently been allowed to expire through no fault of his own, by using that information to have Plaintiff arrested by Immigration & Customs Enforcement.

xxxvi.   Plaintiff would never have communicated with the Congressman had he known this information would be used to arrest him.

## D. CAUSE OF ACTION      additional sheet 2

Claim Five:

xxii.   The wrongful acts of the Defendant complained of herein were undertaken maliciously and include, without limitation, the following:

1) Intentionally arresting the Plaintiff when the Defendant knew or should have known there were no grounds nor probable cause for his arrest;

2) The failure of the Defendant to interview witnesses who substantiated the plaintiff's account of his activities;

3) The failure of the Defendant to take into account facts which they knew cleared the plaintiff; and

4) The intent of the Defendant from the beginning of his investigation to charge the Plaintiff with a crime;

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxi) inclusive of this complaint with the same force and effect as if fully set forth herein.

## D. CAUSE OF ACTION    additional sheet 3

Claim Six:

Plaintiff was damaged by reason thereof in at least the following respects:

1.  Loss of personal freedom;

2.  Payment of $150,000 is necessary for bond and attorneys' fees;

3.  Pain and suffering, both physical and emotional; and

4.  Loss of reputation in the business community.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxi) inclusive of this complaint with the same force and effect as if fully set forth herein.

## D. CAUSE OF ACTION     additional sheet 4

Claim Seven:

xxiii.   The Defendant conspired to prevent Congressman Henry Waxman or his staff learning of criminal acts by Deputy Gosset and others, violated the due process and other civil rights of the Plaintiff and to charge him with a crime which he did not commit in order to cover up wrongdoing by other police officers.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxii) inclusive of this complaint with the same force and effect as if fully set forth herein.

xxiv.   Defendant told Plaintiff that he prevented the Congressman of his staff from reading Plaintiff's mail/ communications.

## D. CAUSE OF ACTION     additional sheet 5

Claim Eight:                Defendant refused to give Plaintiff his name or badge number in as is required by law, despite several requests from Plaintiff.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxiv) inclusive of this complaint with the same force and effect as if fully set forth herein.

The acts, conduct and behavior of the defendant were performed knowingly, intentionally and maliciously, by reason of which plaintiff is entitled to punitive damages.

# D. CAUSE OF ACTION     additional sheet 6

Claim Nine:          The investigation conducted by the Defendant and their actions taken thereon were taken in bad faith or, in the alternative, negligently, and the plaintiff was damaged by reason thereof in at least the following respects:

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxiv) inclusive of this complaint with the same force and effect as if fully set forth herein.

Defendant had Plaintiff's email but did not use it to contact Plaintiff or to tell him not to come to the Congressman's office.

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Letter from Department of Homeland Security Acting Field Director re: arrest |
| 2 | Photo of HRH Princess Diana speaking with Plaintiff |
| 3 | Re- print of full page feature on Plaintiff – *FINANCIAL TRADER* Magazine |
| 4 | Copy of Plaintiff's work visa and Labor Certification |
| 5 | Copy of email informing Plaintiff of Cayman Chief Justice's decision |
| 6 | Copy of confidential letter from Senator John McCain to fellow detainee |
| 7 | Chapter 4- Book: "*BULLS, BEARS & MILLIONAIRES*" by Robert Koppel  Published by Dearborn |

2

## CERTIFICATE OF SERVICE

I hereby certify that on _____02/12/2009_____ I sent a copy of
[date]

the ___EXHIBITS_____,
[name of document]

to: _AGENT  FRED  BUSH  %US  CAPITOL  POLICE_

at __119  D  ST  NE  ,  WASHINGTON_____

__DC  20515_____, the last known address,
by way of United States mail or courier.

____02/12/2009____
Date

____[signature]_____
Signature

## CERTIFICATE OF SERVICE

I hereby certify that on ___02/12/2009___ I sent a copy of
[date]

the ___EXHIBITS___,
[name of document]

to: ___US CAPITOL POLICE — OFFICE OF GENERAL COUNSEL___

at ___119 D ST NE, WASHINGTON___

___DC 20515___, the last known address,
by way of United States mail or courier.

___02/12/2009___
Date

___[signature]___
Signature

A-5a Pro Se Entry of Appearance Form 06/03

## CERTIFICATE OF SERVICE

I hereby certify that on _____02/12/2009_____ I sent a copy of
[date]

the ___EXHIBITS_____,
[name of document]

to: _REPRESENTATIVE  HENRY  WAXMAN_____

at _2204  RAYBURN  OFFICE  BUILDING , CONSTITUTION AVE_

_WASHINGTON , DC  20515_____, the last known address,
by way of United States mail or courier.

___02/12/2009_____
Date

_____
Signature

A-5a  Pro Se Entry of Appearance Form 06/03

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSH, Agent, U.S. Capitol Police,

     Defendants.

---

### DEFENDANT THE U.S. CAPITOL POLICE'S MOTION TO
### DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Defendant the U.S. Capitol Police,[1] through undersigned counsel, hereby moves to

dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff cannot

bring a <u>Bivens</u> claim against the U.S. Capitol Police; therefore, his Amended Complaint, which

only states <u>Bivens</u> claims, must be dismissed as to the U.S. Capitol Police.  To the extent that this

Court discerns a cognizable claim against the U.S. Capitol Police, this Court should order a more

definite statement with respect to those claims pursuant to Fed. R. Civ. P. 12(e).

### FACTS

Plaintiff, who is currently detained at the Immigration and Customs Enforcement

detention facility in Aurora, Colorado, filed an Amended Complaint on February 17, 2009.

---

[1]  Undersigned counsel does not have representation authority for Defendant Waxman or Defendant "Bush [sic]".  Service on Defendant Fred Busch was returned unexecuted.  <u>See</u> Doc. 17.  To the best of undersigned counsel's knowledge, Representative Waxman is being represented by the Office of General Counsel for the House of Representatives.

(Doc. 12.)  In the Amended Complaint, Plaintiff names three Defendants:  Representative Waxman, the U.S. Capitol Police, and Agent Busch of the U.S. Capitol Police.  See id. at 1.  The U.S. Capitol Police is "sued as employer" of Agent Busch.  Id. at 2.

The Second Amended Complaint alleges that around November 2003, Plaintiff traveled from California to Washington, DC, to meet with Representative Waxman.  See Doc. 12 at 4. Upon arriving at Representative Waxman's Office, Plaintiff alleges that he was "wrongfully and maliciously arrested" by Agent Busch.  Id.  Plaintiff alleges that these actions constitute: (1) a violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments (Claim One); (2) a deprivation of constitutional rights, privileges, and immunities resulting in psychological harm (Claim Two); (3) extreme mental distress caused by the constitutional violations (Claim Three); (4) a violation of the First and Sixth Amendment communication privilege between Plaintiff and Representative Waxman (Claim Four); (5) intentional arrest without probable cause (Claim Five); (6) loss of personal freedom, pain and suffering, and loss of reputation (Claim Six); (7) conspiracy (Claim Seven); (8) an improper refusal by Agent Busch to disclose his badge number (Claim Eight); and (9) bad faith investigation (Claim Nine).  Id. at 5-8; 19-24.

Importantly, Plaintiff seeks only monetary relief for his claims.  See id. at 15 ("Plaintiff prays that the Court grant him all compensatory, exemplary and punitive damages to which he is entitled.").

## ARGUMENT

### I.    Standard of Review

#### A.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state "enough

facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must accept as true only the well-pleaded allegations of the complaint and must construe them in the light most favorable to the plaintiff. Grossman v. Novell, Inc., 120 F.3d 1112, 1118 (10th Cir. 1997). But "[i]t is not … proper to assume that the [plaintiff] can prove facts that it has not alleged … ." Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983) (quoted in Bell Atlantic, 550 U.S. at 563 n.8). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reasons to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Lane v. Simon, 495 F3d 1183, 1186 (10th Cir. 2007) (citing Bell Atlantic, 550 U.S. at 555); see also Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir. 2001) (noting that "[a] federal constitutional question must exist not in mere form, but in substance, and not in mere assertion, but in essence and effect" and affirming district court's dismissal for failure to state a claim). Thus, in pleading, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal quotations omitted).

### B.   Bivens Claims

"Bivens claims allow plaintiffs to recover from individual federal agents for constitutional violations these agents commit against plaintiffs." Robbins v. Wilkie, 300 F.3d

-3-

1208, 1211 (10th Cir. 2002) (citing Bivens, 403 U.S. 388); see also Bivens, 403 U.S. at 396-97

("Nor are we asked in this case to impose liability upon a congressional employee for actions

contrary to no constitutional prohibition, but merely said to be in excess of the authority

delegated to him by the Congress.").

A Bivens action alleging that a federal employee violated a plaintiff's constitutional rights

cannot be maintained against the United States or an agency of the United States.  See FDIC v.

Meyer, 510 U.S. 471, 486 (1994); see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001)

(holding that a "prisoner may not bring a Bivens claim against the officer's employer, the United

States, or the BOP").

## II.      Plaintiff Fails to State a Bivens Claim Against the U.S. Capitol Police

Plaintiff's Amended Complaint alleges only constitutional violations and seeks only

money damages.  See generally Doc. 12.  Specifically, all of Plaintiff's claims appear to be

allegations of constitutional violations relating to his arrest in Washington, DC in November

2003.  Id.  Plaintiff's Amended Complaint thus states nothing more than typical Bivens claims.

As such, the U.S. Capitol Police is not an appropriate Defendant for Plaintiff's claims.  See FDIC

v. Meyer, 510 U.S. at 486.  Plaintiff's Bivens claims against the U.S. Capitol police should be

dismissed.

## III.     To the Extent This Court Discerns a Cognizable Claim Against the U.S. Capitol Police, This Court Should Order a More Definite Statement

Plaintiff's Amended Complaint appears to assert only Bivens claims.  To the extent that

this Court discerns any potentially cognizable claims in Plaintiff's Amended Complaint against

the U.S. Capitol Police, Defendant the U.S. Capitol Police requests that this Court order a more

definite statement with respect to any such claims pursuant to Fed. R. Civ. P. 12(e).  See Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading  … which is so vague or ambigious that the party cannot reasonably prepare a response."); Pilapil v. INS, 424 F.2d 6, 10 (10th Cir. 1970) ("12(e) provides a remedy for vague or uncertain pleading").

## CONCLUSION

For the above reasons, Defendant the U.S. Capitol Police respectfully requests that this Court grant this motion to dismiss and dismiss the U.S. Capitol Police as a Defendant from the above-captioned case, or, in the alternative, order a more definite statement with respect to any claims against the U.S. Capitol Police.

Respectfully submitted this 21st day of April, 2009.

> DAVID M. GAOUETTE
> Acting United States Attorney
>
> s/ Marcy E. Cook
> Marcy E. Cook
> Assistant United States Attorney
> 1225 Seventeenth Street, Suite 700
> Denver, Colorado  80202
> Telephone:  (303) 454-0171
> Fax: (303) 454-0404
> E-mail: marcy.cook@usdoj.gov
> Counsel for Def. the U.S. Capitol Police

-5-

137

138

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of April, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 21st day of April, 2009, I have mailed or served the foregoing document to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO  80010-1525

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Def. the U.S. Capitol Police

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

      Plaintiff,

v.

CONGRESSMAN HENRY A. WAXMAN,
      U.S. House of Representatives,
U.S. CAPITOL POLICE, and
FRED BUSH, Agent, U.S. Capitol Police,

      Defendants.

---

**MOTION TO DISMISS OF DEFENDANT CONGRESSMAN
HENRY A. WAXMAN**

---

Pursuant to Rules 12(b)(1), (b)(2) and (b)(6) of the Federal Rules of Civil

Procedure, defendant the Honorable Henry A. Waxman, U.S. Representative for the 30th

congressional district of California, respectfully moves for an order dismissing with

prejudice, for the reasons set forth in the accompanying Memorandum of Points and

Authorities in Support of Motion to Dismiss of Defendant Congressman Henry A.

Waxman, all claims asserted against him in plaintiff's Amended Prisoner Complaint

(filed Feb. 17, 2009).

Oral argument is not requested.

                    Respectfully submitted,


                    IRVIN B. NATHAN
                    General Counsel
                    KERRY W. KIRCHER

Deputy General Counsel
s/ Katherine E. McCarron_____
KATHERINE E. McCARRON
Assistant Counsel

Office of the General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Fax: (202) 226-1360
E-mail: Katherine.mccarron@mail.house.gov

Counsel for Congressman Henry A. Waxman

May 4, 2009

2

141

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of May, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Marcy E. Cook
Marcy.cook@usdoj.gov
Counsel for Defendant, the U.S. Capitol Police

William Emory
William_Emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 4th day of May, 2009, I have mailed or served the foregoing document to the following non-CM/ECF participant by first-class mail, postage prepaid:

Solomon Ben-Tov Cohen
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO 80010-1525

s/ Katherine E. McCarron
Katherine E. McCarron
Assistant Counsel
U.S. House of Representatives
Office of the General Counsel
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Fax: (202) 226-1360
E-mail: Katherine.mccarron@mail.house.gov
Counsel for Congressman Henry A. Waxman

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

      Plaintiff,

v.

CONGRESSMAN HENRY A. WAXMAN,
      U.S. House of Representatives,
U.S. CAPITOL POLICE, and
FRED BUSH, Agent, U.S. Capitol Police,

      Defendants.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OF DEFENDANT CONGRESSMAN HENRY A. WAXMAN**

---

IRVIN B. NATHAN
General Counsel
KERRY W. KIRCHER
Deputy General Counsel
s/ Katherine E. McCarron_____
KATHERINE E. McCARRON
Assistant Counsel

Office of the General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Fax: (202) 226-1360
E-mail: Katherine.mccarron@mail.house.gov

Counsel for Congressman Henry A. Waxman

May 4, 2009

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND STATEMENT OF FACTS ........................................................1

ARGUMENT ...................................................................................................................3

I.      This Court Lacks Personal Jurisdiction Over Congressman Waxman ...................3

        I.      The Colorado Long-Arm Statute .................................................4

        II.     The Due Process Requirement of the 14th Amendment..............................5

II.     The Court Lacks Subject Matter Jurisdiction Over the Claims Asserted Against
        Congressman Waxman .....................................................................................6

        A.      Qualified Immunity..................................................................7

        B.      Speech or Debate Clause Immunity.............................................8

III.    All Claims Asserted Against Congressman Waxman Are Time-Barred.................9

IV.     The Complaint Fails to State a Claim Against Congressman Waxman ................10

        A.  No First Amendment Claim Relating to Mr. Cohen's Efforts to Obtain
            Assistance from Congressman Waxman .........................................10

        B.  No Fourth and Fifth Amendment Claims Relating to Mr. Cohen's Arrest and
            Detention...............................................................................13

        C.  No First and Sixth Amendment Claim Relating to Mr. Cohen's
            Communications with Congressman Waxman................................15

        D.  No Section 1983 Claim...................................................................16

CONCLUSION...............................................................................................................16

CERTIFICATE OF SERVICE

APPENDIX

## TABLE OF AUTHORITIES

**Federal and State Cases**

*Adams v. Richardson,*
871 F. Supp. 43 (D.D.C. 1994) ................................................................12

*Anderson v. Creighton,*
483 U.S. 635 (1987) ..............................................................................7

*Bame v. Clark,*
466 F. Supp. 2d 105 (D.D.C. 2006) ..........................................................10

*Barr v. Matteo,*
360 U.S. 564 (1959) ..............................................................................9

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ..........................................................................14

*Bennett v. Stephens,*
No. 88-2610, 1989 WL 17751 (D.D.C. Feb. 23, 1989) ...............................14

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971) ..............................................7, 9, 10, 11, 14, 16

*Bush v. Lucas,*
462 U.S. 367 (1983) ..............................................................................16

*Carlson v. Green,*
446 U.S. 14 (1980) ..........................................................................11, 16

*Corr. Serv. Corp. v. Malesko,*
534 U.S. 61 (2001) ................................................................................11

*Craft v. McNulty,*
875 F. Supp. 121 (N.D.N.Y. 1995) ..........................................................12

*Dart Int'l, Inc. v. Interactive Target Sys., Inc.,*
877 F. Supp. 541 (D. Colo. 1995) ...........................................................6

*Davis v. Passman,*
442 U.S. 228 (1979) ..............................................................................16

*Day v. Snowmass Stables, Inc.,*
810 F. Supp. 289 (D. Colo. 1993) ...........................................................4

*Doe v. McMillian,*
     412 U.S. 306 (1973)....................................................................................9

*Doe v. Nat'l Med. Serv.,*
     748 F. Supp. 793 (D. Colo. 1990), *aff'd*, 974 F.2d 143 (10th Cir. 1992) ...............4

*Doe v. U.S. Dep't of Justice,*
     753 F.2d 1092 (D.C. Cir. 1985) ..........................................................10

*Dombrowski v. Eastland,*
     387 U.S. 82 (1967)....................................................................................9

*Durre v. Dempsey,*
     869 F.2d 543 (10th Cir. 1989) .............................................................14

*Eastland v. U.S. Servicemen's Fund,*
     421 U.S. 491 (1975)...............................................................................8, 9

*ESAB Group, Inc. v. Centricut, Inc.,*
     126 F.3d 617 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998).....................3, 4

*FDIC v. Meyer,*
     510 U.S. 471 (1994).......................................................................... 10-11

*First W. Gov't Sec., Inc. v. United States,*
     578 F. Supp. 212 (D. Colo. 1984), *aff'd*, 796 F.2d 356 (10th Cir. 1986) ...............5

*Fleming v. District of Columbia,*
     No. 89-220, 1989 WL 207913 (D.D.C. Oct. 5, 1989) .........................................14

*Gravel v. United States,*
     408 U.S. 606 (1972)...............................................................................8, 9

*Harlow v. Fitzgerald,*
     457 U.S. 800 (1982)....................................................................................7

*Hawkins v. AT&T,*
     No. 90-0546, 1990 WL 174901 (D.D.C. Oct. 26, 1990) .....................................14

*Hemmati v. United States,*
     564 A.2d 739 (D.C. 1989) .............................................................12, 13

*Herron v. Skelton,*
     No. 08-0531 (W.D. Mo. Jan. 22, 2009) (enclosed per D.C.Colo.Civ.R.7.1D)......12

iii

*Hoffman v. Halden,*
    268 F.2d 280 (9th Cir. 1959) ................................................................14

*Indus. Constructors Corp. v. U.S. Bureau of Reclamation,*
    15 F.3d 963 (10th Cir. 1994) ...................................................... 9-10, 10

*Int'l Shoe Co. v. State of Washington,*
    326 U.S. 310 (1945)................................................................... 5-6

*Juda v. Nerney,*
    Nos. 97-2192, 97-2326, 1998 WL 317474 (10th Cir. June 16, 1998)...................14

*Kilbourn v. Thompson,*
    103 U.S. 168 (1880)...................................................................9

*Lederman v. United States,*
    131 F. Supp. 2d 46 (D.D.C. 2001) .......................................................10

*Liverman v. Hyde,*
    No. 00-0422, 2000 WL 1028117 (10th Cir. July 26, 2000)........................... 11-12

*Lombard v. United States,*
    530 F. Supp. 918 (D.D.C. 1981) ..................................................... 13-14

*McDonough v. Ney,*
    599 F. Supp. 679 (D. Me. 1984) .........................................................12

*Milliken v. Meyer,*
    311 U.S. 457 (1940)...................................................................6

*Minn. State Bd. for Cmty. Colls. v. Knight,*
    465 U.S. 271 (1984)...............................................................11, 12, 13

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,*
    484 U.S. 97 (1987)....................................................................3

*Ostrer v. Aronwald,*
    567 F.2d 551 (2d Cir. 1977)............................................................14

*Plus Sys., Inc. v. New England Network, Inc.,*
    804 F. Supp. 111 (D. Colo. 1992)......................................................4, 6

*Richards v. Harper,*
    864 F.2d 85 (9th Cir. 1988) .............................................................12

iv

*Schweiker v. Chilicky,*
     487 U.S. 412 (1988)...................................................................................11

*Scott v. Hern,*
     216 F.3d 897 (10th Cir. 2000) ...............................................................14

*Shaffer v. Clinton,*
     54 F. Supp. 2d 1014, (D. Colo. 1999), *aff'd on other grounds*, 240 F.3d 878 (10th
     Cir. 2001), *cert. denied sub. nom. Shaffer v. O'Neill*, 534 U.S. 992 (2001)....4, 5, 6

*Smith v. Ark. State Highway Employees, Local 1315,*
     441 U.S. 463 (1979)...................................................................................11

*United States v. Santana-Garcia,*
     264 F.3d 1188 (10th Cir. 2001) ..............................................................15

*United States v. Stanley,*
     483 U.S. 669 (1987)...................................................................................11

*Vest v. Schafer,*
     757 P.2d 588 (Alaska 1988).....................................................................16

*We the People Found., Inc. v. United States,*
     485 F.3d 140 (D.C. Cir. 2007), *cert. denied*, 128 S. Ct. 939 (2008) .....................11

*Wilkie v. Robbins,*
     127 S. Ct. 2588 (2007)......................................................... 11, 15, 15-16

## Constitutional Provisions

U.S. Const., art. I, § 6, cl. 1...................................................................7, 8, 9

U.S. Const., amend. I ..................................................2, 7, 8, 9, 10, 11, 13, 15

U.S. Const., amend. IV ................................................................2, 7, 10, 13, 14

U.S. Const., amend. V................................................................2, 3, 7, 11, 13, 14

U.S. Const., amend. VI ...................................................................................2, 7, 15

U.S. Const., amend. XIV ...................................................................................3, 4, 5

## Statutes and Rules

2 U.S.C. § 1901...............................................................................................15

8 U.S.C. § 1101(a)(15)(H) ..................................................................................1

8 U.S.C. § 1184(i) .............................................................................................1

8 U.S.C. § 1184 (g)(1) .......................................................................................1

8 U.S.C. § 1184 (g)(4) .......................................................................................1

8 U.S.C. § 1357(a)(1)........................................................................................14

8 U.S.C. § 1357(a)(2)........................................................................................14

42 U.S.C. § 1983............................................................................3, 7, 10, 14, 16

42 U.S.C. § 1985................................................................................................13

Fed. R. Civ. P. 4(k) .........................................................................................3, 4

Fed. R. Civ. P. 12(b)(1).......................................................................................6

Fed. R. Civ. P. 12(b)(2).......................................................................................6

Fed. R. Civ. P. 12(b)(6).....................................................................................10

Colo. Rev. Stat. Ann. § 13-1-124(1) (West 2005) ................................................5

D.C. Code § 12-301(8) (2001)...........................................................................10

**Other Authorities**

Henry A. Waxman, U.S. Representative for the 30th Congressional District of California,
http://www.henrywaxman.house.gov ...................................................................5

vi

**INTRODUCTION AND STATEMENT OF FACTS**

Pro se plaintiff Solomon Ben-Tov Cohen is suing Congressman Henry Waxman of California, as well as the U.S. Capitol Police and one Fred Bush (allegedly an agent of the U.S. Capitol Police), for money damages for alleged constitutional and statutory violations that purport to arise out of Mr. Cohen's visit to the Congressman's congressional office in Washington, D.C. on or about November 25, 2003.[1] *See* Amended Prisoner Complaint (filed Feb. 17, 2009) ("Complaint").

The facts alleged in the Complaint that pertain to Congressman Waxman appear to be as follows. Mr. Cohen is a citizen of the United Kingdom who appears to have entered this county in or about December 1994 on an H-1B visa. *Id*. at 17; Exhibit 4 to Prisoner Complaint (filed Oct. 9, 2008). It appears that Mr. Cohen's H-1B visa expired in December 2000. *Id*.[2]

In November 2003, Mr. Cohen traveled from West Hollywood, California to Washington, D.C. to complain to Congressman Waxman about his treatment at the hands of local officials in West Hollywood. Complaint at 3-4. Mr. Cohen apparently intended to hand-deliver to Congressman Waxman "a letter asking for the Congressman's support in becoming a US Citizen after 10+ years in the United States." *Id*. at 4. Mr. Cohen's "work status ha[d] accidently been allowed to expire through no fault of his own" and he

---

[1] The U.S. Capitol Police are represented by Assistant United States Attorney Marcy Cook. It appears that Mr. Bush has not yet been served.

[2] An H-1B visa is a non-immigrant visa that carries with it the right to work in the United States on a temporary basis for a specific employer and at a specific job. *See generally* 8 U.S.C. §§ 1101(a)(15)(H), 1184(i), and (g)(1) ("Temporary workers and trainees; limitation on numbers"). The normal duration of stay is three years, with one extension of three additional years, *id*. at § 1184(g)(4), although the maximum length of stay may be extended in certain circumstances that do not appear to be present here.

was seeking Congressman Waxman's assistance with this issue.  *Id*. at 19.  (Since Mr.

Cohen's right to work in the United States was apparently based solely on his H-1B visa,

we construe that statement to mean that Mr. Cohen's visa had expired, a conclusion that

is born out by the documents he has submitted to the Court.  *See* Exhibit 4 to Prisoner

Complaint (filed Oct. 9, 2008).

When Mr. Cohen arrived in Congressman Waxman's Washington, D.C.

congressional office on November 25, 2003, "United States Capitol Police Agent Fred

Bush acting . . . on direct instructions from Defendant Representative Henry Waxman,

illegally . . . arrested Plaintiff in Defendant Congressman's office on a fabricated and

false charge of '*making threats against the Congressman*' without [a] warrant, without

probable cause and without cause whatsoever."  Complaint at 5 (emphasis in original).

Bush "took Plaintiff in handcuffs out of the Congressman's office and detained him in his

office," *id*. at 6, and then "later dropped" the "false charge."  *Id*. at 4.[3]  We assume, for

purposes of this motion to dismiss only, that these alleged facts are true.

As best we can tell, Mr. Cohen has attempted to assert the following legal claims

against Congressman Waxman:  (i) a constitutional tort under the First Amendment with

respect to his efforts to obtain assistance from Congressman Waxman, *id*. at 4; (ii) a

constitutional tort under the Fourth and Fifth Amendment with respect to his arrest and

detention, *id*.; (iii) a constitutional tort under the First and Sixth Amendments with

respect to his communications with the Congressman, communications which he likens to

---

[3] After the Capitol Police detained Mr. Cohen, *id*. at 6, he was subsequently
arrested by U.S. Immigration and Customs Enforcement ("ICE"), Complaint at 19, and
"incarcerated" for several months, *id*. at 6, and that he is currently detained at the ICE
detention facility in Aurora, Colorado.  *Id*. at 2.

those with "a lawyer, priest, or Rabbi," *id*. at 19; and (iv) perhaps a violation of 42 U.S.C. § 1983. *Id*. at 3. [4]

## ARGUMENT

### I.      This Court Lacks Personal Jurisdiction Over Congressman Waxman.

Before this Court may exercise *in personam* jurisdiction over Congressman Waxman, there must at least be "a constitutionally sufficient relationship between [him] and the forum," as well as "authorization for service of [a] summons on the defendant." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998) ("Federal district courts may exercise *in personam* jurisdiction only to the degree authorized by Congress acting under its constitutional power to 'ordain and establish' the lower federal courts.  The exercise of personal jurisdiction is also constrained by the Due Process Clause of the Fifth Amendment." (citation omitted)).

Rule 4(k) of the Federal Rules of Civil Procedure restricts this Court's authority to serve process upon, and thereby exercise personal jurisdiction over, out-of-state defendants such as Congressman Waxman.  "Rule 4(k) enumerates five sources authorizing service to effect *in personam* jurisdiction." *ESAB Group*, 126 F.3d at 622. Only one of those five sources is even potentially applicable to Congressman Waxman: Rule 4(k)(1)(A) ("Serving a summons . . . establishes personal jurisdiction over a defendant . . . (A) who is subject to the jurisdiction of a [Colorado] court of general jurisdiction.").

---

[4] The remaining "claims" are either incomprehensible or patently inapplicable to Congressman Waxman.  We also find it unnecessary to address Mr. Cohen's claims under Section 1 of the Fourteenth Amendment. U.S. Const. amend. XIV, § 1. *See* Complaint at 5.  Section 1 is limited, on its face, to state actors.

> When authorized by Federal Rule of Civil Procedure 4(k)(1)(A), service of process sufficient to exercise jurisdiction over a defendant is limited by state law, so that any challenge to the personal jurisdiction requires [the court] to assess the jurisdiction of the courts in the state where the district court is located. . . .
>
> Since *in personam* jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment, [the court must] inquire whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant.  If it does, [the court] must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.  Because Rule 4(k)(1)(A) delimits the scope of effective federal service in terms of the limits on state court jurisdiction, [the court's] inquiry into [its] jurisdiction pursuant to Rule 4(k)(1)(A) incorporates the Fourteenth Amendment due process standard, even though that Amendment applies of its own force only to states.

*ESAB Group*, 126 F.3d at 622-23 (internal citations omitted).  *See also Shaffer v. Clinton*, 54 F. Supp. 2d 1014, 1020 (D. Colo. 1999), *aff'd on other grounds*, 240 F.3d 878 (10th Cir. 2001), *cert. denied*, *Shaffer v. O'Neill*, 534 U.S. 992 (2001); *Plus Sys., Inc. v. New England Network, Inc.*, 804 F. Supp. 111, 117 (D. Colo. 1992) ("In Colorado, an assertion of personal jurisdiction must satisfy both the requirements of its long arm statute and the requirements of due process.") (citations omitted); *Day v. Snowmass Stables, Inc.*, 810 F. Supp. 289, 291 (D. Colo. 1993); *Doe v. Nat'l Med. Serv.*, 748 F. Supp. 793, 795 (D. Colo. 1990), *aff'd*, 974 F.2d 143 (10th Cir. 1992).

Here, Colorado's long-arm statute does not permit this Court to exercise personal jurisdiction over Congressman Waxman and, even if it did, the Court's assertion of such jurisdiction would not be constitutional.

A.      The Colorado Long-Arm Statute.

Colorado law provides that Colorado courts may exercise personal jurisdiction over a non-resident defendant with respect to "any cause of action arising from," among

4

152

other things, "[t]he transaction of any business within th[e] state." Colo. Rev. Stat. Ann. §

13-1-124(1) (West 2005).   Government officials who do not reside or perform work in

Colorado do not "transact business" within the meaning of this statute.  *See First W.*

*Gov't Sec., Inc. v. United States*, 578 F. Supp. 212 (D. Colo. 1984), *aff'd*, 796 F.2d 356

(10th Cir. 1986).

The Complaint contains no suggestion that Congressman Waxman has any

contact with Colorado.  Moreover, the Court may take judicial notice of the fact that

Congressman Waxman represents the 30th congressional district of California – which

encompasses the coastal communities of Santa Monica, Malibu, West Los Angeles,

Beverly Hills, and West Hollywood, *California* – and maintains congressional offices

only in Washington, D.C. and Los Angeles.  *See* http://www.henrywaxman.house.gov/.

Because Congressman Waxman is not alleged to have "transact[ed] any business" in

Colorado within the meaning of the long-arm statute, this Court may not exercise

personal jurisdiction over him.  *See Shaffer*, 54 F. Supp. 2d at 1020-21 (Colorado long-

arm statute does not reach Clerk of the House who performs his job in Washington,

D.C.).

> **B.**     **The Due Process Requirement of the 14th Amendment.**

Even if Congressman Waxman were covered by the Colorado long-arm statute,

this Court still may not exercise personal jurisdiction over him consistent with the due

process requirements of the 14th Amendment.  A court may only exercise jurisdiction

over one who has "minimum contacts" with the state "such that the maintenance of the

suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe*

5

*Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

This Court has adopted a three-prong test to determine whether its exercise of in personam jurisdiction is consistent with due process. *Plus Sys.*, 804 F. Supp. at 117. To satisfy due process, a plaintiff must show that (1) the defendant "purposefully avail[ed] [himself] of the privilege of acting in Colorado;" (2) "the claim for relief . . . arise[s] from the consequences in Colorado of the defendant's activities;" and (3) "the defendant's activities or their consequences . . . have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable." *Id. See also Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F. Supp. 541, 543 (D. Colo. 1995).

For the same reasons that the Colorado long-arm statute does not apply to Congressman Waxman, this Court's exercise of personal jurisdiction over him would not be consistent with due process inasmuch as Mr. Cohen does not allege (nor could he) that Congressman Waxman has any contacts with Colorado, much less contacts out of which the claims in this case arise. Accordingly, the Court may not exercise personal jurisdiction over Congressman Waxman and the claims against him must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). *See Shaffer*, 54 F. Supp. 2d at 1021 (Clerk of the House who performs his job in Washington, D.C. "do[es] not have sufficient minimum contacts [with Colorado] to reasonably expect [he] would be haled into court in Colorado.").

## II.     The Court Lacks Subject Matter Jurisdiction Over the Claims Asserted Against Congressman Waxman.

The claims asserted against Congressman Waxman must also be dismissed, pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Congressman

6

Waxman is immune from suit under the doctrine of qualified immunity with respect to all of the claims asserted, and under the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."), with respect to the First Amendment claim that Congressman Waxman did not assist Mr. Cohen with his visa problems.

### A.   Qualified Immunity.

Mr. Cohen is suing Congressman Waxman solely for actions (or omissions) taken, if at all, in his official capacity. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court held that federal officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See also Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987) (interpreting *Harlow* to require that right violated be described with specificity and that "the unlawfulness must be apparent").

With respect to the constitutional tort claims Mr. Cohen has asserted against Congressman Waxman under the First, Fourth, Fifth and Sixth Amendments – all of which appear to be based on *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) – the Complaint fails to identify any clearly established constitutional rights as required by *Harlow*. The same thing is obviously true of Mr. Cohen's Section 1983 claim because that statute, as discussed below, does not cover federal officials. *See infra* at IV. D.

Accordingly, Congressman Waxman is immune under the doctrine of qualified immunity from all claims asserted against him by Mr. Cohen.

7

**B.      Speech or Debate Clause Immunity.**

To the extent Mr. Cohen's First Amendment claim is based on Congressman

Waxman's failure to take legislative action on Mr. Cohen's behalf, Complaint at 4, the

Congressman is absolutely immune under the Speech or Debate Clause.

While the factual allegations in the Complaint are ambiguous at best, they can be

read to allege that Mr. Cohen wished Congressman Waxman to help him become a U.S.

citizen by sponsoring a private immigration bill.  *See* Complaint at 3-4 (Mr. Cohen

traveled to Washington, D.C. to hand-deliver "a letter asking for the Congressman's

support in becoming a US Citizen after 10+ years in the United States"); *id.* at 19

("Plaintiff's work status has accidentally been allowed to expire through no fault of his

own").  The Court may take judicial notice of the fact that virtually the only way a

Member of Congress could help an illegal alien become a U.S. citizen is through the

sponsorship of a private immigration bill.  To the extent that is Mr. Cohen's claim, it is

barred by the Speech or Debate Clause.

The central purpose of the Speech or Debate Clause privilege "is to insure that the

legislative function the Constitution allocates to Congress may be performed

independently."  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975).  The

Clause protects Members of Congress with respect to their legislative activities, which

includes all activities that are:

> an integral part of the deliberative and communicative
> processes by which Members participate in committee and
> House proceedings with respect to the consideration and
> passage or rejection of proposed legislation or with respect
> to other matters which the Constitution places within the
> jurisdiction of either House.

*Gravel v. United States*, 408 U.S. 606, 625 (1972).

8

The Supreme Court has "[w]ithout exception . . . read the Speech or Debate Clause broadly to effectuate its purposes," *Eastland*, 421 U.S. at 501, and stated unequivocally that when the privilege applies, it is "absolute." *Id.* at 501, 503, 509-10, 509 n.16; *Gravel*, 408 U.S. at 623 n.14; *Barr v. Matteo*, 360 U.S. 564, 569 (1959).

One of the protections provided to Members of Congress by the Speech or Debate Clause is an immunity from lawsuits for all "actions within the 'legislative sphere,' even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973) (quoting *Gravel*, 408 U.S. at 624-25).  This legislative immunity plainly extends to civil suits brought by private parties.  *See, e.g.*, *Eastland*, 421 U.S. 491 (dismissing suit to enjoin Senate committee subpoena in on-going investigation); *McMillan*, 412 U.S. 306 (dismissing as against House committee Members suit to enjoin preparation and publication of committee report); *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (dismissing as against Senate committee Members civil conspiracy claim relating to their receipt of documents); *Kilbourn v. Thompson*, 103 U.S. 168 (1880) (dismissing trespass action against House Members).

Accordingly, to the extent that Mr. Cohen claims that Congressman Waxman violated his First Amendment rights by failing to sponsor legislation or by failing to take other legislative action, that claim is barred absolutely by the Speech or Debate Clause.

**III.    All Claims Asserted Against Congressman Waxman Are Time-Barred.**

Because there is no federal statute of limitations for *Bivens* actions, state law determines the applicable period of limitations.  *See e.g., Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) ("*Bivens* action . . .

9

subject to the statute of limitations of the general personal injury statute in the state where the action arose"); *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985) (same). The same thing is true for claims brought under 42 U.S.C. § 1983. *Indus. Constructors Corp.*, 15 F.3d at 968.

The underlying incident took place in Congressman Waxman's Washington, D.C. congressional office and, therefore, D.C. law determines the applicable limitations period. In the District of Columbia, the statute of limitations for general personal injuries is three years. *See* D.C. Code § 12-301(8) (2001). *See also Bame v. Clark*, 466 F. Supp. 2d 105, 109 (D.D.C. 2006); *Lederman v. United States*, 131 F. Supp. 2d 46, 62 (D.D.C. 2001). And because the incident that gives rise to the Complaint is alleged to have taken place on November 25, 2003, Complaint at 4, which is more than years prior to the time Mr. Cohen filed his original complaint in this action on October 9, 2008, Mr. Cohen's claims plainly fall well outside the applicable period of limitations. Accordingly, they are time-barred.

## IV.   The Complaint Fails to State a Claim Against Congressman Waxman.

Finally, all claims asserted against Congressman Waxman also must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.   No First Amendment Claim Relating to Mr. Cohen's Efforts to Obtain Assistance from Congressman Waxman.

While *Bivens* recognized a cause of action for damages for "injuries consequent upon a violation of [the Fourth Amendment prohibition against unreasonable searches and seizures] by federal officials," 403 U.S. at 395, the Court has declined to recognize constitutional tort claims in a wholesale fashion; rather, the Court has recognized such claims in a context-specific manner. "For example, a *Bivens* action alleging a violation

10

of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others."  *FDIC v. Meyer*, 510 U.S. 471, 484 n. 9 (1994).  Notably, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context" since *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment).  *See Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *see also Wilkie v. Robbins*, 127 S. Ct. 2588, 2597 (2007) ("in most instances we have found a *Bivens* remedy unjustified"); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); *United States v. Stanley*, 483 U.S. 669, 683-84 (1987).

The Court has not recognized a *Bivens* action against legislators who allegedly fail to respond to constituents' concerns.  Indeed, the Supreme Court has specifically held that "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues. . . . [D]isapproval of officials' responsiveness . . . is to be registered principally at the polls."  *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984).  *See also Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 465-66 (1979) ("[T]he First Amendment does not impose any affirmative obligation on the government to listen [or] respond" and "all that the Commission has done in its challenged conduct is simply to ignore the union. That it is free to do."); *We the People Found., Inc. v. United States*, 485 F.3d 140, 144-45 (D.C. Cir. 2007) ("Executive and Legislative responses to and consideration of petitions are entrusted to the discretion of those Branches."), *cert. denied*, 128 S. Ct. 939 (2008); *Liverman v. Hyde*, No. 00-4022, 2000 WL 1028117, at *1 (10th Cir. July 26, 2000) ("the Constitution does not grant to members of the public generally a right to be heard by

11

public bodies making decisions of policy. . . . Absent statutory restrictions, the State must

be free to consult or not to consult whomever it pleases.") (quoting *Knight*, 465 U.S. at

283-85); *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988) (affirming district court's

dismissal of constituent claim that Congressman violated her civil rights by failing to

assist her; Congressman's "failure to assist [the plaintiff] was neither inappropriate nor

actionable."); *Herron v. Skelton*, No. 08-0531 (W.D. Mo. Jan. 22, 2009) (no First

Amendment violation when Member of Congress reported constituents to the I.R.S. for

announcing intention to not pay income taxes) (attached as Appendix 1); *Craft v.

McNulty*, 875 F. Supp. 121, 124 (N.D.N.Y. 1995) ("The fact that defendant has failed to

follow-up on the alleged wrongdoings of an Internal Revenue Service personnel is neither

inappropriate nor actionable under the laws."); *Adams v. Richardson*, 871 F. Supp. 43, 45

(D.D.C. 1994) ("Congressman Richardson's decisions on when and how to address his

constituents were well within his legislative discretion and are matters with which the

courts should not become enmeshed."); *McDonough v. Ney*, 599 F. Supp. 679, 683 (D.

Me. 1984) (plaintiffs "alleged no act of omission or commission by these Federal

defendants, except their failure to intervene, which was neither inappropriate nor

actionable."); *Hemmati v. United States*, 564 A.2d 739, 742 (D.C. 1989).

     *Hemmati* is particularly relevant here.  In that case, an Iranian citizen entered

Senator Byrd's congressional office and told a staff assistant he would like to see the

Senator.  Hemmati refused to disclose the purpose of his visit or to leave until he saw

Senator Byrd.  The staff called the Capitol Police which attempted to persuade Hemmati

to leave voluntarily.  When he refused, Senator Byrd's staff authorized the Capitol Police

to arrest him.  Hemmati argued that his arrest and subsequent conviction violated his

12

right under the First Amendment to petition the government for redress of grievances.

The D.C. Court of Appeals held that "Hemmati had no substantive right under the First

Amendment to see Senator Byrd personally or to remain in his office after being asked to

leave."  564 A.2d at 742.  "'Nothing in the First Amendment or in [the Supreme] Court's

case law interpreting it suggests that the rights to speak, associate, and petition require

government policymakers to listen or respond to individuals' communications on public

issues.' . . . We think the same can reasonably be said *a fortiori* about communications on

private issues, such as Mr. Hemmati sought to engage in with Senator Byrd."  *Id.*

(quoting *Knight*, 465 U.S. at 285).

This unwavering line of precedent conclusively forecloses Mr. Cohen's First

Amendment claim.

**B.      No Fourth and Fifth Amendment Claims Relating to Mr. Cohen's Arrest and Detention.**

Mr. Cohen's claim that his Fourth and Fifth Amendment rights were violated as a

result of his arrest and detention, appear to lie only against the Capitol Police and Fred

Bush since they are the ones alleged to have effectuated his arrest and detention.

Complaint at 4-5.  To the extent those claims lie against Congressman Waxman, they

appear to rest on some sort of conspiracy notion.  *Id.* at 5.

There is no general civil cause of action for conspiracy -- apart from 42 U.S.C. §

1985, which has specific limitations, and which does not apply here.  However, when

conspiracy is alleged, such conspiracy allegations are subject to a heightened pleading

requirement.  A conspiracy allegation is

> insufficient unless amplified by "specific instances of
> misconduct." . . . [It] must "(set) forth with certainty facts
> showing particularly what a defendant or defendants did to

13

> carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff."

*Lombard v. United States*, 530 F. Supp. 918, 923 (D.D.C. 1981) (quoting *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977), and *Hoffman v. Halden*, 268 F.2d 280, 295 (9th Cir. 1959)).[5] *Cf. Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (discussing pleadings requirements for conspiracy allegations under the Sherman Act); *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (conclusory allegations of conspiracy insufficient in context of § 1983 claim); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (same); *Juda v. Nerney*, Nos. 97-2192, 97-2326, 1998 WL 317474, at *8 (10th Cir. June 16, 1998) (same, *Bivens*).

Here, beyond a simple conclusory assertion that Mr. Bush "act[ed] … on direct instructions from" Congressman Waxman, Mr. Cohen has failed to allege any specific facts that support the conclusion that Congressman Waxman entered into any kind of agreement with the Capitol Police or Mr. Bush to wrongfully or maliciously arrest or detain Mr. Cohen. Since Mr. Cohen has not made any specific allegations, he has failed to state a claim under the Fourth and Fifth Amendments.[6]

---

[5] *See also Hawkins v. AT&T*, No. 90-0546, 1990 WL 174901 at *4 (D.D.C. Oct. 26,1990) (dismissing conspiracy claim as insufficiently precise); *Fleming v. District of Columbia*, No. 89-220, 1989 WL 207913 at *2-3 (D.D.C. Oct. 5, 1989) (same); *Bennett v. Stephens*, No. 88-2610, 1989 WL 17751 at *3 (D.D.C. Feb. 23, 1989) (same).

[6] In any event, it appears that objectively reasonable grounds to arrest Mr. Cohen existed since he admits to having overstayed his visa. Complaint at 19. *See* 8 U.S.C. § 1357(a)(1), (a)(2) (immigration officers and employees have the power to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States" and, without a warrant, "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation."). The Court may take judicial notice of the fact that U.S. Capitol Police officers do not report directly to individual Members of Congress. The U.S. Capitol

**C.     No First and Sixth Amendment Claim Relating to Mr. Cohen's Communications with Congressman Waxman.**

Mr. Cohen also appears to assert that Congressman Waxman violated a privilege under which he communicated with the Congressman, a privilege he alleges is "secured by the First and Sixth Amendments to the Constitution." Complaint at 19. "Plaintiff would never have communicated with the Congressman had he known this information would be used to arrest him." *Id.* However, there is no right -- constitutional, statutory or otherwise -- to confidential communications with a Member of Congress. While many Members, as a matter of good practice and good politics, generally treat communications with their constituents as confidential, no law requires them to do so. Accordingly, they may if they choose reveal the content of such communications.

Furthermore, Mr. Cohen's rights under the Sixth Amendment are limited to "criminal prosecutions." U.S. Const. amend. VI. His communications with Congressman Waxman and/or his staff are not alleged to have taken place in the context of a criminal prosecution (and, of course, they did not as a matter of fact).

Finally, the Supreme Court has never recognized a constitutional tort remedy under the Sixth Amendment, and we respectfully suggest that this Court should not do so here. *See generally Wilkie*, 127 S. Ct. at 2598 (decision to recognize *Bivens* remedy is two-step analysis: (i) "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing

---

Police are overseen by the Capitol Police Board. *See* 2 U.S.C.A. § 1901. The Capitol Police, like any other federal law enforcement officers, may inform the proper immigration authorities if it comes to their attention that an individual is in violation of the immigration laws. *See e.g. United States v. Santana-Garcia*, 264 F.3d 1188, 1193 (10th Cir. 2001) (admission of illegal status gives officer probable cause to arrest for suspected violation of federal immigration laws).

15

a new and freestanding remedy in damages;" and (ii) "'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'") (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). One of the "special factors" is the constitutional status of Members of Congress. Members "enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Carlson v. Green*, 446 U.S. 14, 19 (1980). *See also Vest v. Schafe*r, 757 P.2d 588, 596 and n.28 (Alaska S. Ct. 1988).

### D.      No Section 1983 Claim.

Although we are not certain, it appears that Mr. Cohen may have intended to assert a claim for violations of his civil rights under 42 U.S.C. § 1983. Complaint at 3. To the extent that he did so intend, Mr. Cohen again fails to state a claim as to Congressman Waxman. Section 1983 is limited to individuals acting "under color of any statute, ordinance, regulation, custom, or usage, of any State," and, accordingly, does not apply directly to federal officials, such as Members of Congress. *See Davis v. Passman*, 442 U.S. 228, 238 n.16 (1979). There are no *factual* allegations in the Complaint – nor could there be – which would support a legal conclusion that Congressman Waxman, a federal official, was acting under color of state law when he took the actions alleged in the Complaint.

### CONCLUSION

For all the foregoing reasons, Congressman Waxman's Motion to Dismiss with prejudice should be granted.

16

Respectfully submitted,


IRVIN B. NATHAN
General Counsel
KERRY W. KIRCHER
Deputy General Counsel
s/ Katherine E. McCarron
KATHERINE E. McCARRON
Assistant Counsel

Office of the General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Fax: (202) 226-1360
E-mail: Katherine.mccarron@mail.house.gov

Counsel for Congressman Henry A. Waxman

May 4, 2009

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Marcy E. Cook
Marcy.cook@usdoj.gov
Counsel for Defendant, the U.S. Capitol Police

William Emory
William_Emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 4th day of May, 2009, I have mailed or served the foregoing document to the following non-CM/ECF participant by first-class mail, postage prepaid:

Solomon Ben-Tov Cohen
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO 80010-1525

> s/ Katherine E. McCarron
> Katherine E. McCarron
> Assistant Counsel
> U.S. House of Representatives
> Office of the General Counsel
> 219 Cannon House Office Building
> Washington, D.C. 20515
> Telephone: (202) 225-9700
> Fax: (202) 226-1360
> E-mail: Katherine.mccarron@mail.house.gov
> Counsel for Congressman Henry A. Waxman

**Appendix 1**

*Cohen v. Waxman*, Civil Action No. 08-cv-02188-LTB-CBS (D. Colo.)

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RAY AND ELAINE HERRON,          )
                                )
          Plaintiff,            )
                                )
vs.                             )     No. 08-0531-CV-W-SOW
                                )
IKE SKELTON, Individually and in his    )
official capacity as a Member of the    )
United States House of Representatives,  )
                                )
          Defendant.            )

ORDER

Before the Court is defendant Ike Skelton's Motion to Dismiss for Lack of Jurisdiction

(Doc. # 4). In the above-captioned case, pro se plaintiffs Ray Herron and Elaine Herron ("the

Herrons") assert claims against defendant Congressman Ike Skelton, U.S. Representative for the

4th Congressional district of Missouri, for (1) violation of their First Amendment right to petition

for redress and (2) retaliation against plaintiffs as a result of their petition for redress.

Defendant Skelton moves the Court for dismissal of the above-captioned case *with*

prejudice for the following reasons: (1) the claims raised by plaintiffs must be dismissed for lack

of subject matter jurisdiction because plaintiffs lack standing to sue and defendant, as a United

States Congressman, is protected by the absolute Speech or Debate Clause privilege and by

qualified immunity; (2) the complaint must be dismissed for failure to state a claim upon which

relief may be granted; and (3) the relief sought by plaintiffs' Complaint is barred by the Anti-

Injunction Act, 26 U.S.C. 7421(a). For the reasons stated below, defendant's Motion to Dismiss

is granted.

After review of the pending Motion to Dismiss and plaintiffs' Response, the Court finds

that plaintiffs lack standing to sue. Because there is no right under the First Amendment to a response to a petition to the government, plaintiffs lack standing to sue because they have not suffered, nor shown, an injury in fact of a "legally protected interest." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Further, plaintiffs contend that the Speech or Debate Clause privilege does not bar this suit nor does it "prevent the Court from declaring the Rights of the Herrons and Skelton's obligations under the last ten words of the First Amendment." This contention, however, is incorrect. Article I, section 6, clause 1 of the U.S. Constitution, the Speech or Debate Clause, shields members of Congress from being sued over their legislative activities. Gravel v. United States, 408 U.S. 606, 624 (1972). To the extent that the plaintiffs' claims against defendant Skelton are based on any legislative acts that he did or did not take, or on the belief that defendant Skelton did not perform his legislative duties in a manner plaintiffs find satisfactory, these claims are barred by the Speech or Debate Clause privilege.

As stated earlier, it is well established that there is no right under the First Amendment to a response to a petition to the government. *See* Smith v. Ark. State Highway Employees, Local 1315, 441 U.S. 463, 465 (1979); Minn. State Bd. For Cmty. Colls. v. Knight, 465 U.S. 271, 285 (1984); We the People Foundation, Inc. v. United States, 485 F.3d 140, 144-45 (D.C. Cir. 2007). As a result, Congressman Skelton did not violate plaintiffs' First Amendment rights by failing to respond to their "Petitions for Redress," and this alleged failure certainly did not abrogate his qualified immunity, as alleged by plaintiffs. In response, plaintiffs fail to direct the Court to any legal precedent in support of their contention, except to say that defendant Skelton's refusal to provide specific answers to their "Petitions for Redress" is "repugnant to the common law as well as [the] spirit and letter of the Constitution." This is insufficient to survive an adequately supported motion to dismiss.

In their Complaint, plaintiffs allege that defendant Skelton retaliated against plaintiffs as a result of their petition for redress by referring them to the Internal Revenue Service ("IRS") and the Department of Justice ("DOJ"). To establish a First Amendment retaliation claim in the Eighth Circuit, plaintiffs must prove that (1) they were engaged in a protected activity; (2) Congressman Skelton's "adverse action . . . would chill a person of ordinary firmness from continuing the activity"; and (3) "the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)(citation omitted). The evidence shows that plaintiffs wrote to defendant Skelton on at least eight (8) separate occasions *after* he referred them to the IRS and DOJ on July 9, 2008. This is contrary to plaintiffs' claim that defendant Skelton's adverse action against them (referring them to the IRS and DOJ) "would chill a person of ordinary firmness from continuing in their exercise of First Amendment activity involving Petitioning Government for Redress of violations of the Constitution." Defendant Skelton's referral did not seem to chill plaintiffs' exercise of their First Amendment right to petition. Additionally, despite their arguments to the contrary, plaintiffs have consistently maintained that they have a right to withhold "support" from the Government (i.e. paying taxes) if they do not receive a response to their "Petitions for Redress." The record before the Court shows that defendant Skelton was justified in referring plaintiffs to the IRS and DOJ. The Court will not spend any additional time discussing plaintiffs' First Amendment retaliation claim as it is patently frivolous.

Accordingly, it is hereby

ORDERED that defendant Ike Skelton's Motion to Dismiss for Lack of Jurisdiction (Doc. # 4) is granted in its entirety. The above-captioned case is hereby dismissed *with prejudice*. It is further

ORDERED that the Clerk of the Court shall close this case and mail a copy of this Order

by United States First Class Service and by certified mail, return receipt requested, to the

following address:

> Ray and Elaine Herron
> 14655 TT Highway
> Warsaw, MO 65355

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated:   January 22, 2009

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB- CBS

SOLOMON BEN- TOV COHEN,

    Plaintiff

    v

REPRESENTATIVE HENRY A WAXMAN
United States Congress ,

US CAPITOL POLICE,

    and

FRED BUSCH, Agent US Capitol Police

    Defendants

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**AUG 1 2 2009**

GREGORY C. LANGHAM
CLERK

---

## REPLY TO THE U S CAPITOL POLICE'S MOTION TO DISMISS

---

Plaintiff, Solomon B Cohen pro- se opposes Defendant U S Capitol Police's Motion to Dismiss.

Plaintiff has no objection to Court ordering " a more definite statement" with respect to claims against the US Capitol Police. Plaintiff will comply.

**Policy at US Capitol Police**
US Capitol Police  open all Congressional mail.

1) A piece of Representaive Waxman's mail was "sold" to a used book seller- see Ex 4.

[2nd copy of book, Bulls Bear & Millionaires with handwritten dedication and private meesage to Representative Henry Waxman- sent May 2007 withinWashington DC.]

2) Three complaint forms despatched by Cathy Gardner at Office of Professional Responsibility to Plaintiff were never *mailed*.

There is sufficient evidence of cover- up, misdeeds by US Capitol Police as a whole in connection with civil rights violations by Defendant, Fred Busch.

Plaintiff should also be given opportunity to separate claim against US Capitol Police from *Bivens* claim to claim under Federal Tort Act should this be necessary.

Plaintiff, Solomon B Cohen pro- se respectfully asks the court to DENY the Motion to Dismiss filed by Defendant US Capitol Police at this time.


Respectfully submitted,

Date: **08/10/09**                         Signed: _____

                                            Solomon B Cohen MA(*Cantab*) pro-se

                                            Inmate # A0261647 Alien # 77 309 675
                                            El Paso County Jail, Criminal Justice Center
                                            2739 East Las Vegas Road
                                            Colorado Springs
                                            CO 80906

                                            Tel: (719) 390-2106


## CERTIFICATE OF SERVICE

I hereby certify that on this day of August, 2009, service of the attached document was effected by placing a true and correct copy of each of the same in the United States mail, first class postage prepaid, addressed to the following:


Counsel for Representative Henry A Waxman

Katharine E McCarron, Assistant Counsel
US House of Representatives
219 Cannon House Office Building
Washington
DC 20515


Counsel for United Sattes Capitol Police


Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202

Fred Busch
United States Postal Inspection Service
Boston Division
495 Summer St, Suite 600
Boston
MA 02210-2114


Date: _____
Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB- CBS

SOLOMON BEN- TOV COHEN,

    Plaintiff

    v

REPRESENTATIVE HENRY A WAXMAN
    United States Congress ,

US CAPITOL POLICE,

    and

FRED BUSCH, Agent US Capitol Police

    Defendants

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 2 2009

GREGORY C. LANGHAM
CLERK

---

## OPPOSITION TO HON HENRY A WAXMAN'S MOTION TO DISMISS

---

Plaintiff, Solomon B Cohen pro- se opposes Defendant Hon Henry A Waxman's Motion
to Dismiss  for the reasons set out below and also in the attached Memorandum.:-

**Jurisdiction**
Action was filed in this Court because Plaintiff is incarcerated within this Court's
jurisdiction purusant to an unlawful Arrest by Immigration & Customs Enforcement
arranged by the defendants.

Incarceration in the State of Colorado is the result of  ilegal seizure of Plaintiff in the
Congressman's office, ordered by the defendant and as such or as the result of 'Fruit of
the Poisonous Tree' is unlawful.

ICE have declared their intention to bring criminal charges against Plaintiff is this Court.

Colorado long arm statute comes down to due process argument. To the extent that Plaintiff is unable to successfully argue against Defendant's claim of lack of jurisdiction in the attached Memorandum, Plaintiff asks for Change of Venue to US District Court for the District of Columbia. Plaintiff will file a Motion if required.

Tortious Acts withtin State of Colorado
Furthermore, it has not yet been ascertained as to whether or not Plainitff's wrongful arrest by US Postal Inspector Steve Hodges in Denver, State of Colorado, is the result of direct and unlawful intervention by the defendants- Defendant Fred Busch, now employed by US Postal Inspection Services in Boston, MA.

**Time- Bar**
Plaintiff argues that this action is not time- barred.           *Hawby Bennett*

Plaintiff first became aware of his civil rights, existence of *Bivens* remedy doctrine of 'Fruit of the Poisonous Tree' when, after being declared Incompetent to Proceed, he attended classes by Dr Kelly at Colorado Mental Health Institute at Pueblo from November 19th 2007- March 31st 2008.

Result of defendants tortious acts continues in The State of Colorado.

**1st, 4th, 5th 14th Amendment violations**
Just for Petitioning for redress of a grievance- see Memorandum- Representative Henry Waxman, sued in *individual* capacity, asked US Capitol Police and Fred Busch to illegally seize him and, in violation of his civil rights, call ICE and have them take him into custody without warrant. Representative Waxman was under no obligation to listen to a grievance- agreed. However, a political arrest such as he personally ordered, it is alleged in 2nd amended complaint,  violated Plaintiff's civil rights.

---

Where is the letter from the Congressman telling the Plaintiff that Congressman declines to help or see him?

THERE IS NONE.

---

(Compare to Ex 6 filed with Action- letter from Senator John McCain to Darrison who was won.)

Defendants unlawful actions on November 25 2003 destroyed Plaintiff and his life for good.

Plaintiff asked for asylum from The English Crown. ICE breached asylum confidentiality. British diplomats came to Rappahannock Regional Jail and then informed The Queen.

In 2007 with Plaintiff residing opposite Supreme Court of the US, The English Crown by unlawful decision of Cayman Chief Justice cut off all support to Plaintiff from his money, froceing him onto the streets. He effectively confiscated all Plaintiff's assets ($20 Million).

Restriction on Removal is <u>mandatory</u> under statute.

Two members of Plaintiff's family are dead, since US Postal Inspector Hodges arrested him by warrant obtained by his perjury- charges dismissed.

Plaintiff has no hope of any kind of life without damages from this suit.

ICE superviusor Kevin Ritchie has told Plaintiff three weeks' ago that his $3,000 bond granted because of cancer IS valid, having never been revoked, and that Plaintiff should not have been held in custody.

Ritchie asid he aslo accepted that Plaintiff's original arrest may be barred as 'Fruit of Poisonous Tree'.

~~Motion for the Appointment of Counsel is attached~~.

Plaintiff, Solomon B Cohen pro- se respectfully asks the court to DENY the Motion to Dismiss filed by Defendant US Capitol PoliceCongressman Henry A Waxman IN FULL for reasons set out in accompanying Memorandum.


Respectfully submitted,


Date: **08/6/09**          Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se

Inmate # A0261647 Alien # 77 309 675
El Paso County Jail, Criminal Justice Center
2739 East Las Vegas Road
Colorado Springs
CO 80906

Tel: (719) 390-2106

**CERTIFICATE OF SERVICE**

I hereby certify that on this     day of August, 2009, service of the attached document was effected by placing a true and correct copy of each of the same in the United States mail, first class postage prepaid, addressed to the following:

Counsel for Representative Henry A Waxman

Katharine E McCarron, Assistant Counsel
US House of Representatives
219 Cannon House Office Building
Washington
DC 20515

Counsel for United Sattes Capitol Police

Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202

Fred Busch
United States Postal Inspection Service
Boston Division
495 Summer St, Suite 600
Boston
MA 02210-2114

Date: 08/10/09
Signed:

IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB-CBS

SOLMON BEN- TOV COHEN,

    Plaintiff

    v

CONGRESSMAN HENRY A WAXMAN
    US House of Representatives,

US CAPITOL POLICE,

    and

FRED BUSCH, Agent US Capitol Police

    Defendants

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 2 2009

GREGORY C. LANGHAM
CLERK

---

### MEMORANDUM IN SUPPORT OF MOTION OPPOSING DEFENDANT HON HENRY A WAXMAN'S MOTION TO DISMISS AND MEMORANDUM OF POINTS

---

Plaintiff, Solomon B Cohen pro- se hereby files this Memorandum in support of his Opposition to Defendant Hon Henry A Waxman's ( "The Congressman"- sued individually) Motion to Dismiss.

**There is no printer in the Law Library at El Paso County Jail.**

1

This had to be written using Wordpad and was printed as  favor (in the interests of Justice).
No page numbering, no paragraph numbering, no page breaks, no review before filing.

-NEXT PAGE-

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................... 3-8

FACTS..................................................................... 8 — 13
    Appointment requested for make investment     9
    Hedge Funds     9
    'King' Henry     11
    Witch Hunt    moved to 34     12
    Living opposite The Supreme Court of the United States     10
    REASON FOR ARREST

SUMMARY OF  ARGUMENT............................................. 13-15

ETHICAL CONSIDERATIONS............................................. 15

DESCRIPTION OF EXHIBITS.............................................. 16 - 18

ARGUMENT.................................................................. 19

I.    Personal Jurisdiction

2

II.   Subject Matter Jurisdiction

Change of Venue

III.   Alleged Time Bar

IV.   Alleged Failure to state a Claim

Illegal arrest

Organized Crime

Fruit of a Poisonous Tree

Statute of Limitations

State of Colorado

CONCLUSION......................................................................

ADDENDUM......................................................................

CITY OF WEST HOLLYWOOD   *moved to FACT -*   **9**

CERTIFICATE OF SERVICE.............................................   **35 - 36**

APPENDIX

EXHIBITS......................................................................   **36 - 37**

-NEXT PAGE-

## TABLE OF AUTHORITIES

(No ordering command on Word Pad)

**Federal and State Cases**

-3 -

*United States of America v Khan*
    324 F. Supp. 2d 1177  (D Colo, 2004)............................................ *14,*

*United States of America,  v  Olivares-Ranger,*
    458 F.3d 1104 (10th cir. 2006)............................................... *14*


*New York City Loft Board v Forty- Three East Equities Corp, Tekosky*
    (Civ Ct, NY County, 1996)................................................

*D'Agostino v  Forty- Three East Equities Corp, Tekosky*
    820 N.Y.S. 2d 268, (Civ Ct, NY County, 2006)..........................


*City of South Pasadena; Nat Trust for Historic Pres et al v Slater, California Dept of Transportation et al*
    56 F. Supp 2d 1095  (CDCA, 1999)....................................

           *TATLO    TEKOSKY*


*Bonds v Nicoletti Oil inc,*
    No. CV-F-07-1600 OWW/DLB, (EDCA, 2008)..........................


*People of the State of California et al v Kinder Morgan Energy Parts LP*
    569 F. Supp 2d 1073 (SDCA, 2008)...................................


*Freeport-McMoran Oil & Gas Co v Federal Energy Regulatory Commission*
    962 F.2d 45 (DC cir. 1992) ................................................... *15*


*Reid v U.S. Immigration and Naturalization Service,*
    949 F. 2d 287 (9th cir. 1991) ............................................... *15*


*Weise  v  Casper,*
    No. 05-cv-02355-WYD-CBS (D Colo, 2008)........................... *23,25*


*Oxion, Inc v O3 Zone Co., Inc.*
    No. 06-1385-JTM (D Kas, 2007).............................................. *25,26*


*Trintec Indus., Inc.,*
    395 F.3d at 1281................................................................ *25*

-6-

*Immigration and Naturalization Service v. Lopez-Mendoza,*
        468 U.S. 1032, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984)...............

*Bivens v. Six Unknown Named Agents,*
        403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)..................   **29**

**Dellums v Powell , 566 F.2d14( DC App Ct, 1977). - ..   28,29**
*Toms v Hantman,*
        530 F. Supp. 2d 188 (D D C, 2008)..........................................

*Nasious v. Two Unknown B.I.C.E. Agents,*
        492 F.3d 1158, (10th cir. 2007)....................................

*Nasious v Dept of Homeland Security, ICE, Jeff Copp, and President of the United States George W Bush,* No. 06-cv-00793-PSF-MEH (Dist Colo, 2006)
.....................................

*Hunt v Bennett,*                                                                **29**
        17 F.3d 1263, 1266 (10th Cir,1994).....................................

**Fratus v Deland ,49 F.3d 673,675  (10th Cr. 1995)**
*Kroll v United States Capitol Police,*
        590 F. Supp. 1282, 1286 (D C cir. 1983)....................................

*Kroll v. United States Capitol Police,*
        270 U.S. App. D.C. 136, 847 F.2d 899 (D.C. Cir. 1988) . . . . . . . . . . .

*Lederman v. United States,*
        2007 U.S. Dist. LEXIS 27521 (D.D.C., Apr. 13, 2007). . . . . . . . . . . . . .   **21**

*Saddler v D'Ambrosio, Saddler v United States of America,*
        759 F. Supp. 4, (D D C, 1990)  man beaten by police . . . . . . . . . . .

*Olaniyi v District of Columbia, et. al.,*
        416 F. Supp 2d 43 (D.D.C. 2006)........................................

*Taylor v United States Capitol Police et al.*
        No. 90-3014 (JHG) (D D C, 1991) . . . . . . . . . . . . . . . . . . . .

*A.N.S.W.E.R. Coalition v. Kempthorne*
        493 F. Supp. 2d 34,  (D.D.C., 2007) . . . . . . . . . . . . . .

- 5 -

*A.N.S.W.E.R. Coalition v. Kempthorne*
    537 F. Supp. 2d 183, (D.D.C., 2007)


*Scheidt v Klein,*
    956 F.2d 963  (10th cir. 1992) ...................................


*INS v Stevic,*
    467 U.S. 407, 429-30, 104 S. Ct. 2489, 81 L. Ed. 2d 321 (1984).......


*Boumiediene v George W Bush, US et al,*
    553 US _, 128 S Ct _, 171 L Ed 2d 41, 2007.............................   **11**


## Constitutional Provisions

U.S. Const Art. I, § 6, cl 2.....................................................   **27,28**


## Statutes and Rules

8 U.S.C. § 1357(a)(2)......................................................   **14**


28 U.S.C. § 1331..........................................................   **21,30**


28 U.S.C. § 1343..........................................................


8 U.S.C. § 1231 (c) (2) (A)(ii) ...........................................


28 U.S.C. § 1391..........................................................   **26**

2 U.S.C. § 1961, 1966, 1967.............................................   **31**


40 U.S.C. § 8103.........................................................   **33**

8 C.F.R. § 208.6.................................................................

Federal Rule Civil Procedure 4 (k) (2) ............................................  *21*

2 U.S.C. § 1966 (formerly 40 USCS § 212a-3) .................................  *31*

2 U.S.C. § 1967..............................................................  *31*

28 U.S.C. § 1331 ............................................................  *30*

28 U.S.C. § 1391 *et seq* .......................................................

28 U.S.C.§ 1404..............................................................  *27*

28 U.S.C. § 1406..............................................................  *27*

**Publications**
*Barrons/ Dow Jones Newservice*
Art by Jaye Scholls Pub 01/27/96 and 01/29/96

*Financial Trader* magazine pub New York, NY, 1996

*Bulls Bears & Millionaires*:, book, Author: Robert Koppel, Pub Dearborn ISBN 0-7931-2393-3

*How to beat paying Parking Tickets Legally*, book, Authors Len Gleich, Joanne Sandler and Katz ISBN 0-9630620-1-8.

**Movies**
'Three Sovereigns for Sarah' (Venessa Redrave)     - witch hunt

'The Firm' (Tom Cruise)                            - Cayman

'Cruising' (Al Pacino)                             -filmed at The Mineshaft

        - Lawyer who got license for The Mineshaft only lawyer who would appear in New York     Landlord Tenant Court against Tekosky

'Enemy of the State'    (Will Smith)

'DIVA'

**Other**

- 7 -

*'Lions of Lucerne'* by Brad Thor
ISBN 0-7434-3674-1

*'The Senator'* by John Gotti's daughter

---

## FACTS

### Relatives, friends and acquaintances who are constituents

Yaffa Gross (mother's cousin) 423 N Formosa; David Geffen (Dreamworks SKG); Rich Campbell (owner- Atlantis Events); David Cooley (owner -The Abbey); John and John Berilovits (owners- Hybrid); *and many others.*

Grandfather's family live in Orange County, CA. Mother's maiden name: ACCO.

### Arrest at US Marine Base Camp Pendleton CA and non- extradictable warrant

Plaintiff is not guilty. San Clemente Police prevented him from reaching court via 2nd false arrest as he was walking outside Marriott for failing to provide urine specimen (officers claimed California law this allows police to charge person with drug possession-blood test negative).

### Landlords in New York City, New York stole Plaintiff's passport

- see Reason for Arrest below

### Ally Bolour, Immigration Attorney

Los Angeles Gay & Lesbian Center's 2003 Report and Accounts list Plaintiff's name as a charitable donor.

Ally Bolour (real name ALI Bolour, from Iran) is their Immigration Counsel. Plaintiff saw the attonry privately in his office, paid $1,000 by check. Bolour failed to do *anything* within 90 day.

8

*without*

**"It is illegal for us to represent you ~~with~~ a letter from a Congressman"**

Asherson Darbinian & Klein- Neville Asherson, Beverly Hills, CA

Holland & Hart - Michael MacPhail, Denver, Colorado

Both firms stated this in connection with I- 140 Petition.


Private Bill is not necessary. Letter of support would have sufficed.

However, Plaintiff was ready to pay $200,000 in expenses.


## REQUEST FOR APPOINTMENT WITH THE CONGRESSMAN

### City of West Hollywood

Gay, politically- independent CITY OF WEST HOLLYWOOD, which is located in the heart of the Defendant Congressman Henry A Waxman's ("the Congressman") constituency.


[The United States is the largest and only English- speaking democracy of circumcised males in the world.]


### Hedge Funds

There are two centers of hedge fund investment advisors in the US:

- 240 Park Ave, New York City, NY

- Newport Beach, California

Plaintiff requested an appointment to discuss making an investment of $1M+ creating jobs in California.

[California has among highest unemployment in the US 11%.]

C K Partners Inc, Federal ID No 13- 3768612, NYS S corp , named in *Barrons* etc provided full- time employment for 3 US citizens as well Plaintiff.


9

Plaintiff is acknowledge as one of the top traders/ hedge fund investment advisors in the US

- , *Barrons/ Dow Jones Newservice,* Art by Jaye Scholls Pub 01/27/96 and 01/29/96, *Financial Trader* magazine pub New York, NY, 1996, chpater Four 'Solmon's Mind'- *Bulls Bears & Millionaires:*, book, Author: Robert Koppel, Pub Dearborn ISBN 0-7931-2393-3.

There are an estimated $2.7$ **Million** illegal immigrants in California, costing state an estimated $4-6 Billion a year (source: The Denver Post, 2009).

California is bankrupt, and cannot pay its bills, unemployment is among highest in the US, 11%.

**Reason for Arrest**

Busch told Plaintiff:

" You complained in your letter/ emails to the Congressman [Rep Henry Waxman], that because of letter sent to Ray Tekosky by New York City Loft Board" -

- see Ex 1-

"your landlords [Ray Tekosky and Len Gleich both living in the building], became angry,  stole your passport containing your H1- B, and illegal evicted him by threat of violence, that they were members of The Mob, that [Plaintiff signed and moved out but], as a result, needed a letter from the Congressman to get your Green Card."

Busch told Plaintiff that Henry Waxman was afraid of aliening The Mob by helping to reverse the rouble they had caused.

Busch tried to make the Plaintiff feel *guilty:*

Busch: " You endangered the Congressman".

Meaning perhaps,  "you endangered campaign contributions [from The Mob to] ...the Congressman."

**Plaintiff:** Why did you just tell me not to come?

**Busch:** I tried to reach you [to let you know the Comgressman did not want to get involved],    but the Hotel Bel Air told me you were no longer staying there.

**Plaintiff:** You could have emailed me...

**Busch** (*after a pause*): I was not going to give you my email address [by emailing you]!

Busch then said he would drop the charge (of making threats against a Congressman).

Only to pull a really dirty trick....of handing Plaintiff to Immigration.

There must be a tape.

The Congressman ordered Busch to do something unlawful.

**'King' Henry and his House**

Under Henry II and the House of Plantagenet, there was no Writ of *Habeas Corpus*.

Henry kept his Queen in prison for 16 years.

In 1215, the English Barons forced Henry's son, Prince John, to sign MAGNA CARTA, creating the writ.

Previously, Henry, in 1176 created the *justiciarii itinerantes*- Circuit Judges.

In 1997, Congress appear to have enacted unconstitutional legislation limiting the powers of Immigration Judges, violating Magna Carta/ Habeas Corpus and Federal Common Law and its codified form, the US Constitution, by taking away right upheld by Board of Immigration Appeal's ruling in *Matter of Gallardo,* 21 I&N Dec 210 (BIA 1995).

[In *Boumiediene v George W Bush, US et al,* 128 S Ct _, 2007, as in every case that comes before the Supreme Court of the United States including Hon Justice Scalia's dissent, cases are decided according to Common Law of England which *is* the Common law of the United States
(Federal Common Law including Law of Torts)].

ll

## FEDERAL BUREAU OF INVESTIGATION

### Victim of Illegal Eviction/ Landlord Threats

Other than than a letter from a Congressman, F.B.I. would have to certify to the US Attorney General that Plaintiff is a victim of the above- this would be grounds to restore his prior status.

Of U1 visa applications, fewer than 1% have been processed, according to Government figures.

## WASHINGTON DC

After his arrest, Plaintiff requested asylum from The Queen (officially).

ICE's negligence resulted in breach of asylum confidentiality protected by 8 C .R. F. § 208.6.

### Methamphetamine

Plaintiff's last prescription was filled at CVS Pharmacy, Dupont Circle, NW.

Plaintiff was obliged to reisde in Washington DC to be close to Arlington Immigration Court, VA.

### Living opposite US Supreme Court

Plaintiff's $6,000 a month rent was paid on orders of Cayman Chief Justice directly to:-

1710 H St NW

1602 19th St NW

11 2nd St NE  - paid to www.capitolhillstay.com

In Febraury 2007, in a shock decision Ex **7** , Chief Justice terminated all payments out of Plaintiff's money (reatliation ordered by The English Crown), leaving Plaintiff at the mercy of the US Attorney General for discretionary grant of asylum.

12

**Dr Bowers- dentist on North Capitol**

He treated Plaintiff, paid by PricewaterhouseCoopers, referred Plainitiff to Dr Goodman for root canals and crown. Caymn reneged on payment.

PricewaterhouseCoopers has committed fraud- Ex 8.

**Congressman's mail is 'sold'**

2nd copy of Bulls Bear & Millioniares with hand- written dedication and private message to Congressman ends up with book sell **er**

see ex 4.

## SUMMARY OF ARGUMENT/ ISSUES RAISED

**Where is the letter from the Congressman telling the Plaintiff that Congressman declines to help or see him?***

There isn't one.

*Compare to Ex 6 Amended Complaint- letter from Senator John McCain to Darrison Orung (who has won.)

**1st Amendment**

Your cannot plot someone's wrongful arrest over request for help or petitioning over a grievance
- letter from New York City Loft Board - see Ex 1- destroyed Plaintiff's life

Representative Waxman was under no obligation to listen to a grievance, agree to an appointment or to help.

Busch prevented Plainitiff from leaving and from poroceedings to Rep Barney Frank's office.

**The Congressman's Memorandum page 14- 8 U.S.C. § 1357**

Plaintiff's wrongful arrest in the Congressman's office and calling ICE to ICE arrest Plaintiff in the absence of a warrant, all on The Congressman's orders, both violated Plaintiff's Fourth Amendment right.

In *United States of America v Khan,* 324 F. Supp. 2d 1177 (D Colo, 2004). this Court ruled:

"[I] conclude Khan's arrest was in violation of 8 U.S.C. § 1357(a)(2), and Khan was seized in violation of his Fourth Amendment right to be secure in his person against unreasonable seizures."

A wrongful *political* arrest such as Representative Henry Waxman personally ordered violated DC law, statute and 1st, 4th, 5th, 14th Amendments to the US Constitution.

Congressman Henry Waxman ordered his staff to lure Plaintiff to his office with offer of an appointment (turned out to Yom Kippur, 2003 and was declined) in order for Plaintiff to be unlawfully seized and hnaded to ICE, thereby eliminating him and his "grievance".

Under DC law, as shown by case cited in Defendant's Memorandum of Points nad Authorities, *Hemmati*, USCP cannot arrest someone in Congressman's office unless they refuse to leave.

**Personal Jurisdiction:**
Web- site confers jurisdiction under Congressman.

Congressman has links with State of New Mexico, State of Colorado

ColoradoCongressman is sued individually not in offical capacity.

Any immunity can be lifted by Vote in the House.

In the alternative, Change of Venue appropriate.

**Illegal Arrest**
Fruit of a Poisonous Tree  *(United States of America v  Khan)* violation of DC law, violation of Statute applicable to arrest in buildings under statutory United States Capitol Police jurisdiction, no intention to commit crime, arrest on false charges.

**Statute of Limitations**
Competency restoration. Dr Sean Kelly (CMHIP) will testify.

———————————

14

## ETHICAL CONSIDERATIONS

"[C]ounsel for the government has an interest only in the law being observed, not in victory or defeat in any particular litigation. *Reid v U.S. Immigration and Naturalization Service,* 949 F. 2d 287 (9th cir 1991).

*In Freeport-McMoran Oil & Gas Company v Federal Energy Regulatory Commission,*

"[a] government lawyer has obligations that might sometimes trump the desire to pound an opponent into submission." *Freeport-McMoran Oil & Gas Company v Federal Energy Regulatory Commission,* 962 F.2d 45 (DC cir 1992).

Court held "[A] government lawyer "is the representative not of an ordinary party to a controversy," the Supreme Court said long ago in a statement chiseled on the walls of the Justice Department, "but of a sovereignty whose obligation . . . is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935). The Supreme Court was speaking of government prosecutors, but no one, to our knowledge (at least prior to oral argument) has suggested that the principle does not apply with equal force to the government's civil lawyers. In fact, the American Bar Association's Model Code of Professional Responsibility expressly holds a "government lawyer in a civil action or administrative proceeding" to higher standards than private lawyers, stating that government lawyers have "the responsibility to seek justice," and "should refrain from instituting or continuing litigation that is obviously unfair." Model Code of Professional Responsibility EC 7-14 (1981).

"[T]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. *Berger v. United States,* 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935).

Government lawyers, we have no doubt, should also refrain from continuing litigation that is obviously pointless, that could easily be resolved, and that wastes Court time and taxpayer money. "The United States," as President Bush stated in an Executive Order, "sets an example for private litigation by adhering to higher standards that those required by the rules of procedure in the conduct of Government litigation in Federal court."

15

Executive Order on Civil Justice Reform, 27 Weekly Comp. Pres. Doc. 1485 (October 23, 1991).

## DESCRIPTION OF EXHIBITS

EXHIBIT 1

Letter dated August 4, 1999, From Jeanette Arlin Koster, Executive Director, New York City Loft Board

Re: 43 E 20th Street, 2nd floor

Dear Mr Cohen:

I am in receipt of your letter...The letter sent to you by the Loft Board on Novermber 4, 1998 is a form notice...

I NOTE THAT THE LOFT BOARD'S COMPUTER DATABASE SHOWS THAT THE SECOND FLOOR UNIT OF 43 EAST 20TH STREET IS STILL A RENT-REGULATED UNIT.

A copy of this letter is being sent to the owner of record.....

Very truly yours,

Jeannette Arlin Koster

cc   RAYMOND TEKOSKY
     Forty-Three East Equities Corp
     43 E20th Street, 7th floor      (should say 4th floor)
     New York, New York 10003

## EXHIBIT 3

Page 1

From I-213 issued by Cindy Yang, "Special Agent" ICE November 26th 2003.

**"Social Security No:** 059- 84- XXXX.      **Date/ Hour:** 11/25/2003 0000

16

"SUBJECT has entered the US on dozens of occasions.

Page 2:

"Subject has recently been living at NYC at 43 East 20th Street 2nd floor.

.....conspiracy aimed at taking away $5 million of SUBJECT'S funds.

A cursory review of SUBJECT's emails and letters indicated that SUBJECT also believed New York mafia was involved in harrassing him."

EXHIBIT **2**

Subj: Re: 43 E20th
Date   9/17/99 4:02:55 PM Eastern Daylight Time
From:  LGleich999
To:    Cohensb1
CC     rtekos@concent.net

SOLOMON

I received your E-mail with the Kol Nidre, I was a litlle disappointed.

[It was from an old 78 rpm, a collector's item, sung by Cantor Sirota who died in Auschwitz.]

It could have been more stirring. This version did not evoke the emotional feeling that usually happens when I hear it.

[He's a psychopath.]

As you know we are not renewing your lease and you are to vacate on or before September 30.

You will need to have the Moving Company provide us with insurance cerificate naming

17

Forty- Three East Equitties Corp as Certificate Holder and also Additional Insured.


Regards, Lenny

*Plaintiff's head-mover was arrested do as he showed up — UNPAID PARKING TICKETS*

EXHIBIT ~~4~~ 6

*How to beat paying Parking Tickets Legally*, book, Authors Len Gleich, Joanne Sandler
and Katz ISBN 0-9630620-1-8.

*wife of Ray Tehosky?*

EXHIBIT ~~8~~ 4


"October 6, 2008

RE: Bulls, Bears & Millionaires

Dear Mr Cohen

I reeived your letter today and hope that I can answer your question as to where I got this
particular book. I purschase my books from the United Sattes Post Office auctions in
Atlanta, GA every month.

The books that I buy are books that have been lost in the mail and are sent to Atlanta
facility from all over the United States. I bid on large containers of books and buy sight
unseen.

s/Daphne Gwyn
Berkeley Books
dygwyn@comcast.net"



EXHIBIT 5

Envelope  (copy) Look at the state of this envelope, delivered after 3 months.


EXHIBIT 7    Email received whilst living Opposite Supreme Court of US, Washington
DC

EXHIBIT 8    ~~Affidavit by US Postal Inspector~~   *MATTER OF GAZELLE GRAND COURT, CAYMAN*

EXHIBIT 9 — Plaintiff

## ARGUMENT

## REASON FOR PLAINTIFF'S ARREST

In his office, Capitol Police officer Fred Busch explained to the Plaintiff that the Congressman had links to The Mob (La Causa Nostra), that Plaintiff should not not have written to the Congressman that Plaintiff's former landlords members of The Mob, had stolen Plaintiff's passport containing his work visa, threatened to kill him over letter Ray Tekosky received from New York City Loft Baord
EXHIBIT 1 Letter dated August 4, 1999, From Jeanette Arlin Koster, Executive Director, New York City Loft Board, that stated:

"Re: 43 E 20th Street, 2nd floor

Dear Mr Cohen:

I am in receipt of your letter...The letter sent to you by the Loft Board on Novermber 4, 1998 is a form notice...

I NOTE THAT THE LOFT BOARD'S COMPUTER DATABASE SHOWS THAT THE SECOND FLOOR UNIT OF 43 EAST 20TH STREET IS STILL A RENT-REGULATED UNIT.

A copy of this letter is being sent to the owner of record.....

Very truly yours,

19

Jeannette Arlin Koster

cc    RAYMOND TEKOSKY
      Forty-Three East Equities Corp
      43 E20th Street, 7th floor      (should say 4th floor)
      New York, New York 10003"

Plaintiff did not know that Tekosky influence extended into the Congressman's district: law firm, Tatro Tekosky Sadwick LLP.

Plaintiff was very understanding and replied:

Plaintiff: Why didn't you just email me and tell me not to come?

After a pause,

Busch: I wasn't going to give you my email address.

Busch then said he would drop the (false) charge against Plaintiff.

**Fruit of a Poisonous Tree**                                *4th Amend*

Having Cindy Young/ ICE come and arrest Plaintiff violated DC law, civil rights and doctrine of Fruit of a poisonous tree.

Why not have Plaintiff arrested in Congressman's office?

Courts have overturned arrests by ICE that were carried out by "kafkaesque' methods such as telling people they had received Green Cards and inviting them to INS offices only to arrest them.

Busch told Plaintiff that his email "endangered the Congressman".

Wrongful arrest has destroyed Plaintiff's life and that of his parents.

Plaintiff is a penniless refugee whose removal to the UK/ EC/ Commonwealth is prohibited by statute.

As a result of ICE negiligence and Plainitff's wrongful arrest in Office of Represntaive Henry Waxman, The Queen of England was informed by British diplomats in DC that Plaintiff was asking for asylum over her illegally ordering Plaintiff's arrest (probably for the very same reason) because ICE breached Aylum confidentiality in violation of 8

C.F.R. § 208.6, shortly after Plaintiff's arrest.

The flaw in ICE procedures that resulted in this violation of confidentiality is explained in ~~Exhibit 7 Opening Brief~~, Cohen v Holder Jr Case No 09- 9519, 10th Circuit Court of Appeals.

## Motion to Dismiss

*Lederman v. United States*, 2007 U.S. Dist. LEXIS 27521 (D.D.C., Apr. 13, 2007) [A] motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The complaint must be construed in the light most favorable to the plaintiff and a "court must assume the truth of all well-pleaded allegations." *Warren v. Dist. of Columbia*, 359 U.S. App. D.C. 179, 353 F.3d 36, 39 (D.C. Cir. 2004).

## I.        Personal Jurisdiction

28 U.S.C. § 1331.
Federal question
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## I.        This Court personal jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction, although at the preliminary    stages of the litigation this burden is light.

## Federal Rule Civil Procedure 4 (k) (2)

(k) Territorial Limits of Effective Service.
(2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
(B) exercising jurisdiction is consistent with the United States Constitution and laws.

ALLISON v WISE et al
No. 07-cv-00143-REB-PAC (Dist Colo, 2007)

21

The assumption of personal jurisdiction over a non-resident defendant on the basis of either a federal statute that does not authorize nationwide service of process 1 or diversity of citizenship involves a two-step inquiry.

First, the defendant must be amenable to service of process under the forum state's long-arm statute. See Wenz v. Memery Crystal, 55 F.3d 1503, 1506-07(10th Cir. 1995); Dart International, Inc. v. Interactive Target Systems, Inc., 877 F.Supp. 541, 543 (D. Colo. 1995).

Second, the exercise of jurisdiction must comport with due process. Wenz, 55 F.3d at 1507; Custom Vinyl Compounding Inc. v. Bushart & Associates, Inc., 810 F.Supp. 285, 287 (D. Colo. 1992).

Because the Colorado long-arm statute extends personal jurisdiction within the state as far as the federal constitutional requirements of due process permit, Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1270 (Colo. 2002), the analysis collapses into a single inquiry as to whether the requirements of due process are satisfied.

Due process for jurisdictional purposes consists of two elements. First, the defendant must have sufficient "minimum contacts" with the forum state. International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 455 (10th Cir. 1996). "Minimum contacts" may be analyzed in terms of specific jurisdiction or general jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984); Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996). Specific jurisdiction exists when the defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985); Kuenzle, 102 F.3d at 455. General jurisdiction is proper when the defendant has other "continuous and systematic" contacts with the forum, even if those contacts are unrelated to the pending litigation. Helicopteros Nacionales de Colombia, 104 S. Ct. at 1872; Trierweiler, 90 F.3d at 1533.

Second, if sufficient minimum contacts exist, I must determine then whether the exercise of personal jurisdiction over the non-resident defendant "would comport with 'fair play and substantial justice.'" Burger King Corp., 105 S. Ct. at 2184. Stated differently, I must determine whether assuming personal jurisdiction over the defendant is "'reasonable' in light of the circumstances surrounding the case." OMI Holdings, Inc. v. Royal Insurance Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). Factors relevant to that analysis include, (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.Trujillo v. Williams, 465 F.3d 1210, 1221 (10th Cir. 2006) (quoting Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1279-80 (10th Cir. 2005)). "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id. (quoting Pro Axess, 428 F.3d at 1280).

22

The Court "must initially determine whether the exercise of jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of state law, . . . and then determine whether the exercise of jurisdiction comports with the due process requirements of the Constitution." Id. at 1506-07. Because Colorado's long-arm statute has been construed by the Colorado Supreme Court as allowing personal jurisdiction to the full extent permitted under federal law, Safari Outfitters, Inc. v. Superior Ct., 167 Colo. 456, 448 P.2d 783, 784 (Colo.1968), "[the court's] analysis collapses into a single inquiry, whether the exercise of personal jurisdiction over [the defendant] comports with due process." Nat. Business Brokers, Ltd. v. Jim Williamson Prods., Inc., 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), aff'd, 16 Fed. Appx. 959 (10th Cir. 2001).

"we ask whether the court's 'exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.'" Id. (quotation and internal quotation marks omitted). "This question turns on whether the exercise of personal jurisdiction is 'reasonable' under the circumstances of a given case." Id. (quotation omitted).

WEISE v CASPER
      Civil Action No. 05-cv-02355-WYD-CBS (10th cir, CO, 2008)

"[The Court must engage in a two-step analysis in determining whether the exercise of personal     jurisdiction is appropriate. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1507 (10th Cir. 1995).     The Court "must initially determine whether the exercise of jurisdiction is sanctioned by the     Colorado long-arm statute, which is a question of state law, . . . and then determine whether the     exercise of jurisdiction comports with the due process requirements of the Constitution." Id. at     1506-07. Federal circuit law applies in this case to resolve the issue of personal jurisdiction. See Deprenyl Animal Health, Inc. v. U. of Toronto Innovations Found., 297 F.3d 1343, 1348 (Fed. Cir. 2002). Typically, a court can exercise personal jurisdiction when the requirements of the forum state's long-arm statute and the requirements of the Constitution have both been satisfied. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990).

*Weise v Casper* No. 05-cv-02355-WYD-CBS (D Colo, 2008)., this Court held:

### A.      The Colorado Long Arm Statute

     In *Weise v Casper* No. 05-cv-02355-WYD-CBS (D Colo, 2008)., this Court held:

     "[B]ecause Colorado's long-arm statute has been construed by the

23

Colorado Supreme Court as allowing personal jurisdiction to the full extent permitted under federal law, *Safari Outfitters, Inc. v. Superior Ct.*, 167 Colo. 456, 448 P.2d 783, 784 (Colo.1968), "[the court's]analysis collapses into a single inquiry, whether the exercise of personal jurisdiction over the defendant] comports with due process." *Nat. Business Brokers, Ltd. v. Jim Williamson Prods., Inc.,* 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), aff'd, 16 Fed. Appx. 959 (10th Cir. 2001)."

Waxman's role in House of Representatives and as Chair of various committees affects the State of Colorado means General Jurisdiction.

### B. Due Process

In Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996), 10th Circuit has held, citing Supreme Court of the United States decision in *International Shoe Co. v. Washington* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The International Shoe minimum contacts standard may be met in either of two ways. Specific jurisdiction, based on a matter occurring in the forum state, exists when the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. General jurisdiction lies when the defendant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state. In either case, the court must see to it that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

In either case, the court must see to it that the exercise of jurisdiction "'does not offend traditional notions of fair play and substantial justice.'" World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) (quoting International Shoe, 326 U.S. at 316) (further quotation omitted).

The "minimum contacts" requirement of due process may be met in two ways, through showing the existence of either specific jurisdiction or general jurisdiction. Trierweiler, 90 F.3d at 1532.

*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir.

24

2000).

Under general jurisdiction, a nonresident defendant may be subject to a state's jurisdiction even when the alleged injury is not related to the defendant's contacts with the forum state, as long as the unrelated contacts are continuous and systematic enough that the defendant could reasonably anticipate being haled into court in that forum.

Page 5 Motion to Dismiss (doc 25) Waxman has web- site
http://www.henrywaxman.house.gov.

Plaintiff argues that under *Oxion, Inc v O3 Zone Co., Inc.,* No. 06-1385-JTM (Dist KAS,   2007), this is is sufficient for court to excercise.

"[T]he Tenth Circuit Court recognized that there is some disagreement among states as            to their         willingness to exercise personal jurisdiction over out-of-state defendants "

"The Federal Circuit Court has not directly addressed whether a website alone is             enough for a court to exercise personal jurisdiction. *Trintec Indus., Inc.,* 395 F.3d at           1281   (comparing recent District of Columbia Circuit cases and finding that a "highly            interactive, transaction-oriented website" may support long-arm jurisdiction while other            times something more than the website is required). "

"Where . . . there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."

In *Weise  v  Casper, No.  05-cv-02355-WYD-CBS (D Colo, 2008),*

"[T]he Court "must initially determine whether the exercise of jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of state law, . . . and then determine whether the exercise of jurisdiction comports with the due process requirements of the Constitution." Id. at 1506-07. Because Colorado's long-arm statute has been construed by the Colorado Supreme Court as allowing personal jurisdiction to the full extent permitted under federal law, Safari Outfitters, Inc. v. Superior Ct., 167 Colo. 456, 448 P.2d 783, 784 (Colo.1968), "[the court's] analysis collapses into a single inquiry, whether the

25

exercise of personal jurisdiction over [the defendant] comports with due process." Nat. Business Brokers, Ltd. v. Jim Williamson Prods., Inc., 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), aff'd, 16 Fed. Appx. 959 (10th Cir. 2001)."

*Oxion, Inc v O3 Zone Co., Inc.*
No. 06-1385-JTM (Dist KAS, 2007)

"[T]he Tenth Circuit Court recognized that there is some disagreement among states as to their willingness to exercise personal jurisdiction over out-of-state defendants "

"The Federal Circuit Court has not directly addressed whether a website alone is enough for a court to exercise personal jurisdiction. Trintec Indus., Inc., 395 F.3d at 1281 (comparing recent District of Columbia Circuit cases and finding that a "highly interactive, transaction-oriented website" may support long-arm jurisdiction while other times something more than the website is required). "

To the extent that Defendant's Motion may be construed as request to transfer this Action to US District Court for the Distirct of Columbia or Supreme Court of the United States, Plaintiff has no obejctions.

28 U.S.C. § 1391.  Venue generally

a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which  any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.
The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

28 U.S.C. § 1406.   Cure or waiver of defects

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C.§ 1404.   Change of venueText(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"Plaintiff's choice [of forum] is also given considerable weight." *Scheidt v Klein,*
956 F.2d 963  (10th cir 1992) quoting *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 567 (10th Cir. 1978)

A court must give great weight to plaintiff's choice of forum. KCJ Corp. v. Kinetic Concepts, Inc., 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998). Unless the balance strongly favors the movant, plaintiff's forum choice should rarely be disturbed. Scheidt, 956 F.2d at 965. "Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." Id. at 966. In exercising its discretion, "the Court must 'adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Chrysler, 928 F.2d at 1516 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)).

II.     Subject Matter Jurisdiction

**II. Congressman not immune from suit**

Congressman sued in an individual capacity.

Nothing to do with Speech and Debate or legislation.

"[1]9. Privilege from arrest Senator's immunity from arrest, under Art. I, § 6, cl. 1, does not include immunity from service of process. *Long v Ansell* (1934) 293 US 76, 79 L Ed 208, 55 S Ct 21

**27**

Constitutional privilege from arrest exempted U.S. Representative from arrest and nothing more, but did not preclude attachment of his bank account as means of obtaining satisfaction of out-of-state judgment in action of debt. *Howard v Citizens' Bank & Trust Co.* (1898) 12 App DC 222
Term "arrest," as used in Art. I, § 6, cl. 1, connotes physical restraint not involved in mere service of summons in civil suit. *Carl v Ferrell* (1940) 71 App DC 296, 109 F.2d 351, cert den (1940) 310 US 636, 84 L Ed 1405, 60 S Ct 1079 "

### Speech & Debate Immunity
The Speech or Debate Clause, U.S. Const. art. I, § 6, provides immunity for all conduct by a member of Congress that consists of core legislative acts, such as speaking, debating, voting, and similar activities undertaken in chambers or in committee.

The Supreme Court has explained that the Speech or Debate Clause provides immunity for all conduct by a Member of Congress ("Member") that consists of core legislative acts, such as speaking, debating, voting, and similar activities undertaken in chambers or in committee. See United States v. Brewster, 408 U.S. 501, 526, 92 S. Ct. 2531, 33 L. Ed. 2d 507 (1972).

The Supreme Court reiterated in *Saucier v. Katz*, 533 U.S. 194, 200-01, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001) that courts should use a two-step process in ruling on qualified immunity. First, the Court must consider whether the facts alleged, taken in the light most favorable to Plaintiffs, show that Defendants' conduct violated a constitutional right. See id. at 201. "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001).

It was a political arrest.

*Bivens was extended to cover 1st Amendment Dellums v Powell (US Cop.M Police chief) 566 F.2d (DC App Ct, 1977)*

### III.    Time Bar

Plaintiff argues that this action is not time- barred.

Plaintiff first became aware of his civil rights, existence of *Bivens* remedy doctrine of

'Fruit of the Poisonous Tree' when, after being declared Incompetent to Proceed, he attended classes by Dr Kelly at Colorado Mental Health Institute at Pueblo from November 19th 2007- March 31st 2008.

Result of defendants tortious acts continues in The State of Colorado.

*Also Hunt v Bennett , 17 F. 3d 1263,1266 (10th Cir, 1994)*
*Frakus v Delane (10th Cir, 1995)*

## IV.   Alleged Failure to state a Claim

*Bivens extended to 1st Amendment in Dellums v Powell ( DC App cc, 1477)*

**Defendant Hon Henry A Waxman ordered a wrongful political arrest over grievance filed by Plaintiff.**

Plaintiff was seized in violation of his Fourth Amendment right to be secure in his person against unreasonable seizures by Busch and Cindy Yang, Special Agent of ICE.

Plaintiff argues that Busch would not have done this other than on direct instructions from  Congressman.

Why was Busch called to Congressman's office?

Plaintiff was not asked to leave. Arrest violated DC law. Busch acted under color of Federal law.

"[F]ourth Amendment protection against unreasonable searches and seizures fully applies in the civil context. Soldal v. Cook County, 506 U.S. 56, 121 L. Ed. 2d 450, 113 S. Ct. 538 (1992).

Therefore, I conclude Khan's arrest was in violation of 8 U.S.C. § 1357(a)(2), and Khan was seized in violation of his Fourth Amendment right to be secure in his person against unreasonable seizures.

In a criminal proceeding statements obtained as a result of an unlawful, warrantless arrest are subject to suppression as "fruit of the poisonous tree" if the link between the evidence and the unlawful conduct is not attenuated. Wong Sun v. United States, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). See also, United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994) (generally, suppression of Mirandized statements remedy for Fourth Amendment violation). Fourth Amendment protection against unreasonable searches and seizures fully applies in the civil context. Soldal v. Cook County, 506 U.S. 56, 121 L. Ed. 2d 450, 113 S. Ct. 538 (1992).

"[The relevant inquiry in determining whether a defendant has standing to challenge evidence as

29

fruit of a poisonous tree is whether his or her Fourth Amendment rights were violated, not the defendant's reasonable expectation of privacy in the evidence alleged to be poisonous fruit.]"*United States of America, v Olivares-Ranger,* 458 F.3d 1104 (10th cir. 2006)

### 1983, 1331, ambiguity

In 1996 sidewalks along Pennsylvania Ave NW changed from District iof Columbia (State) to Federal, for example

Capitol Buildings are Federal located in District of Columbia. Laws applicable exclusively to District of Columbia are consider State.

Court will decide.

Whether law enforcement can hand someone over to ICE varies from state to state.

However, if "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201. "The relevant dispositive inquiry" in making this determination is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. This does not entail identifying a generalized, abstract constitutional right such as the right to be free from unreasonable seizures. Rather, it requires that the Court determine on a more "particularized" level that it was "sufficiently clear that a reasonable official would understand that what he [was] doing violates that right." Id. Whether the facts alleged support a claim of a violation of clearly established law is a "purely legal" question for the Court. Johnson v. Jones, 515 U.S. 304, 313, 132 L. Ed. 2d 238, 115 S. Ct. 2151 (1995).

If it were legal, Congressman would have had Plaintiff detained in his office and called ICE to arrest him.
The Congressman violated DC law and civil rights ordering Fred Busch to falsely arrest on fictitious charge to bring Plaintiff out of the Rayburn Office Building to his office and then have ICE arrest him.

30

Every resident of the United States is necessarily subject to the personal jurisdiction of the federal district in which they reside.

the plaintiff "need only make a prima facie showing of personal jurisdiction in order to defeat [the] defendant's motion,"

(a) Application of laws.  Laws and regulations of the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the Federal Government in the District of Columbia.

2 U.S.C. § 1966

POWERS AND DUTIES § 1961.  Policing of Capitol Grounds and Buildings [Caution: See prospective amendment note below.]Text(a) The Capitol Police shall police the United States Capitol Buildings and Grounds under the direction of the Capitol Police Board, consisting of the Sergeant at Arms of the United States Senate, the Sergeant at Arms of the House of Representatives, and the Architect of the Capitol, and shall have the power to enforce the provisions of this Act (and regulations promulgated under section 14 of this Act (2 U.S.C. 1969)), and chapter 51 of title 40, United States Code [40 USCS §§ 5101 et seq.], and to make arrests within the United States Capitol Buildings and Grounds for any violations of any law of the United States, of the District of Columbia, or of any State, or any regulation promulgated pursuant thereto: Provided, That for the fiscal year for which appropriations are made by this Act the Capitol Police shall have the additional authority to make arrests within the District of Columbia for crimes of violence, as defined in section 16 of title 18, committed within the Capitol Buildings and Grounds and shall have the additional authority to make arrests, without a warrant, for crimes of violence, as defined in section 16 of title 18, committed in the presence of any member of the Capitol Police performing official duties: Provided further, That the Metropolitan Police force of the District of Columbia are authorized to make arrests within the United States Capitol Buildings and Grounds for any violation of any such laws or regulations, but such authority shall not be construed as authorizing the Metropolitan Police force, except with the consent or upon the request of the Capitol Police Board, to enter such buildings to make arrests in response to complaints or to serve warrants or to patrol the United States Capitol Buildings and Grounds. For the purpose of this section, the word "grounds" shall include the House Office Buildings parking areas and that part or parts of property which have been or hereafter are acquired in the District of Columbia by the Architect of the Capitol, or by an officer of the Senate or the House, by lease, purchase, intergovernment transfer, or otherwise, for the use of the Senate, the House, or the Architect of the Capitol.
(b) For purposes of this section, "the United States Capitol Buildings and Grounds" shall include any building or facility acquired by the Sergeant at Arms of the Senate for the use

31

of the Senate for which the Sergeant at Arms of the Senate has entered into an agreement with the United States Capitol Police for the policing of the building or facility.
(c) For purposes of this section, "the United States Capitol Buildings and Grounds" shall include any building or facility acquired by the Chief Administrative Officer of the House of Representatives for the use of the House of Representatives for which the Chief Administrative Officer has entered into an agreement with the United States Capitol Police for the policing of the building or facility.

---

In *United States of America v Khan,* 324 F. Supp. 2d 1177, (D Colo, 2004) further made it clear:

"[I]n a criminal proceeding statements obtained as a result of an unlawful, warrantless arrest are subject to suppression as "fruit of the poisonous tree" if the link between the evidence and the unlawful conduct is not attenuated. Wong Sun v. United States, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). See also, United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994) (generally, suppression of Mirandized statements remedy for Fourth Amendment violation). Fourth Amendment protection against unreasonable searches and seizures fully applies in the civil context. quoting *Soldal v Cook County,* 506 U.S. 56, 121 L. Ed. 2d 450, 113 S. Ct. 538 (1992). ]"

Waxman violated Plaintiff's 1st amendment right, not by refusing to see him, by deciding to *harm* him over his petitioning over a grievance.

2 U.S.C. § 1967    Law enforcement authority
(a) Scope.   Subject to such regulations as may be prescribed by the Capitol Police Board and approved by the Committee on  House Oversight of the House of Representatives and the Committee on Rules and Administration of the Senate, a member of the Capitol Police shall have authority to make arrests and otherwise enforce the laws of the United States, including the laws of the District of Columbia--

(1) within the District of Columbia, with respect to any crime of violence committed within the United States Capitol Grounds;
(2) within the District of Columbia, with respect to any crime of violence committed in the presence of the member, if the member is in the performance of official duties when the crime is committed;
(3) within the District of Columbia, to prevent imminent loss of life or injury to person or property, if the officer is in the performance of official duties when the authority is exercised;
(4) within the area described under subsection (b)(1); and
(5) within the area described under subsection (b)(2)--
(A) with respect to any crime of violence committed in the presence of the member, if the member is in the performance of official duties, as defined under such regulations, when the crime is committed; and

(B) to prevent imminent loss of life or injury to person or property, if the officer is in the performance of official duties, as defined under such regulations, when the authority is exercised.

(b) Area.
(1) The area referred to in subsection (a)(4) is that area bounded by the north curb of H Street from 3rd Street, N.W. to 7th Street, N.E., the east curb of 7th Street from H Street, N.E., to M Street, S.E., the south curb of M Street from 7th Street, S.E. to 1st Street, S.E., the east curb of 1st Street from M Street, S.E. to Potomac Avenue S.E., the southeast curb of Potomac Avenue from 1st Street, S.E. to South Capitol Street, S.W., the west curb of South Capitol Street from Potomac Avenue, S.W. to P Street, S.W., the north curb of P Street from South Capitol Street, S.W. to 3rd Street, S.W., and the west curb of 3rd Street from P Street, S.W. to H Street, N.W.
(2) The area referred to under subsection (a)(5) is that area bounded by the north curb of Constitution Avenue from 14th Street, N.W., to 3rd Street, N.W., the east curb of 3rd Street from Constitution Avenue, N.W., to Independence Avenue, S.W., the south curb of Independence Avenue from 3rd Street, S.W., to 14th Street, S.W., and the west curb of 14th Street from Independence Avenue, S.W., to Constitution Avenue, N.W.

40 U.S.C. § 8103

Application of District of Columbia laws to public buildings and grounds

(a) Application of laws.   Laws and regulations of the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the Federal Government in the District of Columbia.

---

## CONCLUSION

I affirm under penalty of poerjury that to the best of my knowledge the above statements are true and accurate.

Respectfully submitted,

Date: __05/10/09__          Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se

Inmate # A0261647 Alien # 77 309 675
El Paso County Jail, Criminal Justice Center

2739 East Las Vegas Road
Colorado Springs
CO 80906

Tel: (719) 390-2106

## ADDENDUM

## LATEST WITCH HUNT

In a *witch hunt*, self- serving politicians whip up public opinion on an emotive issue in a way that defies all reason and logic. The mere accusation that a person is a member of a certain class justifies illegal and unconstitutional acts by Federal Government against that person.

Usually there is an ulterior motive.

### Salem witch trials

In movie *Three Sovereigns for Sarah*- person played by Vanessa Redgrave is exonerated by special Appeal Court Judges (from England). It was all about land and property.

### McCarthy

Are you or have you ever been.....a member of the Communist Party?

### Illegal Alien

In *Nasious v Dept of Homeland Security, ICE, Jeff Copp, and President of the United States George W Bush*, No. 06-cv-00793-PSF-MEH (Dist Colo, 2006) , John Nasious, a US citizen, was unable to challenge an unlawful ICE detainer.

"[i]t appears Mr. Nasious aims to state claims for (at least) false imprisonment and a violation of due process, on the ground that he is a United States citizen being held pursuant to an unlawful immigration detainer, see Am. Compl. at 21-23, 25-26; violations of his right to practice his religion, based upon his detention facility's failure to prepare a kosher diet, among other things, see id. at 31-33; and deliberate indifference to his medical needs, in violation of the Eighth Amendment, see id. at 37. " *Nasious v. Two*

34

*Unknown B.I.C.E. Agents*, 492 F.3d 1158, (10th Cir. 2007).


THIS WAS BOUND TO HAPPEN.

[Note: Jeff Copp is quoted in The Denver Post April 8th 2004.  **Appendix 2**

After initally stating the 16 year old Edgar Chocoy could go and live with his aunt in Washington DC.


**Hon James P Vandello- Immigration Judge in Plaintiff's asylum case**

Immigration Judge Vandello- the Judge in Plainttiff's asylum/ immigration case- ordered him removed ignoring Chocoy's pleas that he would be killed.

Chocoy was removed by Copp on March 10th 2004 and found shot to death March 24th 2004 provoking an outcry from a Senator, Amnesty International, American Immigration Lawyer's Association and others.]

Judge Vandello has done this to two other people, one case almost identical but not yet reported that of Breyny Lopez- Ches.

This whole "ILLEGAL ALIEN" thing has gone too far.


## CERTIFICATE OF SERVICE

I hereby certify that on this **1st** day of August, 2009, service of the attached document was effected by placing a true and correct copy of each of the same in the United States mail, first class postage prepaid, addressed to the following:



Counsel for Representative Henry A Waxman



Katharine E McCarron, Assistant Counsel
US House of Representatives
219 Cannon House Office Building
Washington


**35**

DC 20515

Counsel for United States Capitol Police

Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202

Fred Busch
United States Postal Inspection Service
Boston Division
495 Summer St, Suite 600
Boston
MA 02210-2114

8/10/09

5B Cohen

**TABLE OF EXHIBITS**

Ex 1   Letter dated August 4, 1999, from New York City Loft Board

        Re: 43 E 20th Street, 2nd floor, TEKOSKY

Ex 3   Arrest by Cindy Yang, Special Agent, I-213 Date/ Hour: 11/25/2003 0000

Ex 2   Email from Len Gleich, 43 E 20th Street, 5th floor

36

Ex 6 *How to beat paying Parking Tickets Legally*, book, Authors Len Gleich, Joanne Sandler and Katz ISBN 0-9630620-1-8  (NOT INCLUDED)

Ex 4 Letter from Berkeley Books

Ex 5 Envelope delivered after 3 months

Ex 7 Email received whilst living Opposite Supreme Court of US, Washington DC

Ex 8 ~~Affidavit by US Postal Inspector~~ MATTER OF GAZELLE (GRAND COURT, CAYMAN)

~~Ex 9   Plaintiff's assets~~

37

# EXHIBIT 1

From: Solomon B Cohen  To:                                                      Date: 8/16/09  Time: 2:56:04 PM                          Page 1 of 1



*77 309 675*

## NEW YORK CITY LOFT BOARD

49-51 Chambers Street - Room 1006
New York, New York 10007
(212) 788-7610 • Fax  (212) 788-7501
www.ci.nyc.ny.us/html/loft

JEANNETTE ARLIN KOSTER .
*Executive Director*

Next Hearing Type: MCIC Off Calendar clos
Next Hearing Date/Time: 3/3
Judge: Location: was wad dca vir
Employee Initials: DK

August 4, 1999

Solomon B. Cohen
511 Avenue of the Americas
PMB211
New York, New York 10011



Re:     43 E. 20th Street, 2nd floor

Dear Mr. Cohen:

I am in receipt of your recent letter concerning the above-referenced premises. The letter sent to you by the Loft Board on November 4, 1998, is a form notice to the owner of the building, reminding the owner that once it obtains a residential certificate of occupancy, it is eligible to apply for a final rent order. A copy of the letter was sent to all residential tenants, in order to provide notice to them of this eligibility. The letter explicitly stated that "[r]esidential tenants ... will be receiving a copy of this letter, for their information only. There is no need for a tenant to communicate with the Loft Board upon receipt of this letter."

I note that the Loft Board's computer database shows that the second floor unit of 43 East 20th Street is still a rent-regulated unit. There is no record that the owner bought out the rights or fixtures, or obtained an abandonment finding, any of which events would allow the owner to increase the rent to market rate. A copy of this letter is being sent to the owner of record in order to provide notice of this discrepancy. The owner should note that failure to file proof of a sale of rights with the Loft Board may result in the imposition of a fine. See 29 RCNY § 2-10(b).

Furthermore, although the Loft Board's November 4 letter was issued in anticipation of the owner obtaining a final residential certificate of occupancy, the owner has not informed the Loft Board that it actually obtained a residential certificate of occupancy. Consequently, unless the owner provides a copy of the residential certificate of occupancy, the Loft Board presumes that the owner did not obtain it. Therefore, the owner may be out of compliance with the Loft Law, as in effect on June 30, by failing to obtain a residential certificate of occupancy by June 30, 1999. See Multiple Dwelling Law § 284(1)(iii).

If you have any further questions, please contact the Loft Board's Public Information Office, at 212-788-7610.

Very truly yours,

*Jeannette Arlin Koster*
JEANNETTE ARLIN KOSTER

Cc:     Raymond Tekosky
Forty-Three East Equities Corp.
43 E. 20th Street, 7th floor
New York, New York 10003

# EXHIBIT 2

PLAINTIFF'S
EXHIBIT
2

FEBI43-151-008 0(9669)

Subj:   Re: 43 E20th
Date:   9/17/99 4:02:55 PM Eastern Daylight Time
From:   LGleich999
To:     Cohensb1
CC:     rtekos@concent.net

SOLOMON,
        I received your E-mail with the Kol Nidre. I was a little disappointed, I thought it could be more stirring. This version did not evoke the emotional feeling that usually happens when I hear it.

        As to the files you mentioned regarding correspondence between you and your lawyer. I have none, nor were any attached to your e-mail. If you sent them in previous e-mails I may have been unable to access them since there were several files I was unable to open after downloading. Please fax them to 212 582 6680, or if they are E-mail correspondence perhaps you can just forward them to me.

        Ray handles the deposit accounts and I have asked him to give you the information you requested.

        Please tell what you think is ominous.

        As you know we are not renewing your lease and you are to vacate on or before September 30. Therefore, I am again requesting that you inform me as to what arrangements you are making to move, especially as it concerns the larger items such as the piano and the refrigerator. You will also need to have the Moving Company provide us with insurance certificates naming Forty Three East Equities Corp. as Certificate Holder and also as Additional Insured.

        Have a good Fast.


        Regards, Lenny

Subj:   Re: 43 E20th
Date:   9/17/99 7:16:23 PM Eastern Daylight Time
From:   LGleich999
To:     Cohensb1

Solomon,
        Please respond seriously to the main points of my last E-mail. Your flippant remarks are inappropriate. Especially in light of the fact that you take everything so seriously, even to the point of saying Raymond lied to you, which is absurd.
        Lenny

Subj:   Secutly Deposit
Date:   9/17/99 4:31:24 PM Pacific Daylight Time
From:   raytekos@concentric.net (Concentric)
To:     cohensb1@aol.com (Solomon Cohen)
CC:     lgleich999@aol.com (Len Gleich)

Until 2 months ago your security deposit has been in our security savings account at Greenpoint Savings, located at Grand Central and 42nd St. It has since been moved to a Merrill Lynch account along with all other building securities..

**Form 1** — Miscellaneous Income, Form 1099-MISC

PAYER'S name, street address, city, state, and ZIP code:
G & PARTNERS INC.
43 E. 20TH ST (2ND FL.)
N.Y. N.Y. 10003

PAYER'S Federal identification number: 13-3768612
RECIPIENT'S identification number: 45-67-7297

RECIPIENT'S name: JOHN RAMIREZ
225 E. 17TH ST (#344)
N.Y. N.Y. 10003

7 Nonemployee compensation: $2845.00

Copy C
For Payer

**Form 2** — Miscellaneous Income, Form 1099-MISC

PAYER'S name, street address, city, state, and ZIP code:
C.K. PARTNERS INC.
43 E. 20TH ST (2ND FL.)
N.Y. N.Y. 10003

PAYER'S Federal identification number: 13-3768612
RECIPIENT'S identification number: 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

RECIPIENT'S name: JIM V. C?LLIAM Jr.
55 FIFTH AVE. (17TH FL.)
N.Y. N.Y. 10003

7 Nonemployee compensation: $10,500.00

Copy C
For Payer

GLEICH →

**Form 3** — Miscellaneous Income, Form 1099-MISC

PAYER'S name, street address, city, state, and ZIP code:
C.K. PARTNERS INC.
43 E. 20TH ST (2ND FL)
N.Y. N.Y. 10003

PAYER'S Federal identification number: 13-3768612
RECIPIENT'S identification number: REFUSE

RECIPIENT'S name: LENARD GLEICH
?

7 Nonemployee compensation: $10,635.40

Copy C
For Payer

REFUSE SOCIAL SECURITY #
TO
GIVE

# EXHIBIT 3

U.S. Department of Justice

Immigration and Naturalization Service

# Record of Deportable/Inadmissible Alien

| Family Name (CAPS) | First | | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|---|
| COHEN, Solomon Ben-Tov | | | | | M | BLK | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| UNITED KINGDOM | 703061678 | Case No: WAS0411000615  A077 309 875 | 71 | 170 | |

| U.S. Address |
|---|
| C/O DHS/ICE, 4620 N. FAIRFAX DRIVE ARLINGTON, VIRGINIA 22203 |

Scars and Marks: **See Narrative**

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | |
|---|---|---|---|
| 06/21/2002, Unknown Time, LOS, BY AIR | | 083165NB4 | ☐ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| | PI 518.3 |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| 12/24/1960   Age: 42 | 11/26/2003 | WAS/WAS | Washington, DC | 11/25/2003  0000 |

| City, Province (State) and Country of Birth | AR | Form: (Type and No.) | Lifted | Not Lifted | By |
|---|---|---|---|---|---|
| LONDON, ENGLAND, UNITED KINGDOM | ☒ | | ☐ | ☐ | CINDY YANG |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | Visa Waiver Program | TRAVEL/BUSN |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | 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 | OVER 1 YEAR |

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | See narrative |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | UNKNOWN |

| Father's Name, Nationality, and Address, if Known  Nationality: UNITED KINGDOM  COHEN, Armand Simon | Mother's Present and Maiden Names, Nationality, and Address, if Known  ACCO, Lennie  Nationality: UNITED KINGDOM |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? Yes ☒ No ☐ | INS Systems Checks  See Narrative | Charge Code Word(s) |
|---|---|---|---|

| Name and Address of (Last)/(Current) U.S. Employer | Type of Employment | Salary  Hr. | Employed from/to |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

OTHER ALIASES KNOWN BY
COHEN, SOLOMON MICHAEL SAMUEL

SCARS, MARKS AND TATTOOS
None Visible

INS SYSTEMS CHECKS
Central Index System Positive
National Crime Information Center Positive
Non Immigrant Information System Positive

Narrative Title: Record of Deportable/Excludable Alien
Narrative Created by YANG

PREDICATION:  SUBJECT was referred by the U.S. Capitol Police on 11/25/2003.  SUBJECT had been sending inappropriate e-mails to Rep. Waxman from CA and had come to DC to demand an appointment with him.  SAs Yang and Schwab took custody of SUBJECT after determining alienage and deportability.

BEFORE/AT ENTRY:  SUBJECT has entered the U.S. on dozens of occasions.  On 05/14/2000, SUBJECT attempted entry at LAX but withdrew his application for admission after stating,

DEPT. OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

MAR 3 1 2005

IMMIGRATION COURT
ARLINGTON, VA

| Alien has been advised of communication privileges. _____ (Date/Initials) | CINDY YANG  SPECIAL AGENT  (Signature and Title of INS Official) |
|---|---|

| Distribution:  Alien File  Stats  Intel | Received: (Subject and Documents) (Report of Interview)  Officer: CINDY YANG  on: November 26, 2003 at 0825  Disposition: Warrant of Arrest/Notice to Appear  Examining Officer: MANUEL WILKS |
|---|---|

EXH 3

Form I-213 (Rev.4/1/97)Y

001685

U.S. Department of Justice
Immigration and Naturalization Service

Continuation Page for Form

| Alien's Name | File Number<br>Case No: WAS0411000615 | Date |
|---|---|---|
| COHEN, Solomon Ben-Tov | A077 309 675 | 11/26/2003 |

in a sworn statement, that he was a user of crystal meth.  SUBJECT last entered the U.S. on 06/21/2002 at LOS under the Visa Waiver Program.

CRIMINAL RECORD:  SUBJECT has a warrant for his arrest out of San Diego, CA for an offense relating to dangerous drugs; on 10/02/2003, Capitol Police confirmed that the warrant was still active but determined that extradition was available only for CA. SUBJECT has the following criminal record in the U.S.:  arrest on 04/17/2000 in San Francisco, CA for disorderly conduct/under the influence of a drug;  arrest on 07/06/2003 in San Diego, CA for possession of a controlled substance, DUI/drugs, and being under the influence of a controlled substance; arrest on 07/18/2003 in Santa Ana, CA for possession of a controlled substance; and arrest on 09/02/2003 in Salt Lake City, UT for felony fleeing.

AFTER ENTRY:  SUBJECT has recently been living in NYC at 43 East 20th Street, 2nd Floor. SUBJECT claimed to have various psychiatrists and medical doctors.  SUBJECT was attempting to meet with Rep. Waxman to discuss a conspiracy aimed at taking away $5 million of SUBJECT's funds.  A cursory review of SUBJECT's e:mails and letters indicated that SUBJECT also believed that the New York mafia was involved in harassing him.

OTHER:  SUBJECT was either unwilling or unable to engage in normal conversation.  SUBJECT spoke unceasingly about various paranoid delusions, and he expressed indignation that someone as wealthy and educated as he was could be arrested and placed in jail.  SUBJECT admitted that he had, on at least one occasion, been involuntarily taken to a psychiatric facility, but he claimed that he was released after three days because the doctors found nothing wrong with him.  SUBJECT claimed to have a lymphatic problem that necessitated his taking a methamphetamine derivative.  SUBJECT asserted that his doctor in the U.K. had told him that the only place he could receive proper treatment for his condition was in the U.S.

SUBJECT made no claim of U.S. citizenship.  SUBJECT claimed that he had contacted an immigration attorney in order to obtain permanent resident status, but CLAIMS is negative.  Furthermore, having entered under the Visa Waiver Program, SUBJECT is ineligible for adjustment.  It is noted that SUBJECT now has more than one year of unlawful presence in the U.S.

| Signature | | Title |
|---|---|---|
| CINDY YANG | | SPECIAL AGENT |

_2_ of _2_ Pages

Form I-831 Continuation Page (Rev. 6/12/92)

001686

U.S. Department of Homeland Security                                    **Notice to Appear**

## In removal proceedings under section 240 of the Immigration and Nationality Act:

Subject ID : 274479488          FIN #: 14171062          File No: A077 309 675

                                                        Event No: DEN0806000005

In the Matter of:

Solomon Ben-Tov COHEN AKA: COHEN, MICHAEL SAMUEL;

Respondent: _____ currently residing at:

11901 E. 30TH AVE. , AURORA COLORADO 80010                    (303) 361-6612

_____(Number, street, city and ZIP code)_____          (Area code and phone number)

- ☐ 1. You are an arriving alien.
- ☐ 2. You are an alien present in the United States who has not been admitted or paroled.
- ☒ 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:
1. You are not a citizen or national of the United States;
2. You are a native of UNITED KINGDOM and a citizen of UNITED KINGDOM;
3. You were admitted to the United States at Los Angeles, California on or about   June 21, 2002 under the Visa Waiver Program;
4. You were admitted to the United States at Los Angeles, California on or about 06/21/2002 as a nonimmigrant WBWT Visa Waiver Program with authorization to remain in the United States for a temporary period not to exceed one year;
5. You remained in the United States beyond one year without authorization from Immigration and Customs Enforcement.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
Section 237(a)(1)(B) of the Immigration and Nationality Act (Act), as amended, in that after admission as a nonimmigrant under Section 101(a)(15) of the Act, you have remained in the United States for a time longer than permitted, in violation of this Act or any other law of the United States.

- ☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.
- ☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8CFR 208.30(f)(2) ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
Denver Contract Detention Facility 11901 E. 30th Avenue Aurora COLORADO 80010

_____

_(Complete Address of Immigration Court, including Room Number, if any)_

on **a date to be set** at **a time to be set** to show why you should not be removed from the United States based on the

___(Date)___          ___(Time)___   For

charge(s) set forth above.          ROBERT C. LINDLY          SDDO

                                   _(Signature and Title of Issuing Officer)_

Date: June 1, 2008          Denver, Colorado

                                   _(City and State)_

_____

See reverse for important information                    Form I-862 (Rev. 08/01/07)

# EXHIBIT 4

October 6, 2008

Mr. Solomon B. Cohen
ID Number L2580
Aurora Ice Processing Center
11901 E 30th Ave.
Aurora, CO  80010-1525

RE:  Bulls, Bear & Millionaires

Dear Mr. Cohen,

I received your letter today and hope that I can answer your question as to where I got
this particular book.  I purchase my books from the United States Post Office auctions in
Atlanta, GA. every month.  From my code on this book, it was purchased in 2007,
probably early summer.  The books that I buy are books that have been lost in the mail
and are sent to the Atlanta facility from all over the United States.  I bid on large
containers of books and buy sight unseen.

Hope this information helps.  This is very interesting.  I have heard from other sellers that
they have bought back books which they have sent to purchasers and that have gotten lost
in the mail.

I am attaching this letter in an e-mail to Mr. Howarth.

If I can be of any other help, please let me know.

Sincerely,

Daphne Gwyn
Berkeley Books
dygwyn@comcast.net

PLAINTIFF'S
EXHIBIT
4

# EXHIBIT 5



# EXHIBIT 6

# HOW TO BEAT PARKING TICKETS LEGALLY

PLAINTIFF'S
EXHIBIT
6

PENGAD 800-631-6989

LIMIT TWO HOURS

30  20  10  1  50  40  30  20  10  0

EXPIRED

**NEW YORK CITY EDITION**

# EXHIBIT 7

From: Dudley Cottingham <drc@cml.bm>
   To: Cohensb1@aol.com
   Cc: jayne.mitten@dla.ky; sfeierabend@gloor-sieger.ch
Subject: Re: OGIERS
   Date: Mon, 26 Feb 2007 10:23 pm

---

Solomon

I tied unsuccessfully to reach you by phone today because I had the following e mail from Chris Russell:

"The question of the continuation or discharge of the Court Appointed
Guardianship came before the Cayman Court this morning. The Court has
decided that it has done all that it can to assist Solomon and that the
Guardianship should  therefore be discharged. Accordingly I am no longer
Solomon's Guardian here in Cayman, and my role is at an end."

"The Court also made other orders concerning the funds held here in
Cayman. Diamond Law Associates will no doubt be contacting Solomon about
the effects of these orders, but in short, the requirement that the
funds  be retained in Cayman will no longer apply. The place where the
funds are to be held is a matter for the trustee of the Corinne Diaz
Trust to decide in accordance with his duties as trustee. The Court also
expressed the view that the financial protection of Solomon and the
responsibility for ensuring that trust funds are properly used by
Solomon was  a matter for his trustee and not  the Court."

As I understand it this will mean that the Cayman court will no longer be affording you any protection and Dr
Wanger, as your trustee, will decide what should be done with the trust funds.

I therefore suggest you instruct Stefan to represent you and ensure your interests are protected.

As you know I have no legal standing in connection with the Leitchenstein trust and I am unable to answer the
questions you pose.

Miles Howarth is periodically sending me faxes and registered letters to which I have not responded. Should I
send these to Stefan to respond to?

Dudley

Cohensb1@aol.com

02/26/2007 08:40 PM

To drc@cml.bm

CC jayne.mitten@dla.ky, sfeierabend@gloor-sieger.ch
Subject OGIERS

Dudley

I cannot work with Christopher Russell.

Nothing personal- but I signed a FEE AGREEMENT and he did not represent me.

Then I was forced to flee from my home because of threat end use of LEGAL GUARDIANSHIP powers.

Re: OGIERS

Let me start over with a lawyer in Cayman or MIAMI in a fresh relationship.

Why did David Walker refuse to pay KLEINFELD? Surely we would have ALL been working by agreement with someone I could talk things over with at their offices.

I want someone I can trust to put forward my case.

What option will I have if a US attorney says I must bring this into the US Court system.

Is the claim from Miles going to be sqaushed once and for all and, I cannot see Dr Wanger treating we as wonderfully as Dr Kelcher did. II want to re- group with Corinne who is alone and our family in Elm Drive, Bever Hills. One of the cheaper house close to the synagogue is affordable at $1Million.

The risk of Earthquake which does not worry me- keeps real estate prices at good prices.

:)

Solomon

FOUND DEAD

AOL now offers free email to everyone. Find out more about what's free from AOL at AOL.com.

CONFIDENTIALITY CAUTION AND DISCLAIMER

This email and any attachments may contain privileged and/or confidential information and are intended solely for the use of the individual or entity to which they are addressed. This email has not been encrypted and therefore privacy cannot be ensured. If you are not the intended recipient and have received this email in error, please advise the sender immediately by return email. Any distribution, use, or copying of this email or the information it contains by anyone other than the intended recipient is strictly prohibited.

This e-mail was checked for spam and viruses by the QuoVadis Sweeper Service.

For more information visit the website of QuoVadis Limited:

http://www.quovadis.bm/

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 234

EXHIBIT 8





# IN THE GRAND COURT OF THE CAYMAN ISLANDS

CAUSE NO.        OF 2005

## IN THE MATTER OF THE COMPANIES LAW (2004) REVISION

## AND IN THE MATTER OF THE GAZELLE GLOBAL FUND LIMITED (IN VOLUNTARY LIQUIDATION)

---

### ORDINARY APPLICATION

---

**TAKE NOTICE** that Messrs J. I. N. Freeland and C. D. Johnson, the joint liquidators (the "Liquidators") of The Gazelle Global Fund Limited (the "Fund") intend to apply to the Judge in Chambers at the Law Courts, George Town, Grand Cayman on the 22nd day of Feb. 2006 at 9 30 for the following orders and directions:

1.    A declaration that the Liquidators have been validly appointed.

2.    A direction that the Fund's net assets, after payment of creditors, liquidation expenses and the Liquidators' fees and expenses, be distributed to Mr Michael Schroter ("Mr Schroter") and to Dr Markus Wanger in his capacity as trustee of the Corinne Diaz Trust (Lichtenstein) ("Dr Wanger"), such distribution to be made in proportion to the investment shares in the Fund held by Mr Schroter and Dr Wanger (12 and 2,500 respectively out of a total of 2,512).

3.    An order that the Liquidators' costs of and incidental to this application be paid from the assets of the Fund.

4.    Such other directions as this Honourable Court thinks fit.

TIME ESTIMATE:     The estimated length of the hearing of this application is one hour.

It is intended to give notice of this Application to the following persons:-

Mr Solomon Cohen, by email.

Dr Markus Wanger of Industrie-und Finanzkontor, Postfach 339, Herrengasse 21, FL-9490 Vaduz, Liechtenstein, and his attorney Stuart Diamond of Diamond Law Associates.

This Ordinary Application was issued by Maples and Calder, Attorneys for the Liquidators, whose address for service is Ugland House, P.O. Box 309, George Town, Grand Cayman. (Ref: BDM/613598/1624279)

# APPENDIX

Appendix 1

~~_____~~, 12 Misc.3d 486 (2006).

820 N.Y.S.2d 468

PETER D'AGOSTINO, Petitioner, v. FORTY-THREE EAST EQUITIES CORP. et al., Respondents.

*TEKOSKY*

.6428/2005.

Civil Court of the City of New York.

NEW YORK COUNTY.

April 3, 2006.

Page 487

*Belkin Burden Wenig & Goldman, LLP*, New York City (*Joseph Burden* of counsel), for Forty-Three East Equities Corp., respondent. *Valentine J. Moretti*, New York City, for New York City Department of Housing Preservation and Development, respondent. *Jeffrey S. Ween & Associates*, New York City, for petitioner.

OPINION OF THE COURT

JOSEPH E. CAPELLA, J.

It is undisputed that on November 14, 2005, the petitioner tenant commenced the instant Housing Part (HP) proceeding to compel the respondent owner to repair both the roof to the subject building and the water damage caused by same within his apartment. It is also undisputed that in 1997, the owner and the tenant entered into a life estate lease,* which incorporated a settlement agreement, for the subject premises. Nor is it disputed that under the lease and agreement, the owner is responsible for maintaining the roof. According to paragraph six of the agreement, however, "any controversy or claim arising out of or relating to the agreement or lease or the breach thereof, except those issues which could [directly or indirectly result in eviction], shall be settled by arbitration." In an attempt to compel arbitration, the owner, by notice of motion dated December 23, 2005, seeks a stay or dismissal of the instant HP proceeding based upon the aforementioned agreement. (CPLR 7503 [a].) It should be noted that, on December 17, 2005, six days prior to the motion, and pursuant to a "Judicial Request/Order for Housing Inspection" dated December 9, 2005, a New York City Department of Housing Preservation and Development (HPD) inspector issued violation number 5901251 for "broken or defective plastered surfaces and paint . . . ceilings and walls in the entire [subject] apartment." In opposition to the motion, HPD and the tenant argue, inter alia, that public policy precludes arbitration of housing conditions raised in HP proceedings.[fn1]

It is well settled that arbitration is both favored and encouraged as a means of conserving the time and resources of the
Page 488
courts and the contracting parties (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91 [1975]), and the courts have generally not interfered, with few exceptions, in this mode of dispute resolution. (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623 [1979].)

*\* Plaintiff persuaded D'Agostino to drop $1 Million lawsuit*

The exceptions, which have been narrowly construed, include agreements to arbitrate matters that contravene an important public policy. (*Matter of Board of Educ. of City of Buffalo [Buffalo Council of Supervisors & Adm'rs]*, 52 AD2d 220 [1976]; *Durst v Abrash*, 22 AD2d 39 [1964], affd 17 NY2d 445 [1965].) However, because an arbitration agreement will not be deemed void as against public policy if it is capable of a construction which would make it consistent with the law and thereby valid (*Curtis v Gokey*, 68 NY 300 [1877]), defining those areas of public policy that preclude arbitration is not a simple endeavor.

In those cases where the public policy pendulum has swung away from arbitration, guiding criteria have included the pervasiveness of a regulatory scheme and a recognition that arbitrators are not bound by principles of substantive law or rules of evidence that govern the traditional litigation process — their duty is to reach a just result regardless of the technicalities. (*Matter of Raisler Corp. [New York City Hous. Auth.]*, 32 NY2d 274 [1973].) For example, public policy exceptions to arbitration have been found in controversies involving the enforcement of antitrust laws (*Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 NY2d 621 [1968]), and claims concerning the liquidation of insolvent insurance companies. (*Matter of Knickerbocker Agency [Holz]*, 4 NY2d 245 [1958].) In an action similar to the instant proceeding, the Appellate Division in *Matter of Goldmar Hotel Corp. (Morningside Studios)* (283 App Div 935 [1st Dept 1954]), concerned with the health, safety and welfare of the citizenry, prevented a tenant from arbitrating an obligation to make repairs that violated the Multiple Dwelling Law.

In weighing the public policy considerations against the parties' arbitration agreement, the court must examine the very purpose of an HP proceeding. In 1974, the New York State Legislature created a special part within the Civil Court of the City of New York, known as the Housing Part, to hear in a single forum all disputes involving the enforcement of state and local laws for the establishment and maintenance of housing standards. (CCA 110; *see also* NY City Housing Maintenance Code [Administrative Code of City of NY] § 27-Page 489 2115 [h], [i]; *Parkchester Alliance v Parkchester Apts. Co.*, 180 Misc 2d 548 [Civ Ct, Bronx County 1999].) Proceedings brought in this forum are referred to as "HP proceedings," and the laws to be enforced include, but are not limited to, the Multiple Dwelling Law, the Housing Maintenance Code (HMC), the Building Code and the Health Code. Both the Multiple Dwelling Law and the Housing Maintenance Code contain preliminary sections that reveal the intent of the legislatures — that the housing stock of the state's cities be preserved and all occupants be afforded safe and healthy housing. (*Department of Hous. Preserv. & Dev. of City of N.Y. v Metropolitan Ave. Corp.*, 148 Misc 2d 956 [Civ Ct, Kings County 1990].) And despite the Civil Court's lack of general equitable jurisdiction, section 110 (a) (4) of the Civil Court Act specifically provides the Housing Part with jurisdiction to issue injunctions and restraining orders for the enforcement of housing standards. Moreover, regardless of the relief originally sought by a party, section 110 (c) provides that "the court may recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards, if it believes they will be more effective to accomplish compliance or to protect and promote the public interest."

As part of its responsibility in enforcing the Housing Maintenance Code. HPD will investigate complaints made by tenants and issue violations accordingly. For example, as lead-based paint poses a serious health problem to adults and children, HPD may issue a violation for same based upon an inspection or a statutory presumption, which the owner must correct within 21 days. (Housing Maintenance Code §§ 27-2056.) Pursuant to section 27-2115 (i) of the Housing Maintenance Code,

> "[i]n the event an owner fails to correct a violation . . . any tenant or group of tenants who requested that [a] violation be issued may apply individually or jointly, to the housing part for an order directing the owner and [HPD] to appear before the court . . . If the court finds that the violation has not been corrected, . . . then it *shall* direct the owner to correct the violation and *shall* assess [penalties]."
> (Emphasis added.)

Regardless of whether the petitioner in an HP proceeding is a tenant or HPD, at the conclusion of the trial, if the petitioner prevails the court will issue an order to correct. The few defenses to an order to correct include lack of standing or jurisdiction,
Page 490
completed repairs, conditions are not code violations, notice of violation is facially insufficient, respondent is no longer the owner and economic infeasibility. (*Department of Hous. Preserv. & Dev. of City of N.Y. v 163 Ocean Tenants Corp.*, NYLJ, June 7, 2000, at 28, col 5 [App Term, 2d Dept]; *Bernard v Scharf*, 246 AD2d 171 [1st Dept 1998], *revd* 93 NY2d 842 [1999]; *Eye-dent v Vickers Mgt*, 150 AD2d 202 [1st Dept 1989].) It is not a defense to an order to correct that the tenant refused access to repair the violation (*Aguilar v Elk Dr.*, 117 Misc 2d 154 [Civ Ct, Queens County 1982]), that the violation was caused by natural disaster or third parties beyond a respondent's control, or that the building has few remaining tenants. (*Department of Hous. Preserv. & Dev. of City of N.Y. v Metropolitan Ave. Corp.*, 148 Misc 2d 956 [Civ Ct, Kings County 1990].) Given HPD's responsibility in enforcing the HMC, in those instances in which a tenant commences an HP proceeding against the owner, HPD is named as a corespondent, and any civil penalties awarded by the court are payable to HPD. (*Shapiro v Townan Realty Co.*, 162 Misc 2d 630 [Civ Ct, NY County 1994]; *Amsterdam v Golds-tick*, 136 Misc 2d 831 [Civ Ct, NY County 1987].) Of course, being a party to the proceeding, any attempt by an owner to challenge an HPD violation will be opposed by HPD. Besides assisting HPD in the enforcement of the HMC, a tenant who commences an HP proceeding and restores same for civil penalties is also asserting a monetary claim for the benefit of HPD. Given the aforementioned, it is clear that HPD is a necessary party that will play an integral role in the instant HP proceeding. HPD is not, however, a party to the arbitration agreement and vigorously opposes the owner's attempt to compel arbitration.

In establishing the HP part, and the pervasiveness of the regulatory scheme associated with same, the Legislature made clear their intent to protect and preserve existing housing, regardless of whether the proceeding is commenced by HPD or a tenant, and regardless of whether the apartment or building is vacant or occupied. (*Department of Hous. Preserv. & Dev. of City of N.Y. v Metropolitan Ave. Corp.*, 148 Misc 2d 956 [Civ Ct, Kings County 1990]; Finkelstein and Ferrara,

Appendix 2

Page: 1 of 4
Vandello, ██████ IJ
Edgar Chocoy (Guatemala)

**The Denver Post**
**April 8, 2004 Thursday FINAL EDITION**
**SECTION: A SECTION; Pg. A-01**
**Deportee's Slaying Spurs Reform Push Advocates Say Teen's Fear of Gangs Unheeded**
**BY: Bruce Finley Denver Post International Affairs Writer**

The case of a Guatemalan boy who fled gang violence and begged for asylum in Denver - but was deported, then murdered - brought calls from Congress, advocacy groups and the United Nations on Wednesday for better treatment of immigrant children.

Edgar Chocoy, 16, was one of a growing number of children from poor countries spilling into the United States. He allegedly entered illegally at age 14 after gang members threatened to kill him. He found his mother, who had abandoned him as an infant, and fell into gang activity in Los Angeles. When immigration officials moved to deport him, he claimed he'd be killed back in Guatemala. An aunt in Washington, D.C., offered to take custody. But an immigration judge rejected his case.

The American Immigration Lawyers Association and Amnesty International want an investigation.

'No one should be deported to death, least of all a child like Edgar Chocoy Guzman,' said Susan Benesch, Amnesty's chief advocate for refugees. 'The United States is legally barred from deporting people who have a well-founded fear of persecution in their home countries.'

She said the results of an investigation 'will help to protect other children from danger or death.'

A United Nations official said Chocoy may have qualified as a refugee. U.S. immigration judges, who are administrative employees of the Justice Department, 'should look at our guidelines,' said Elizabeth Dallum, a U.N. High Commission for Refugees official.

Congressional leaders called for reforms to balance law enforcement with compassion.

Complements of www.pards.org
Princeton, New Jersey 08542

Page: 2 of 4
Vandello, Thomas IJ
Edgar Chocoy (Guatemala)

'Our laws can be enforced vigorously without treating children as common criminals. Fair judgments can be rendered without shackling young children in front of judges without the benefit of legal counsel or guardians,' Sen. Sam Brownback, R-Kan., said.

Meanwhile, officials from the departments of Justice, Homeland Security and Health and Human Services defended the deportation.

'Sometimes very bad things happen despite the fact that people do the best they can,' said Wade Horn, HHS assistant secretary for children and families.

Most of the estimated 90,000 children a year who try to enter the United States, mostly from Mexico and Central America are turned back. Nearly 6,000 were caught inside the country last year.

Homeland Security officials estimated that about 2,000 detained children were deported last year.

But Chocoy's case stood out.

Abandoned by his parents, he grew up in a rough part of Guatemala City and at age 12 was recruited into a gang called Mara Salvatrucha, according to Chocoy's lawyer and court documents. Gang members beat him, robbed him, and threatened to kill him and the relatives he lived with, court records show. In 2001, after Chocoy entered the United States, he lived for some months with his mother. But then Los Angeles police arrested him at a drug crime scene. He served time in juvenile facilities for truancy and possession of a gun.

He was transferred last year to a lockdown youth facility in Alamosa where he studied math and began a program to have his gang tattoos removed, according to progress reports.

In his case for asylum, Chocoy filed an affidavit saying that he'd be killed if he were sent home. An expert on Central American gangs - Bruce Harris of the charity organization Covenant House - submitted an affidavit supporting

Complements of www.pards.org
Princeton, New Jersey 08542

Page: 3 of 4
Vandello, Thomas IJ
Edgar Chocoy (Guatemala)

Chocoy's claim.

Denver Immigration Judge James Vandello denied Chocoy's request on Jan. 5. Chocoy was deported on March 10. He was shot to death March 27 in Guatemala City - apparently by members of the gang he tried to escape, according to his mother, his aunt and his lawyer, Kim Salinas.

Homeland Security and HHS officials, who share responsibility for unaccompanied children, agreed Tuesday to cooperate better.

Homeland Security officials defended their actions, emphasizing Chocoy's gang activity in Los Angeles. They can use discretion deciding whether to prosecute children, said Jeff Copp, special agent in charge of Homeland Security's Bureau of Immigration and Customs Enforcement in Denver. But 'I've wanted everything to go through the judicial system' so that judges can review facts of each case.

'I don't think we can control what happens in Guatemala,' Copp said.

Meanwhile, HHS officials are considering whether to act more proactively to submit background information about children to immigration court officials, said Horn, the HHS assistant secretary.

The department also is trying to get more and better facilities for children and to recruit pro bono lawyers who can represent children, Horn said.

Documents obtained by The Denver Post show Chocoy was caught in bureaucratic battling. A Jan. 2 letter from HHS said he was cleared for release to the custody of an aunt in Washington. But Homeland Security officials refused to release him. Then HHS reversed its decision to release Chocoy - leading to the deportation.

The Denver immigration judge declined to hear direct testimony from Harris, who runs programs for children in Guatemala City, Salinas said.

Complements of www.pards.org
Princeton, New Jersey 08542

**Page: 4 of 4**
**Vandello, Thomas IJ**
**Edgar Chocoy (Guatemala)**

Chocoy desperately wanted out of gangs, Salinas said. A Colorado Health Sciences Center psychiatric evaluation found that he had been traumatized by gang members and tried to commit suicide by hanging himself with shoe laces while in detention. She wanted to appeal his case, she said, but Chocoy couldn't bear to be detained any longer.

"Our system needs changing," said Judy Golub, advocacy director for the American Immigration Lawyers Association. "If a kid fears for his life, what are the options we have? It doesn't appear that our government was willing to look at any other options."

Internal File: Vandello, Thomas IJ (Article) The Denver Post (April 8, 2004)

Complements of www.pards.org
Princeton, New Jersey 08542

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

      Plaintiff,

v.

CONGRESSMAN HENRY A. WAXMAN, U.S. House of Representatives,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,

      Defendants.

---

**REPLY TO PLAINTIFF SOLOMON BEN-TOV COHEN'S OPPOSITION TO
CONGRESSMAN HENRY A. WAXMAN'S MOTION TO DISMISS**

---

Defendant Congressman Henry A. Waxman has moved to dismiss plaintiff Solomon Ben-Tov Cohen's claims on jurisdictional and statute of limitations grounds, as well as for failure to state a claim. *See* Memorandum of Points and Authorities in Support of Motion to Dismiss of Defendant Congressman Henry A. Waxman (May 4, 2009) ("Motion to Dismiss"). Mr. Cohen responded, *see* Memorandum in Support of Motion Opposing Def. Henry A. Waxman's Motion to Dismiss and Memorandum of Points (Aug. 12, 2009) ("Opposition"), and we now reply.

**I.      The Court Lacks Personal Jurisdiction Over Congressman Waxman.**

Mr. Cohen bears the burden of demonstrating that this Court has personal jurisdiction over Congressman Waxman. *See, e.g., Fidelity & Casualty Co. of N.Y. v. Phila. Resins Corp.*, 766 F.2d 440, 443 (10th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986); *Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F. Supp. 541, 543 (D. Colo. Feb. 28, 1995); *Plus System, Inc. v.*

*New England Network, Inc.*, 804 F.Supp. 111, 117 (D. Colo. Sept. 23, 1992). He has failed to discharge that burden here.

Mr. Cohen claims that Congressman Waxman has sufficient minimum contacts with Colorado for three reasons: (1) his official U.S. House of Representatives website may be accessed from Colorado; (2) he is a member of the House and "Chair of various committees [that] affect[] the State of Colorado;" and (3) the "[r]esult of [the Congressman's] tortious acts continues in The State of Colorado." Opposition at 14, 24 & 29. He is wrong on each count.

First, the fact that Congressman Waxman's website may be accessed from Colorado does not vest this Court with personal jurisdiction over him. In applying jurisdictional principles to Internet-related conduct, the courts distinguish between interactive and passive web sites. *See, e.g., Soma Med. Int'l v. Standard Charter Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999); *SCC Commc'n Corp. v. Anderson*, 195 F. Supp.2d 1257, 1260 (D. Colo. Mar. 22, 2002). "A passive site is one where the owner has merely posted information on a site accessible to a user in a different forum. Access from a foreign forum alone does not subject a site's owner to the jurisdiction of that forum." *SCC*, 195 F. Supp.2d at 1260; *see also Soma*, 196 F.3d at 1296 (same). In contrast, an interactive site is one "where the site's owner clearly conducts business over the Internet between different fora. . . . In such cases, the exercise of personal jurisdiction would be appropriate over the site's owner." *SCC*, 195 F. Supp. 2d at 1260-61.

Congressman Waxman's website is passive because it merely provides information to the constituents of the 30th congressional district of California, and other interested parties. *See* www.henywaxman.house.gov. Congressman Waxman does not engage in any commercial

-2-

activity on his official website, and the site clearly does not constitute the kind of purposeful

availment on the Congressman's part of the benefits of doing business in Colorado such that he

could expect to be haled into court in that state.[1]

Second, the mere fact that Congressman Waxman is a Member of the House and chairs

committees that may affect Colorado, Opposition at 24 (citing no legal authority), is irrelevant.

Government officials who do not reside or perform work in Colorado do not "transact[]

business" within the meaning of the Colorado long arm statute. *See* Motion to Dismiss at 4-5.

Third, the attenuated assertion that the "result" of Congressman Waxman's allegedly

tortious acts continues in Colorado, Opposition at 29, is also insufficient because, even if true, it

does not constitute action on Congressman Waxman's part that can reasonably be characterized

as "purposefully avail[ing] [him]self of the benefits of [Colorado's] laws." *Trujillo v. Williams*,

465 F.3d 1210, 1219 (10th Cir. 2006) (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071,

1078, 1079 (10th Cir. 1995)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73

(1985) (for federal court to exercise personal jurisdiction, defendant must have purposefully

directed his allegedly tortious acts at forum state so that he could reasonably anticipate being

---

[1] Mr. Cohen relies on *Oxion, Inc. v. O3 Zone Co., Inc*, No. 06-1385, 2007 WL 2155675 (D. Kan. July 26, 2007) (not reported). *See* Opposition at 25. However, *Oxion* supports our position, not Mr. Cohen's. In that case, which involved a commercial website, court granted the defendant's motion to dismiss on the ground that the defendant's contacts were not sufficient to confer personal jurisdiction. *Oxion*, at *7. The court held that website features such as contact information, email hyperlinks, and options for visitors to submit comments or questions, are generally insufficient to support jurisdiction "against the backdrop of the already limited interactive nature of [defendant's] website." *Id.* at *6 (citing *Marynard v. Phila. Cervical Collar Co.*, 18 Fed. Appx. 814, 816-17 (Fed. Cir. 2001)).

haled into court there); *Calder v. Jones*, 465 U.S. 783, 788-90 (1984). Clearly, the mere fact that

*Mr. Cohen* is detained in Colorado is insufficient to enable this Court to exercise personal

jurisdiction over *Congressman Waxman*. *See Trujillo*, 465 F.3d at 1222; *Garrett v. Klinger*, 12

Fed. Appx. 842 (10th Cir. 2001) (unreported).[2]

## II.   The Court Lacks Subject Matter Jurisdiction Over the Claims Asserted Against Congressman Waxman.

We explained previously that Congressman Waxman is immune from this suit under the

doctrine of qualified immunity. *See* Motion to Dismiss at 7. Nothing in his Opposition alters the

fact that the Complaint fails to allege that Congressman Waxman violated a clearly established

constitutional right of which a reasonable person would have known, which is the applicable

standard. *Id.* Certainly, the bald assertions that Congressman Waxman "ordered a wrongful

political arrest over grievance filed by Mr. Cohen," Opposition at 29, or "ordered [Capitol Police

Officer] Busch to do something unlawful," *id.* at 11, are insufficient to meet the specific pleading

standards articulated by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and *Anderson v. Creighton*,

483 U.S. 635 (1987).

Our other jurisdictional argument, Speech or Debate immunity, was predicated on the

assertion in the Complaint that Mr. Cohen was seeking Congressman Waxman's assistance in

becoming a U.S. Citizen, presumably by way of a private immigration bill since we know of no

other way that such assistance could have been rendered, even theoretically. *See* Motion to

---

[2] To the extent that Mr. Cohen attempts to construe or characterize Congressman Waxman's Motion to Dismiss as a request for a change of venue, Opposition at 26, he is incorrect.

-4-

Dismiss at 8-9. Mr. Cohen now says that he had "requested an appointment to discuss making an investment of $1M + creating jobs in California." Opposition at 9. This allegation does not appear in the Complaint, and Mr. Cohen is not entitled to amend his Complaint by including new allegations in his Opposition.

### III.  All *Bivens* Claims Asserted Against Congressman Waxman are Time-Barred.

Mr. Cohen asserts that the three-year statute of limitations does not bar his suit because he only became aware of the existence of the *Bivens* remedy when, after being declared incompetent to proceed, he took classes at the Colorado Mental Health Institute from November 19, 2007 to March 31, 2008. Opposition at 28-29 (citing *Hunt v Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)).

Mr. Cohen's reliance on *Hunt* is misplaced. *Hunt* states that "claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis for his action." *Hunt*, 17 F.3d at 1266 (quoting *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)). Although *Hunt* concerned a 42 U.S.C. § 1983 claim, courts use the same analysis for *Bivens* claims. *See, e.g., Indus. Constructors Corp. v. U S. Bureau of Reclamation*, 15 F.3d 963, 968-69 (10th Cir. 1994). Mr. Cohen knew that his arrest took place on or about November 25, 2003. *See* Opposition at 44-45 (attaching as Exhibit 3 a copy of Form I-213, Record of Deportable Alien, which appears to be the INS paperwork from Mr. Cohen's arrest). Accordingly, under the applicable statute of limitations, Mr. Cohen had three years to file his *Bivens*' claims, and he did not file within that time period.

## IV.   The Complaint Fails to State a Claim Against Congressman Waxman.

### A.   First Amendment.

Mr. Cohen concedes that Congressman Waxman "was under no obligation to listen to a grievance, agree to an appointment or to help" him. Opposition at 13. However, for the first time, Mr. Cohen alleges that Congressman Waxman violated the First Amendment by retaliating against Mr. Cohen and "deciding to *harm* him over his petitioning over a grievance." *Id.* at 32 (emphasis in original). Although the nature of this claim is not entirely clear, Mr. Cohen appears to argue that Congressman Waxman has links to the Mob (La Cosa Nostra) and had Mr. Cohen arrested in retaliation for Mr. Cohen's writing a letter complaining that his former landlords were members of the Mob, had stolen his passport containing his work visa, and threatened to kill him. *Id.* at 10, 19. Aside from being facially absurd, these allegations do not appear in the Complaint and Mr. Cohen is not entitled to amend his Complaint by including new allegations in his Opposition.[3]

---

[3] Even if these allegations had been included in the Complaint, they would not state a claim for First Amendment retaliation, the elements of which are: (1) plaintiff "was engaged in a constitutionally protected activity," (2) defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citation omitted). Assuming Mr. Cohen was engaged in a constitutionally protected activity when he contacted Congressman Waxman's office, there are no concrete non-speculative allegations that (1) the Congressman "ordered", or otherwise had anything to do with, Mr. Cohen's arrest; (2) any action the Congressman allegedly took would have chilled a person of ordinary firmness from continuing in a constitutionally protected activity; or (3) Congressman Waxman was motivated by animus or an intent to retaliate against Mr. Cohen for the exercise of his First Amendment rights. Mere legal conclusions masquerading as factual allegations should be not accepted as true. *See, e.g., Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991);

**B.      Fourth Amendment.**

Mr. Cohen relies principally on *United States v. Khan*, 324 F. Supp. 2d 1177 (D. Colo. 2004), in support of his argument that his arrest was an unreasonable seizure in violation his Fourth Amendment rights. Opposition at 29. *Khan*, which held that the defendant's arrest violated 8 U.S.C. § 1357(a)(2) – which provides immigration officers with the authority to make an arrest without a warrant only when an alien is in violation of the immigration laws *and* is likely to escape before a warrant may be issued – is not on point here with respect to Mr. Cohen's claims against Congressman Waxman because the Congressman did not arrest Mr. Cohen.

Mr. Cohen can assert a Fourth Amendment claim Congressman Waxman only to the extent that he can adequately plead a conspiracy between the Congressman and the Capitol Police. That he plainly has not done, Motion to Dismiss at 10-14, and nothing in the Opposition even addresses that deficiency in his Complaint.

**C.      Sixth Amendment and Section 1983.**

Mr. Cohen has not responded to any of our arguments concerning his Sixth Amendment and Section 1983 claims. *See* Motion to Dismiss at 15-16. Accordingly, the Court should treat those arguments as conceded.

---

*Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976).

-7-

## CONCLUSION

For all the reasons given above and in our opening memorandum, the Motion to Dismiss should be granted.

Respectfully submitted,

IRVIN B. NATHAN, General Counsel
KERRY W. KIRCHER, Deputy General Counsel
s/ Katherine E. McCarron
KATHERINE E. MCCARRON, Assistant Counsel
Office of the General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Fax: (202) 226-1360
Email: katherine.mccarron@mail.house.gov
Counsel for Congressman Henry A. Waxman

August 27, 2009

-8-

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2009, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to the following:

Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant The U.S. Capitol Police and Agent Fred Busch

William Emory
william_emory@mail.house.gov
Counsel for Defendant The U.S. Capitol Police

I also hereby certify that on August 27, 2009, I have mailed the foregoing document to the
following non-CM/ECF participant by first-class U.S. mail postage prepaid.

Solomon Ben-Tov Cohen
Inmate # A0261647, Alien # 77 309 675
El Paso County Jail, Criminal Justice Center
2739 East Las Vegas Road
Colorado Springs, CO 80906

s/ Katherine E. McCarron
Katherine E. McCarron
Assistant Counsel
Office of the General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Fax: (202) 226-1360

255

Email: katherine.mccarron@mail.house.gov
Counsel for Congressman Henry A. Waxman

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

    Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSH, Agent, U.S. Capitol Police,

    Defendants.

---

**DEFENDANT THE U.S. CAPITOL POLICE'S REPLY SUPPORTING MOTION TO**
**DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (Doc. 20)**

---

Defendant the U.S. Capitol Police, through undersigned counsel, hereby replies in support

of its motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6)

(Doc. 20) [hereinafter "Motion"].  This Court should dismiss Plaintiff's Amended Complaint.

**ARGUMENT**

In its Motion, Defendant set forth that the U.S. Capitol Police is not an appropriate

defendant for the claims in Plaintiff's Amended Complaint, which are nothing more than typical

Bivens claims.  See Doc. 20 at 4.  Plaintiff does not appear to argue in his Response that his

Amended Complaint sets forth any allegations against the U.S. Capitol Police that are sufficient

to state a Bivens claim against the U.S. Capitol Police.  See generally Doc. 55.  Plaintiff's Bivens

claims against the U.S. Capitol police should be dismissed.

Defendant suggested in its Motion that to the extent that this Court discerns any

potentially cognizable claims in Plaintiff's Amended Complaint against the U.S. Capitol Police,

the Court should order a more definite statement with respect to any such claims pursuant to Fed.

R. Civ. P. 12(e).  See Doc. 20 at 4-5.  In his Response, Plaintiff states that he "has no objection"

to a more definite statement.  (Doc. 55 at 1.)  Plaintiff suggests that he should "be given [the]

opportunity to separate claim against U.S. Capitol Police from Bivens claim to claim under

Federal Tort Act."  Id. at 2.  But Plaintiff does not identify the basis for a tort claim – or any other

claim – against the U.S. Capitol Police.  Defendant does not believe Plaintiff's Amended

Complaint or Response suggests a cognizable claim against the U.S. Capitol Police.  This Court

should dismiss Plaintiff's Amended Complaint against the U.S. Capitol Police.

**CONCLUSION**

For the above reasons, and those set forth in Defendant's Motion, Defendant the U.S.

Capitol Police respectfully requests that this Court grant this motion to dismiss and dismiss the

U.S. Capitol Police as a Defendant from the above-captioned case.

Respectfully submitted this 27th day of August, 2009.

DAVID M. GAOUETTE
United States Attorney

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Def. the U.S. Capitol Police

-2-

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

Katherine E. McCarron
katherine.mccarron@mail.house.gov
Counsel for Representative Waxman

I also hereby certify that on this 27th day of August, 2009, I have mailed or served the foregoing document to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
Prisoner # A0261647
Criminal Justice Center
2F3C4B
2739 E. Las Vegas Street
Colorado Springs, CO  80906

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Def. the U.S. Capitol Police

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,
    Plaintiff,
v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,
    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on: (1) "Defendant the U.S. Capitol Police's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 21, 2009) (doc. # 20); and (2) the "Motion to Dismiss of Defendant Henry Waxman" and "Memorandum of Points and Authorities in Support of Motion to Dismiss of Defendant Congressman Henry A. Waxman" (filed May 4, 2009) (docs. # 24 and # 25).  Pursuant to the Order of Reference dated November 12, 2008 (doc. # 9) and the memoranda dated April 22, 2009 (doc. # 21) and May 5, 2009 (doc. # 26), these matters were referred to the Magistrate Judge.  The court has reviewed the Motions, Mr. Cohen's Responses (filed August 12, 2009) (docs. # 55, # 56, and # 56-2), Defendant Waxman's Reply (filed August 27, 2009) (doc. # 58), Defendant the U.S. Capitol Police's Reply (filed August 27, 2009) (doc. # 59), the pleadings, the entire case file and the applicable law and is sufficiently advised in the premises.

I.       Statement of the Case

         Plaintiff Mr. Cohen, in his *pro se* capacity, brings this civil action pursuant to

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388

(1971), against Congressman Henry Waxman of California, the U.S. Capitol Police, and

Fred Busch (allegedly an agent of the U.S. Capitol Police), for money damages for

alleged constitutional and statutory violations that purport to arise out of Mr. Cohen's

visit to Congressman Waxman's congressional office in Washington, D.C. on or about

November 25, 2003.  (*See* Amended Prisoner Complaint ("APC") (doc. # 6) at p. 4 of

22; Second Amended Prisoner Complaint ("SAPC") (doc. # 12) at p. 3 of 28).  Mr.

Cohen alleges that he is a citizen and national of the United Kingdom "and non-

permanent resident of the United States since 1990."  (*See* initial Prisoner Complaint

(doc. # 3) at p. 12 of 77).  Mr. Cohen alleges that he was granted an H-1B visa in

December 1994 that was renewed in December 1997 and expired on December 21,

2000.  (*See* doc. # 3 at pp. 12, 14, 16, 35-36, 41 of 77).[1]

         Mr. Cohen entered the United States most recently on June 21, 2002 at Los

Angeles, California, under the Visa Waiver Program ("VWP"), 8 U.S.C. § 1187

(Immigration and Naturalization Act ("INA") § 217), and was authorized to stay in the

United States for no longer than 90 days.  *See Cohen v. Mukasey*, 2009 WL 1766843 *

2 (D. Colo. June 22, 2009).  Mr. Cohen did not depart the United States within 90 days

---

[1]     An H-1B visa is a non-immigrant visa that carries with it the right to work in the
United States on a temporary basis for a specific employer and at a specific job.  *See
generally*, 8 U.S.C. §§ 1101(a)(15)(H), 1184(g)(1) and (i)).  The normal duration of stay
is three years, with one extension of three additional years, *id.* at § 1184(g)(4), although
the maximum length of stay may be extended in certain circumstances that do not
appear to be present here.

and United States Immigration and Customs Enforcement ("ICE"), a subagency of the Department of Homeland Security ("DHS"), issued an order of removal on November 26, 2003.  (*See id.*).

Mr. Cohen traveled to Congressman Waxman's Washington, D.C. congressional office on November 25, 2003 to complain to Congressman Waxman about his treatment at the hands of local officials in West Hollywood, California. (*See* APC at p. 4 of 22; SAPC (doc. # 12) at pp. 3-4 of 28).  Mr. Cohen apparently intended to hand-deliver to Congressman Waxman "a letter asking for the Congressman's support in becoming a US Citizen after 10+ years in the United States." (*See* doc. # 3 at p. 13 of 77).  Mr. Cohen alleges that U.S. Capitol Police Agent Fred Busch "illegally wrongfully and maliciously arrested Plaintiff in the office of Defendant representative Henry Waxman at the Rayburn Office Building, Washington, District of Columbia on November 25th 2003 on a fabricated and false charge of '*making threats against a Congressman*' which he later dropped."  (*See* SAPC (doc. # 12) at p. 4 of 28) (emphasis in original).  Mr. Cohen was detained by ICE on November 26, 2003 in Virginia after a referral by the U.S. Capitol Police.  (*See* doc. # 3 at p. 28 of 77).  Mr. Cohen remains detained by ICE.

The SAPC, 28 pages in length and alleging nine claims, was accepted for filing on February 17, 2009.  (*See* doc. # 12).  Mr. Cohen alleges: (1) a violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments (Claim One); (2) a deprivation of constitutional rights, privileges, and immunities resulting in psychological harm (Claim Two); (3) extreme mental distress caused by the constitutional violations (Claim Three); (4) a violation of the First and Sixth Amendment communication privilege between Plaintiff and Representative Waxman (Claim Four); (5) intentional arrest without

probable cause (Claim Five); (6) loss of personal freedom, pain and suffering, and loss of reputation (Claim Six); (7) conspiracy (Claim Seven); (8) an improper refusal by Agent Busch to disclose his badge number (Claim Eight); and (9) bad faith investigation (Claim Nine).  (*See id.* at pp. 5-8, 19-24 of 28).  Mr. Cohen sues Defendant Waxman and Defendant Busch each "individually and in his official capacity."  (*See* doc. # 12 at p. 3 of 28).  Mr. Cohen sues Defendant U.S. Capitol Police "as employer of Defendant" Busch.  (*See id.*).  Mr. Cohen seeks only monetary relief.  (*See id.* at p. 15 ("Plaintiff prays that the Court grant him all compensatory, exemplary and punitive damages to which he is entitled. . . .")).

Defendant U.S. Capitol Police moves to dismiss the SAPC pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim under *Bivens.*  Defendant Waxman moves to dismiss the SAPC: (1) pursuant to Rule 12(b)(2) for lack of personal jurisdiction; (2) pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction based on qualified immunity and the Speech and Debate Clause of the U.S. Constitution (3) as barred by the statute of limitations; and (4) pursuant to Rule 12(b)(6) for failure to state any claim upon which relief can be granted.

II.   Analysis

A.   Lack of Personal Jurisdiction Over Congressman Waxman.

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed. R. Civ. P. 12(b)(2), and the question of jurisdiction is resolved based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing,

the burden is on the plaintiff to make a prima facie showing of a sufficient basis for jurisdiction. *Mylan Labs., Inc. v. Akzon, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). *See also Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) ("Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists."). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings,* 149 F.3d at 1091. It is the plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution. *United Elec. Radio and Mach. Workers of America (UE) v. 163 Pleasant Street Corporation*, 987 F.2d 39, 43-44 (1st Cir. 1993) (internal quotation marks and citation omitted).

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (internal quotation marks and citation omitted). "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation omitted).

Where the federal statute at issue does not authorize nationwide service of process, a court may assert personal jurisdiction to "the extent allowed by the state in

5

which the district court sits."  Fed. R. Civ. P. 4(k)(1)(A); *SCC Communications Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002).  Because *Bivens*, 403 U.S. 388, does not confer nationwide service of process, Rule 4(k)(1)(A) governs this court's authority to exercise personal jurisdiction over Congressman Waxman as an out-of-state defendant.  Rule 4(k)(1)(A) provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

> When authorized by Federal Rule of Civil Procedure 4(k)(1)(A), service of process sufficient to exercise jurisdiction over a defendant is limited by state law, so that any challenge to the personal jurisdiction requires [the court] to assess the jurisdiction of the courts in the state where the district court is located. . . .
>
> Since in personam jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment, [the court must] inquire whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant. If it does, [the court] must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. . . .

*ESAB Group, Inc. v. Centricut, Inc.* 126 F.3d 617, 622-23 (4th Cir. 1997) (citations omitted).

"Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause.  Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant."  *Benton v. Cameco Corp.*, 375 F. 3d 1070, 1075 (10th Cir. 2004) (citation omitted).  *See also United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (question of whether court can exercise personal jurisdiction "collapses into a single due

6

process analysis under the Constitution") (internal quotation marks and citation omitted).

The Tenth Circuit has "carefully and succinctly la[id] out the well-established constitutional analysis for personal jurisdiction."  *Benton*, 375 F. 3d at 1075.

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations.  Therefore, a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state. . . .
>
> The minimum contacts standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.  Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir.1998) (internal quotation marks and citations omitted).

1.      Specific Jurisdiction

Defendant Waxman argues that he does not have minimum contacts with the District of Colorado for purposes of specific jurisdiction.  "In determining whether a defendant has established minimum contacts with the forum state, we examine whether the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State."  *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted).  "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results

from actions by the defendant himself that create a substantial connection with the forum state." *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted). The court "must consider whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559 (1986). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws." *Trujillo*, 465 F.3d at 1219 (internal quotation marks and citation omitted) (emphasis in original).

Mr. Cohen does not allege or demonstrate that Defendant Waxman conducted any activities in Colorado or had any contact with him in Colorado.  All of the events constituting the alleged unconstitutional conduct occurred in Washington, D.C.  (*See* doc. # 12).  Mr. Cohen argues in his Response that Defendant Waxman has a website, http://www.henrywaxman.house.gov, that subjects him to the jurisdiction of this court. (*See* doc. # 56-2 at p. 25 of 68).  The Tenth Circuit and the District of Colorado have rejected similar arguments as grounds for personal jurisdiction.  *See, e.g., Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299, 1999 CJ C.A.R. 6638 (10th Cir. 1999) (holding that the maintenance of a passive website accessible to forum residents that merely provides information to "interested viewers," is insufficient to demonstrate the purposeful availment of benefits of doing business in the forum); *SCC Communications Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002) ("The creation of a passive website, by itself, is not considered an act purposefully directed toward the forum state.").  *See also Oxion, Inc. v. O3 Zone Co.*, 2007 WL 2155675 at *

6 (D. Kan. July 26, 2007) (website of limited interactive nature failed to satisfy the standards prerequisite to the exercise of general or specific jurisdiction) (cited by Mr. Cohen, doc. # 56-2 at p. 25 of 68).

In his Response, Mr. Cohen also argues that "Result of defendants tortious acts continues in The State of Colorado [sic]". (*See* doc. # 56-2 at p. 29 of 68).  "The United States Supreme Court has addressed the issue of what contacts are necessary to satisfy due process in the context of an intentional tort." *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 237 (Colo. 1992) (internal quotation marks and citation omitted).  "In *Calder v. Jones*, the Court approved an 'effects' test and held that where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the Defendant and the state so as to satisfy due process." *Id.* (citations omitted).  Mr. Cohen has not sufficiently alleged or demonstrated that Defendant Waxman engaged in intentional and tortious actions in Washington, D.C., expressly directed at causing a harmful effect within Colorado, so as to establish a sufficient nexus between Defendant Waxman and Colorado.

In sum, the court concludes that Defendant Waxman does not have minimum contacts with the District of Colorado for purposes of specific jurisdiction.

2.      General Jurisdiction

Mr. Cohen argues in his Response that Defendant "Waxman's role in the House of Representatives and as Chair of various committees affects the State of Colorado means General Jurisdiction." (*See* doc. # 56-2 at p. 24 of 68).  The court may take

9

judicial notice of the fact that Defendant Waxman represents the 30th congressional district of California, encompassing the coastal communities of Santa Monica, Malibu, West Los Angeles, Beverly Hills, and West Hollywood, California, and maintains congressional offices only in Washington, D.C. and Los Angeles. *See* http://www.henrywaxman.house.gov. Government officials who do not reside or perform work in Colorado do not "transact business" within the meaning of the long-arm statute. *See Shaffer v. Clinton*, 54 F. Supp. 2d 1014, 1020-21 (D. Colo. 1999) ("consequences in Colorado of acts performed by remote defendants are insufficient to establish personal jurisdiction over that plaintiff unless the plaintiff can show "an action of the defendant purposefully directed toward the forum State' " . . . thus Colorado long-arm statute did not reach Clerk of the U.S. House of Representatives who performed his job in Washington, D.C.); *First Western Gov't Securities, Inc. v. United States*, 578 F. Supp. 212, 215 (D. Colo. 1984) (employees of the IRS who had "at no time participated in any work assignments in Colorado or traveled to Colorado in connection with any work assignments" did not transact "business in Colorado as that phrase has been defined by case law interpreting the long-arm statute."). *See also Cornell v. Kellner*, 539 F.Supp.2d 311, 315 (D.D.C.2008) (finding no personal jurisdiction over IRS employees who were Arizona residents, where plaintiff did not allege "that his claim for relief arises from Defendant's transaction of business in the District of Columbia," nor did he offer evidence that defendants committed any acts in D.C. with a "nexus to [p]laintiff's cause of action"); *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 57-58 (D.D.C. 2005) (finding no personal jurisdiction over defendant who lived and worked in Missouri where his sole contact with D.C. was employment by

10

Internal Revenue Service, which is headquartered here), *aff'd in part and remanded*,

477 F.3d 728 (D.C. Cir.), *cert. denied*, 128 S.Ct. 92 (2007).  Mr. Cohen has neither pled

nor demonstrated grounds for maintaining general personal jurisdiction over Defendant

Waxman.

Mr. Cohen's allegations and arguments do not suffice to make a prima facie

showing of the requisite minimum contacts consistent with due process.  This court thus

lacks personal jurisdiction over Defendant Waxman.  As the court cannot proceed to the

merits of a claim in the absence of personal jurisdiction, Mr. Cohen's claims against

Defendant Waxman are properly dismissed pursuant to Fed. R. Civ. P. 12(b)(2).[2]


3.      Transfer of Venue

In his Response, Mr. Cohen states:"[t]o the extent that Plaintiff is unable to

successfully argue against Defendant's claim of lack of jurisdiction in the attached

Memorandum, Plaintiff asks for Change of Venue to US District Court for the District of

Columbia."  (*See* doc. # 56 at p. 2 of 4; *see also* doc. # 56-2 at p. 26 of 68 ("To the

extent that Defendant's Motion may be construed as request to transfer this Action to

US District Court for the District of Columbia or Supreme Court of the United States,

Plaintiff has no ob[je]ctions.")).  First, Defendants have not requested a transfer of

venue.  No party has argued that this case was brought in the wrong venue.  Mr. Cohen

---

[2]    The court notes that the same issues and analysis regarding personal jurisdiction appear to equally apply to Defendant Busch, who has not yet answered or otherwise responded to the SAPC.  Further, Mr. Cohen has noted that "it has not yet been ascertained as to whether or not Plai[nti]ff's wrongful arrest . . . in Denver . . . is the result of direct and unlawful intervention by the Defendants - Defendant Fred Busch, . . ."  (*See* doc. # 56 at p. 2 of 4).

has not presented any grounds for a transfer of venue and Defendants have not responded to his suggestion regarding transfer of venue.  Second, Mr. Cohen cannot move for a transfer of venue in his response.  *See* Local Rules of Practice of the United States District Court for the District of Colorado, D.C. COLO. LCivR 7.1 C. ("A motion shall not be included in a response or reply to the original motion.  A motion shall be made in a separate paper.").

Third, the decision to dismiss or transfer a case is "within the district court's sound discretion."  *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).  In determining whether to transfer or to dismiss a case, the determinative question is whether a transfer is in the interest of justice.  28 U.S.C. § 1406(a), § 1404(a).  Courts consider many factors, both private interest and public interest.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).  Private interest factors include: "the relative ease of access to sources of proof;  availability of compulsory process for attendance of unwilling, and the cost of attendance for willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* at 241 n. 6 (citation omitted).  Public interest factors to be considered include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; . . . the avoidance of unnecessary problems of conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Id.* (internal quotation marks and citation omitted).

As no party has addressed any of these factors, the court does not address them on a silent record.  In its discretion, the court finds that a transfer of venue would not be

in the interest of justice and declines to transfer the action at this time.  The court's

recommendation for dismissal of Defendant Waxman for lack of personal jurisdiction is

without prejudice to Mr. Cohen refiling his claims in another venue.[3]


B.      Failure to State a Claim Against Defendant U.S. Capitol Police

Defendant U.S. Capitol Police moves to dismiss the SAPC pursuant to Rule

12(b)(6) for failure to state a claim under *Bivens*.  Mr. Cohen's SAPC alleges only

constitutional violations and seeks only money damages based on his arrest by a

federal employee in Washington, DC in November 2003.  (See doc. # 12).

In *Bivens*, 403 U.S. at 388, the Supreme Court recognized "an implied private

right of action for damages against federal officers alleged to have violated a citizen's

constitutional rights."  *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66

(2001).  "Bivens claims allow plaintiffs to recover from individual federal agents for

constitutional violations these agents commit against plaintiffs."  *Robbins v. Wilkie*, 300

F.3d 1208, 1211 (10th Cir. 2002) (citing *Bivens*, 403 U.S. at 388).  The doctrine of

sovereign immunity precludes a *Bivens* action against the United States or any agency

thereof.  *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002).  *See also Malesko*, 534

U.S. at 72 ("prisoner may not bring a Bivens claim against the officer's employer, the

United States, or the BOP");  *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) ("a damages

remedy against federal agencies would be inappropriate even if such a remedy were

_____

[3]   In light of the court's conclusion that it lacks personal jurisdiction over Defendant Waxman, the court need not reach Defendant Waxman's additional arguments for dismissal at this time.

13

consistent with *Bivens*."); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir.2005) ("a Bivens claim lies against the federal official in his individual capacity – not . . . against officials in their official capacity").

In his Response, Mr. Cohen states: "Plaintiff should also be given opportunity to separate claim against US Capitol Police from *Bivens* claim to claim under Federal Tort Act should this be necessary." (*See* doc. # 55 at p. 2 of 3).  The mere mention of the "Federal Tort Act" in his response is insufficient to make any such claim.  *See* D.C. COLO. LCivR 7.1 C.   Mr. Cohen has not made any allegation in support of a federal tort claim.  Nor has Mr. Cohen made any allegation that he has filed a proper administrative claim, as required for a federal tort claim.  *See Three-M Enterprises, Inc. v. United States*, 548 F. 2d 293, 294 (10th Cir. 1977) ("The United States has consented to be sued for torts in the Federal Tort Claims Act.  28 U.S.C. § 1346(b).  But as a prerequisite to suit under the Act, 28 U.S. C. § 2675(a) requires that the claim first be presented to the appropriate federal agency and be finally decided by the agency.  This requirement is jurisdictional and cannot be waived.").

Because a damages claim under *Bivens* cannot be stated against a federal agency, the SAPC is properly dismissed as against Defendant the U.S. Capitol Police.

Accordingly, IT IS RECOMMENDED that:

1.      The "Motion to Dismiss of Defendant Henry Waxman" (filed May 4, 2009) (doc. # 24) be GRANTED and Defendant Waxman be dismissed from this civil action, without prejudice to Mr. Cohen refiling his claims in another venue.

2.      "Defendant the U.S. Capitol Police's Motion to Dismiss Pursuant to Fed.

14

R. Civ. P. 12(b)(6)" (filed April 21, 2009) (doc. # 20) be GRANTED and Defendant U.S. Capitol Police be dismissed with prejudice from this civil action.


**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal

275

those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir.

1992) (by their failure to file objections, plaintiffs waived their right to appeal the

Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

review).

      Dated at Denver, Colorado this 21st day of September, 2009.

                  BY THE COURT:



                    s/Craig B. Shaffer
                  United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

    Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSH, Agent, U.S. Capitol Police,

    Defendants.

---

**DEFENDANT FRED BUSCH'S MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

---

Defendant Fred Busch,[1] through undersigned counsel, hereby moves to dismiss Plaintiff's

Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  Plaintiff's Amended

Complaint should be dismissed because this Court lacks personal jurisdiction over former SA

Busch.  In addition, all of Plaintiff's claims against former Special Agent ("SA") Busch are barred

by the statute of limitations.  Even if this Court finds that it has personal jurisdiction, and that

Plaintiff's claims are not time-barred, Plaintiff fails to state a plausible claim to relief and former

SA Busch is entitled to qualified immunity.

---

[1] Former United States Capitol Police Special Agent Fred Busch spells his last name "Busch," not Bush.

**FACTS**

Plaintiff filed an Amended Complaint on February 17, 2009.  (Doc. 12.)  In the Amended Complaint, Plaintiff names three Defendants: Representative Waxman, the U.S. Capitol Police, and former SA Busch of the U.S. Capitol Police.[2]  See id. at 1.

The Second Amended Complaint alleges that around November 2003, Plaintiff traveled from California to Washington, D.C., to meet with Representative Waxman.  See Doc. 12 at 4.  Upon arriving at Representative Waxman's Office on November 25, 2003, Plaintiff alleges that he was "wrongfully and maliciously arrested" by Agent Busch.  Id.  Plaintiff alleges that these actions constitute: (1) a violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments (Claim One); (2) a deprivation of constitutional rights, privileges, and immunities resulting in psychological harm (Claim Two); (3) extreme mental distress caused by the constitutional violations (Claim Three); (4) a violation of a First and Sixth Amendment communication privilege between Plaintiff and Representative Waxman (Claim Four); (5) intentional arrest without probable cause (Claim Five); (6) loss of personal freedom, pain and suffering, and loss of reputation (Claim Six); (7) conspiracy (Claim Seven); (8) an improper refusal by Agent Busch to disclose his badge number (Claim Eight); and (9) bad faith investigation (Claim Nine).  Id. at 5-8; 19-24.

Thus, Plaintiff's Amended Complaint alleges that former SA Busch violated the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, as well as improperly refused to disclose his

---

[2]  Representative Waxman and the U.S. Capitol Police have already filed motions to dismiss, which are fully-briefed.  See Docs. 24, 25, 56, & 58 (Waxman motion to dismiss, brief in support of motion to dismiss, response, and reply) and Docs. 20, 55, & 59 (U.S. Capitol Police motion to dismiss, response, and reply).  Magistrate Judge Shaffer has recommended that both motions be granted.  See Doc. 60.

badge number and conducted bad faith investigation.[3]  See generally id.  Plaintiff seeks monetary

damages from former SA Busch.  See id. at 15.

## ARGUMENT

I.   **This Court Lacks Personal Jurisdiction Over Former SA Busch**

Defendant Busch is named as an individual-capacity Bivens defendant in Plaintiff's

Amended Complaint.  This Court lacks personal jurisdiction over Defendant Busch.

### A.   Legal Background

Plaintiff bears the burden of establishing personal jurisdiction.  See Bell Helicopter

Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1295 (10th Cir. 2004).  "Before a federal

court can assert personal jurisdiction over a defendant in a federal question case, the court must

determine (1) whether the applicable statute potentially confers jurisdiction by authorizing

service of process on the defendant and (2) whether the exercise of jurisdiction comports with

due process."  Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000)

(internal quotations omitted).  Service of process and personal jurisdiction are separate inquiries

that must both be satisfied before a suit can proceed.  Id.

Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure.  See

Fed. R. Civ. P. 4.  Where no statute confers "nationwide service of process or jurisdiction upon

federal district courts to adjudicate claims, Fed. R. Civ. P. 4(k)(1)(A) refers" the Court to the

state long-arm statute, "which is coextensive with constitutional limitations imposed by the Due

Process Clause."  Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006).  Thus, whether the

---

[3] Plaintiff asserts separate "claims" relating to the alleged harm and injuries caused by the constitutional deprivations.  Defendant Busch understands these claims for damages as being part of Plaintiff's claims that a constitutional violation occurred.

Court can exercise personal jurisdiction "collapses into a single due process analysis under the Constitution." United States v. Botefuhr, 309 F.3d 1263, 1271 (10th Cir. 2002) (internal quotations omitted).

"The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291(1980)).  To establish "minimum contacts," the plaintiff must show that the "defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  This requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Bell Helicopter, 385 F.3d at 1296.  The foreseeability of causing an injury in the forum state is not enough to establish the minimum contacts; rather, "it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297.

Even if minimum contacts exist, the Court still must consider whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. Burger King, 471 U.S. at 476-77.  This requires a determination of whether personal jurisdiction is reasonable in light of the circumstances surrounding the case. Id.

**B.     Former SA Busch Does Not Have Sufficient Minimum Contacts With Colorado**

Plaintiff's Amended Complaint does not make any factual allegations that would allow the Court to conclude that former SA Busch has the necessary minimum contacts with Colorado to satisfy the Due Process Clause, or that personal jurisdiction is reasonable in light of the circumstances alleged.  First, Plaintiff has not alleged jurisdiction under any federal statute that confers "nationwide service of process or jurisdiction."  Trujillo v. Williams, 465 F.3d at 1217.  Thus, the personal jurisdiction analysis collapses into a traditional minimum contacts analysis. Botefuhr, 309 F.3d at 1271.

Plaintiff does not allege in the Amended Complaint that former SA Busch is a resident of Colorado.  See generally Doc. 12.  To the contrary, Plaintiff identifies former SA Busch's address as Washington, D.C.  See Doc. 12 at 2.  Moreover, Plaintiff provides no indication in the Amended Complaint that former SA Busch ever purposefully availed himself of the privilege of conducting activities in Colorado.  Likewise, the Amended Complaint does not contain any allegations that former SA Busch has had any meaningful contacts with this District.  All of the allegations pertaining to former SA Busch are related to activity that took place in Washington, D.C.  See generally Doc. 12.

Former SA Busch's activities as an agent of the Capitol Police located in Washington, D.C. are not enough to support the exercise of personal jurisdiction over him in the District of Colorado.  Former SA Busch could not reasonably anticipate being haled into court in Colorado based on his carrying out of his duties as an agent of the Capitol Police in Washington, D.C.

-5-

Accordingly, the claims against former SA Busch should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**II.      All of Plaintiff's Claims Are Barred By the Statute of Limitations**

The factual basis of all of Plaintiff's claims against former SA Busch is that on November 25, 2003, Plaintiff was "illegally wrongfully and maliciously arrested" by former SA Busch in Representative Waxman's office.  See Doc. 12 at 4.  The statute of limitations has expired on these claims.

When a complaint makes clear that the limitations period has expired, the issue is appropriately resolved on a motion to dismiss.  See Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  Indus. Constructors Corp. v. U.S. Bureau of Reclamation,15 F.3d 963, 969 (10th Cir. 1994)

"Bivens is a judicially created remedy that does not have its own statute of limitations. Bivens actions generally borrow the general personal injury limitations statute in the state where the action arose."  Van Tu v. Koster, 364 F.3d 1196, 1198 (10th Cir. 2004) (internal citations omitted) (citing Indus. Constructors, 15 F.3d at 968).  The limitations period is determined by the state in which the cause of action arose.  See Anderson v. Keeling, 71 F. App'x 28, 29 (10th Cir. 2003) (citing Crosswhite v. Brown, 424 F.2d 495, 496 (10th Cir.1970)).  Because the alleged injury occurred in Washington, D.C., the District of Columbia's statute of limitations applies.  In Washington, D.C., a one-year statute of limitations applied to claims of "libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment," while a

three-year limitations period applies to all other claims.[4]  See D.C. Code § 12-301(4), (8) (2006).

Even assuming that some of Plaintiff's claims could be interpreted as claims of false arrest or

false imprisonment – at one place in Plaintiff's Amended Complaint, he states that his claims are

for "wrongful arrest" – and even assuming a three-year statute of limitations for all of Plaintiff's

claims, all of Plaintiff's claims are time-barred.

Plaintiffs' Bivens claims accrued on November 25, 2003, when, according to Plaintiff, he

was "illegally wrongfully and maliciously arrested" by former SA Busch.  (Doc. 12 at 4.)  All of

Plaintiff's allegations pertaining to the alleged wrongful conduct of former SA Busch relate to

that date.  Plaintiff knew of the injury that gave rise to all of his claims on November 25, 2003.

The statute of limitations for Plaintiff's claims expired no later than November 26, 2006,

approximately two years before Plaintiff filed this lawsuit.  Plaintiff's claims are time-barred and

should be dismissed.

### III.    Plaintiff Does Not State a Plausible Claim to Relief

#### A.    Legal Background

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state "enough

facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570 (2007).  The Court must accept as true only the well-pleaded allegations of the

complaint and must construe them in the light most favorable to the plaintiff.  Grossman v.

Novell, Inc., 120 F.3d 1112, 1118 (10th Cir. 1997).  But "[i]t is not … proper to assume that the

[plaintiff] can prove facts that it has not alleged … ."  Associated Gen. Contractors v. Cal. State

---

[4]  Even if the Court determined that Colorado's limitations period applied, Plaintiff's claims would be time-barred.  In Colorado, a two-year statute of limitations applies to personal injury actions.  See Colo. Rev. Stat. § 13-80-102.

Council of Carpenters, 459 U.S. 519, 526 (1983) (quoted in Bell Atlantic, 550 U.S. at 563 n.8).

"[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support

of the pleaded claims is insufficient; the complaint must give the court reasons to believe that

this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at

Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

To survive a motion to dismiss, a plaintiff must provide "more than labels and

conclusions, [or] a formulaic recitation of the elements of a cause of action." Lane v. Simon, 495

F3d 1183, 1186 (10th Cir. 2007) (citing Bell Atlantic, 550 U.S. at 555); see also Smith v. Plati,

258 F.3d 1167, 1176 (10th Cir. 2001) (noting that "[a] federal constitutional question must exist

not in mere form, but in substance, and not in mere assertion, but in essence and effect" and

affirming district court's dismissal of a claim for failure to state a claim). Thus, in pleading, "a

plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a

motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.

2007) (internal quotations omitted).

"Bivens claims allow plaintiffs to recover from individual federal agents for

constitutional violations these agents commit against plaintiffs." Robbins v. Wilkie, 300 F.3d

1208, 1211 (10th Cir. 2002). A Bivens action alleging that a federal employee violated a

plaintiff's constitutional rights cannot be maintained against the United States or an agency of the

United States. See FDIC v. Meyer, 510 U.S. 471, 486 (1994); see also Corr. Servs. Corp. v.

Malesko, 534 U.S. 61, 72 (2001) (holding that a "prisoner may not bring a Bivens claim against

the officer's employer, the United States, or the BOP").

-8-

The Supreme Court has only recognized Bivens liability for violations of the Fourth Amendment, Fifth Amendment Due Process Clause, and Eighth Amendment Cruel and Unusual Punishment Clause, and has "consistently refused to extend Bivens liability to any new context or new category of defendants." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001); Wilkie v. Robbins, 551 U.S. 537, 567-68 (reversing Tenth Circuit's creation of new Bivens liability); see also Bivens, 403 U.S. 388 (finding implied damages remedy under Fourth Amendment); Davis v. Passman, 442 U.S. 228 (1979) (finding implied damages remedy under the Due Process Clause of the Fifth Amendment); Carlson v. Green, 446 U.S. 14 (1980) (finding implied damages remedy under Eighth Amendment Cruel and Unusual Punishment Clause).

**B.      Plaintiff Does Not State a Plausible Bivens Claim**

Plaintiff's Amended Complaint alleges that former SA Busch violated the First, Fourth, Fifth, Sixth, and Fourteenth Amendments,[5] as well as improperly refused to disclose his badge number and conducted bad faith investigation. See generally Doc. 12.

---

[5] Although Plaintiff asserts a violation of the Fourteenth Amendment, the Fourteenth Amendment applies to the conduct of state, rather than federal, actors. See Dusenbery v. United States, 534 U.S. 161, 167 (2002). At the time of the conduct complained of, Defendant Busch was a federal employee.

-9-

## 1.   First Amendment Claims

The Supreme Court has not expressly extended Bivens liability to First Amendment claims.[6]  See Malesko, 534 U.S. at 68.  Plaintiff cannot bring a First Amendment Bivens claim against former SA Busch.

But, even if this Court elects to extend the Bivens remedy to the First Amendment context, Plaintiff has not pled a plausible First Amendment claim against former SA Busch in his Amended Complaint.  Plaintiff asserts that his "right under the First Amendment … to freedom of expression and to petition the government for a redress of grievance" has been violated.[7] (Doc. 12 at 5.)  Plaintiff does not clarify how his right to "freedom of expression" or right to "petition the government for redress" have been restricted.[8]  Plaintiff also provides no allegations to specifically link former SA Busch to any First Amendment violation.  He does not allege how the actions of former SA Busch restricted or infringed upon his protected First Amendment rights.  Without these specific allegations, a Bivens claim for money damages against an individual cannot survive.  See Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1948 (2009)

---

[6] In Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937 (2009), the Supreme Court noted that in Bush v. Lucas, 462 U.S. 367, (1983) it had "declined to extend Bivens to a claim sounding in the First Amendment." Iqbal, 129 S. Ct. at 1948.  However, in Iqbal, because "Petitioners [did] not press this argument" the Court "assume[d], without deciding, that respondent's First Amendment claim is actionable under Bivens." Id.

[7] Plaintiff also asserts that his communications with Representative Waxman were privileged, and that he "would never have communicated with the Congressman had he known this information would be used to arrest him." Id. at 19.  But there is no protection (constitutional, statutory, regulatory, or rule-based) for communications with members of Congress.

[8] Indeed Plaintiff has filed multiple lawsuits seeking redress for alleged violations of his rights. See Doc. 12 at 9-14 (previous lawsuits section of Amended Complaint).

(noting that a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Plaintiff's conclusory assertions are nothing more than a recitation of the cause of action, without any statement of underlying facts to support the claim. Plaintiff's First Amendment Claim against former SA Busch should be dismissed.

### 2.      Fourth and Fifth Amendment Claims

Plaintiff does not specify the nature of the Fourth or Fifth Amendment violations he alleges.  Nor does not provide any specific factual allegations to support any Fourth or Fifth Amendment violations.  Plaintiff merely conclusorily alleges that he was "wrongfully and maliciously" arrested on a "false and fabricated" charge.  (Doc. 12 at 4.)  These allegations do not provide any underlying facts to substantiate a constitutional violation by former SA Busch. They are "bare assertions … [that] amount to nothing more than a formulaic recitation of the elements. … As such, the allegations are conclusory and not entitled to be assumed true." Iqbal, 129 S. Ct. at 1951.  Plaintiff has not alleged specific facts showing that former SA Busch deprived him of any Fourth or Fifth Amendment right, and these claims should be dismissed.

### 3.      Sixth Amendment Claim

The Supreme Court has not extended Bivens liability to Sixth Amendment claims.  See Malesko, 534 U.S. at 68.  Thus, Plaintiff cannot bring a Bivens claim against former SA Busch premised on the Sixth Amendment.

Even if this Court extends Bivens liability to Sixth Amendment claims, Plaintiff's Amended Complaint does not contain sufficient allegations to state a plausible Sixth Amendment claim against former SA Busch.  First, Plaintiff does not articulate a theory of his Sixth

-11-

Amendment claim (i.e., right to criminal counsel, Confrontation Clause, speedy trial, etc.).  See

generally Doc. 12.  But what is clear from Plaintiff's Amended Complaint is that former SA

Busch cannot be connected by the allegations in the Amended Complaint to any plausible Sixth

Amendment violation.  The only allegation relating to former SA Busch is that he arrested

Plaintiff on November 25, 2003.  This allegation does not plausibly state any Sixth Amendment

violation as to former SA Busch.  Plaintiff's Sixth Amendment claim should be dismissed.

### 4.    Other Claims

Any remaining claims by Plaintiff are not constitutional in nature.  As such, they are not

proper Bivens claims and should be dismissed.  See Robbins v. Wilkie, 300 F.3d at 1211 (10th

Cir. 2002) ("Bivens claims allow plaintiffs to recover from individual federal agents for

constitutional violations these agents commit against plaintiffs.") (emphasis added).

## IV.    Former SA Busch is Entitled to Qualified Immunity

Former SA Busch is entitled to qualified immunity for all of Plaintiff's claims.  Once a

defendant raises the defense of qualified immunity, the burden shifts to the plaintiff to show "(1)

the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly

established and reasonable persons in the defendants' position would have known their conduct

violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  The

court has discretion "in deciding which of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances in the particular case at hand."  Pearson v.

Callahan, --- U.S. ----, 129 S. Ct. 808, 818 (2009).

In addressing whether the right is clearly established, the court looks to "whether it would

be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

Saucier v. Katz, 533 U.S. 194, 202 (2001).  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003).

Moreover, the issue is not simply whether a constitutional right existed in the abstract as a broad general proposition, but whether it would have been clear to a reasonable officer at the time that his conduct would be unlawful in the specific context he confronted.  See Saucier, 533 U.S. at 201-02 (inquiry is whether "it would be clear to a reasonable officer that what he is doing violates that right"); Anderson v. Creighton, 483 U.S. 635, 639 (1987) (the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right").

Even if the Court concludes that former SA Busch did violate Plaintiff's clearly established constitutional rights, the Court must further evaluate whether the mistake was reasonable.  The law of qualified immunity "acknowledge[s] that reasonable mistakes can be made" in determining the legality of conduct.  See Saucier, 533 U.S. at 202.  Thus, an officer might "have a mistaken understanding as to whether a particular amount of force is legal," but "[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."  Id.  Thus, qualified immunity operates "to protect officers from the sometimes hazy border" between legal and unlawful conduct.  Id. at 206.

Here, as set forth above, Plaintiff cannot establish that the actions of former SA Busch violated any constitutional or statutory right.  Moreover, Plaintiff has not alleged any specific facts to suggest that former SA Busch here would have known – based on the particular facts as

-13-

known to him in November 2003 – that his arrest of Plaintiff violated any of Plaintiff's clearly

established constitutional rights.  Former SA Busch is entitled to qualified immunity.

**CONCLUSION**

For the above reasons, Defendant former SA Busch respectfully requests that this Court

grant this motion to dismiss and dismiss him as a Defendant from this case.

Respectfully submitted this 5th day of October, 2009.

DAVID M. GAOUETTE
United States Attorney

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of October, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 5th day of October, 2009, I have mailed or served the foregoing document to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO  80010-1525

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

　　　　　Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,

　　　　　Defendants.

_____

**ORDER**
_____


　　　　　This case is before me on the recommendation of the Magistrate Judge issued and served

on September 21, 2009 (Doc 60).   Plaintiff has failed to file specific written objections to the

Magistrate Judge's recommendation and is therefore barred from *de novo* review.   Accordingly, it

is

　　　　　ORDERED that the recommendation is accepted as follows:

1.　　　　The "Motion to Dismiss of Defendant Henry Waxman" (Doc 24) is GRANTED and

　　　　　Defendant Waxman is dismissed from this civil action, without prejudice to Plaintiff

　　　　　refiling his claims in another venue.

2.　　　　"Defendant the U.S. Capitol Police's Motion to Dismiss Pursuant to Fed. R. Civ. P.

　　　　　12(b)(6)" (Doc 20) is GRANTED and Defendant U.S. Capitol Police is dismissed

　　　　　without prejudice from this civil action.

　　　　　　　　　　　　　　　　　BY THE COURT:


　　　　　　　　　　　　　　　　　　s/Lewis T. Babcock
　　　　　　　　　　　　　　　　　Lewis T. Babcock, Judge

DATED:   October 21, 2009

**SOLOMON B COHEN**

**ALIEN # 077 309 675**

**I.C.E. DETENTION FACILITY**
**11901 E30TH AVE**
**AURORA**
**CO 80010- 1525**

Tel: (303) 361- 6612 West Core

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**OCT 2 7 2009**
GREGORY C. LANGHAM
CLERK

LEGAL MAIL

Clerk of the Court
United States District Court
901 19th St, Room A105
Denver
CO 80294-3589

Case No '08-cv-02188-LTB-CBS

October 23, 2009

Dear Clerk of the Court

I would like to appeal the attached ORDER.

I have been denied access to the Law Library for one month- quarantined because of 'flu both here and at El Paso County.

Thank you for your attention.

Sincerely

**Solomon B Cohen MA(*Cantab*) pro-se**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No 08- cv- 02188- LTB-CBS

SOLOMON BEN- TOV COHEN Pro- SE,          Plaintiff

v

Hon HENRY A WAXMAN, US Congressman

US CAPITOL POLICE

FRED BUSCH, ex- Special agent          Defendants
        US Capitol Police

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

NOV  -3 2009

GREGORY C. LANGHAM
                    CLERK

---

## APPEAL OF ORDER

---

Plaintiff Solomon B Cohen pro- se respectfully appeals attached ORDER for the following

reasons and requests a hearing: -


## I. USED OF PERJURED TESTIMONY BY US ATTORNEY PREVENTED PLAINTIFF FROM RETURNING TO WASHINGTON DC ON EXISTING BOND

1. ICE have now admitted that Plaintiff's $3,000 Immigration Bond has

    been valid and that Plaintiff should not have been held in custody for

    over a year- ex 1-3.


2. US Attorney used perjured testimony from Deportation Officer Jorge

    Tena- Rodrigruez in this Court stating that this bond had been forfeited.

1

3. FOIA request received after 9 months prove US Attorney knew Bond is valid.

## II. PETITIONER IS BEING WRONGFULLY REMOVED FROM THE UNITED STATES

SEE EX 5.

## III. SUBPOENA OF REPRESENTATIVE HENRY A WAXMAN AND FRED BUSCH

### A. Grand Jury Indictment

1. Immigration are asking US Attorney to bring criminal prosecution in this Court see ex[th]5.

2. Court will hear the case before a jury anyway.

## IV. FAILURE TO OBJECT TO MAGISTRATE'S REPORT

A. ICE EL Paso County and ICE refused to send pleadings to Courts -see ex 4.

(i) "indigent inmate must wait 14 days for legal mail to be sent;"

## V. PLAINTIFF WILL BE TIME BARRED FROM PROCEEDINGS IN US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA UNLESS CASE IS TRANSFERRED BY ALLOWED PLAINTIFF TO FILE CHANGE OF VENUE.

**Plaintiff respectfully asks the Court to reconsider its decision.**

2

295

I affirm under penalty of perjury that to the best of my knowledge the above is a true statement of facts.

Date: 10/29/09                      Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se
Alien # 077 309 675

3

## CERTIFICATE OF SERVICE

I hereby certify that on this day of 10/29 , 2009, service of the attached document was effected by placing a true and correct copy of each of the same in the United States mail, first class postage prepaid, addressed to the following:

Counsel for Representative Henry A Waxman

Katharine E McCarron, Assistant Counsel
US House of Representatives
219 Cannon House Office Building
Washington
DC 20515

Counsel for United States Capitol Police and Fred Busch

Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202

Fred Busch
United States Postal Inspection Service
Boston Division
495 Summer St, Suite 600
Boston
MA 02210-2114

Date: 10/29/09                    Signed:

Solomon B Cohen MA(*Cantab*) pro-se
Alien # 077 309 675

4

# US DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## TABLE OF EXHIBITS

*Cohen v Waxman et al,*   Case No: '08-cv-02188-LTB-CBS

| No | Description |
|----|-------------|
| 1 | Release on $3,000 Immigration Bond from custody resulting from false arrest by US Capitol Police (Office of Hon Henry Waxman) because of recurrence of cancer. |
| 2 | $3,000 Immigration Bond is canceled by John Longshore, FOD Department of Homeland Security, ICE June 19th **2009**. [Proof of perjury by ICE in US District Court] |
| 3 | Bond Continuation Memo -"open and in full force"; "continued 07/08/ **2008** [USCIS FOIA illegal delay] |
| 4 | Immigration & El Paso County Jail refuse to send mail to court. Notice of prosecution in US District Court. |
| 5 | Warning for Failure to Depart |

# EXHIBIT 1



U.S. Department of Homeland Security
3420 North Fairfax Drive
Arlington, Virginia 22203

*Detention & Removal Operations*

## U.S. Immigration and Customs Enforcement

March 30, 2004

Ms. Nadia Ezzelarab, Esq.
4001 N. Ninth Street Suite 222
Arlington, VA 22203
Fax (703) 243-1494

Re: Solomon B. Cohen
Parole Request, A# 77 309 675

Dear Ms. Ezzelarab:

I have considered your request for the release of Mr. Solomon B. Cohen from BICE custody.

A review of the case indicates that Mr. Cohen is a citizen of the UK, and a Visa Waiver overstay in the United States. Mr. Cohen was apprehended and detained by ICE investigators, after a referral by the U.S. Capital Police. A Notice of Referral to the Immigration Judge (Form I-863) was issued and served on the court. Mr. Cohen has an asylum claim pending with the Immigration Court in Arlington, Virginia.

*[handwritten margin note: CAPITOL]*

The decision to release, or parole an individual from detention is discretionary. Under policy, however, an individual is statutorily eligible for parole and should generally be paroled whenever the individual can establish he or she is likely to appear for all hearings or other immigration matters and that he or she poses no danger to the community. Due to his emergent medical condition and need to be treated for his apparent re-occurring cancer, I have considered your request. Your request for the release of Mr. Cohen is granted after posting a $3,000 bond. Mr. Cohen is hereby ordered to attend his next hearing on 4/23/04 at the Washington, Arlington, Virginia Immigration Court.

Sincerely,

*[signature]*

Neil Acri
Interim Deputy Field Director
Washington Field Office

www.ice.gov

# EXHIBIT 2

# Bond Continuation Memo

To:     Burlington Finance Center (BFC)      (b)(7)(c)

CC:     [                ] Lead Accounting Technician

From:   Bond Backlog (BBAT)

Date:   7/8/2008

Re:     A77309675

The following bond was reviewed and the Recommendation is for the bond to remain open and in full force.

Subject: SOLOMON BEN-TOV COHEN

Obligor: EZZELARAB, NADIA

Bond Number: WAS-Q11110

Bond Post Date: 03/30/2004

### Reason for Recommendation:

On 7-23-07 Service lodged a detainer on the subject who is being detained by Colorado authorities.
RS 6-18-08. FILE REQUESTED PER PHONE CALL, BOND POSTED ON 3/30/04 CONTINUED
7/08/08.

### Further actions to be taken by the field:

*A77309675*WASC011110*

619

301

U.S. Department of Homeland Security
P.O. Box 648010
Lee's Summit, MO 64064-8010



**U.S. Citizenship
and Immigration
Services**

August 21, 2009

NRC2009003467

Solomon Ben Tov Cohen # 0261647
El Paso County Jail
2739 E. Las Vegas Street
Colorado Springs, CO 80906

Dear Solomon Ben Tov Cohen:

This letter is in response to your status request, regarding the Freedom of Information Act request for information about the subject: Solomon Ben Tov Cohen, received on January 16, 2009.

Your request is currently number 1967 of 21667 pending requests in Track Two. Date received: 01/16/2009.  Your address has been changed as requested, to the address listed on this letter.

We will answer your request as quickly as possible.  If you should have any additional questions about your request, please direct your inquiries to this office at the above address. You may also call us at 816-350-5570 or fax any correspondence to 816-350-5785.

Sincerely,

T. Diane Cejka
Director

www.uscis.gov

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 303

# EXHIBIT 3

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## NOTICE - IMMIGRATION BOND CANCELLED

O
B   Nadia Ezzelarab
L   4001 N. 9TH Street,  Suite 222
I   Arlington, VA  22203
G
O
R

| | |
|---|---|
| Alien File No. | A 77 309 675 |
| Cancellation Notice Date | 06/19/2009 |

IMMIGRATION BOND

Bond Type: [X] Cash  [ ] U.S. Bonds  [ ] Surety

Bond Post Date  03/30/2004

Bond Receipt No.  WAS - 11,110

Amount  $3,000.00

Alien's Name  COHEN, Solomon Ben-Tov

The conditions of the above-described immigration bond appearing to have been satisfied, the bond is canceled. Any deposit of cash or U.S. bonds will be refunded to you upon receipt of proper documentation. Please comply with these instructions to complete your application. Inquiries regarding this form or your deposit should be addressed to the Department of Homeland Security Debt Management Center (DMC) at the address below.

SAVE THIS FORM. You must submit a COPY of this Form I-391 along with the ORIGINAL Form I-305, Receipt of DHS Official - U.S. Cash Accepted as Security on Immigration Bond (Delivery Confirmation recommended) to: Department of Homeland Security, Debt Management Center, P.O. Box 5000, Williston, VT 05495-5000. If you have lost your original Form I-305 you will be given an opportunity to submit an Original notarized Form I-395 Affadavit in Lieu of Lost Receipt.

If you wish to designate another person to receive the deposit on your behalf, you must complete a Designation of Attorney in Fact, Form I-312, designating that person and include the completed original notarized form in your application to the DMC.

If your address has changed you must furnish notice of the change of address to Department of Homeland Security, Debt Management Center, P.O. Box 5000, Williston, VT 05495-5000.

| | |
|---|---|
| Authorized DHS Signature | John Longshore / Field Office Director |
| | Print Name/Title |

You may use a copy of this form to change your address. Complete the information below and mail the Completed form to the above address.

My address has changed. Please send all further correspondence to:

| Street Address | City or Town, State | Zip Code |
|---|---|---|

Signature of Obligor _____  Date _____

Appellate Case: 10-1283    Document: 21    Date Filed: 08/16/2010    Page: 305

# EXHIBIT 4

El Paso County Sheriff's Office
Detention Bureau
INMATE STAFF/COMMUNICATION FORM

URGENT

FOR INMATE SERVICES USE ONLY

TRACKING NUMBER: _____ DATE _____

SUSPENSE DATE: _____ ASSIGNED TO: _____

## PLEASE: ONLY ONE KITE PER SUBJECT PER WEEK

To be completed by Staff.

ISSUED TO INMATE:
Deputy **96048** Date: **9/21** Time: **1300**

RECEIVED FROM INMATE:
Deputy **96048** Date: **9/21** Time **1330**

THE ISSUING DEPUTY SHALL CHECK ONE OF THESE BOXES AT THE TIME THE FORM IS ISSUED.

☒ KITE     ☐ GRIEVANCE     ☐ GRIEVANCE APPEAL     ☐ DISCIPLINARY APPEAL

ALL COMMUNICATIONS FORMS WILL BE INITALED BY THE ISSUING DEPUTY TO INCLUDE EID NUMBER, DATE, AND TIME

ADMIN USE ONLY
ADMINISTRATIVE FEE
ADMIN USE ONLY

DATE PROCESSED: _____     TOTAL COSTS _____

($2.00 ea) POWER OF ATTORNEY# ____     ($2.00 ea) NOTARY #____     ($0.10 ea) COPIES #__

($1.00 ea) Money Release #____     ($1.00 ea) Certified Copy of Inmate Balance #____     ($1.00) Money Release Mail out #

(To expedite request, attach your original document needing copied to this form.)

Admit Number: **2026647**
Name of Inmate: **COHEN, SOLOMON**

Property Bag Number: _____

Ward: **E4**     Date: **05/21/09**

TO: (CIRCLE ONLY ONE OF THE CHOICES BELOW; ONLY ONE REQUEST PER FORM.)

(INMATE SERVICES)   MAIL CLERK   PROGRAMS MANAGER   (INTAKE AND RELEASE)   PROPERTY   BOOKKEEPING   DETENTION SPECIALIST
FOOD SERVICE   COMMISSARY   GATEWAYS   COURT AND TRANSPORT   MEDICAL   COMMANDER   TRUSTEE COORDINATOR   PHON?
LIEUTENANT _____   SERGEANT _____   (OTHER **ICE**)

DETAILS OF KITE/GRIEVANCE/APPEAL   ATTN: OFFICER ELLY GARBISCO

① COMPLAINT AGAINST EL PASO COUNTY JAIL.
~~BUT~~ IT IS A VIOLATION OF 8 USC § 1357 FOR ICE TO
OBSTRUCT MY FILING WITH 10TH CIRCUIT COURT OF APPEALS.
JAIL IS REFUSING TO SEND LEGAL MAIL TO
THE COURT — DEADLINE IS **TODAY**.
② THEY HAVEN'T GOT A CLUE ABOUT "ICE DETENTION STANDARDS"
EITHER. YOU BRING ME TRIAL FOR FAILURE TO DEPART OR I

INMATE SIGNATURE **JBCohen**     WILL TAKE ICE TO COURT   DATE **09/21/09**

RESPONSE TO INMATE ① If you are having issues with the jail not sending your mail,
you need to inquire with them about a resolution.

② We are preparing your case for prosecution in federal court.

SIGNATURE OF STAFF RESPONDING _____

DATE RETURNED TO INMATE **9/23/09**

DB 221

Requests for changes in the format of this form should be routed through your Chain of Command.
Update requests and specific problems with the template should be e-mailed to 'DETFormControl'

Updated 05.23.08

El Paso County Sheriff's Office
Detention Bureau
INMATE STAFF/COMMUNICATION FORM

| FOR INMATE SERVICES USE ONLY |
| --- |
| TRACKING NUMBER: _____ DATE: _____ |
| SUSPENSE DATE: _____ ASSIGNED TO: _____ |

**PLEASE: ONLY ONE KITE PER SUBJECT PER WEEK**

To be completed by Staff.

| ISSUED TO INMATE: | RECEIVED FROM INMATE: |
| --- | --- |
| Deputy **8014** Date: **9/15** Time: **1100** | Deputy **8304** Date: **9/15** Time: **1111** |

THE ISSUING DEPUTY SHALL CHECK ONE OF THESE BOXES AT THE TIME THE FORM IS ISSUED.

☒ KITE    ☐ GRIEVANCE    ☐ GRIEVANCE APPEAL    ☐ DISCIPLINARY APPEAL

ALL COMMUNICATIONS FORMS WILL BE INITALED BY THE ISSUING DEPUTY TO INCLUDE EID NUMBER, DATE, AND TIME

| ADMIN USE ONLY | ADMINISTRATIVE FEE | ADMIN USE ONLY |
| --- | --- | --- |
| | DATE PROCESSED: _____    TOTAL COST $ _____ | |

($2.00 ea) POWER OF ATTORNEY# ____    ($2.00 ea) NOTARY #____    ($0.10 ea) COPIES #____

($1.00 ea) Money Release #____    ($1.00 ea) Certified Copy of Inmate Balance #____    ($1.00) Money Release Mail out #____

(To expedite request, attach your original document needing copied to this form.)

Admit Number: **A0261647**    Property Bag Number: _____

Name of Inmate: **COHEN, SOLOMON**    Ward: **E4**    Date: **09/13/09**

TO: (CIRCLE ONLY ONE OF THE CHOICES BELOW; ONLY ONE REQUEST PER FORM.)

INMATE SERVICES    (MAIL CLERK)    PROGRAMS MANAGER    INTAKE AND RELEASE    PROPERTY    BOOKKEEPING    DETENTION SPECIALIST

FOOD SERVICE    COMMISSARY    GATEWAYS    COURT AND TRANSPORT    MEDICAL    COMMANDER    TRUSTEE COORDINATOR    PHONE

LIEUTENANT _____    SERGEANT _____    OTHER _____

DETAILS OF KITE/GRIEVANCE/APPEAL    **DEAR MAIL CLERK**

**WHAT IS THE CORRECT FIRST CLASS MAIL POSTAGE PLEASE?**

**CAN YOU ADD POSTAGE AND SEND AS IT IS LEGAL MAIL, FREE FOR ICE DETAINEES.**

INMATE SIGNATURE _[signature]_    DATE **09/13/09**

RESPONSE TO INMATE    *Total Postage needed $1.22*

*Per policy you do not meet the definition for an indigent inmate. It is not This facilities policy that ICE detainees receive free legal mail. See attached Directive regarding legal mail.*

SIGNATURE OF STAFF RESPONDING _[signature]_    DATE RETURNED TO INMATE *9-16-09*

DB 221                                                                                     Updated 05.25.08

Requests for changes in the format of this form should be routed through your Chain of Command.
Update requests and specific problems with the template should be e-mailed to 'DETFormControl'.

El Paso County Sheriff's Office
Detention Bureau
INMATE STAFF/COMMUNICATION FORM

| FOR INMATE SERVICES USE ONLY |
| --- |
| TRACKING NUMBER: _____ DATE: _____ |
| SUSPENSE DATE: _____ ASSIGNED TO: _____ |

### PLEASE: ONLY ONE KITE PER SUBJECT PER WEEK

To be completed by Staff.

| ISSUED TO INMATE: | RECEIVED FROM INMATE: |
| --- | --- |
| Deputy 96048 Date: 9/29 Time: 1000 | Deputy 96048 Date: 9/29 Time: 1045 |

THE ISSUING DEPUTY SHALL CHECK ONE OF THESE BOXES AT THE TIME THE FORM IS ISSUED.

☒ KITE ☐ GRIEVANCE ☐ GRIEVANCE APPEAL ☐ DISCIPLINARY APPEAL

ALL COMMUNICATIONS FORMS WILL BE INITALED BY THE ISSUING DEPUTY TO INCLUDE EID NUMBER, DATE, AND TIME

| ADMIN USE ONLY | ADMINISTRATIVE FEE | ADMIN USE ONLY |
| --- | --- | --- |
| | DATE PROCESSED: _____ | TOTAL COST $ _____ | |

($2.00 ea) POWER OF ATTORNEY# ____    ($2.00 ea) NOTARY # ____    ($0.10 ea) COPIES # ____

($1.00 ea) Money Release # ____    ($1.00 ea) Certified Copy of Inmate Balance # ____    ($1.00) Money Release Mail out # ____

(To expedite request, attach your original document needing copied to this form.)

Admit Number: **A026/647**    Property Bag Number: _____

Name of Inmate: **COHEN, SOLOMON**    Ward: **E4**    Date: **09/29/09**

TO: (CIRCLE ONLY ONE OF THE CHOICES BELOW; ONLY ONE REQUEST PER FORM.)

INMATE SERVICES    MAIL CLERK    (PROGRAMS MANAGER)    INTAKE AND RELEASE    PROPERTY    BOOKKEEPING    DETENTION SPECIALIST

FOOD SERVICE    COMMISSARY    GATEWAYS    COURT AND TRANSPORT    MEDICAL    COMMANDER    TRUSTEE COORDINATOR    PHONE

LIEUTENANT _____    SERGEANT _____    OTHER _____

DETAILS OF KITE/GRIEVANCE/APPEAL    *Dear Ms LAGE*

(1) I NEED A LETTER EXPLAINING THAT LAW LIBRARY IS CLOSED.

(2) WHEN DO YOU ANTICIPATE IT BEING RE-OPEN?

(3) I AM BEING PROSECUTED BY OFF GARRISCO BECAUSE OF INADEQUATE ACCESS TO LAW LIBRARY.

(4 I NEED ADDRESS FOR CIA IN LANGLEY, VIRGINIA AND) NAME DIRECTOR RE: MY CASE THANK YOU.

INMATE SIGNATURE *SBCohen*    DATE **09/29/09**

RESPONSE TO INMATE

1) I don't give letters regarding item #1.

2) Should be Friday, unless additional time is needed to ensure safety to all is necessary to delay the re-opening of the Law Library.

3. Explain to Off. Garbiso (Not sure what this is about)

4. Leon Panetta, Present Director - See the attached information.

SIGNATURE OF STAFF RESPONDING *JL*    DATE RETURNED TO INMATE 10-1-09

DB 221    Updated 05.23.08

Requests for changes in the format of this form should be routed through your Chain of Command.
Update requests and specific problems with the template should be e-mailed to 'DETFormControl'.

# EXHIBIT 5

*Office of Detention and Removal Operations*
*Denver Field Office*

**U.S. Department of Homeland Security**
12445 E. Caley Ave.
Centennial, Colorado 80111

 **U.S. Immigration
and Customs
Enforcement**

Solomon Ben-Tov COHEN
Bkg # 0900010842
C/O El Paso County Jail                                A077 309 675
2739 E. Las Vegas St.
Colorado Springs, CO 80906

## Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)

This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview and consideration of any information you submitted to ICE's reviewing officials.

On August 4, 2009, you were advised, via form I-229(a) and Instruction Sheet to Detainee, of specific requirements to complete and were given 30 days to comply with your obligation to assist in obtaining a travel document. The burden to obtain a travel document for your removal does not solely rest with ICE. Pursuant to Section 241(a)(1)(C) of the Immigration and Nationality Act (INA), you are required to make timely and good faith efforts to obtain travel or other documents necessary for your removal from the United States. If you fail to make these efforts, Section 241(a)(1)(C) allows for the extension of the removal period. As you have continuously and consistently failed to so much as acknowledge the Warning for Failure to Depart (Form I-229(a)), the Instruction Sheet to Detainee Regarding Requirement to Assist in Removal and you have been reluctant to complete the questionnaire for a passport provided by the British Consulate, you have failed to comply with your obligation and are acting to prevent your removal from the United States. The removal period is therefore extended in your case.

You are to remain in ICE custody until you demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you.

In order for you to come into compliance you must acknowledge and be cooperative with your obligations to assist ICE in enforcing your removal. Furthermore, you must be willing to complete the required documents by the British Consulate in order to obtain a British Passport.

You are also advised that continued willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).

_____                    10-5-09
Signature of Field Office Director/Designated Representative          _____
                                                                      Date

# ORDER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

        Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,

        Defendants.

---

## ORDER

---

    This case is before me on the recommendation of the Magistrate Judge issued and served on September 21, 2009 (Doc 60).   Plaintiff has failed to file specific written objections to the Magistrate Judge's recommendation and is therefore barred from *de novo* review.   Accordingly, it is

    ORDERED that the recommendation is accepted as follows:

1.    The "Motion to Dismiss of Defendant Henry Waxman" (Doc 24) is GRANTED and Defendant Waxman is dismissed from this civil action, without prejudice to Plaintiff refiling his claims in another venue.

2.    "Defendant the U.S. Capitol Police's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc 20) is GRANTED and Defendant U.S. Capitol Police is dismissed without prejudice from this civil action.

                BY THE COURT:

                s/Lewis T. Babcock
                Lewis T. Babcock, Judge

DATED:   October 21, 2009

Case 1:08-cv-02188-LTB-CBS   Document 72   Filed 11/03/09   Page 21 of 21
CM/ECF - U.S. District Court:cod                                        Page 1 of 1
Appellate Case: 10-1283    Document: 21    Date Filed: 08/16/2010    Page: 313

## Orders on Motions

1:08-cv-02188-LTB-CBS Cohen v. Waxman, et al
ALLMTN, MAGR

### U.S. District Court

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 10/21/2009 at 1:59 PM MDT and filed on 10/21/2009
**Case Name:**      Cohen v. Waxman, et al
**Case Number:**    1:08-cv-2188
**Filer:**
**Document Number:** 67

**Docket Text:**
ORDER. The recommendation [60] is accepted as follows: The Motion to Dismiss of Defendant Henry Waxman [24] is GRANTED and Defendant Waxman is dismissed from this civil action, without prejudice to Plaintiff refiling his claims in another venue. Defendant the U.S. Capitol Polices Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [20] is GRANTED and Defendant U.S. Capitol Police is dismissed without prejudice from this civil action. By Judge Lewis T. Babcock on 10/21/2009.(sah, )

**1:08-cv-2188 Notice has been electronically mailed to:**

Marcy Elizabeth Cook marcy.cook@usdoj.gov, Mary.Leistikow@usdoj.gov, William_emory@cap-police.senate.gov, usaco.ecfcivil@usdoj.gov

Katherine E. McCarron katherine.mccarron@mail.house.gov, rachel.sussman@mail.house.gov, rebecca.borgese@mail.house.gov, shaida.safai@mail.house.gov

**1:08-cv-2188 Notice has been mailed by the filer to:**

Solomon Ben-Tov Cohen
#077-309 675
ICE Processing Center-GEO Detention Facility
11901 East 30th Avenue
Aurora, CO 80010

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1071006659 [Date=10/21/2009] [FileNumber=2207114-0] [4a7715f2180749e1dff1b1df1b6d8643878e7261f5274199f138d1c6f032c44ff8 18556fafa7db2a444a3d1cba02836b08bc89c28f095f8fc99674e0c1187817]]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### LEWIS T. BABCOCK, JUDGE

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

      Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,

      Defendants.

_____

## ORDER
_____

Upon pro se Plaintiff's Appeal of Order (Doc 72 - filed November 3, 2009), which is

construed as a Motion to Reconsider, it is

ORDERED that the Motion is DENIED.

                        BY THE COURT:


                         s/Lewis T. Babcock_____
                        Lewis T. Babcock, Judge

DATED:   November 4, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

    Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSH, Agent, U.S. Capitol Police,

    Defendants.

---

**DEFENDANT THE U.S CAPITOL POLICE'S RESPONSE TO PLAINTIFF'S
"OBJECTION TO [60] REPORT AND RECOMMENDATIONS"**

---

Defendant the U.S. Capitol Police,[1] through undersigned counsel, hereby responds to

Plaintiff's untimely "Objection to [60] Report and Recommendations," (Doc. 71), which Plaintiff

submitted after the Court had adopted the Recommendation.

On April 21, 2009, the U.S. Capitol Police filed a motion to dismiss Plaintiff's Amended

Complaint.  (Doc. 20.)  Magistrate Judge Shaffer issued a recommendation to grant the U.S.

Capitol Police's motion to dismiss on September 21, 2009.  (Doc. 60.)  Pursuant to Fed. R. Civ.

P. 72(b)(2), any objections to the Recommendation were due October 5, 2009.  Plaintiff did not

file any objections by October 5, 2009.  On October 21, 2009, the Court accepted the

Recommendation and dismissed the U.S. Capitol Police from the action.  (Doc. 67.)  In its Order,

---

[1] Plaintiff's "Objections" are to the Recommendation of the Magistrate Judge (Doc. 60) to grant the motion to dismiss filed by the U.S. Capitol Police (Doc. 20).  Therefore this Response is filed by the U.S. Capitol Police.  Representative Waxman is represented by the Office of General Counsel for the House of Representatives.

the Court noted that "Plaintiff has failed to file specific written objections to the Magistrate

Judge's recommendation and is therefore barred from de novo review."  Id. at 1.

On October 27, 2009, Plaintiff filed the document located at Docket 71.  The text of

Docket No. 71 does not make clear that it is an objection to the Recommendation; however, it

was docketed as "Objection to [60] Report and Recommendations."  (Doc. 71.)  To the extent

Docket No. 71 is an objection to the Recommendation, it is untimely.  Any objections to the

Recommendation were due no later than October 5, 2009.  Docket No. 71 was no filed until

October 27, 2009, after the Court's ruling on the Recommendation.  Even if not untimely, Docket

No. 71 does not contain any specific objections to the Recommendation.  This Court should not

consider Docket No. 71.

Respectfully submitted this 10th day of November, 2009.

> DAVID M. GAOUETTE
> United States Attorney
>
> s/ Marcy E. Cook
> Marcy E. Cook
> Assistant United States Attorney
> 1225 Seventeenth Street, Suite 700
> Denver, Colorado  80202
> Telephone:  (303) 454-0171
> Fax: (303) 454-0404
> E-mail: marcy.cook@usdoj.gov
> Counsel for Defendant Busch

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of November, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 10th day of November, 2009, I have mailed or served the foregoing document to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO  80010-1525

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
OFFICE OF THE CLERK

GREGORY C. LANGHAM, CLERK

ROOM A-105
ALFRED A. ARRAJ U.S. COURTHOUSE
901 19TH STREET
DENVER, COLORADO 80294-3589
PHONE (303) 844-3433
www.cod.uscourts.gov

November 12, 2009

SEE NOTICE OF ELECTRONIC FILING

**RE:   Cohen v. Bush**

District Court Case No. 08-cv-02188-LTB-CBS
Notice of Appeal filed by Solomon Ben-Tov Cohen on November 10, 2009
Other pending appeals: yes

Attached are the following documents for the parties in connection with the notice of appeal: Copy of the notice of appeal and a copy of the docket sheet.  Attached for the pro se appellant is a letter from the U.S. Court of Appeals and a Pro Se Docketing Statement.

The required $455.00 filing fee was not tendered with the notice of appeal by the appellant. The filing fee should be paid to the Clerk, U.S. District Court as soon as possible.  If the appellant intends to move this court to proceed on the appeal pursuant to 28 U.S.C. § 1915(b) and Fed. R. App. P. 24, the proper motion and affidavit form is enclosed.  Please complete and file this as soon as possible.

Upon determination of the appellant's "fee status", the record on appeal will be transmitted to the Court of Appeals in accordance with the Tenth Circuit Rules.

Sincerely,
GREGORY C. LANGHAM, Clerk

by s/ B. Reed
Deputy Clerk

cc:   Clerk, U.S. Court of Appeals (with copy of docket sheet, copy of notice of appeal and the preliminary record)

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 319

ALLMTN, APPEAL

# U.S. District Court
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:08-cv-02188-LTB-CBS

| | |
|---|---|
| Cohen v. Busch | Date Filed: 10/09/2008 |
| Assigned to: Judge Lewis T. Babcock | Jury Demand: None |
| Referred to: Magistrate Judge Craig B. Shaffer | Nature of Suit: 555 Prison Condition |
| Demand: $9,999,000 | Jurisdiction: U.S. Government |
| Cause: 28:1331 Federal Question: Bivens Act | Defendant |

**Plaintiff**

**Solomon Ben-Tov Cohen**                    represented by **Solomon Ben-Tov Cohen**
#077-309 675
ICE Processing Center-GEO Detention
Facility
11901 East 30th Avenue
Aurora, CO 80010
*PRO SE*

V.

**Defendant**

**John Doe**
*U.S. Capitol Police Special Agent,*
*Washington, District of Columbia*
*TERMINATED: 02/17/2009*

**Defendant**

**Henry Waxman**                    represented by **Katherine E. McCarron**
*Representative, United States Congress*            U.S. House of Representatives
*TERMINATED: 10/21/2009*                Office of the General Counsel
219 Cannon House Office Building
Washington , DC 20515
202-225-9700
Fax: 202-226-1360
Email:
katherine.mccarron@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Capitol Police**                    represented by **Marcy Elizabeth Cook**
*TERMINATED: 10/21/2009*                U.S. Attorney's Office-Denver
1225 17th Street East
Seventeenth Street Plaza

#700
Denver , CO 80202
303-454-0171
Fax: 303-454-0404
Email: marcy.cook@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Fred Busch**                                   represented by **Marcy Elizabeth Cook**
*Agent, US Capitol Police*                       (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2008 | 1 | Prisioner's MOTION and Affidavit for Leave to Proceed Under 28 U.S.C. 1915 by Plaintiff Solomon Ben-Tov Cohen. (llk, ) Modified on 10/9/2008 to correct the filing date of the Motion (llk, ). (Entered: 10/09/2008) |
| 10/09/2008 | 2 | ORDER Directing Clerk to Commence Civil Action and Granting 1 Motion for Leave to Proceed in Forma Pauperis. Signed by Magistrate Judge Boyd N. Boland on 10/7/2008.(llk, ) (Entered: 10/09/2008) |
| 10/09/2008 | 3 | Prisoner COMPLAINT against John Doe, filed by Solomon Ben-Tov Cohen.(llk, ) (Entered: 10/09/2008) |
| 10/09/2008 | 4 | Docket Annotation re: 1 MOTION for Leave to Proceed Under 28 U.S.C. 1915. This docket entry was modified to correct the filing date of the Motion. Text only entry - no document attached. (llk, ) (Entered: 10/09/2008) |
| 10/15/2008 | 5 | ORDER Directing Plaintiff to File Amended Complaint within 30 days. Signed by Magistrate Judge Boyd N. Boland on 12/15/08. (jjh, ) (Entered: 10/15/2008) |
| 10/31/2008 | 6 | AMENDED COMPLAINT against John Doe, filed by Solomon Ben-Tov Cohen.(jjh, ) (Entered: 10/31/2008) |
| 11/03/2008 | 7 | ORDER Assigning Case. This case shall be assigned to Judge Lewis T. Babcock pursuant to D.C.COLO.LCivR 40.1C.1., and to Magistrate Judge Craig B. Shaffer. Signed by Magistrate Judge Boyd N. Boland on 11/03/2008. (sah, ) (Entered: 11/04/2008) |
| 11/07/2008 | 8 | Letter from Clerk of Court addressed to Mr. Ben-Tov Cohen advising of case assignment to Judge Babcock. (sah, ) (Entered: 11/07/2008) |
| 11/12/2008 | 9 | ORDER Of Reference to United States Magistrate Judge Craig B Shaffer. Signed by Judge Lewis T. Babcock on 11/12/2008. (sah, ) (Entered: 11/12/2008) |
| 11/14/2008 | 10 | MINUTE ORDER. A Status Conference is set for 12/22/2008 09:00 AM in Courtroom A 402, Fourth Floor, of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado by Magistrate Judge Craig |

|  |  | B Shaffer on 11/14/2008. (sah, ) (Entered: 11/14/2008) |
| --- | --- | --- |
| 12/22/2008 | 11 | Minute Entry for proceedings held before Magistrate Judge Craig B Shaffer: Status Conference held on 12/22/2008. Plaintiff states he will attempt to obtain the defendants name and address and will then file an amended complaint. (Court Reporter FTR-Nel Steffens.) (sah, ) (Entered: 12/22/2008) |
| 02/17/2009 | 12 | AMENDED COMPLAINT against Henry Waxman, US Capitol Police, Fred Bush, filed by Solomon Ben-Tov Cohen.(sah, ) (Entered: 02/17/2009) |
| 02/20/2009 | 13 | ORDER Granting Service By United States Marshal by Magistrate Judge Craig B Shaffer on 02/20/2009. (Attachments: # 1 Certified Mailing Receipt, # 2 Process Receipt and Return)(sah, ) (Entered: 02/20/2009) |
| 03/03/2009 | 15 | AFFIDAVIT/RETURN of Service of upon United States Attorney's Office for the District of Colorado on 02/20/2009, filed by Charisha Cruz (sah, ) (Entered: 03/04/2009) |
| 03/04/2009 | 14 | NOTICE of Entry of Appearance by Marcy Elizabeth Cook on behalf of US Capitol Police (Cook, Marcy) (Entered: 03/04/2009) |
| 03/10/2009 | 16 | SUMMONS Returned Executed upon defendant(s) US Capitol Police served on 3/3/2009, answer due 5/4/2009. (sah, ) (Entered: 03/10/2009) |
| 03/10/2009 | 17 | SUMMONS Returned UnExecuted upon defendant(s) Fred Bush served on 3/3/2009 (sah, ) Modified on 3/10/2009 to correct the type of service and to remove answer deadline (sah, ). (Entered: 03/10/2009) |
| 03/10/2009 | 18 | SUMMONS Returned Executed upon defendant(s) Henry Waxman served on 3/3/2009, answer due 5/4/2009. (sah, ) (Entered: 03/10/2009) |
| 03/11/2009 | 19 | AFFIDAVIT/RETURN of Service of upon United States Attorney General on Unknown, filed by Plaintiff Solomon Ben-Tov Cohen (sah, ) (Entered: 03/11/2009) |
| 04/21/2009 | 20 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* by Defendant US Capitol Police. (Cook, Marcy) (Entered: 04/21/2009) |
| 04/22/2009 | 21 | MEMORANDUM regarding 20 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by US Capitol Police.Motion referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 04/22/2009. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED(sah, ) (Entered: 04/22/2009) |
| 04/24/2009 | 22 | MINUTE ORDER. Plaintiff has up to and including 05/12/2008, to respond to Defendants Motion to Dismiss Pursuant to FED.R.CIV.P. 12 (b)(6) 20 . A hearing on the instant motion will be held on 05/18/2009 at 3:00 p.m. in Courtroom A-402 by Magistrate Judge Craig B. Shaffer on 04/24/2009. (sah, ) (Entered: 04/27/2009) |
| 05/04/2009 | 23 | NOTICE of Entry of Appearance by Katherine E. McCarron on behalf of Henry Waxman (McCarron, Katherine) (Entered: 05/04/2009) |

| 05/04/2009 | 24 | MOTION to Dismiss by Defendant Henry Waxman. (McCarron, Katherine) (Entered: 05/04/2009) |
|---|---|---|
| 05/04/2009 | 25 | BRIEF in Support re 24 MOTION to Dismiss filed by Defendant Henry Waxman. (Attachments: # 1 Appendix)(McCarron, Katherine) (Entered: 05/04/2009) |
| 05/05/2009 | 26 | MEMORANDUM regarding 24 MOTION to Dismiss filed by Henry Waxman.Motion referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 05/05/2009. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED(sah, ) (Entered: 05/05/2009) |
| 05/05/2009 | 27 | MINUTE ORDER. Plaintiff has up to and including 05/26/2009 to respond to the Motion to Dismiss of Defendant Congressman Henry A. Waxman that was filed on 05/04/2009 24 filed 05/04/2009 by Magistrate Judge Craig B. Shaffer on 05/05/2009. (sah, ) (Entered: 05/05/2009) |
| 05/05/2009 | 28 | MOTION for Extension of Time to File Response as to 20 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 05/05/2009) |
| 05/06/2009 | 29 | MEMORANDUM regarding 28 MOTION for Extension of Time to File Response/Reply as to 20 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Solomon Ben-Tov Cohen.Motion referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 05/06/2009. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED(sah, ) (Entered: 05/06/2009) |
| 05/07/2009 | 30 | NOTICE of Change of Address by Plaintiff Solomon Ben-Tov Cohen (sah, ) (Entered: 05/07/2009) |
| 05/07/2009 | 31 | LETTER addressed to Judge Shaffer by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 05/07/2009) |
| 05/08/2009 | 32 | MINUTE ORDER granting 28 Plaintiffs Motion for Sixty Day Extension of Time Within Which to File Response to Respondents Motion to Dismiss." Plaintiff has up to and including 07/11/2009 to respond to Defendant the U.S. Capitol Police's Motion to Dismiss Pursuant to Rule 12(b)(6) 20 by Magistrate Judge Craig B. Shaffer on 05/08/2009.(sah, ) (Entered: 05/08/2009) |
| 05/13/2009 | 33 | Letter requesting required forms for obtaining two subpoenas by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 05/13/2009) |
| 05/13/2009 | 34 | (WITHDRAWN) Complaint and Demand For Summary Judgement [sic] by Plaintiff Solomon Ben-Tov Cohen. (sah, ) Modified on 5/29/2009 to WITHDRAW pursuant to the Order dated 05/29/2009 (sah, ). (Entered: 05/13/2009) |
| 05/13/2009 | 35 | NOTICE of Change of Address and Letter addressed to Judge Schaffer by Plaintiff Solomon Ben-Tov Cohen (sah, ) (Entered: 05/13/2009) |
| 05/14/2009 | 36 | MEMORANDUM regarding 33 MOTION for Order to filed by Solomon Ben-Tov Cohen, 34 MOTION for Summary Judgment filed by Solomon |

322

| | | |
|---|---|---|
| | | Ben-Tov Cohen.Motions referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 05/14/2009. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED(sah, ) (Entered: 05/14/2009) |
| 05/14/2009 | 37 | CERTIFICATE of Mailing by Clerk of Court re 24 MOTION to Dismiss. Sent to Plaintiff at new address. (sah, ) (Entered: 05/14/2009) |
| 05/18/2009 | 38 | CERTIFICATE of Mailing by Clerk of Court re 25 Brief in Support of Motion. Brief and Appendix were not sent out at the time of the first mailing of the Motion to Dismiss on 05/14/2009. Sent to Plaintiff to the address listed on the docket. (sah, ) (Entered: 05/18/2009) |
| 05/18/2009 | 39 | Minute Entry for proceedings held before Magistrate Judge Craig B. Shaffer: Motion Hearing held on 5/18/2009. The court stated it issued an Order 32 granting Plaintiffs Motion for Sixty Day Extension of Time to File a Response Respondents Motion to Dismiss (Court Reporter FTR-Linda Kahoe.) (sah, ) (Entered: 05/20/2009) |
| 05/27/2009 | 40 | MOTION to Amend Name and Address For Defendant Fred Bush aks Busch by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 05/27/2009) |
| 05/27/2009 | 41 | MOTION for Extension of Time to File Response/Reply as to 24 MOTION to Dismiss, 20 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 05/27/2009) |
| 05/28/2009 | 42 | MEMORANDUM regarding 41 MOTION for Extension of Time to File Response/Reply as to 24 MOTION to Dismiss, 20 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Solomon Ben-Tov Cohen, 40 MOTION to Amend/Correct/Modify 12 Amended Complaint filed by Solomon Ben-Tov Cohen.Motions referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 05/28/2009. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED(sah, ) (Entered: 05/28/2009) |
| 05/29/2009 | 43 | ORDER. Mr. Cohens request that required forms for obtaining 2 subpoenas be sent to him..., made in a letter filed on 05/13/2009 33 is DENIED at this time as premature. Mr. Cohens Motion for Sixty Day Extension of TimeWithin Which to File Response to Respondents Motion to Dismiss (filed 05/27/2009 41 is DENIED as unnecessary. The Complaint and Demand for Summary Judgment 05/13/2009 ( 34 is WITHDRAWN. Mr. Cohens Motion to Amend Name and Address for Defendant Fred Bush aka Busch 05/27/2009 40 is GRANTED. The Clerk of the Court shall correct the caption to reflect the spelling of Defendant Fred Buschs name by Magistrate Judge Craig B. Shaffer on 05/29/2009. (sah, ) (Entered: 05/29/2009) |
| 05/29/2009 | 44 | ORDER Granting Service By United States Marshall by Magistrate Judge Craig B. Shaffer on 05/29/2009. (Attachments: # 1 Process Receipt and Return)(sah, ) (Entered: 05/29/2009) |
| 06/02/2009 | 45 | NOTICE of Change of Address by Plaintiff Solomon Ben-Tov Cohen (sah, ) (Entered: 06/02/2009) |
| | | |

| 06/19/2009 | 46 | SUMMONS Returned Executed by United States Marshals Service. Fred Busch served on 6/12/2009, answer due 08/11/2009. (sah, ) (Additional attachment(s) added on 6/19/2009: # 1 Certified Mailing Receipt) (sah, ). Modified on 6/23/2009 to correct the date in which the answer is due. (sah, ). (Entered: 06/19/2009) |
| --- | --- | --- |
| 06/23/2009 | 47 | Docket Annotation re: 46 Summons Returned Executed. Entry modified on 6/23/2009 to correct the date in which the answer is due. Text only entry - no document attached (sah, ) (Entered: 06/23/2009) |
| 06/30/2009 | 48 | MOTION to Temporarily Suspend Filing Deadlines by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 06/30/2009) |
| 07/01/2009 | 49 | MEMORANDUM regarding 48 Motion to Temporarily Suspend Filing Deadlines, filed by Solomon Ben-Tov Cohen.Motions referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 7/01/09. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED(ltbcd, ) (Entered: 07/01/2009) |
| 07/02/2009 | 50 | ORDER granting 48 Mr. Cohens Motion to Temporarily Suspend Filing Deadlines. Mr. Cohen shall file his response to Defendant U.S. Capitol Polices Motion to Dismiss Pursuant to Rule 12(b)(6) 20 on or before 08/11/2009. Mr. Cohen shall file his response to the Motion to Dismiss of Defendant Henry A. Waxman 24 on or before 08/11/2009. By Magistrate Judge Craig B. Shaffer on 07/02/2009.(sah, ) (Entered: 07/02/2009) |
| 07/17/2009 | 51 | MOTION for Order to *Serve Defendant Busch* by Defendant US Capitol Police. (Attachments: # 1 Proposed Order (PDF Only))(Cook, Marcy) (Entered: 07/17/2009) |
| 07/20/2009 | 52 | MEMORANDUM regarding 51 MOTION for Order to *Serve Defendant Busch filed by US Capitol Police.Motion referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 7/20/09. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED(ltbcd, ) (Entered: 07/20/2009)* |
| 07/20/2009 | 53 | ORDER granting 51 Motion for Order for Service of Process on Defendant Fred Busch. The Court will direct service on Defendant Busch by a separate order by Magistrate Judge Craig B. Shaffer on 07/20/09. (jjh, ) (Entered: 07/20/2009) |
| 07/21/2009 | 54 | ORDER Granting Service By United States Marshal. By Magistrate Judge Craig B. Shaffer on 07/21/2009. (Attachments: # 1 Process Receipt and Return)(sah, ) (Entered: 07/22/2009) |
| 08/12/2009 | 55 | RESPONSE to 20 Defendant US Capitol Police MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed by Plaintiff Solomon Ben-Tov Cohen. (erv, ) (Entered: 08/13/2009) |
| 08/12/2009 | 56 | Opposition RESPONSE to 24 Hon Henry A. Waxman's MOTION to Dismiss filed by Plaintiff Solomon Ben-Tov Cohen. (Attachments: # 1 Memorandum in Support of Opposition to Motion to Dismiss)(Exhibit 6 submitted conventionally, placed in an envelope and put in over sized documents)(erv, ) (Entered: 08/13/2009) |

324

| 08/13/2009 | | 57 | SUMMONS Returned Executed. Defendant(s) Fred Busch served on 8/5/2009, answer due 10/5/2009. (ebs, ) (Entered: 08/14/2009) |
|---|---|---|---|
| 08/27/2009 | | 58 | REPLY to Response to 24 MOTION to Dismiss filed by Defendant Henry Waxman. (McCarron, Katherine) (Entered: 08/27/2009) |
| 08/27/2009 | | 59 | REPLY to Response to 20 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by Defendant US Capitol Police. (Cook, Marcy) (Entered: 08/27/2009) |
| 09/21/2009 | | 60 | RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE recommending 24 MOTION to Dismiss filed by Henry Waxman be granted and Defendant Waxman be dismissed for this civil action, without prejudice to Mr. Cohen refiling his claims in another venue; and recommending 20 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by US Capitol Police be granted and Defendant U.S. Capitiol Police be dismissed with prejudice from this civil action by Magistrate Judge Craig B. Shaffer on 9/21/2009. (cbscd) (Entered: 09/21/2009) |
| 10/05/2009 | ⌐≣ | 61 | MOTION to Dismiss for Lack of Jurisdiction *[Personal]*, MOTION to Dismiss by Defendant Fred Busch. (Cook, Marcy) (Entered: 10/05/2009) |
| 10/06/2009 | | 62 | MEMORANDUM regarding 61 MOTION to Dismiss for Lack of Jurisdiction, filed by Fred Busch. Motion referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 10/06/09. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED(ltbcd, ) (Entered: 10/06/2009) |
| 10/06/2009 | | 63 | NOTICE of Change of Address by Plaintiff Solomon Ben-Tov Cohen (sah, ) (Entered: 10/06/2009) |
| 10/06/2009 | | 64 | MINUTE ORDER - Plaintiff has up to and including 11/04/2009, to respond to Defendant Fred Busch's Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(2) and 12(b)(6) 61 by Magistrate Judge Craig B. Shaffer on 10/6/2009. (cbscd) (Entered: 10/07/2009) |
| 10/15/2009 | | 65 | Mail Returned as Undeliverable re: 64 Minute Order Addressed to Solomon Ben-Tov Cohen. (sah, ) (Entered: 10/15/2009) |
| 10/16/2009 | | 66 | CERTIFICATE of Mailing by Clerk of Court re 64 Minute Order. Re-sent to the updated address for the Plaintiff. (sah, ) (Entered: 10/16/2009) |
| 10/21/2009 | | 67 | ORDER. The recommendation 60 is accepted as follows: The Motion to Dismiss of Defendant Henry Waxman 24 is GRANTED and Defendant Waxman is dismissed from this civil action, without prejudice to Plaintiff refiling his claims in another venue. Defendant the U.S. Capitol Polices Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) 20 is GRANTED and Defendant U.S. Capitol Police is dismissed without prejudice from this civil action. By Judge Lewis T. Babcock on 10/21/2009.(sah, ) (Entered: 10/21/2009) |
| 10/26/2009 | | 68 | MOTION for Extension of Time Within Which To File Response by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 10/26/2009) |
| 10/27/2009 | | 69 | MEMORANDUM regarding 68 MOTION for Extension of Time within |

| | | |
|---|---|---|
| | | which to file Response, filed by Solomon Ben-Tov Cohen.Motion referred to Magistrate Judge Craig B. Shaffer by Judge Lewis T. Babcock on 10/27/09. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED (ltbcd, ) (Entered: 10/27/2009) |
| 10/27/2009 | 70 | ORDER granting 68 Mr. Cohen's Motion for a 60-day Extension of Time within which to File Response. Mr. Cohen may file his response to Defendant Fred Busch's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(2) and 12(b)(6) [doc. # 61] on or before January 3, 2010. By Magistrate Judge Craig B. Shaffer on 10/27/2009.TEXT ONLY ENTRY - NO DOCUMENT ATTACHED (cbslc1) (Entered: 10/27/2009) |
| 10/27/2009 | 71 | OBJECTION to 60 Report and Recommendations filed by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 10/28/2009) |
| 11/03/2009 | 72 | APPEAL OF ORDER (Objection) to 67 Order on Report and Recommendations, Order on Motion to Dismiss, by Plaintiff Solomon Ben-Tov Cohen. (sah, ) (Entered: 11/03/2009) |
| 11/04/2009 | 73 | ORDER. Plaintiffs Appeal of Order 72 filed 11/03/2009, which is construed as a Motion to Reconsider is DENIED. By Judge Lewis T. Babcock on 11/04/2009. (sah, ) (Entered: 11/04/2009) |
| 11/10/2009 | 74 | RESPONSE to Objection to 60 REPORT AND RECOMMENDATIONS re 24 MOTION to Dismiss filed by Henry Waxman, 20 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by US Capitol PoliceREPORT AND RECOMMENDATIONS re 24 MOTION to Dismiss filed by Henry Waxman, 20 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by US Capitol PoliceREPORT AND RECOMMENDATIONS re 24 MOTION to Dismiss filed by Henry Waxman, 20 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by US Capitol Police *[Doc. 71]* filed by Defendant US Capitol Police. (Cook, Marcy) (Entered: 11/10/2009) |
| 11/10/2009 | 75 | Letter which is being treated as a NOTICE OF APPEAL as to 73 Order by Plaintiff Solomon Ben-Tov Cohen. Fee Status: Pro se; Fee not paid; 1915 motion not filed. Notice mailed to all counsel on 11/12/09. (Attachments: # 1 Envelope)(bjrsl, ) Modified on 11/12/2009 to indicate correct title of pleading(bjrsl, ). (Entered: 11/12/2009) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### LEWIS T. BABCOCK, JUDGE

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

       Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,

       Defendants.

_____

## ORDER
_____

Upon pro se Plaintiff's Appeal of Order (Doc 72 - filed November 3, 2009), which is

construed as a Motion to Reconsider, it is

ORDERED that the Motion is DENIED.

                    BY THE COURT:


                     s/Lewis T. Babcock
                     Lewis T. Babcock, Judge

DATED:   November 4, 2009

SOLOMON B COHEN

ALIEN # 077 309 675

I.C.E. DETENTION FACILITY
11901 E30TH AVE
AURORA
CO 80010-1525

Tel: (303) 361-6612 West Core

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

NOV 10 2009

GREGORY C. LANGHAM
CLERK

LEGAL MAIL

Clerk of the Court
United States District Court
901 19th St, Room A-105
Denver
CO 80294-3589

November 5, 2009

**Case No '08-cv-02188-LTB-CBS**

Dear Clerk of the Court

How do I Appeal the attached Order to the 10th Circuit Court of Appeals?

Sincerely

**Solomon B Cohen MA(*Cantab*) pro-se**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

      Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,

      Defendants.

_____

## ORDER

_____

Upon pro se Plaintiff's Appeal of Order (Doc 72 - filed November 3, 2009), which is

construed as a Motion to Reconsider, it is

ORDERED that the Motion is DENIED.

                BY THE COURT:


                  s/Lewis T. Babcock
                  Lewis T. Babcock, Judge

DATED:  November 4, 2009

## Other Orders/Judgments

1:08-cv-02188-LTB-CBS Cohen v. Busch
ALLMTN


### U.S. District Court

### District of Colorado


**Notice of Electronic Filing**

The following transaction was entered on 11/4/2009 at 10:02 AM MST and filed on 11/4/2009
**Case Name:**      Cohen v. Busch
**Case Number:**    1:08-cv-2188
**Filer:**
**Document Number:** 73

**Docket Text:**
**ORDER. Plaintiffs Appeal of Order ([72] filed 11/03/2009, which is construed as a Motion to Reconsider is DENIED. By Judge Lewis T. Babcock on 11/04/2009. (sah, )**


**1:08-cv-2188 Notice has been electronically mailed to:**

Marcy Elizabeth Cook marcy.cook@usdoj.gov, Mary.Leistikow@usdoj.gov, William_emory@cap-police.senate.gov, usaco.ecfcivil@usdoj.gov

Katherine E. McCarron katherine.mccarron@mail.house.gov, rachel.sussman@mail.house.gov, rebecca.borgese@mail.house.gov, shaida.safai@mail.house.gov

**1:08-cv-2188 Notice has been mailed by the filer to:**

Solomon Ben-Tov Cohen
#077-309 675
ICE Processing Center-GEO Detention Facility
11901 East 30th Avenue
Aurora, CO 80010

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1071006659 [Date=11/4/2009] [FileNumber=2224975-0
] [0f4f17b19092480e5112a0c65bf169d4d51c64b3ee09c41a5aa4180a58ee8e947c6
279bb5a2bfea32fc5a6c4be35086925794ac41e4c44c83efae7ed5696a52f]]

SOLOMON B COHEN PRO-SE
A# 077309 675
GEO-ICE DETENTION FACILITY
11901 E30TH AVE
AURORA, CO 80010-1525

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

NOV 10 2009

GREGORY C. LANGHAM
CLERK

Clerk of the Court
United States District Court
901 19th St, Room A-105
Denver
CO 80294-3589



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

        Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,

        Defendants.

_____

**ORDER**

_____

Upon Defendant The U.S. Capitol Police's Response to Plaintiff's "Objection to [60]

Report and Recommendations" (Doc 74 - filed November 10, 2009), it is

ORDERED that Plaintiff's pro se Objection to [60] Report and Recommendation

(Doc 71) is STRICKEN AS UNTIMELY.

                BY THE COURT:


                  s/Lewis T. Babcock
                  Lewis T. Babcock, Judge

DATED:   November 12, 2009

Case 1:08-cv-02188-LTB-CBS   Document 84   Filed 12/16/09   Page 1 of 3

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 333
Case No 08-cv-02188-LTB-CBS   12/14/2009 Motion for the Appointment of Counsel   Page1/3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No: '08-cv-02188-LTB-CBS

SOLOMON BEN- TOV COHEN, pro-se

    Plaintiff

    v

FRED BUSCH,
    Ex Special Agent, US Capitol Police

    Defendant

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**DEC 1 6 2009**

**GREGORY C. LANGHAM**
**CLERK**

## MOTION FOR THE APPOINTMENT OF COUNSEL

I request that the Court appoint an attorney to represent me in the matter cited above for the

following reasons:-

On December 10 2009, Dr Zaki, psychiatrist GEO- ICE Detention Facility, Aurora, Colorado,

terminated my medication for ADHD: ADDERALL 25 mg a day.

I am not mentally competent to represent myself because I am completely unable to focus.

My medication was terminated in retaliation over my filing a grievance.

Having seen that I have symptoms of recurrence of bladder cancer- haematuria- I am being

denied a consulatation at Denver Health or treatment.

No Attorney will represent me because they have stated that suing the Government is dangerous.

1

Case No 08-cv-02188-LTB-CBS   12/14/2009 Motion for the Appointment of Counsel   Page2/3

I have made the following efforts to obtain counsel from legal aid or legal services organizations

or individual attorneys without payment of a fee or on a contingent fee basis, and have been

unable to obtain the services of counsel: Neil Goldfarb, Washington DC

I need an attorney to reply to Defendant Fred Busch's Motion to Dismiss.

I am denied access to my money approximately $5.6 Million.

Because I have been incarcerated for 2 ½ years, no business law firm will represent me.

This money is held as trustee by Markus Wanger, an associate of Bruce Rodhe, Solomon Pearl

Blum Heymann & Stich LLP here in Denver, who lied to police and had me arrested.

Rohde works closely with Berenbaum Weinshienk & Eason.

**DISCOVERY NEEDED**
A US Postal Inspector here in Denver is the person who falsely arrested me, working for the

same Government Agency as Fed Busch.

I have applied to this Court for a Court order restoring my Adderall medication.

FAILURE TO RESPOND TO MAGISTRATE"S RECOMEMNDATION
GEO failed to provide this medication from October 2ns until October 20[th] 2009.

I am mentally handicapped without this medication.

Please can the Court grant this Motion to Appoint Counsel.

Date: 12-14-09

Solomon B Cohen MA(*Cantab*) pro-se
Alien # 077 309 675

2

334

Case 1:08-cv-02188-LTB-CBS   Document 84   Filed 12/16/09   Page 3 of 3

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 335
Case No 08-cv-02188-LTB-CBS     12/14/2009 Motion for the Appointment of Counsel     Page3/3

## CERTIFICATE OF SERVICE

I hereby certify that on this ¹ᵗ day of December , 2009, service of the attached document was effected by placing a true and correct copy of each of the same in the United States mail, first class postage prepaid, addressed to the following:

Counsel for Representative Henry A Waxman

Katharine E McCarron, Assistant Counsel
US House of Representatives
219 Cannon House Office Building
Washington
DC 20515

Counsel for United States Capitol Police and Fred Busch

Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202

Date: 12-14-09                    Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se
Alien # 077 309 675

3

Case 1:08-cv-02188-LTB-CBS   Document 85   Filed 12/21/09   Page 1 of 3

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 336
Case 1:08-cv-02188-LTB-CBS   Document   Filed  12/16/2009   Page   1/3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No: 08- cv- 02188- LTB-CBS

SOLOMON BEN- TOV COHEN Pro- SE,             Plaintiff

     v

(Hon HENRY A WAXMAN, US Representative)

(US CAPITOL POLICE)

FRED BUSCH, ex- Special agent             Defendants
     US Capitol Police

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 2 1 2009

GREGORY C. LANGHAM
CLERK

---

## MOTION FOR CHANGE OF VENUE

---

Plaintiff, Solomon Ben- Tov COHEN pro-se and without his Attention Deficit Hyperactivity Medication terminated by the US Government,  hereby requests that the Court change venue to United States District Court for the District of Columbia.

1.  Plaintiff first became aware that his civil rights had been violated when he attended competency restoration classes given by Dr Sean Kelly in Colorado.

2.  Plaintiff was declared Competent to Proceed by Denver District Judge Sheila Rappaport , Denver District Court, State of Colorado March 30 2008.

Case 1:08-cv-02188-LTB-CBS  Document 85  Filed 12/21/09  Page 2 of 3

Appellate Case: 10-1283  Document: 21  Date Filed: 08/16/2010  Page: 337
Case 1:08-cv-02188-LTB-CBS  Document  Filed 12/16/2009  Page  2/3

3. However, the classes attended by the plaintiff which encompassed the amendments to the US Constitution and §1983 and *Bivens* claims, did not cover the concept of personal jurisdiction.

4. Plaintiff argues that if the case is not transferred, the action will be time-barred.

5. This action was brought in this court because the plaintiff is incarcerated within the jurisdiction of this court, which is incorrect.

6. It is not disputed by any of the parties that Plaintiff was arrested within the office of US Representative Henry Waxman, Rayburn Office Building, Washington District of Columbia.

7. Plaintiff should not suffer because he is unable to access any of his wealth and cannot afford counsel.

WHERFORE Plaintiff prays the court grants this motion.

Dated this                day of December, 2009.

Signed:_____

Solomon B Cohen MA(*Cantab*) pro-se
Alien # 077 309 675

## CERTIFICATE OF SERVICE

I hereby certify that on this    day of              , 2009, service of the attached document was effected by placing a true and correct copy of each of the same in the United States mail, first class postage prepaid, addressed to the following:

Counsel for Representative Henry A Waxman

Katharine E McCarron, Assistant Counsel
US House of Representatives
219 Cannon House Office Building
Washington
DC 20515

Counsel for United States Capitol Police and Fred Busch

Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202

Date: _____          Signed:_____

Solomon B Cohen MA(*Cantab*) pro-se
Alien # 077 309 675

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,
    Plaintiff,
v.

FRED BUSCH, Agent, U.S. Capitol Police,
    Defendant.

---

## ORDER

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Plaintiff Cohen's "Motion for the Appointment of Counsel" (filed December 16, 2009) (doc. # 84). Pursuant to the Order of Reference dated November 12, 2008 (doc. # 9) and the memorandum dated December 30, 2009 (doc. # 87), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, the entire case file, and the applicable law and is sufficiently advised in the premises.

Indigent civil litigants have no constitutional or statutory right to be represented by a lawyer. *Merritt v. Faulkner*, 697 F.2d 761, 763 (7th Cir. 1983). Pursuant to 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." *See also Johnson v. Howard*, 20 F. Supp. 2d 1128, 1129 (W.D. Mich. 1998) (a court may request counsel to represent an indigent plaintiff in an "exceptional case"). However, § 1915(e)(1) does not authorize "compulsory assignments of attorneys" or "coercive appointments of counsel." *Mallard v. United States District Court for the Southern Dist. of Iowa*, 490 U.S. 296, 300-310 (1989).

Whether to request counsel is left to the sound discretion of the trial court. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). "[T]he district court has broad discretion to appoint counsel for indigents . . . , and its denial of counsel will not be

1

overturned unless it would result in fundamental unfairness impinging on due process rights." *Long v. Shillinger*, 927 F.2d 525, 527 (10th Cir. 1991) (applying 28 U.S.C. § 1915(d), amended and renumbered as § 1915(e)(1)) (internal quotation marks and citation omitted).  In deciding whether to request counsel for an indigent civil litigant, the district court should evaluate "the merits of a [litigant's] claims, the nature and complexity of the factual issues, and the [litigant's] ability to investigate the facts and present his claims." *Hill v. Smithkline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (citations omitted). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Hill*, 393 F.3d at 1115 (citation omitted). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Hill*, 393 F.3d at 1115 (citation omitted).

The court has considered Mr. Cohen's request for appointed counsel and all of the appropriate factors.  As a *pro se* litigant, Mr. Cohen is afforded a liberal construction of his papers.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  The current status of this case is that Defendants Waxman and U.S. Capitol Police have been dismissed and Defendant Busch's Motion to Dismiss based on the same grounds remains pending, awaiting a Recommendation by the Magistrate Judge.  Mr. Cohen has also moved for a change of venue.  At this stage of the proceedings, the court is within its discretion in declining to request counsel in Colorado to represent Mr. Cohen.

Accordingly, IT IS ORDERED that Plaintiff Cohen's "Motion for the Appointment of Counsel" (filed December 16, 2009) (doc. # 84) is DENIED.

341

DATED at Denver, Colorado, this 30th day of December, 2009.


BY THE COURT:



    s/Craig B. Shaffer
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT FILED
## FOR THE DISTRICT OF COLORADO

UNITED STATES DISTRICT COURT
DENVER, COLORADO

Civil Action No 08-cv-02188-LTB- CBS

JAN 0 5 2010

SOLOMON BEN- TOV COHEN,     pro-se
    Plaintiff

GREGORY C. LANGHAM
CLERK

*To the Judge:*
*on 01/01/2010 and for the*
*2nd time knows That*
*I have a deadline,*
*LAW LIBRARY OFFICER CASADOS*
*removed the TONER*
*cartridge from PRINTER/COPIER.*

v

(REPRESENTATIVE HENRY A WAXMAN)
    United States Congress ,

(US CAPITOL POLICE)
    and

FRED BUSCH,
    Ex Sp Ag Agent US Capitol Police

    Defendants

*I am not allowed to PRINT,*
*the final VERSION.*
*THIS WAS PHOTOCOPIED BY LAW LIBRARY*
*OFFICER*
*DOMINGUEZ*
*elsewhere in this*
*FACILITY.*

---

## OPPOSITION TO FRED BUSCH'S MOTION TO DISMISS

---

Plaintiff, Solomon B Cohen pro- se moves the court to deny Defendant Fred Busch's Motion to

Dismiss [doc 61].

*Plaintiff moves This court for SUMMARY*
*DENIAL of BUSCH's MOTION to DISMISS*
*on grounds of serious misconduct by*
*the US Government.*

1

## FACTS

**Office of Representative Henry A Waxman, Rayburn Office Building**

Diagram on last page shows Cohen seated opposite Zahava Goldman's desk.

Busch placed himself at the exit to the office refusing to allow Cohen to leave.

Busch: What it is that you want?

Cohen: I'd like to make an appointment to see the Congressman.

[ Cohen rejected an appointment offered by male member of Congressman's staff over the

telephone as it fell on *Yom Kippur*.]

Busch: The Congressman isn't here and he keeps his own diary.

Cohen: Well, in that case, perhaps I can go to Barney Frank's office, as I have attended fund

raisers for him [Barney Frank is gay.]?

BUSCH REFUSED TO ALLOW COHEN TO LEAVE.THERE WERE TWO WASHINGTON

DC POLICE OFFICERS BEHIND HIM. ZAHAVA GOLDMAN WAS SEATED AT HER

DESK.

Busch violated District of Columbia law because as explained in *Hemmati*, a person may not be

arrested in the office of a Congressman unless they refuse to leave.

## NERVE AGENTS

**National Security of United States**

Cohen passed on via email to both Congressman and F.B.I. information he had been given.

that Austria had been manufacturing nerve against for use by Arabs in a war against Israel.

2

**30th Congressional District - Bedroom of blond, blue- eyed Austrian living in the US**

Cohen felt obliged to pass on the information he was given. Cohen expected to be allowed to become a US citizen.

**Discovery**

The Court must order Busch to hand over all emails sent by Cohen to the Congressman as well as telephone records of all Busch's calls.

Busch's name   is   Austrian.

**ARGUMENT**

I.   **This Action should not be dismissed.**

A.   **This is a diversity lawsuit. Personal service has been obtained.**

*Goldlawr, Inc v Heiman*, 369 U.S. 4463 (1962) "[I]n an ordinary diversity suit,

for example, a plaintiff may bring suit in the judicial district where he resides. 28

3

Case 1:08-cv-02188-LTB-CBS Document          Filed 12/30/2009 USDC Colorado Page 4 of 11

U.S.C. 1391(a). But if he is unable to get personal service on the defendant in the

territory defined by Fed Rule Civ Proc 4(f), his suit will be dismissed. See

*Robertson v Railroad Labor Board*, 268 U.S. 619".

**B.**

**C.   .Court has Personal Jurisdiction over Defendant Fred Busch**

Motion for the Appointment of Counsel has been filed- copy attached.

**Judge May not act as an advocate**

He has no legal training.

The Court granted the US Attorney's Motion to Dismiss. To the embarrassment of the Judges,

ICE then revealed that they had lied, Cohen's paid bond was unrevoked

4

opposes Defendant Hon Henry A Waxman's Motion to Dismiss for the reasons set out below

and also in the attached Memorandum.:-

## Jurisdiction

Action was filed in this Court because Plaintiff is incarcerated within this Court's jurisdiction

purusant to an unlawful Arrest by Immigration & Customs Enforcement arranged by the

defendants.

Incarceration in the State of Colorado is the result of ilegal seizure of Plaintiff in the

Congressman's office, ordered by the defendant and as such or as the result of 'Fruit of the

Poisonous Tree' is unlawful.

ICE have declared their intention to bring criminal charges against Plaintiff is this Court.

Colorado long arm statute comes down to due process argument. To the extent that Plaintiff is

unable to successfully argue against Defendant's claim of lack of jurisdiction in the attached

Memorandum, Plaintiff asks for Change of Venue to US District Court for the District of

Columbia. Plaintiff will file a Motion if required.

Tortious Acts withtin State of Colorado

Furthermore, it has not yet been ascertained as to whether or not Plainitff's wrongful arrest by US

Postal Inspector Steve Hodges in Denver, State of Colorado, is the result of direct and unlawful

8-5

Case 1:08-cv-02188-LTB-CBS Document        Filed 12/30/2009 USDC Colorado Page 9 of 11
intervention by the defendants- Defendant Fred Busch, now employed by US Postal Inspection

Services in Boston, MA.

**Time- Bar**

Plaintiff argues that this action is not time- barred.

Plaintiff first became aware of his civil rights, existence of *Bivens* remedy doctrine of 'Fruit of

the Poisonous Tree' when, after being declared Incompetent to Proceed, he attended classes by

Dr Kelly at Colorado Mental Health Institute at Pueblo from November 19th 2007- March 31st

2008.

Result of defendants tortious acts continues in The State of Colorado.

**1st, 4th, 5th 14th Amendment violations**

Just for Petitioning for redress of a grievance- see Memorandum- Representative Henry

Waxman, sued in *individual* capacity, asked US Capitol Police and Fred Busch to illegally seize

him and, in violation of his civil rights, call ICE and have them take him into custody without

warrant. Representative Waxman was under no obligation to listen to a grievance- agreed.

However, a political arrest such as he personally ordered, it is alleged in 2nd amended complaint,

violated Plaintiff's civil rights.

--------

Where is the letter from the Congressman telling the Plaintiff that Congressman declines to help

or see him?

## THERE IS NONE.

---

(Compare to Ex 6 filed with Action- letter from Senator John McCain to Darrison who was won.)

Defendants unlawful actions on November 25 2003 destroyed Plaintiff and his life for good.

Plaintiff asked for asylum from The English Crown. ICE breached asylum confidentiality. British diplomats came to Rappahannock Regional Jail and then informed The Queen.

In 2007 with Plaintiff residing opposite Supreme Court of the US, The English Crown by unlawful decision of Cayman Chief Justice cut off all support to Plaintiff from his money, froceing him onto the streets. He effectively confiscated all Plaintiff's assets ($20 Million).

Restriction on Removal is <u>mandatory</u> under statute.

Two members of Plaintiff's family are dead, since US Postal Inspector Hodges arrested him by warrant obtained by his perjury- charges dismissed.

Plaintiff has no hope of any kind of life without damages from this suit.

10  7

# DIAGRAM / FLOOR PLAN



RAYBURN   OFFICE   BUILDING

[1] Cohen did one semester F1-VISA NYC's
  Parsen's School of Design - 1992.
[2] Zahava = Hebrew for GOLD &

Respectfully submitted,


Date: __01 / 03 / 2010__          Signed: _____


Solomon B Cohen MA(*Cantab*) pro-se


PRISON MAILBOX RULE INVOKED.

## CERTIFICATE OF SERVICE

I hereby certify that on this ○1/○4 day of January 2010, service of the attached document

was effected by placing a true and correct copy of each of the same in the United States mail,

first class postage prepaid, addressed to the following:

Counsel for Fred Busch

    Marcy E Cook, Assistant US Attorney
    US Attorney's Office
    1225 17th St, Suite 700
    Denver
    CO 80202

Fred Busch

United States Postal Inspection Service

Boston Division

495 Summer St, Suite 600

Boston

MA 02210-2114

Date: _12/29/09_                                     Signed: _s/ Solomon B Cohen_____

                                                  Solomon B Cohen MA(*Cantab*) pro-se

# EXHIBIT 1

From: Solomon B Cohen To:                                   Date: 8/16/99  Time: 2:50:04 PM                Page 1 of 1

99 309 675



# NEW YORK CITY LOFT BOARD

49-51 Chambers Street - Room 1006
New York, New York 10007
(212) 788-7610 • Fax  (212) 788-7501
www.ci.nyc.ny.us/html/loft

JEANNETTE ARLIN KOSTER .
*Executive Director*

Next Hearing Type: MCIC Off Calendar ch
Next Hearing Date/Time: 3/
Judge: Location: was wad dce vir 4
Employee Initial:

August 4, 1999

Solomon B. Cohen
511 Avenue of the Americas
PMB211
New York, New York 10011

PLAINTIFF'S
EXHIBIT
1

PENGAD 800-631-6989

Re:      43 E. 20th Street, 2nd floor

Dear Mr. Cohen;

I am in receipt of your recent letter concerning the above-referenced premises. The letter sent to you by the Loft Board on November 4, 1998, is a form notice to the owner of the building, reminding the owner that once it obtains a residential certificate of occupancy, it is eligible to apply for a final rent order. A copy of the letter was sent to all residential tenants, in order to provide notice to them of this eligibility. The letter explicitly stated that "[r]esidential tenants ... will be receiving a copy of this letter, for their information only. There is no need for a tenant to communicate with the Loft Board upon receipt of this letter."

I note that the Loft Board's computer database shows that the second floor unit of 43 East 20th Street is still a rent-regulated unit. There is no record that the owner bought out the rights or fixtures, or obtained an abandonment finding, any of which events would allow the owner to increase the rent to market rate. A copy of this letter is being sent to the owner of record in order to provide notice of this discrepancy. The owner should note that failure to file proof of a sale of rights with the Loft Board may result in the imposition of a fine. See 29 RCNY § 2-10(b).

Furthermore, although the Loft Board's November 4 letter was issued in anticipation of the owner obtaining a final residential certificate of occupancy, the owner has not informed the Loft Board that it actually obtained a residential certificate of occupancy. Consequently, unless the owner provides a copy of the residential certificate of occupancy, the Loft Board presumes that the owner did not obtain it. Therefore, the owner may be out of compliance with the Loft Law, as in effect on June 30, by failing to obtain a residential certificate of occupancy by June 30, 1999. See Multiple Dwelling Law § 284(1)(iii).

If you have any further questions, please contact the Loft Board's Public Information Office, at 212-788-7610.

Very truly yours,

JEANNETTE ARLIN KOSTER

Cc:     Raymond Tekosky
        Forty-Three East Equities Corp.
        43 E. 20th Street, 7th floor
        New York, New York 10003

PLAINTIFF'S
EXHIBIT
2
PENGAD 800-631-6989

Subj:    Re: 43 E20th
Date:    9/17/99 4:02:55 PM Eastern Daylight Time
From:    LGleich999
To:      Cohensb1
CC:      rtekos a concent.net

SOLOMON,

I received your E-mail with the Kol Nidre, I was a little disappointed, I thought it could be more stirring. This version did not evoke the emotional feeling that usually happens when I hear it.

As to the files you mentioned regarding correspondence between you and your lawyer. I have none, nor were any attached to your e-mail. If you sent them in previous e-mails I may have been unable to access them since there were several files I was unable to open after downloading. Please fax them to 212 582 6680, or if they are E-mail correspondence perhaps you can just forward them to me.

Ray handles the deposit accounts and I have asked him to give you the information you requested.

Please tell what you think is ominous.

As you know we are not renewing your lease and you are to vacate on or before September 30 . Therefore, I am again requesting that you inform me as to what arrangements you are making to move, especially as it concerns the larger items such as the piano and the refrigerator. You will also need to have the Moving Company provide us with insurance certificates naming Forty Three East Equities Corp. as Certificate Holder and also as Additional Insured.

Have a good Fast.


Regards, Lenny

Subj:    Re: 43 E20th
Date:    9/17/99 7:16:23 PM Eastern Daylight Time
From:    LGleich999
To:      Cohensb1

Solomon,

Please respond seriously to the main points of my last E-mail. Your flippant remarks are inappropriate. Especially in light of the fact that you take everything so seriously, even to the point of saying Raymond lied to you, which is absurd.
Lenny

Subj:    Secutiy Deposit
Date:    9/17/99 4:31:24 PM Pacific Daylight Time
From:    raytekos a concentric.net (Concentric)
To:      cohensb1 a aol.com (Solomon Cohen)
CC:      lgleich999 a aol.com (Len Gleich)

Until 2 months ago your security deposit has been in our security savings account at Greenpoint Savings, located at Grand Central and 42nd St. It has since been moved to a Merrill Lynch account along with all other building securities..

D'AGOSTIONO v. 43 E EQYUITES, 12 Misc.3d 486 (2006),

820 N.Y.S.2d 468

PETER D'AGOSTINO, Petitioner, v. FORTY-THREE EAST EQUITIES CORP. et al.,

Respondents.

.6428/2005.

Civil Court of the City of New York.

NEW YORK COUNTY.

April 3, 2006.

Page 487

*Belkin Burden Wenig & Goldman, LLP,* New York
City (*Joseph Burden* of counsel), for Forty-Three East
Equities Corp., respondent. *Valentine J. Moretti,* New
York City, for New York City Department of Housing
Preservation and Development, respondent. *Jeffrey S. Ween
& Associates,* New York City, for petitioner.

OPINION OF THE COURT

JOSEPH E. CAPELLA, J.

It is undisputed that on November 14, 2005, the petitioner
tenant commenced the instant Housing Part (HP) proceeding to
compel the respondent owner to repair both the roof to the
subject building and the water damage caused by same within
his apartment. It is also undisputed that in 1997, the owner
and the tenant entered into a life estate lease, which
incorporated a settlement agreement, for the subject premises.
Nor is it disputed that under the lease and agreement, the
owner is responsible for maintaining the roof. According to
paragraph six of the agreement, however, "any controversy or
claim arising out of or relating to the agreement or lease or
the breach thereof, except those issues which could [directly
or indirectly result in eviction], shall be settled by
arbitration." In an attempt to compel arbitration, the owner,
by notice of motion dated December 23, 2005, seeks a stay or
dismissal of the instant HP proceeding based upon the
aforementioned agreement. (CPLR 7503 [a].) It should be noted
that, on December 17, 2005, six days prior to the motion, and
pursuant to a "Judicial Request/Order for Housing Inspection"
dated December 9, 2005, a New York City Department of Housing
Preservation and Development (HPD) inspector issued violation
number 5901251 for "broken or defective plastered surfaces and
paint . . . ceilings and walls in the entire [subject]
apartment." In opposition to the motion, HPD and the tenant
argue, inter alia, that public policy precludes arbitration of
housing conditions raised in HP proceedings.[fn1]

It is well settled that arbitration is both favored and
encouraged as a means of conserving the time and resources of
the
Page 488
courts and the contracting parties (*Matter of Nationwide
Gen. Ins. Co. v Investors Ins. Co. of Am.,* 37 NY2d 91
[1975]), and the courts have generally not interfered, with
few exceptions, in this mode of dispute resolution.
(*Matter of Sprinzen [Nomberg],* 46 NY2d 623 [1979].)

The exceptions, which have been narrowly construed, include agreements to arbitrate matters that contravene an important public policy. (*Matter of Board of Educ. of City of Buffalo [Buffalo Council of Supervisors & Adm'rs]*, 52 AD2d 220 [1976]; *Durst v Abrash*, 22 AD2d 39 [1964], affd 17 NY2d 445 [1965].) However, because an arbitration agreement will not be deemed void as against public policy if it is capable of a construction which would make it consistent with the law and thereby valid (*Curtis v Gokey*, 68 NY 300 [1877]), defining those areas of public policy that preclude arbitration is not a simple endeavor.

In those cases where the public policy pendulum has swung away from arbitration, guiding criteria have included the pervasiveness of a regulatory scheme and a recognition that arbitrators are not bound by principles of substantive law or rules of evidence that govern the traditional litigation process — their duty is to reach a just result regardless of the technicalities. (*Matter of Raisler Corp. [New York City Hous. Auth.]*, 32 NY2d 274 [1973].) For example, public policy exceptions to arbitration have been found in controversies involving the enforcement of antitrust laws (*Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 NY2d 621 [1968]), and claims concerning the liquidation of insolvent insurance companies. (*Matter of Knickerbocker Agency [Holz]*, 4 NY2d 245 [1958].) In an action similar to the instant proceeding, the Appellate Division in *Matter of Goldmar Hotel Corp. (Morningside Studios)* (283 App Div 935 [1st Dept 1954]), concerned with the health, safety and welfare of the citizenry, prevented a tenant from arbitrating an obligation to make repairs that violated the Multiple Dwelling Law.

In weighing the public policy considerations against the parties' arbitration agreement, the court must examine the very purpose of an HP proceeding. In 1974, the New York State Legislature created a special part within the Civil Court of the City of New York, known as the Housing Part, to hear in a single forum all disputes involving the enforcement of state and local laws for the establishment and maintenance of housing standards. (CCA 110; *see also* NY City Housing Maintenance Code [Administrative Code of City of NY] § 27-2115 [h], [i]; *Parkchester Alliance v Parkchester Apts. Co.*, 180 Misc 2d 548 [Civ Ct, Bronx County 1999].) Proceedings brought in this forum are referred to as "HP proceedings," and the laws to be enforced include, but are not limited to, the Multiple Dwelling Law, the Housing Maintenance Code (HMC), the Building Code and the Health Code. Both the Multiple Dwelling Law and the Housing Maintenance Code contain preliminary sections that reveal the intent of the legislatures — that the housing stock of the state's cities be preserved and all occupants be afforded safe and healthy housing. (*Department of Hous. Preserv. & Dev. of City of N.Y. v Metropolitan Ave. Corp.*, 148 Misc 2d 956 [Civ Ct, Kings County 1990].) And despite the Civil Court's lack of general equitable jurisdiction, section 110 (a) (4) of the Civil Court Act specifically provides the Housing Part with jurisdiction to issue injunctions and restraining orders for the enforcement of housing standards. Moreover, regardless of the relief originally sought by a party, section 110 (c) provides that "the court may recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards, if it believes they will be more effective to accomplish compliance or to protect and promote the public interest."

As part of its responsibility in enforcing the Housing Maintenance Code. HPD will investigate complaints made by tenants and issue violations accordingly. For example, as lead-based paint poses a serious health problem to adults and children, HPD may issue a violation for same based upon an inspection or a statutory presumption, which the owner must correct within 21 days. (Housing Maintenance Code §§ 27-2056.) Pursuant to section 27-2115 (i) of the Housing Maintenance Code,

> "[i]n the event an owner fails to correct a violation . . . any tenant or group of tenants who requested that [a] violation be issued may apply individually or jointly, to the housing part for an order directing the owner and [HPD] to appear before the court . . . If the court finds that the violation has not been corrected, . . . then it *shall* direct the owner to correct the violation and *shall* assess [penalties]."
> (Emphasis added.)

Regardless of whether the petitioner in an HP proceeding is a tenant or HPD, at the conclusion of the trial, if the petitioner prevails the court will issue an order to correct. The few defenses to an order to correct include lack of standing or jurisdiction,
Page 490
completed repairs, conditions are not code violations, notice of violation is facially insufficient, respondent is no longer the owner and economic infeasibility. (*Department of Hous. Preserv. & Dev. of City of N.Y. v 163 Ocean Tenants Corp.*, NYLJ, June 7, 2000, at 28, col 5 [App Term, 2d Dept]; *Bernard v Scharf*, 246 AD2d 171 [1st Dept 1998], *revd* 93 NY2d 842 [1999]; *Eye-dent v Vickers Mgt*, 150 AD2d 202 [1st Dept 1989].) It is not a defense to an order to correct that the tenant refused access to repair the violation (*Aguilar v Elk Dr.*, 117 Misc 2d 154 [Civ Ct, Queens County 1982]), that the violation was caused by natural disaster or third parties beyond a respondent's control, or that the building has few remaining tenants. (*Department of Hous. Preserv. & Dev. of City of N.Y. v Metropolitan Ave. Corp.*, 148 Misc 2d 956 [Civ Ct, Kings County 1990].) Given HPD's responsibility in enforcing the HMC, in those instances in which a tenant commences an HP proceeding against the owner, HPD is named as a corespondent, and any civil penalties awarded by the court are payable to HPD. (*Shapiro v Townan Realty Co.*, 162 Misc 2d 630 [Civ Ct, NY County 1994]; *Amsterdam v Golds-tick*, 136 Misc 2d 831 [Civ Ct, NY County 1987].) Of course, being a party to the proceeding, any attempt by an owner to challenge an HPD violation will be opposed by HPD. Besides assisting HPD in the enforcement of the HMC, a tenant who commences an HP proceeding and restores same for civil penalties is also asserting a monetary claim for the benefit of HPD. Given the aforementioned, it is clear that HPD is a necessary party that will play an integral role in the instant HP proceeding. HPD is not, however, a party to the arbitration agreement and vigorously opposes the owner's attempt to compel arbitration.

In establishing the HP part, and the pervasiveness of the regulatory scheme associated with same, the Legislature made clear their intent to protect and preserve existing housing, regardless of whether the proceeding is commenced by HPD or a tenant, and regardless of whether the apartment or building is vacant or occupied. (*Department of Hous. Preserv. & Dev. of City of N.Y. v Metropolitan Ave. Corp.*, 148 Misc 2d 956 [Civ Ct, Kings County 1990]; *Finkelstein and Ferrara*,

U.S. Department of Justice

Immigration and Naturalization Service

**Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| COHEN, Solomon Ben-Tov | | | | M | BLK | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| UNITED KINGDOM | 703061678 | Case No: WAS0411000615 A077 309 675 | 71 | 170 | |

U.S. Address
C/O DHS/ICE, 4420 N. FAIRFAX DRIVE
ARLINGTON, VIRGINIA 22203

Scars and Marks: **See Narrative**

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | ☐ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |
|---|---|---|---|
| 06/21/2002, Unknown Time, LOS, BY AIR | | 083165NB4 | |

Number, Street, City, Province (State) and Country of Permanent Residence

Method of Location/Apprehension: **PI 518.3**

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| 12/24/1960     Age: 42 | 11/26/2003 | WAS/WAS | Washington, DC | 11/25/2003  0000 |

| City, Province (State) and Country of Birth | AR ☒ | Form: (Type and No.) | Lifted ☐ | Not Lifted ☐ | By |
|---|---|---|---|---|---|
| LONDON, ENGLAND, UNITED KINGDOM | | | | | CINDY YANG |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | Visa Waiver Program | TRAVEL/SEEK INS |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | 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 | OVER 1 YEAR |

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | See narrative |

Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children: **UNKNOWN**

Father's Name, Nationality, and Address, if Known: COHEN, Armand Simon  Nationality: UNITED KINGDOM | Mother's Present and Maiden Names, Nationality, and Address, if Known: ACCO, Leonie  Nationality: UNITED KINGDOM

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? Yes ☒  No ☐ | INS Systems Checks **See Narrative** | Charge Code Word(s) |
|---|---|---|---|

| Name and Address of (Last)/(Current) U.S. Employer | Type of Employment | Salary  Hr. | Employed from/to |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

OTHER ALIASES KNOWN BY
COHEN, SOLOMON MICHAEL SAMUEL

SCARS, MARKS AND TATTOOS
None Visible

INS SYSTEMS CHECKS
Central Index System Positive
National Crime Information Center Positive
Non Immigrant Information System Positive

Narrative Title: Record of Deportable/Excludable Alien
Narrative Created by YANG

PREDICATION:  SUBJECT was referred by the U.S. Capitol Police on 11/25/2003.  SUBJECT had been sending inappropriate e:mails to Rep. Waxman from CA and had come to DC to demand an appointment with him.  SAs Yang and Schwab took custody of SUBJECT after determining alienage and deportability.

BEFORE/AT ENTRY:  SUBJECT has entered the U.S. on dozens of occasions.  On 05/14/2000, SUBJECT attempted entry at LAX but withdrew his application for admission after stating,

PLAINTIFF'S EXHIBIT 3

PENGAD 800-631-6989

DEPT. OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

MAR 3? 2005

IMMIGRATION COURT
ARLINGTON, VA

Alien has been advised of communication privileges. _____ (Date/Initials)

CINDY YANG
SPECIAL AGENT
(Signature and Title of INS Official)

| Distribution: | Received: (Subject and Documents) (Report of Interview) |
|---|---|
| Alien File Stats Intel | Officer: **CINDY YANG** on: **November 26, 2003** at **0825** Disposition: **Warrant of Arrest/Notice to Appear** Examining Officer: **MANUEL WILKS** |

EXH 3

Form I-213(Rev.4/1/97)Y   359

**U.S. Department of Justice**
Immigration and Naturalization Service                    Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| COHEN, Solomon Ben-Tov | Case No: WAS0411000615<br>A077 309 675 | 11/26/2003 |

in a sworn statement, that he was a user of crystal meth. SUBJECT last entered the U.S. on 06/21/2002 at LOS under the Visa Waiver Program.

CRIMINAL RECORD:  SUBJECT has a warrant for his arrest out of San Diego, CA for an offense relating to dangerous drugs; on 10/02/2003, Capitol Police confirmed that the warrant was still active but determined that extradition was available only for CA. SUBJECT has the following criminal record in the U.S.:  arrest on 04/17/2000 in San Francisco, CA for disorderly conduct/under the influence of a drug;  arrest on 07/06/2003 in San Diego, CA for possession of a controlled substance, DUI/drugs, and being under the influence of a controlled substance; arrest on 07/18/2003 in Santa Ana, CA for possession of a controlled substance; and arrest on 09/02/2003 in Salt Lake City, UT for felony fleeing.

AFTER ENTRY:  SUBJECT has recently been living in NYC at 43 East 20th Street, 2nd Floor. SUBJECT claimed to have various psychiatrists and medical doctors.  SUBJECT was attempting to meet with Rep. Waxman to discuss a conspiracy aimed at taking away $5 million of SUBJECT's funds.  A cursory review of SUBJECT's e-mails and letters indicated that SUBJECT also believed that the New York mafia was involved in harassing him.

OTHER:  SUBJECT was either unwilling or unable to engage in normal conversation.  SUBJECT spoke unceasingly about various paranoid delusions, and he expressed indignation that someone as wealthy and educated as he was could be arrested and placed in jail.  SUBJECT admitted that he had, on at least one occasion, been involuntarily taken to a psychiatric facility, but he claimed that he was released after three days because the doctors found nothing wrong with him.  SUBJECT claimed to have a lymphatic problem that necessitated his taking a methamphetamine derivative.  SUBJECT asserted that his doctor in the U.K. had told him that the only place he could receive proper treatment for his condition was in the U.S.

SUBJECT made no claim of U.S. citizenship.  SUBJECT claimed that he had contacted an immigration attorney in order to obtain permanent resident status, but CLAIMS is negative.  Furthermore, having entered under the Visa Waiver Program, SUBJECT is ineligible for adjustment.  It is noted that SUBJECT now has more than one year of unlawful presence in the U.S.

| Signature | Title |
|---|---|
| CINDY YANG | SPECIAL AGENT |

                                                          2   of   2   Pages

Form I-831 Continuation Page (Rev. 6/12/92)

October 6, 2008

Mr. Solomon B. Cohen
ID Number L2580
Aurora Ice Processing Center
11901 E 30th Ave.
Aurora, CO  80010-1525

RE:  Bulls, Bear & Millionaires

Dear Mr. Cohen,

I received your letter today and hope that I can answer your question as to where I got
this particular book.  I purchase my books from the United States Post Office auctions in
Atlanta, GA. every month.  From my code on this book, it was purchased in 2007,
probably early summer.  The books that I buy are books that have been lost in the mail
and are sent to the Atlanta facility from all over the United States.  I bid on large
containers of books and buy sight unseen.

Hope this information helps.  This is very interesting.  I have heard from other sellers that
they have bought back books which they have sent to purchasers and that have gotten lost
in the mail.

I am attaching this letter in an e-mail to Mr. Howarth.

If I can be of any other help, please let me know.

Sincerely,

Daphne Gwyn
Berkeley Books
dygwyn@comcast.net

PLAINTIFF'S
EXHIBIT
4
PENGAD 800-631-6989

361



**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Gregory C. Langham
*Clerk*

Phone: (303) 844-3433
Fax:    (303) 335-2714

This is the best quality copy of the following document.

Clerks Office
United States District Court



USA FIRST-CLASS FOREVER

Mr. Solomon B. Cohen
ED Number 1 80
Aurora Co Detention Center
11900 E. 30 Ave.
Aurora, CO -10-1525

UNIVERSITY OF KENTUCKY Alumni Association

Mrs. Daphne Y. Gwyn
4795 Masters Ct
Duluth GA 30096

PLAINTIFF'S
EXHIBIT
5

PENGAD-800-631-6989



*77 309 675*

# NEW YORK CITY LOFT BOARD

49-51 Chambers Street - Room 1006
New York, New York 10007
(212) 788-7610 • Fax (212) 788-7501
www.ci.nyc.ny.us/html/loft

JEANNETTE ARLIN KOSTER
*Executive Director*

Next Hearing Type: MCIC Off Calendar pl
Next Hearing Date/Time: 3/
Judge: Location: was wad dca vir
Employee Initials:

August 4, 1999

Solomon B. Cohen
511 Avenue of the Americas
PMB211
New York, New York 10011

PLAINTIFF'S
EXHIBIT
1
PENGAD 800-631-6989

Re:   43 E. 20th Street, 2nd floor

Dear Mr. Cohen:

I am in receipt of your recent letter concerning the above-referenced premises. The letter sent to you by the Loft Board on November 4, 1998, is a form notice to the owner of the building, reminding the owner that once it obtains a residential certificate of occupancy, it is eligible to apply for a final rent order. A copy of the letter was sent to all residential tenants, in order to provide notice to them of this eligibility. The letter explicitly stated that "[r]esidential tenants ... will be receiving a copy of this letter, for their information only. There is no need for a tenant to communicate with the Loft Board upon receipt of this letter."

I note that the Loft Board's computer database shows that the second floor unit of 43 East 20th Street is still a rent-regulated unit. There is no record that the owner bought out the rights or fixtures, or obtained an abandonment finding, any of which events would allow the owner to increase the rent to market rate. A copy of this letter is being sent to the owner of record in order to provide notice of this discrepancy. The owner should note that failure to file proof of a sale of rights with the Loft Board may result in the imposition of a fine. See 29 RCNY § 2-10(b).

Furthermore, although the Loft Board's November 4 letter was issued in anticipation of the owner obtaining a final residential certificate of occupancy, the owner has not informed the Loft Board that it actually obtained a residential certificate of occupancy. Consequently, unless the owner provides a copy of the residential certificate of occupancy, the Loft Board presumes that the owner did not obtain it. Therefore, the owner may be out of compliance with the Loft Law, as in effect on June 30, by failing to obtain a residential certificate of occupancy by June 30, 1999. See Multiple Dwelling Law § 284(1)(iii).

If you have any further questions, please contact the Loft Board's Public Information Office, at 212-788-7610.

Very truly yours,

*Jeannette Arlin Koster*
JEANNETTE ARLIN KOSTER

Cc:   Raymond Tekosky
Forty-Three East Equities Corp.
43 E. 20th Street, 7th floor
New York, New York 10003

Subj:   Re: 43 E20th
Date:   9/17/99 4:02:55 PM Eastern Daylight Time
From:   LGleich999
To:     Cohensbl
CC:     rtekos@concent.net

PLAINTIFF'S
EXHIBIT
2
PENGAD 800-631-6989

SOLOMON,

I received your E-mail with the Kol Nidre. I was a little disappointed, I thought it could be more stirring. This version did not evoke the emotional feeling that usually happens when I hear it.

As to the files you mentioned regarding correspondence between you and your lawyer. I have none, nor were any attached to your e-mail. If you sent them in previous e-mails I may have been unable to access them since there were several files I was unable to open after downloading. Please fax them to 212 582 6680, or if they are E-mail correspondence perhaps you can just forward them to me.

Ray handles the deposit accounts and I have asked him to give you the information you requested.

Please tell what you think is ominous.

As you know we are not renewing your lease and you are to vacate on or before September 30. Therefore, I am again requesting that you inform me as to what arrangements you are making to move, especially as it concerns the larger items such as the piano and the refrigerator. You will also need to have the Moving Company provide us with insurance certificates naming Forty Three East Equities Corp. as Certificate Holder and also as Additional Insured.

Have a good Fast.


Regards, Lenny

Subj:   Re: 43 E20th
Date:   9/17/99 7:16:23 PM Eastern Daylight Time
From:   LGleich999
To:     Cohensbl

Solomon,

Please respond seriously to the main points of my last E-mail. Your flippant remarks are inappropriate. Especially in light of the fact that you take everything so seriously, even to the point of saying Raymond lied to you, which is absurd.
Lenny

Subj:   Secutiy Deposit
Date:   9/17/99 4:31:24 PM Pacific Daylight Time
From:   raytekos@concentric.net (Concentric)
To:     cohensbl@aol.com (Solomon Cohen)
CC:     lgleich999@aol.com (Len Gleich)

Until 2 months ago your security deposit has been in our security savings account at Greenpoint Savings, located at Grand Central and 42nd St. It has since been moved to a Merrill Lynch account along with all other building securities..

Page 18 of 33

365

Form 1099-MISC — Miscellaneous Income, Copy C For Payer (three handwritten forms)

**Equity Movement Summary**
*Portfolio:* **THE GAZELLE GLOBAL FUND LTD**

11:13 SEP 17, 1999

## Equity Held Movement

|  | $ |
|---|---|
| Today's Valuation Total Equity | 4,157,569 |
| Total Equity Adjustments | 0 |
| (Cash Receipts) / Payments / (Free Receipts) / Free Deliveries | 0 |
| Total Equity (including additional cash items) | 4,157,569 |
| Previous Total Equity | 4,180,345 |
| Change in Total Equity % | (0.54) |

Reasons for Change

## Equity Requirement Movement

|  | $ |
|---|---|
| Previous Valuation Equity Requirement | 332,891 |
| Today's Valuation Equity Requirement | 330,502 |
| Change in Equity Requirement % | (0.72) |

## Facility Limits

|  | $'000s |
|---|---|
| Credit | 2,500 |
| Stock Loan | 2,500 |
| FX | 2,500 |

## Equity Required Summary

**Portfolio: THE GAZELLE GLOBAL FUND LTD**

| Strategy | Equity Requirement $ |
|---|---|
| Long and Short Security Positions | |
| Long and Short Security Positions | 330,502 |
| Unassigned Positions | |
| Unassigned Positions | 0 |
| **Total Equity Requirement** | 330,502 |
| **Total Equity Available** | 4,157,569 |

## Total Excess / (Shortfall)

**3,827,067**

| | |
|---|---|
| Adjustments for Pending Free Transfers In | 0 |
| Adjustments for Pending Free Transfers Out | 0 |
| Total Excess / (Shortfall) adjusted for Free Transfers | 3,827,067 |

Merrill Lynch

11:13 SEP 17 1999

## Equity Held Summary

**Portfolio:** *THE GAZELLE GLOBAL FUND LTD*

Merrill Lynch

| | Local Currency Amount | Amount $ |
|---|---|---|
| **(Loans) / Deposits** | | |
| GBP Call | (105,126) | (170,567) |
| USD Call | 1,023,121 | 1,023,121 |
| **Long and Short Security Positions** | | |
| Long Market Value | | 3,305,015 |
| Short Market Value | | 0 |
| **Unassigned Positions** | | |
| Long Market Value | | 0 |
| Short Market Value | | 0 |
| **PORTFOLIO NET EQUITY $** | | 4,157,569 |

11:14 SEP 17 1999

17-Sep-99  10/18

Page 4-1

# Long and Short Security Positions

## Portfolio: *THE GAZELLE GLOBAL FUND LTD*

| Security Name | Sec. Code | Unit Price | Units Held | Ccy Market Value | Ccy | Market Value $ | Margin (%) | Equity Requirement $ |
|---|---|---|---|---|---|---|---|---|
| **Long Positions** | | | | | | | | |
| ***Straight Bond*** | | | | | | | | |
| TREASURY 7PCT STK 06 11 2001 GBP | 0892058 | 1 018495 | 2,000,000 | 2,036,990 | GBP | 3,305,015 | 10 | 330,502 |
| | | | | | | 3,305,015 | | 330,502 |
| | | | | | | 3,305,015 | | 330,502 |

Total Market Value Long - $      3,305,015  
Total Market Value Short - $      0

**TOTAL EQUITY REQUIREMENT $**     330,502

11:14 SEP 17, 1999

Case 1:08-cv-02188-LTB-CBS   Document 89   Filed 01/05/10   Page 30 of 38
Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 37
11:12 SEP 17, 1999   #55914   PAGE : 2/8

# Merrill Lynch

## Cash Statement

Merrill Lynch
Primo Brokerage Services
20 Farringdon Road
London EC1M 3NH

Report Reference:    IPB_0061
Report Produced:     17-Sep-1999 10:57

Client              THE GAZELLE GLOBAL FUND LTD                                              Posting Date: 01 Sep 1999 to

Portfolio group

Portfolio           GAZEL               THE GAZELLE GLOBAL FUND LTD

Currency            GBP       Pound Sterling

| Posting date | Cash value date | Transaction type | Our transaction reference | Your transaction reference | Transaction details Trade date \ Buy/Sell \ Quantity \ Narrative | | | DR | CR | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
|  | 1-Sep-99 | Opening balance |  |  |  |  |  |  |  | (104,596.92) DR |
| 1-Sep-99 | 1-Sep-99 | Debit Interest Charge | 001958010 |  | 1-Sep-99 | PAY | 529 | 529.38 | 0.00 | (105,126.30) DR |
|  | 1-Sep-99 | Closing balance |  |  |  |  |  |  |  | (105,126.30) DR |

This report contains summary information about your account with Merrill Lynch International ("Merrill Lynch"). This report does not purport to contain all of the information that you may desire or need concerning your account. While the information contained herein is believed to be accurate, Merrill Lynch does not assume responsibility for the accuracy or completeness of such information and Merrill Lynch expressly disclaims any and all liability for representations and warranties, express or implied, contained in, or for omission from, the information contained herein. (X)

Case 1:08-cv-02188-LTB-CBS Document 89 Filed 01/05/10 Page 31 of 38
Appellate Case: 10-1283 Document: 21 Date Filed: 08/16/2010 Page: 372
11:12 SEP 17, 1999
#55914 PAGE: 3/8
PAGE: 3/8

# Merrill Lynch

## Cash Statement

Merrill Lynch
Primo Brokerage Services
20 Farringdon Road
London EC1M 3NH

Report Reference: IPB_0061
Report Produced: 17-Sep-1999 10:57

| | | |
|---|---|---|
| Client | THE GAZELLE GLOBAL FUND LTD | |
| Portfolio group | | |
| Portfolio | GAZEL | THE GAZELLE GLOBAL FUND LTD |
| Currency | USD | US Dollar |

Posting Date: 01 Sep 1999 to

| Posting date | Cash value date | Transaction type | Our transaction reference | Your transaction reference | Transaction details Trade date \ Buy/Sell \ Quantity \ Narrative | DR | CR | Balance |
|---|---|---|---|---|---|---|---|---|
| | 1-Sep-99 | Opening balance | | | | | | 1,018,830.77 CR |
| 1-Sep-99 | 1-Sep-99 | Credit Interest Charge | 001958011 | 1-Sep-99 REC | 4,290 | 0.00 | 4,290.05 | 1,023,120.82 CR |
| | 1-Sep-99 | Closing balance | | | | | | 1,023,120.82 CR |

This report contains summary information about your account with Merrill Lynch International ("Merrill Lynch"). This report does not purport to contain all of the information that you may desire or need concerning your account. While the information contained herein is believed to be accurate, Merrill Lynch does not assume responsibility for the accuracy or completeness of such information and Merrill Lynch expressly disclaims any and all liability for representations and warranties, express or implied, contained in, or for omission from, the information contained herein. (X)

Case 1:08-cv-02188-LTB-CBS   Document 89   Filed 01/05/10   Page 32 of 38

Appellate Case: 10-1283   Document: 01   Date Filed: 08/16/2010   Page: 373

Last year, motorists paid $310 million for parking tickets issued in New York City. If you park on New York City streets, this book could save you hundreds of dollars.

In 1989, over 500,000 summonses, worth $12 million, were dismissed in the first 9 months of the year because the tickets were written improperly. Those 500,000 summonses reflect only the small percentage (10%) of those who bother to contest their tickets. Hundreds of thousands of people are paying tickets that are defective or for which a convincing defense could be made — and the city makes out like a bandit!

Use this book to learn what PVB judges and 'insiders' know (but don't tell you):

- Which tickets are defective and why
- How to save time using Hearings by Mail
- When to appeal a decision and how to do it
- What to do when your summonses are in judgment
- Who the judges are and what they look for when they hear your defense

**HOW TO BEAT PARKING TICKETS LEGALLY** is a simple, straightforward guide about avoiding and contesting parking tickets. Also included is an invaluable directory of PVB addresses and phone numbers, and a listing of the fine amounts for parking violations.

The cost of parking on New York City streets is becoming more and more expensive. The money paid for this book may be the best investment you make today!

$7.95

PS PUBLISHING GROUP
175 FIFTH AVENUE, SUITE 2392
NEW YORK, NY 10010

ISBN 0-9630620-1-8



HOW TO BEAT PARKING TICKETS LEGALLY

LIMIT TWO HOURS

EXPIRED

compiled and edited by
Leonard Gleich, Jane G. Katz
and Joanne Sandler

NEW YORK CITY EDITION

Case 1:08-cv-02188-LTB-CBS   Document 89   Filed 01/05/10   Page 33 of 38

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 374

374

# HOW TO BEAT PARKING TICKETS ■ LEGALLY

*To those brave souls who park*
*on the streets of New York.  Good luck!*

**New York City Edition**

compiled and edited by
Leonard Gleich, Jane G. Katz
and Joanne Sandler

 A PS Publishing Group Book



**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Gregory C. Langham
*Clerk*

Phone: (303) 844-3433
Fax:    (303) 335-2714

This is the best quality copy of the following document.

Clerks Office
United States District Court

*Next 4 Pages*

Published by
PS Publishing Group Ltd.
175 Fifth Avenue
Suite 2392
New York, NY 10010
Telephone: 212-807-4960

## Acknowledgements

The information in this book was compiled through interviews with PVB personnel and Administrative Law Judges. We consulted manuals and training materials used by the PVB, The New York City Traffic Rules and Regulations, New York Vehicle and Traffic Law, recent editions of the Adjudications Bulletin of the PVB, as well as the information that the PVB releases to the public. Countless hours were spent in PVB hearing rooms, noting decisions and interviewing respondents.

Since the enforcement of parking rules and regulations changes according to policy decisions within the PVB, and according to interpretations of the law by Administrative Law Judges, the editors cannot be held responsible should the advice given in this book for defending or avoiding parking violations result in a fine or other parking penalties.

© Copyright 1991, PS Publishing Group Ltd.

All rights reserved. Printed in the United States of America. No part of this book may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording or by any information storage and retrieval system, without written permission of the Publisher, except in the case of brief quotations embodied in critical articles or reviews.

Designed by a piccolo graphics.
Cover photo ©1989, Andy Caulfield/The Image Bank.

ISBN: 0-9630620-1-8

First printing August 1991

If you've ever parked on the streets of New York City, you've probably gotten at least one parking ticket. And, if you're like the average motorist, you probably paid it. Maybe you shouldn't have.

In 1989, *The New York Times* reported that 500,000 summonses worth $12 million were dismissed in the first nine months of the year because the tickets were written improperly. Those 500,000 tickets represent only the number that people bothered to contest. Many times that number were paid, with no questions asked. No doubt a significant portion of those tickets were defective as well.

Before we began research on this book, we had the typical responses to parking tickets — we ranted and raved, we moaned about our shrinking checking accounts and then we paid the ticket. When we began to ask questions, we uncovered laws and policies that enable motorists to respond knowledgeably in the presentation of a successful defense.

This book was written in the hope that there are many people, like us, who are tired of paying tickets without asking any questions. None of us wants to waste time at the Parking Violations Bureau, losing a day's income to obtain a reduction for a $25 violation. This book will help you assess whether you have a real chance at obtaining a dismissal or a reduction, and what steps to take to bring about this result.

The cost of this book could save you hundreds of dollars in parking tickets. It may be the best investment you make today!

# CONTENTS

Introduction ...................................................................

## Chapter 1: The Defective Summons

Missing date of registration expiration.........................8
Missing or multiple vehicle description .......................8
Inadequate date/time.................................................16
Inadequate description of location ............................16
Statement of the offense ...........................................12
Miscellaneous inadequate offense descriptions .........13
Illegible tickets..........................................................14
What is not a defective summons ...............................14
What to do if you have a defective summons .............15

## Chapter 2: Defenses

Three sure-shot defenses ...........................................20
The wrong vehicle defense ........................................20
The disabled vehicle defense .....................................22
The medical emergency defense ................................23
The authorized vehicle defense.................................23
Meter claims .............................................................24
The "regulation was not in effect" defense ................25
The parking sign defense...........................................26
Ownership and authorization defenses ......................27
Missing plate defense ................................................29
Defenses related to expired registration stickers.........29
Defenses related to expired inspection stickers ..........31
The "I never got the ticket" defense ..........................32
The "I was there!" defense .........................................33
Double parking .........................................................34
Handicap parking......................................................36
Towed vehicles.........................................................36
Hard to defend violations ..........................................37
Receiving a summons on a rental vehicle....................37
How to present your defense......................................38

## Chapter 3: Commercial Vehicle Defenses

What is a commercial vehicle ....................................44
Privileges of commercial vehicles ..............................44
The basic issues in commercial hearings ....................45
The unaltered vehicle ................................................46
Double parking, fire hydrant,
and "no stopping" zone violations ............................47
Parking in the financial district..................................48
Service vehicles ........................................................49
Passenger vehicles used as commercial vehicles..........50
Avoiding late penalties ..............................................50
If you decide to contest a ticket
for a commercial vehicle............................................51

## Chapter 4: Judgments

What does it mean when a summons is in judgment....54
The "motion to vacate judgment".............................57
Proving that your vehicle was stolen or transferred......57
Proving that the vehicle was not registered by you.......58
Proving that notices could not have reached you .........60
If you plan to secure a motion to vacate judgment.......62
Payment and payment plans ......................................64

## Chapter 5: Appeals

Who is entitled to make an appeal?............................67
Filing for an appeal....................................................67
When to file for an appeal .........................................67
How to present your appeal .......................................68
Presenting an appeal in person...................................68
Do you need an attorney?..........................................69
Likely results of an appeal..........................................69
Presenting an appeal by mail......................................70
Where to go if not satisfied after an appeal.................70

## ■ Chapter 6: Final Thoughts

Basic parking ticket strategies ........................................7

Changes to watch out for at PVB ..............................7

How you can find out about changes
in PVB policy or law ......................................................7

Other books on parking ...............................................76

## ■ Appendices:

Glossary ...........................................................................78

Parking ticket fines and codes...................................80

Useful addresses and phone numbers.........................83

Index...............................................................................86

Ordering information ...................................................8

City. It is said that there are four times as many ▓▓▓ are parking spaces, that each issuing agent ▓▓▓ tickets a day, that 13 million tickets are written ▓▓▓ and that payment of tickets generates $25 ▓▓▓ for the city. Some call New York City one ▓▓▓ zone.

▓▓▓ who drive into the city or live here and have ▓▓▓ in the high-stakes game of parking. But ▓▓▓ the rules of the game. Even the vast majority ▓▓▓ unfamiliar with the game. This is because ▓▓▓ rules are only known to the insiders of the ▓▓▓ Bureau (PVB). The practical application of ▓▓▓ and Traffic Law and the NYC Rules and ▓▓▓ are solely within the purview of Administrative ▓▓▓ (ALJs) and those supervisors and policy makers ▓▓▓ educate the agency.

▓▓▓ provides step-by-step instructions for determining ▓▓▓ you have a defective ticket, for putting forth a ▓▓▓ for appealing a decision.

▓▓▓ important, the book describes how to beat parking ▓▓▓ It was written in the belief that equal access ▓▓▓ and practices (the rules of the game) of the ▓▓▓ available to everyone. In the spirit of the U.S. ▓▓▓ justice demands that one is entitled to a ▓▓▓ being issued a summons for an alleged parking ▓▓▓ this book allows those motorists in receipt of ▓▓▓ (parking tickets) to know their rights and ▓▓▓ convincing defense.

▓▓▓ information in this book to contest a parking ▓▓▓ you a dismissal of a violation that, if left ▓▓▓ might result in a series of threatening letters ▓▓▓ at the least) or the sudden impounding of ▓▓▓ A broke New York City wastes no time in ▓▓▓ efforts. The methods of enforcement are ▓▓▓ towed cars, attached wages, levies on ▓▓▓ withheld registration renewals, etc.

Case 1:08-cv-02188-LTB-CBS   Document 89   Filed 01/05/10   Page 38 of 38

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 379

Knowing how the game is played can save you the cost of one or many parking tickets. Whether you park in New York City on a regular basis or only occasionally, this book is a must. It will provide you with hundreds of tips on avoiding parking tickets and on contesting the ones that you receive.

Winning the game requires some understanding of the bureaucracy. So, before we begin, a few words about the people, departments, and equipment that are involved in the parking ticket agency.

**The Parking Violations Bureau (PVB)** is an agency within the Department of Transportation of the City of New York. It is responsible for collecting fines for parking tickets and, according to one estimate, brings in about $30 million annually to the city. The PVB has five Help Centers (Manhattan, Brooklyn, Queens, Bronx and Staten Island) and a Help Line to answer questions about the process of defending or paying parking tickets. The Help Line is known to be busy over 65% of the time.

**Help Centers,** located in each borough, are where you appear to contest your summonses. Each Help Center has hearing rooms and computerized information on vehicles and drivers. You can go to any Help Center to defend and/or pay your ticket (that is, if you received the ticket in Manhattan, you can contest it in Brooklyn).

**Administrative Law Judges (ALJs)** are the officials before whom you appear to contest a ticket. They are attorneys admitted to practice law in the State of New York who have been given training with regard to parking laws and PVB policy. ALJs are a varied group, many of whom are semi-retired. Some work occasionally, some regularly. All are independent contractors who, although paid by the PVB, are not technically employees of the PVB. Over 350 ALJs circulate through the centers.

**Transportation Department Officers (TDs)** are the personnel who issue parking tickets. There are approximately 1600 throughout New York City. They are called "brownies" because of their original brown uniforms.

recently, these uniforms were changed to blue. These officers are from only one of several agencies that issue summonses. The police, sanitation, and parks departments also issue tickets.

**The Summons Tracking and Accounts Receivable System (STARS),** a multimillion-dollar computer system, is the sophisticated weapon that the PVB uses to determine who owes what and why and a great deal more. It was created in response to the political scandal that hit the PVB. Most personnel will tell you that the system is far from perfect. ALJs who are aware of the inadequacies of the system may give the benefit of any doubt to the respondent.

Now you know a little bit more about the playing field. The rest of the book will provide details about the rules (written and unwritten) that govern the parking ticket game. Good

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

FRED BUSCH,

     Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR CHANGE OF VENUE (Doc. 85)**

---

Defendant Fred Busch, through undersigned counsel, hereby responds to Plaintiff's "Motion for Change of Venue" (Doc. 85) [hereinafter "Motion"].[1]  This case has been proceeding in this district for well over one year; two of the three Defendants have been dismissed, and a motion to dismiss is pending for the third.  Should this case proceed, none of the primary witnesses are located in the transfer district.  This Court should deny Plaintiff's Motion because Plaintiff does not meet his burden to establish that this forum is inconvenient or that the interests of justice would be served by a change of venue.

---

[1]  Defendant notes that Plaintiff filed a Notice of Appeal on November 10, 2009.  Until the Tenth Circuit has determined the justiciability and, potentially, the merits, of Plaintiff's appeal, this Court lacks jurisdiction over Plaintiff's case.  See W.N.J. v. Yocom, 257 F.3d 1171, 1172-73 (10th Cir. 2001) ("[A]s a general matter, a district court loses jurisdiction over a case once a notice of appeal has been filed.") (citing Int'l Paper Co. v. Whitson, 595 F.2d 559, 561 (10th Cir.1979)).

## BACKGROUND

Plaintiff, a detainee in the custody of Immigrations and Customs Enforcement in Aurora, Colorado, filed his original complaint in this case in October 2008.  See Doc. 1.  In his Amended Complaint, filed February 17, 2009, Plaintiff alleges numerous constitutional violations against the U.S. Capitol Police, Representative Waxman, and former U.S. Capitol Police Agent Busch. See generally Doc. 12.  All of Plaintiff's allegations date back to November 2003, when Plaintiff alleges he traveled from California to Washington, DC, to meet with Representative Waxman. See id. at 4.  Upon arriving at Representative Waxman's Office, Plaintiff alleges that he was "wrongfully and maliciously arrested" by Agent Busch.  See id.  The U.S. Capitol Police and Representative Waxman have been dismissed from this action.  See Doc. 67 (Oct. 21, 2009, Order adopting recommendation to dismiss).  Former Agent Busch has filed a motion to dismiss, which is pending.  See Doc. 61.  In the instant Motion, filed December 21, 2009, Plaintiff seeks to transfer this case to the District Court for the District of Columbia.  See Doc. 85.

## ARGUMENT

28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The moving party bears the burden of proving that: "(1) the action could have been brought in the alternate forum, (2) the existing forum is inconvenient, and (3) the interests of justice are better served in the alternate forum." Wolf v. Gerhard Interiors, Ltd., 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005) (citing Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991)).  Plaintiff does not meet his burden to

-2-

establish that this forum is inconvenient or that the interests of justice would be served by a change of venue.

First, Plaintiff seeks a transfer to the District Court for the District of Columbia. Defendant concedes that this action could have originally been brought in the District of Columbia.

Second, in order to determine whether the current forum is inconvenient, the court considers the following factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp., 928 F.2d at 1516.  Plaintiff does not address any of these factors in his Motion.  See generally Doc. 85.  Of these factors, Plaintiff's original choice of forum and the location of potential witnesses appear to have significant impact.

Plaintiff originally elected to proceed in this forum, well over one year ago.  A plaintiff's choice of forum "should rarely be disturbed."  St. Paul Fire & Marine Ins. Co. v. Alstom Power Inc., 2009 WL 1066067, *1 (D. Colo. April 21, 2009).  Two of the original three defendants have been dismissed following motions to dismiss, and a motion to dismiss is pending for the third and final defendant.  While Plaintiff now seeks to change forums, this case has now proceeded to near completion.  Plaintiff's original election of the District of Colorado as the forum for his case favors maintaining the case in this district.

-3-

Even if this case proceeds beyond a motion to dismiss, the only witnesses in the case will likely be Plaintiff and former Agent Busch.  Plaintiff is currently detained by Immigrations and Customs Enforcement in Aurora, Colorado.  Plaintiff's participation in pretrial and trial proceedings will be simpler and more economical in Colorado.  Former Agent Busch is currently located in Massachusetts.  See Doc. 57.  He will be therefore be required to travel to a trial in either Colorado or the District of Columbia.  Because none of the witnesses are in the District of Columbia, and one of the witnesses is already in Colorado, the location of witnesses favors maintaining the action in the District of Colorado.

Third, the interests of justice favor maintaining this action in this district.  Former Agent Busch has filed a motion to dismiss.  See Doc. 61.  The motion is based on many of the same grounds as Representative Waxman's motion to dismiss, which was granted.  In the instant Motion, Plaintiff argues that his case will be time-barred if it is not transferred.  See Doc. 85 at 2.  As set forth in former Agent Busch's motion to dismiss, Plaintiff's claims accrued in November 2003, and are therefore time-barred.  See Doc. 61 at 6-7.  Former Agent Busch also argued that Plaintiff did not state a plausible claim to relief and that he is entitled to qualified immunity.  See id. at 12-14.  Plaintiff's claims will suffer from the same deficiencies even if transferred to the District of Columbia.  It is not in the interests of justice to transfer this case to the District of Columbia when two defendants have already been dismissed and a motion to dismiss is pending for the final defendant in this district.

**CONCLUSION**

For the reasons set forth above, this Court should deny Plaintiff's Motion.

-4-

Case 1:08-cv-02188-LTB-CBS   Document 90   Filed 01/11/10   Page 5 of 6

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 384

Respectfully submitted this 11th day of January, 2010.

DAVID M. GAOUETTE
United States Attorney

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

-5-

384

385

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 11th day of January, 2010, I have mailed or served the foregoing document and copies of all unpublished cases to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO  80010-1525


s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

08-cv-02188-LTB-CBS

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 1 1 2010

GREGORY C. LANGHAM
CLERK

01-07-2010

Dear Clerk of the Court,

There is still no toner cartridge

for CANNONNE IMAGINERUNINE 3025

— law library printer & copier.

Having the three printed to attache

I would like to APPEAL

re US Mag Shaffer's DENIAL of APPOINTMENT

of counsel.

*[signature]*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB- CBS

SOLOMON BEN- TOV COHEN,    pro-se
      Plaintiff

v.

(REPRESENTATIVE HENRY A WAXMAN)
      United States Congress ,

(US CAPITOL POLICE)
      and

FRED BUSCH,
      Special Agent US Capitol Police


      Defendants

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JAN 1 1 2010**

GREGORY C. LANGHAM
CLERK

---

## MOTION TO RECUSE HON US DISTRICT JUDGE LEWIS T BABCOCK

---

MAY IT PLEASE YOUR HONOR


I am asking Your Honor to recuse yourself from this case for the following reasons:-


**1:08-CV-01844-LTB-CBS**

Your Honor failed to order my release on my paid unrevoked $3,000 Immigration Bond.

This bond was granted following my false arrest in the Offices of Henry Waxman, after I

developed recurrence of cancer.

**Immigration Court November 6, 2008**

I needed to be released before the hearing date in order for my case to be transferred to  slow

1

Case 1:08-cv-02188-LTB-CBS Document         Filed 1/6/2010 USDC Colorado Page 2 of 3
track downtown Immigration Court, 1961 Stout St, Denver, Colorado, so that my immigration

lawyer, Brett Davies could prepare my asylum case, present evidence and call witnesses.

**Things being the way they are, the damage is <u>irreversible</u>.**

**ASSISTANT US ATTORNEY TIM B JAFEK**

The US Attorney refuses to apologise to Your Honor over his mistake- see attached Notice of

Bond Cancellation, leaving me no choice but to report him to the Senate Judiciary Committee

and The President.

**CONFLICT WITH THIS CASE**

Now, I have a recurrence of symptoms bladder cancer- *haematuria* - and am waiting to be seen

at Denver Health.

Any award of damages made by Your Honor would doubtless be challenged by Busch's counsel.

Please can Your Honor recuse yourself from this case.

Respectfully submitted,

SOLOMON B COHEN MA (*Cantab*) pro-se

Alien # 077 309 675
GEO-ICE Detention Facility
11901 E30th Ave
Aurora, Colorado 80010-1525
Tel: (303) 361- 6612

January 6, 2010

2

Case 1:08-cv-02188-LTB-CBS Document      Filed 1/6/2010 USDC Colorado Page 3 of 3

# CERTIFICATE OF SERVICE

I hereby certify that on this ___01/06/2010___, service of the attached document was

effected by placing a true and correct copy of each of the same in the United States mail, first

class postage prepaid, addressed to the following:

Counsel for Representative Henry A Waxman:

      Katharine E McCarron, Assistant Counsel
      US House of Representatives
      219 Cannon House Office Building
      Washington
      DC 20515

Counsel for Fred Busch, Ex Special Agent USCP and United States Capitol Police:

      Marcy E Cook, Assistant US Attorney
      US Attorney's Office
      1225 17th St, Suite 700
      Denver
      CO 80202

Date: January 6, 2010          Signed:_____

                          Solomon B Cohen MA(*Cantab*) pro-se

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## NOTICE - IMMIGRATION BOND CANCELLED

O
B   Nadia Ezzelarab
L   4001 N. 9TH Street,   Suite 222
I   Arlington, VA   22203
G
O
R

| | |
|---|---|
| Alien File No. | A 77 309 675 |
| Cancellation Notice Date | 06/19/2009 |

IMMIGRATION BOND

Bond Type: [X] Cash   [ ] U.S. Bonds   [ ] Surety

Bond Post Date  03/30/2004

Bond Receipt No. WAS - 11,110

Amount $3,000.00

Alien's Name  COHEN, Solomon Ben-Tov

The conditions of the above-described immigration bond appearing to have been satisfied, the bond is canceled. Any deposit of cash or U.S. bonds will be refunded to you upon receipt of proper documentation. Please comply with these instructions to complete your application. Inquiries regarding this form or your deposit should be addressed to the Department of Homeland Security Debt Management Center (DMC) at the address below.

SAVE THIS FORM. You must submit a COPY of this Form I-391 along with the ORIGINAL Form I-305, Receipt of DHS Official - U.S. Cash Accepted as Security on Immigration Bond (Delivery Confirmation recommended) to: Department of Homeland Security, Debt Management Center, P.O. Box 5000, Williston, VT 05495-5000. If you have lost your original Form I-305 you will be given an opportunity to submit an Original notarized Form I-395 Affadavit in Lieu of Lost Receipt.

If you wish to designate another person to receive the deposit on your behalf, you must complete a Designation of Attorney in Fact, Form I-312, designating that person and include the completed original notarized form in your application to the DMC.

If your address has changed you must furnish notice of the change of address to Department of Homeland Security, Debt Management Center, P.O. Box 5000, Williston, VT 05495-5000.

| | |
|---|---|
| Authorized DHS Signature | John Longshore / Field Office Director |
| | Print Name/Title |

You may use a copy of this form to change your address. Complete the information below and mail the Completed form to the above address.

My address has changed. Please send all further correspondence to:

Street Address _____  City or Town, State _____  Zip Code _____

Signature of Obligor _____   Date _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

       Plaintiff,

v.

REPRESENTATIVE HENRY WAXMAN, United States Congress,
U.S. CAPITOL POLICE, and
FRED BUSCH, Agent, U.S. Capitol Police,

       Defendants.
_____

**ORDER**
_____


Upon Plaintiff's filing (Doc 91) which the Court is treating as an appeal of the Magistrate Judge's denial of Plaintiff's Motion to Appoint Counsel (Doc 88), the Court finds that the Magistrate Judge's Order is neither clearly erroneous nor contrary to law. Accordingly

IT IS ORDERED that Plaintiff's appeal is DENIED.

                      BY THE COURT:


                       s/Lewis T. Babcock
                      Lewis T. Babcock, Judge

DATED:   January 13, 2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

FRED BUSCH,

     Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO RECUSE (Doc. 92)**

---

Defendant Fred Busch, through undersigned counsel, and pursuant to the Court's January 12, 2010, Order (Doc. 93), hereby responds to Plaintiff's "Motion to Recuse Hon US District Judge Lewis T Babcock" (Doc. 92) [hereinafter "Motion"].  The Motion should be denied because Judge Babcock's impartiality cannot reasonably be questioned.

Pursuant to 28 U.S.C. § 455, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  A judge "shall also disqualify himself … [w]here he has a personal bias or prejudice concerning a party."  Id. at § 455(b)(1).  A judge has a strong duty to sit when there is no legitimate reason to recuse.  See Bryce v. Episcopal Church in the Diocese of Colo., 289 F.3d 648, 659 (10th Cir. 2002).  "The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice."  United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993).  "Unsubstantiated suggestions, speculations, and opinions, are insufficient to establish even the

appearance of any bias, prejudice, or misconduct that would warrant judicial recusal." Carpenter v. Boeing Co., 456 F.3d 1183, 1204 (10th Cir. 2006)

Here, the Motion does not provide more than "unsubstantiated suggestions, speculations, or opinions" regarding the judicial conduct of Judge Babcock. Plaintiff's argument that Judge Babcock should be recused is premised on Judge Babcock's alleged failure to release Plaintiff from custody based on a cancelled immigration bond. See generally Doc. 92 at 1, 4. Plaintiff provides no evidence that (1) Judge Babcock was responsible for releasing Plaintiff from custody and failed to do so, or (2) that even if Judge Babcock did fail to release Plaintiff from custody, that it was not a correct legal determination. In essence, Plaintiff's Motion to recuse Judge Babcock is based entirely on unsubstantiated suggestions and speculation. While Plaintiff may not like some decision made by Judge Babcock, a motion to recuse should not be employed as "a vehicle for obtaining a judge of [Plaintiff's] choice." Cooley, 1 F.3d at 993. In sum, Judge Babcock should not be recused because his impartiality cannot reasonably be questioned in the above-captioned case.

For the above reasons, this Court should deny Plaintiff's Motion seeking recusal of Judge Babcock.


//


//


-2-

Respectfully submitted this 15th day of January, 2010.

> DAVID M. GAOUETTE
> United States Attorney
>
> s/ Marcy E. Cook
> Marcy E. Cook
> Assistant United States Attorney
> 1225 Seventeenth Street, Suite 700
> Denver, Colorado  80202
> Telephone:  (303) 454-0171
> Fax: (303) 454-0404
> E-mail: marcy.cook@usdoj.gov
> Counsel for Defendant Busch

-3-

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of January, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 15th day of January, 2010, I have mailed or served the foregoing document and copies of all unpublished cases to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO  80010-1525

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

      Plaintiff,

v.

FRED BUSCH,

      Defendant.

---

**DEFENDANT'S REPLY SUPPORTING MOTION TO DISMISS (Doc. 61)**

---

Defendant Fred Busch, through undersigned counsel, hereby replies in support of its

motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and

12(b)(6) (Doc. 61) [hereinafter "Motion"]. This Court should dismiss Plaintiff's Amended

Complaint because it lacks personal jurisdiction over former Agent Busch. Moreover, Plaintiff's

claims are time-barred. Finally, Plaintiff fails to state a plausible claim against former Agent

Busch, who is entitled to qualified immunity.

**ARGUMENT**

Plaintiff's Amended Complaint brings a variety of <u>Bivens</u> claims against former Agent

Busch. This Court should dismiss all of these claims.[1]

---

    [1] Defendant notes that Plaintiff filed a Notice of Appeal on November 10, 2009. Until
the Tenth Circuit has determined the justiciability and, potentially, the merits, of Plaintiff's
appeal, this Court lacks jurisdiction over Plaintiff's case. See <u>W.N.J. v. Yocom</u>, 257 F.3d 1171,
1172-73 (10th Cir. 2001) ("[A]s a general matter, a district court loses jurisdiction over a case
once a notice of appeal has been filed.") (citing <u>Int'l Paper Co. v. Whitson</u>, 595 F.2d 559, 561
(10th Cir.1979)).

## I.       Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction.  See Bell Helicopter

Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1295 (10th Cir. 2004).  Plaintiff appears to

argue in his Response that this Court has personal jurisdiction over former Agent Busch because

Plaintiff is detained in Colorado.[2]  See Doc. 89 at 5.  While Plaintiff's detention here may be

sufficient to establish venue, see 28 U.S.C. § 1391(e), it cannot establish personal jurisdiction,

because, as former Agent Busch set forth in his Motion, he does not have sufficient minimum

contacts with Colorado.  See Doc. 61 at 5-6.  Plaintiff's Response does not address former Agent

Busch's minimum contacts with Colorado.[3]  This Court lacks personal jurisdiction over former

Agent Busch.

## II.      Statute of Limitations

In addition, all of Plaintiff's claims are time-barred.  Plaintiff argues in his Response that

he did not become aware of his "civil rights, existence of Bivens remedy doctrine of 'Fruit of the

Poisonous Tree'," until 2008.  (Doc. 89 at 6.)  But the "statute of limitations begins to run when

---

[2]  Plaintiff also makes the argument that he was wrongfully arrested by Postal Inspector Steve Hodges in Denver, Colorado, that the Colorado arrest may somehow be linked to his alleged wrongful arrest in November 2003 by former Agent Busch.  See Doc. 89 at 5-6.  These allegations did not appear in Plaintiff's Amended Complaint , and cannot be raised for the first time now.  See In re Qwest Communications Int'l, Inc., 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (holding that a plaintiff "may not effectively amend [his] Complaint by alleging new facts in [his] response to a motion to dismiss").  In any event, even if these allegations were pled in the Amended Complaint, the actions of another individual in Colorado cannot establish the minimum contacts necessary for personal jurisdiction for a Bivens claim against former Agent Busch.

[3]  Plaintiff does argue that if the Court finds that it does not have personal jurisdiction over former Agent Busch, it should transfer the case to the District of Columbia.  See Doc. 89 at 5.  Plaintiff has filed a separate motion for transfer of venue, see Doc. 85, and former Agent Busch has filed a response, see Doc. 90.

the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Indus. Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994). Here, it is clear that former Agent Busch's arrest of Plaintiff in November 2003 is the "injury which is the basis" of this action, and Plaintiff knew of the arrest when it occurred. Therefore, even applying a three year statute of limitations, Plaintiff's claims became time-barred in November 2006, two years before Plaintiff filed this lawsuit. Plaintiff's claims are time-barred and should be dismissed.

### III.   Failure to State a Plausible Claim

As set forth in former Agent Busch's Motion, Plaintiff's Amended Complaint fails to state a plausible First, Fourth, Fifth, Sixth, of Fourteenth Amendment Claim. See Doc. 61 at 9-12 & n.5. Plaintiff's Response provides no argument other than the conclusory assertion that former Agent Busch "violated Plaintiff's civil rights." (Doc. 89 at 6.) The allegations in the Amended Complaint do not state a plausible claim that former Agent Busch violated any of Plaintiff's constitutional rights. As such, Plaintiff's Amended Complaint should be dismissed.

### IV.   Qualified Immunity

Former Agent Busch is entitled to qualified immunity. As former Agent Busch raised the defense in his Motion, Plaintiff bears the burden to establish that former Agent Busch violated a clearly established constitutional right. See Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001). Plaintiff's Response does not address former Agent Busch's assertion of qualified immunity at all. See generally Doc. 89. As set forth in former Agent Busch's Motion and above, Plaintiff does not set forth a plausible constitutional violation. Therefore, former

Agent Busch is entitled to qualified immunity and Plaintiff's Amended Complaint should be dismissed.

## V.      Plaintiff's Additional Arguments[4]

Plaintiff also notes in his Response that he believes Austria is manufacturing "nerve agents" "for use by Arabs in a war against Israel." (Doc. 89 at 2.)  Plaintiff further notes that former Agent Busch's "name is Austrian." Id.  These allegations were not in the Amended Complaint.  Plaintiff cannot "effectively amend [his] Complaint by alleging new facts in [his] response to a motion to dismiss." In re Qwest Communications Int'l, Inc., 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004).  The Court should not consider these allegations.  Moreover, Plaintiff's mere speculation that former Agent Busch's "name is Austrian" and allegations regarding "nerve agents" are insufficient to plead a constitutional violation or a conspiracy. See, e.g., Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998) (holding that, to plead a conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants").  To the extent Plaintiff's Response can be read to raise any additional claims, this Court should not consider those claims.

### CONCLUSION

For the above reasons, and those set forth in Defendant's Motion, former Agent Busch respectfully requests that this Court grant this motion to dismiss and dismiss all claims against former Agent Busch.

---

[4] Plaintiff also attaches several exhibits to his Response; the relevance of these documents to the instant Motion is not immediately apparent.

Respectfully submitted this 19th day of January, 2010.

DAVID M. GAOUETTE
United States Attorney

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of January, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 19th day of January, 2010, I have mailed or served the foregoing document and copies of all unpublished cases to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO  80010-1525

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB- CBS

SOLOMON BEN- TOV COHEN,    pro-se
　　　　Plaintiff

v

FRED BUSCH,
　　　Special Agent US Capitol Police

　　　　Defendant

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JAN 2 0 2010**

**GREGORY C. LANGHAM**
CLERK

---

## MOTION TO AMEND COMPLAINT

---

.By way of reply to several issues raised by Defendant, Fred Busch- see Defendant's

Motion to Dismiss- Plaintiff, Solomon B Cohen pro- se moves the court to allow him to amend

section G of second amended complaint (SAC) to ask for jury trial and specific damages.

**Rule 15 of the Federal Rules of Civil Procedure**

1. Rule 15 of the Federal Rules of Civil Procedure allows Plaintiff to do so once after
   Defendant has been served before Defendant Fred Busch has filed an answer.

2. Justice requires that the amendment be permitted - see*Tiller v Atlantic Coast Line*, 323
   U.S. 574 (1945).

1

Case 1:08-cv-02188-LTB-CBS Document 96       Filed 1/17/2010 USDC Colorado Page 2 of 7

**Amendment- attached as Exhibit 1**

3. **From:** WHEREFORE, plaintiff prays that the Court grant him all compensatory damages to which he is entitled, award him costs and suit herein as well as a reasonable attorneys' fee, and the plaintiff further prays for such other and further relief against the defendants as may be just and proper.

**To:**

## G. REQUEST FOR RELIEF

WHEREFORE  Plaintiff respectfully demands:

All costs associated with medical treatment  for recurrence of cancer, psychological trauma (Post Traumatic Stress Disorder).

Trial by jury as to all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b);

Compensatory damages against the defendant in the sum of $45 Million, as well as exemplary and punitive damages;

All costs associated with this action including reasonable attorneys' fees; and

Such relief as the court deems appropriate.

2

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 404

Case 1:08-cv-02188-LTB-CBS Document 96      Filed 1/17/2010 USDC Colorado Page 3 of 7

**Ernst & Young**

4.  Ernst & Young Hedge Fund Advisory Group will be asked to provide precise valuation of hedge fund as a going concern, loss of earnings from November 25 2003 to 2022 (Plaintiff retirement).

**Merrill Lynch**

5.  **Merrill Lynch was the Custodian of The Gazelle Global Fund Limited, a Cayman (CIMA) licensed mutual fund.**

6.  On November 25 2003, The Fund's and its assets were at that time within the jurisdiction of the United States' courts. Plaintiff Solomon B Cohen was at his most vulnerable that day.

Busch *'killed'* the Plaintiff on that day via false arrest. Period.

## No Justice in Grand Court, Cayman

7.  In the Matter of The Gazelle Global Fund Limited

    Cause 573 of 2005

**Handed to USICE by Busch**

8.  Plaintiff was subjected to worst treatment imaginable over a period of four months, including:-

    - Held in custody without a hearing, hundreds of miles from immigration court, and lawyers offices.;

3

404

Case 1:08-cv-02188-LTB-CBS   Document 97   Filed 01/20/10   Page 4 of 7

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 405
Case 1:08-cv-02188-LTB-CBS Document 96       Filed 1/17/2010 USDC Colorado Page 4 of 7

- **Threatened use as a sex- slave by El Salvadorian gang leader**

  - Kicked and threatened by Palestinians, Arabs and *Mara- Salvatrucha*

    (MS-13) gang members.- - witnesses will be called to testify before jury.

- **No access to bank account.**

- **Collect calls only**

- **Hardly any food**

**Ride to airport for flight to Washington, DC**

9. Grand Junction, Colorado, Police drove Plaintiff to the airport, after Plaintiff called Rep

   Henry Waxman's office in DC from Amtrak station.

Plaintiff never recovered from any of this ordeal.

WHEREFORE Plaintiff Solomon B Cohen respectfully asks that the court grant this motion. be

granted.

Respectfully submitted,

Signed: _____

SOLOMON B COHEN MA *(Cantab)* pro-se

Dated: January 16, 2010

4

# EXHIBIT 1

Case 1:08-cv-02188-LTB-CBS   Document 97   Filed 01/20/10   Page 6 of 7
Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 407
Case 1:08-cv-02188-LTB-CBS Document 96      Filed 1/17/2010 USDC Colorado Page 6 of 7

## G. REQUEST FOR RELIEF

WHEREFORE  Plaintiff respectfully demands:

i.      Judgment against the defendant in the sum of $10 Million;

ii.     Trial by jury as to all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b);

iii.    All costs associated with this action including reasonable attorneys' fees; and

iv.     Such relief as the court deems appropriate.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the applicant in the action, that I have read this application, and that the information in this application is true and correct.
*See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on _____

_____
(Prisoner's Original Signature)

6

Case 1:08-cv-02188-LTB-CBS   Document 97   Filed 01/20/10   Page 7 of 7

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 408
Case 1:08-cv-02188-LTB-CBS Document 96      Filed 1/17/2010 USDC Colorado Page 7 of 7

## CERTIFICATE OF SERVICE

I hereby certify that on this      *17th*      day of January 2010, service of the attached document

was effected by placing a true and correct copy of each of the same in the United States mail,

first class postage prepaid, addressed to the following:

Counsel for: Fred Busch, United States Postal Inspection Service, Boston Division, 495 Summer

St, Suite 600, Boston, MA 02210-2114:-

Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
CO 80202

Date:   01/17/2010                    Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

       Plaintiff,

v.

FRED BUSCH, Agent, U.S. Capitol Police,

       Defendant.

_____

**ORDER**

_____


      This case is before me on the motion of the Plaintiff to recuse the undersigned judge (Doc 92).  Defendant has filed his objection to the motion (Doc 95).

      Under 28 U.S.C. § 455, a judge is required to disqualify himself in any proceeding in which his impartiality might reasonably be questioned.  Pursuant to 28 U.S.C. § 455(a), a judge shall also disqualify himself where he has a personal bias or prejudice concerning a party.  But a judge has a duty to preside when there is no legitimate reason to recuse, Bryce v. Episcopal Church of the Diocese of Colo., 289 F.3d 648, 659 (10th Cir. 2002), and 28 U.S.C. § 455 affords litigants no veto power over sitting judges or for obtaining a judge of their choice. United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993). "Unsubstantiated suggestions, speculations, and opinions are insufficient to establish even the appearance of any bias, prejudice, or misconduct that would warrant judicial recusal." Carpenter v. Boeing Co., 456 F.3d 1183, 1204 (10th Cir. 2006).

410

I conclude that Plaintiff's Motion to Recuse the Undersigned Judge rests solely on unsubstantiated suggestions and speculation because Plaintiff simply disagrees with rulings entered in this case.  The undersigned Judge's impartiality cannot reasonably be questioned in this case in light of the file and record.  Accordingly

IT IS ORDERED that Plaintiff's Motion to Recuse (Doc 92) is DENIED.

BY THE COURT:


s/Lewis T. Babcock
Lewis T. Babcock, Judge

DATED:   January 21, 2010

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

FRED BUSCH,

     Defendant.

---

**DEFENDANT'S RESPONSE OPPOSING PLAINTIFF'S
MOTION TO AMEND COMPLAINT (Doc. 97)**

---

Defendant Fred Busch, through undersigned counsel, hereby responds in opposition to Plaintiff's "Motion to Amend Complaint," (Doc. 97) [hereinafter "Motion"]. Plaintiff's Motion should be denied because Plaintiff's Motion does not detail the proposed amendments or the reasons for them, and Plaintiff did not provide a copy of a complete proposed amended complaint. Plaintiff's Motion should also be denied because it was made with undue delay.

Because Plaintiff has already filed an amended complaint, Plaintiff may only amend his complaint with leave of the Court or with the written consent of the Defendants. See Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely given "when justice so requires." Id. The grant or denial of leave to amend is within the discretion of the district court. See Duncan v. Manager, Dept. of Safety, City and County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005). A motion to amend a complaint may be denied for failure to submit the proposed amendment. See Lambertson v. Utah Dep't of Corrs., 79 F.3d 1024, 1029 (10th Cir. 1996) (upholding district court's denial of plaintiff's motion to amend for failure to provide adequate explanation for delay

in seeking amendment and for failure to provide a copy of the proposed amended pleading).

Leave to amend should also be denied where amendment is sought with "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

Plaintiff's Motion does not contain a copy of a complete proposed amended complaint.

See generally Doc. 97.  From Plaintiff's Motion, it appears that Plaintiff seeks to amend the

"request for relief" section of his Complaint.  See, e.g., Doc. 97 at 1.  Plaintiff does attach a

single page containing the new "request for relief" section, but he does not incorporate that page

into a proposed amended complaint.  See id. at 6.  Because Plaintiff has not submitted the

proposed amendment in the form of a complete proposed amended complaint, this Court should

deny Plaintiff's Motion.  Moreover, to the extent Plaintiff seeks to amend the relief requested,

should this case reach a damages phase, the actual injury sustained by Plaintiff would be

determined; no further amendment to Plaintiff's complaint is necessary.

Finally, Plaintiff's Motion is made after undue delay.  Plaintiff filed the instant Motion on

January 17, 2010, see Doc. 97, almost one year after filing his Amended Complaint (the

operative pleading in this case).  See Doc. 12.  Only one defendant remains in the lawsuit, former

Agent Busch.  Former Agent Busch filed a motion to dismiss the claims against him in October

2009, and the motion is now fully briefed.  See Doc. 61 (motion); Doc. 89 (response); Doc. 96

(reply).  Plaintiff provides no explanation for the delay in filing the motion to amend.  By not

filing the instant Motion until after briefing on the motion to dismiss for the last remaining

defendant was completed, Plaintiff unduly delayed in filing this motion.

-2-

For the above reasons, this Court should deny Plaintiff's Motion.

Respectfully submitted this 28th day of January, 2010.

> DAVID M. GAOUETTE
> United States Attorney
>
> s/ Marcy E. Cook
> Marcy E. Cook
> Assistant United States Attorney
> 1225 Seventeenth Street, Suite 700
> Denver, Colorado  80202
> Telephone:  (303) 454-0171
> Fax: (303) 454-0404
> E-mail: marcy.cook@usdoj.gov
> Counsel for Defendant Busch

414

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 28th day of January, 2010, I have mailed or served the foregoing document and copies of all unpublished cases to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO  80010-1525

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB-CBS

SOLMON BEN- TOV COHEN,

    Plaintiff

    v

FRED BUSCH, Former Special Agent US Capitol Police

    Defendant

---

## MEMORANDUM OF LAW AND POINTS IN OPPOSITION TO
## DEFENDANT FRED BUSCH'S MOTION TO DISMISS

---

Plaintiff, Solomon B Cohen pro- se hereby files this Memorandum in Opposition to Defendant

Fred Busch's Motion to Dismiss.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 2 9 2010

GREGORY C. LANGHAM
CLERK

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 416
Case 1:08-cv-2188-LTB-CBS  Document 97  Filed 01/19/2010   USCD Colorado

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**...................................................... iii

**OBJECTIVE OF THIS LITIGATION**.............................. 5

**SUMMARY OF  ARGUMENT**................................... 6

**ARGUMENT**.............................................................. 7

   **I.**   **PERSONAL JURISDICTION**

   **II.**   **NO VALID CLAIM OF QUALIFIED IMMUNITY**

      **A. Busch fails to even assert probable cause for false arrest**

**CONCLUSION**............................................................. 12

**CERTIFICATE OF SERVICE**.................................... 13

ii

Case 1:08-cv-2188-LTB-CBS  Document  97  Filed 01/19/2010   USCD Colorado

# TABLE OF AUTHORITIES

<u>**Federal and State Cases**</u>

*Bailey v US Marshal Service,*
    *584 F. Supp. 2d 128  (DDC. 2008)* ……………………………………… 4,8,9

*Bivens v. Six Unknown Named Agents,*
    403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)……………………………

*BFI v Kelco,*
    492 U.S. 257 (1989) ……………………………………………….. 8,9,10

*Colyer v Skeffington,*
    265 F. 17  (D Mass. 1920) …………………………………………………..8

*Dellums v Powell,*
566 F.2d  194 (DC  App Ct, 1977) ………………………………………..

*Enwonwu v Chertoff,*
    376 F.Supp. 2d 42 (D Mass. 2005) ……………………………………………

*Gonzales v City of Peoria,*
    722 F.2d 468   (9th Cir. 1983) …………………………………………8

*In Re: Morris,*
    12 B.R. 321 (N.D.IL. 1981) …………………………………………… 7

*Martinez- Aguero v Gonzales,*
    2005 U.S. LEXIS 2412 (W.D.Tex. Feb 2 2005) ………………………………8,9,10

*Mazloum v Dist of Columbia Met Police,*
    522 F. Supp 2d (DDC. 2007) ………………………………………………9

*O'Keefe v US,*
    5 Ct Cl 674 (US Ct Cl. 1869) ………………………………………………..

*United States v Khan,*
    324 F. Supp. 2d 1177 (D Colo. 2004) ………………………………………11

*United States of America,  v  Olivares-Ranger,*
 458 F.3d 1104 (10th Cir. 2006) ……………………………………………

*United States v Wong Kim Ark,*
    169 U.S. 649 (1898) ……………………………………………………..

iii

Case 1:08-cv-02188-LTB-CBS   Document 101   Filed 01/29/10   Page 4 of 17

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 418
Case 1:08-cv-2188-LTB-CBS  Document  97  Filed 01/19/2010   USCD Colorado

## Constitutional Provisions

U.S. Const Amend I, IV, V, XIV..............................................................8

## Statutes and Rules

2 U.S.C. § 1961 *et seq* .......................................................................

28 U.S.C. § 1391...........................................................................*3*

28 U.S.C. § 1406...........................................................................7

40 U.S.C. § 8103 ........................................................................

## Publications

Robert Koppel *Bulls Bears & Millionaires* (Dearborn Financial Pub, 1996)

Jaye Scholl, *Gazelle Global Fund Tops Chart*, (Dow Jones Newswire, Jan 27, 1996)

Jaye Scholl, *Opportunity Seized: In '95 focus on US stocks paid off for some hedge funds*, (Barron's, Jan 29 1996)

Linda Keslar, *Solomon's Choice*, Financial Trader (magazine) (April issue 1996)

Case 1:08-cv-02188-LTB-CBS   Document 101   Filed 01/29/10   Page 5 of 17

Appellate Case: 10-1283    Document: 21    Date Filed: 08/16/2010    Page: 419
Case 1:08-cv-2188-LTB-CBS  Document 97  Filed 01/19/2010   USCD Colorado   Page 1/13

## OBJECTIVE OF THIS LITIGATION

The objective of this litigation is to restore Plaintiff, Solomon Ben- Tov Cohen, to where he was, as far as possible, on the morning of November 25 2003.

### THE QUEEN & REPRESENTATIVE HENRY A WAXMAN Et al

Both had Cohen arrested for complaining that, as a result of a letter they received from New York City Loft Board, Cohen's landlords with links to Organized Crime had forced him to abandon his home and stolen his passport.


On November 22 2000, Cohen was falsely ordered detained in London after delivering a Petition to Buckingham Palace addressed to The Queen (which included photo with Princess Diana).

On November 25 2003, Defendant Fred Busch falsely arrested Plaintiff inside the offices of Rep Henry Waxman for the same reason.

From The English Crown, Cohen is forced to seek asylum and from Henry Waxman, Busch & US Capitol Police redress via this Action[1].


H1-B visa is for aliens with advanced degrees, specialty occupations. Transition to Lawful Permanent Resident was automatic and guaranteed prior to enactment of the LIFE ACT 12/21/2000[2]. Cohen needs a Private Bill to become a US Citizen (leader in his profession.)

---

[1] Note: The UK Bill of Rights AD1689 which allows Commoner to petition the Monarch is also First Amendment as well as Eighth Amendment to the US Constitution. However, since 1994, Cohen pays his taxes in the US.

[2] On 12/21/2000 Cohen was a refugee in Switzerland having fled from false imprisonment in the UK.

1

## SUMMARY OF ARGUMENT

Plaintiff is allowed to sue in the US District Court for the district in which he resides because Defendant Fred Busch is a Federal Government employee and the controversy does not involve real property.

Although Busch acted in his official capacity when he arrested Plaintiff, he is not entitled to qualified immunity because Busch did not have <u>probable cause</u> to make an arrest.

He violated several of Cohen's rights, including not allowing Cohen to leave the Congressman's office.

Police can arrest for <u>criminal violations</u> of immigration laws only, not 'overstays' which are civil.

Busch's handing Cohen over to USICE via unlawful seizure and false imprisonment in his office, is a violation of Cohen's civil rights as decided by this court in <u>United States v Khan</u>.

2

Case 1:08-cv-02188-LTB-CBS   Document 101   Filed 01/29/10   Page 7 of 17

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 421
Case 1:08-cv-2188-LTB-CBS  Document 97  Filed 01/19/2010   USCD Colorado   Page 3/13

# ARGUMENT

## I.   PERSONAL JURISDICTION

28 U.S.C. § 1391.   Venue

> e) <u>A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which</u> (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) <u>the plaintiff resides if no real property is involved in the action.</u>

Avoidance of Personal Service

> "[T]he form which Anglo-American bankruptcy statutes have followed from 1542 to 1978 is the result of early adherence to the fundamental principal of English jurisprudence that an *in personam* judgment could not be obtained against an individual unless he had been served personally.
>
> In medieval England a man's house was his castle, and if a person remained within his own house and did not venture outside, he could not be served with process." *In Re: Morris,* 12 B.R. 321 (N.D.Il. 1981)

Busch has been served.

28 U.S.C. § 1406.   Cure or waiver of defects

> (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

This action will be time- barred under DC one year statute of limitations unless transferred.

3

Case 1:08-cv-02188-LTB-CBS   Document 101   Filed 01/29/10   Page 8 of 17

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 422
Case 1:08-cv-2188-LTB-CBS   Document 97   Filed 01/19/2010   USCD Colorado   Page 4/13

## II.   QUALIFIED IMMUNITY

### A.   Defendant Fred Busch has no valid claim of Qualified Immunity.

Busch, acting in his official capacity, violated constitutional right and acted unreasonably when he refused to allow Cohen to leave the office of Congressman Henry A Waxman.

The Supreme Court reiterated in *Saucier v. Katz*, 533 U.S. 194, (2001) that courts should use a two-step process in ruling on qualified immunity. First, the Court must consider whether the facts alleged, taken in the light most favorable to Plaintiffs, show that Defendants' conduct violated a constitutional right.

### 1.   Fourth Amendment originated from Customs Enforcement abuses in Boston

"[I]n a long opinion Mr. Justice Bradley pointed out that the Fourth Amendment to the Constitution, prohibiting unreasonable searches and seizures, had its roots in the struggle for liberty in the Colonies, one famous incident of which was the attack in Boston in 1761 by James Otis on the *writs of assistance* issued to revenue officers." *Colyer v Skeffington*, 265 F. 17 (D Mass. 1920) quoting *Boyd v United States*, 116 U.S. 616

"[T]he Supreme Court, as in other areas, refers to English common law known to the Framers in defining the parameters of Fourth Amendment rights." *Martinez- Aguero v Gonzales*, 2005 U.S. Dist LEXIS 2412(W.D.Tex. Feb 2 2005).

### B.   Assessing Claim of Qualified Immunity

**1.** "[I]n assessing a qualified immunity defense, the first inquiry a court must make is whether a constitutional right would have been violated on the facts alleged. *Bailey v US Marshal Service*, 584 F. Supp. 2d 128 (DDC. 2008) quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Barham v. Ramsey*, 434 F.3d at 572.

Case 1:08-cv-02188-LTB-CBS   Document 101   Filed 01/29/10   Page 9 of 17

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 423
Case 1:08-cv-2188-LTB-CBS   Document 97   Filed 01/19/2010   USCD Colorado   Page 5/13

### 2. Busch violated Cohen's Fourth Amendment Right.

"[T]he Fourth Amendment prohibits arrests made without probable cause." *Bailey v US Marshal Service*, 584 F. Supp. 2d 128  (DDC. 2008)

Busch does not even claim that he had probable cause to make the arrest.

### 3. Busch's arrest of Cohen was entirely unreasonable

"[i]f a constitutional right has been violated, then the officer must demonstrate that "a reasonable officer could have believed" that the actions were lawful "in light of clearly established law and the information the . . . officer[ ] possessed." *Bailey v US Marshal Service*, 584  F.Supp.  2d  128   (DDC.  2008)  quoting *Anderson v. Creighton*, 483 U.S. at 641;

"[T]he inquiry in assessing wrongful arrest is one of objective reasonableness. Objective reasonableness requires assessment of the actions at issue measured against what a reasonable officer would do under the circumstances. *Martinez-Aguero v Gonzales*, 2005 U.S. LEXIS 2412 (W.D.Tex. Feb 2 2005) quoting *Graham v Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

"[t]he Supreme Court held, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Mazloum v Dist of Columbia Met Police*, 522 F. Supp 2d (DDC. 2007) quoting *Saucier v Katz*, 533 U.S. 194, (2001)

### 4. Established law violated

DC law states that US Capitol Police may not arrest someone in the office of a Congressman unless they refuse to leave. *Hemmati*

Busch prevented Cohen from leaving and from proceedings to Rep Barney Frank's office.

## C. Tort Claim

"Common-law and constitutional claims of false arrest are generally analyzed as though they comprise a single cause of action. . . . Indeed, the elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim." *Bailey v US Marshal Service, 584 F. Supp. 2d 128  (DDC. 2008)* quoting *Dingle  District of Columbia, 571 F. Supp. 2d 87, 95 (D.D.C. 2008).*

### Bivens damages originates with Magna Charta

"[A]mercements were an "all-purpose" royal penalty; they were used not only against plaintiffs who failed to follow the complex rules of pleading11 and against defendants who today would be liable in tort, but also against an entire township {**106 L. Ed. 2d 235**} which failed to live up to its obligations, or **against a sheriff who neglected his duties,** *BFI v Kelco,* 492 U.S. 257 (1989).

"[t]hese individuals were required to pay an "amercement" to the Crown, its representative, or {**492 U.S. 288**} a feudal lord. *Tumey* v. *Ohio*, 273 U.S. 510, 525 (1927); Massey 1252-1253, and n. 111. But cf. R. Stringham, Magna Carta: Fountainhead of Freedom 40 (1966) (<u>a share of the amercement went to the victim or the victim's family)</u>.

Because the amercement originated at a time when there was little distinction between criminal law and tort law, it was "neither strictly a civil nor a criminal sanction." As one commentator has noted, the "amercement was assessed most commonly as a civil sanction for..... wrongfully defending a civil lawsuit." *BFI v Kelco,* 492 U.S. 257 (1989).  Quoting Massey 1251

After Magna Carta, the amount of an amercement was initially set by the court.

6

**D. Busch violated Fourth Amendment by seizing Cohen and imprisoning him in his office for USICE to come and arrest him.**

Authority of Police to arrest for Immigration Violation. Only in the case of criminal immigration violations not "overstays' see Gonzales v City of Peoria, 722 F.2d 468 (9th Cir. 1983).

In *United States of America v Khan,* 324 F. Supp. 2d 1177 (D Colo, 2004), this Court ruled:

> "[I] conclude Khan's arrest was in violation of 8 U.S.C. § 1357(a)(2), and Khan was seized in violation of his Fourth Amendment right to be secure in his person against unreasonable seizures."

And

> "[The relevant inquiry in determining whether a defendant has standing to challenge evidence as fruit of a poisonous tree is whether his or her Fourth Amendment rights were violated, not the defendant's reasonable expectation of privacy in the evidence alleged to be poisonous fruit.]"*United States of America, v Olivares-Ranger,* 458 F.3d 1104 (10th Cir. 2006)

**III.   Time Bar**

Plaintiff argues that this action is not time- barred.

Plaintiff first became aware of his civil rights, existence of *Bivens* remedy doctrine of 'Fruit of the Poisonous Tree' when, after being declared Incompetent to Proceed, he attended classes by Dr Kelly at Colorado Mental Health Institute at Pueblo from November 19th 2007- March 31st 2008.

7

425

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 426

Case 1:08-cv-2188-LTB-CBS   Document 97   Filed 01/19/2010   USCD Colorado   Page 8/13

## CONCLUSION

WHEREFORE Plaintiff respectfully requests that this Court deny Defendant Fred Busch's

Motion to Dismiss.

I affirm under penalty of perjury that to the best of my knowledge the above statements are true

and accurate.

Respectfully submitted,

Date: _01/27/2010_                          Signed:_____

                                                          Solomon B Cohen MA(*Cantab*) pro-se

8

426

Case 1:08-cv-2188-LTB-CBS   Document 97   Filed 01/19/2010   USCD Colorado   Page 9/13

# CERTIFICATE OF SERVICE

I hereby certify that on this ~~2/th day of January~~, service of the attached document was effected

by placing a true and correct copy of each of the same in the United States mail, first class

postage prepaid, addressed to the following:


     Counsel for Fred Busch, United States Postal Inspection Service,  Boston Division
     495 Summer St, Suite 600,  Boston,  MA 02210-2114


Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202


Date:  _January 27, 2010_          Signed: _____

                            Solomon B Cohen MA(*Cantab*) pro-se

Case 1:08-cv-02188-LTB-CBS   Document 101   Filed 01/29/10   Page 14 of 17

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 428
Case 1:08-cv-2188-LTB-CBS   Document 97   Filed 01/19/2010   USCD Colorado   Page 10/13

428

# APPLICABLE LAW

(a) Application of laws.   Laws and regulations of the District of Columbia for the protection of

public or private property and the preservation of peace and order are extended to all public

buildings and public grounds belonging to the Federal Government in the District of Columbia.

2 U.S.C. § 1966

POWERS AND DUTIES § 1961.   Policing of Capitol Grounds and Buildings [Caution: See

prospective amendment note below.]Text(a) The Capitol Police shall police the United States

Capitol Buildings and Grounds under the direction of the Capitol Police Board, consisting of

the Sergeant at Arms of the United States Senate, the Sergeant at Arms of the House of

Representatives, and the Architect of the Capitol, and shall have the power to enforce the

provisions of this Act (and regulations promulgated under section 14 of this Act (2 U.S.C.

1969)), and chapter 51 of title 40, United States Code [40 USCS §§ 5101 et seq.], and to

make arrests within the United States Capitol Buildings and Grounds for any violations of

any law of the United States, of the District of Columbia, or of any State, or any regulation

promulgated pursuant thereto: Provided, That for the fiscal year for which appropriations are

made by this Act the Capitol Police shall have the additional authority to make arrests within

the District of Columbia for crimes of violence, as defined in section 16 of title 18,

committed within the Capitol Buildings and Grounds and shall have the additional authority

to make arrests, without a warrant, for crimes of violence, as defined in section 16 of title 18,

committed in the presence of any member of the Capitol Police performing official duties:

Provided further, That the Metropolitan Police force of the District of Columbia are

authorized to make arrests within the United States Capitol Buildings and Grounds for any

violation of any such laws or regulations, but such authority shall not be construed as

authorizing the Metropolitan Police force, except with the consent or upon the request of the

Capitol Police Board, to enter such buildings to make arrests in response to complaints or to

serve warrants or to patrol the United States Capitol Buildings and Grounds. For the purpose

of this section, the word "grounds" shall include the House Office Buildings parking areas

and that part or parts of property which have been or hereafter are acquired in the District of

11

Columbia by the Architect of the Capitol, or by an officer of the Senate or the House, by lease, purchase, intergovernment transfer, or otherwise, for the use of the Senate, the House, or the Architect of the Capitol.

(b) For purposes of this section, "the United States Capitol Buildings and Grounds" shall include any building or facility acquired by the Sergeant at Arms of the Senate for the use of the Senate for which the Sergeant at Arms of the Senate has entered into an agreement with the United States Capitol Police for the policing of the building or facility.

(c) For purposes of this section, "the United States Capitol Buildings and Grounds" shall include any building or facility acquired by the Chief Administrative Officer of the House of Representatives for the use of the House of Representatives for which the Chief Administrative Officer has entered into an agreement with the United States Capitol Police for the policing of the building or facility.

---

2 U.S.C. § 1967   Law enforcement authority

(a) Scope.   Subject to such regulations as may be prescribed by the Capitol Police Board and approved by the Committee on House Oversight of the House of Representatives and the Committee on Rules and Administration of the Senate, a member of the Capitol Police shall have authority to make arrests and otherwise enforce the laws of the United States, including the laws of the District of Columbia--

(1) within the District of Columbia, with respect to any crime of violence committed within the United States Capitol Grounds;

(2) within the District of Columbia, with respect to any crime of violence committed in the presence of the member, if the member is in the performance of official duties when the crime is committed;

(3) within the District of Columbia, to prevent imminent loss of life or injury to person or property, if the officer is in the performance of official duties when the authority is exercised;

(4) within the area described under subsection (b)(1); and

(5) within the area described under subsection (b)(2)--

12

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 431

Case 1:08-cv-2188-LTB-CBS  Document 97  Filed 01/19/2010   USCD Colorado   Page 13/13

(A) with respect to any crime of violence committed in the presence of the member, if the member is in the performance of official duties, as defined under such regulations, when the crime is committed; and

(B) to prevent imminent loss of life or injury to person or property, if the officer is in the performance of official duties, as defined under such regulations, when the authority is exercised.

(b) Area.

(1) The area referred to in subsection (a)(4) is that area bounded by the north curb of H Street from 3rd Street, N.W. to 7th Street, N.E., the east curb of 7th Street from H Street, N.E., to M Street, S.E., the south curb of M Street from 7th Street, S.E. to 1st Street, S.E., the east curb of 1st Street from M Street, S.E. to Potomac Avenue S.E., the southeast curb of Potomac Avenue from 1st Street, S.E. to South Capitol Street, S.W., the west curb of South Capitol Street from Potomac Avenue, S.W. to P Street, S.W., the north curb of P Street from South Capitol Street, S.W. to 3rd Street, S.W., and the west curb of 3rd Street from P Street, S.W. to H Street, N.W.

(2) The area referred to under subsection (a)(5) is that area bounded by the north curb of Constitution Avenue from 14th Street, N.W., to 3rd Street, N.W., the east curb of 3rd Street from Constitution Avenue, N.W., to Independence Avenue, S.W., the south curb of Independence Avenue from 3rd Street, S.W., to 14th Street, S.W., and the west curb of 14th Street from Independence Avenue, S.W., to Constitution Avenue, N.W.

40 U.S.C. § 8103

Application of District of Columbia laws to public buildings and grounds

(a) Application of laws.   Laws and regulations of the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the Federal Government in the District of Columbia.

Case 1:08-cv-02188-LTB-CBS   Document 103   Filed 02/08/10   Page 1 of 2

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 432
Case 1:08-cv-02188-LTB-CBS Document      Filed 2/2/2010 USDC Colorado Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB- CBS

SOLOMON BEN- TOV COHEN,    pro-se
           Plaintiff

   v

FRED BUSCH,
      Special Agent US Capitol Police

      Defendant

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

FEB 0 8 2010

GREGORY C. LANGHAM
CLERK

---

## MOTION TO AMEND MEMORANDUM OF LAW AND POINTS

---

Plaintiff, Solomon B Cohen pro- se moves the court to allow him to amend previously filed Memorandum of Law and Points to correct typographical and numerical errors.

WHEREFORE Plaintiff Solomon B Cohen respectfully asks that the court grant this motion..

Respectfully submitted,

Signed:_____

SOLOMON B COHEN MA (*Cantab*) pro-se

Dated: February 2, 2010

1

## CERTIFICATE OF SERVICE

I hereby certify that on this _02/02/10_ day of January 2010, service of the attached document

was effected by placing a true and correct copy of each of the same in the United States mail,

first class postage prepaid, addressed to the following:

Counsel for: Fred Busch, United States Postal Inspection Service, Boston Division, 495 Summer

St, Suite 600, Boston, MA 02210-2114:-

Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
CO 80202

Date: _02/02/2010_                     Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se

2

433

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB-CBS

SOLOMON BEN- TOV COHEN,

    Plaintiff

    v

FRED BUSCH, Former Special Agent US Capitol Police

    Defendant

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

FEB 0 8 2010

GREGORY C. LANGHAM
CLERK

---

## MEMORANDUM OF LAW AND POINTS IN OPPOSITION TO DEFENDANT FRED BUSCH'S MOTION TO DISMISS

---

Plaintiff, Solomon B Cohen pro- se hereby files this Memorandum in Opposition to Defendant

Fred Busch's Motion to Dismiss.

Respectfully submitted,

Date: 07/02/2010          Signed: _____

                            Solomon B Cohen MA(*Cantab*) pro-se
                            Alien # 77 309 675
                            GEO-ICE Detention Facility
                            11901 E30th Ave
                            Aurora
                            CO 80010-1525

                            Tel: (303) 361-6612

Case 1:08-cv-2188-LTB-CBS  Document        Filed 2/2/2010      USCD Colorado

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………… ii

OBJECTIVE OF THIS LITIGATION………………………………… 1

SUMMARY OF ARGUMENT………………………………………… 2

ARGUMENT…………………………………………....…………… 3

   I.   PERSONAL JURISDICTION

   II.   NO VALID CLAIM OF QUALIFIED IMMUNITY

      A.  Busch fails to even assert probable cause for false arrest

CONCLUSION……………………………………………………….. 8

CERTIFICATE OF SERVICE………………………………….…...... 9

APPENDIX  …………………………………………………….…... 10

i

Case 1:08-cv-2188-LTB-CBS  Document        Filed 2/2/2010  USCD Colorado

# TABLE OF AUTHORITIES

## Federal and State Cases

*Bailey v US Marshal Service,*
  *584 F. Supp. 2d 128  (DDC. 2008)* ..................................................... 4, 6,

*Bivens v. Six Unknown Named Agents,*
  403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)............................... 7

*BFI v Kelco,*
  492 U.S. 257 (1989) .................................................................... 6

*Colyer v Skeffington,*
  265 F. 17  (D Mass. 1920) ............................................................ 4

*Gonzales v City of Peoria,*
  722 F.2d 468   (9th Cir. 1983) ..................................................... 7

*In Re: Morris,*
  12 B.R. 321 (N.D.IL. 1981) ........................................................... 3

*Martinez- Aguero v Gonzales,*
  2005 U.S. LEXIS 2412 (W.D.Tex. Feb 2 2005) ......................................... 4, 5

*Mazloum v Dist of Columbia Met Police,*
  522 F. Supp 2d (DDC. 2007) .......................................................... 5

*Saucier v. Katz,*
  533 U.S. 194, (2001) ................................................................ 4

*United States v Khan,*
  324 F. Supp. 2d 1177 (D Colo. 2004) ................................................. 7

*United States of America,  v  Olivares-Ranger,*
  458 F.3d 1104 (10th Cir. 2006) ...................................................... 7

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 437

Case 1:08-cv-2188-LTB-CBS  Document       Filed 2/2/2010  USCD Colorado

## Constitutional Provisions

U.S. Const Amend I, IV, V, XIV...........................................................................1

## Acts of Congress

Legal Immigration Family Equity Act (LIFE)  Pub. L. No. 106-553, Title XI, 114 Stat. 2762, 2762A-142 to 149 (Dec. 21, 2000)

INA  § 245(i)   [codified at 8 U.S.C.A.  § 1255 (i)] ............................................  1

## Statutes and Rules

2 U.S.C. § 1961 *et seq*

28 U.S.C. § 1391.............................................................................................3

28 U.S.C. § 1406.............................................................................................3

40 U.S.C. § 8103

## Publications

Robert Koppel *Bulls Bears & Millionaires* (Dearborn Financial Pub, 1996)

Jaye Scholl, *Gazelle Global Fund Tops Chart*, (Dow Jones Newswire, Jan 27, 1996)

Jaye Scholl, *Opportunity Seized: In '95 focus on US stocks paid off for some hedge funds*, (Barron's, Jan 29 1996)

Linda Keslar, *Solomon's Choice*, Financial Trader (magazine) (April issue 1996)

437

## OBJECTIVE OF THIS LITIGATION

The objective of this litigation is to restore Plaintiff, Solomon Ben- Tov Cohen, to where he was, as far as possible, on the morning of November 25 2003.

## THE QUEEN & REPRESENTATIVE HENRY A WAXMAN Et al

Both had Cohen arrested for complaining that, as a result of a letter they received from New York City Loft Board, Cohen's landlords with links to Organized Crime had forced him to abandon his home and stolen his passport.

On November 22 2000, Cohen was falsely ordered detained in London after delivering a Petition to Buckingham Palace addressed to The Queen (which included photo with Princess Diana).

On November 25 2003, Defendant Fred Busch falsely arrested Plaintiff inside the offices of Rep Henry Waxman for the same reason.

From The English Crown, Cohen is forced to seek asylum and from Henry Waxman, Busch & US Capitol Police redress via this Action[1].

H1-B visa is for aliens with advanced degrees, specialty occupations. Transition to Lawful Permanent Resident was automatic and guaranteed prior to enactment of the LIFE ACT 12/21/2000[2]. Cohen needs a Private Bill to become a US Citizen (leader in his profession.)

---

[1] Note: The UK Bill of Rights AD1689 which allows Commoner to petition the Monarch is also First Amendment as well as Eighth Amendment to the US Constitution. However, since 1994, Cohen pays his taxes in the US.

[2] On 12/21/2000 Cohen was a refugee in Switzerland having fled from false imprisonment in the UK.

1

## SUMMARY OF ARGUMENT

Plaintiff is allowed to sue in the US District Court for the district in which he resides because Defendant Fred Busch is a Federal Government employee and the controversy does not involve real property.

Although Busch acted in his official capacity when he arrested Plaintiff, he is not entitled to qualified immunity because Busch did not have <u>probable cause</u> to make an arrest.

He violated several of Cohen's rights, including not allowing Cohen to leave the Congressman's office.

Police can arrest for <u>criminal violations</u> of immigration laws only, not 'overstays' which are civil.

Busch's handing Cohen over to USICE via unlawful seizure and false imprisonment in his office, is a violation of Cohen's civil rights as decided by this court in <u>United States v Khan</u>.

2

## ARGUMENT

### I.   PERSONAL JURISDICTION

28 U.S.C. § 1391.   Venue

> e) <u>A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which</u> (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) <u>the plaintiff resides if no real property is involved in the action.</u>

Avoidance of Personal Service

> "[T]he form which Anglo-American bankruptcy statutes have followed from 1542 to 1978 is the result of early adherence to the fundamental principal of English jurisprudence that an *in personam* judgment could not be obtained against an individual unless he had been served personally.
>
> In medieval England a man's house was his castle, and if a person remained within his own house and did not venture outside, he could not be served with process." *In Re: Morris,* 12 B.R. 321 (N.D.Il. 1981)

Busch has been served.

28 U.S.C. § 1406.   Cure or waiver of defects

> (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

This action will be time- barred under DC one year statute of limitations unless transferred.

3

Case 1:08-cv-2188-LTB-CBS  Document     Filed 2/2/2010    USCD Colorado    Page 4/13

## II.  NO VALID CLAIM OF QUALIFIED IMMUNITY

### A.  Defendant Fred Busch has no valid claim of Qualified Immunity.

Busch, acting in his official capacity, violated constitutional right and acted unreasonably when he refused to allow Cohen to leave the office of Congressman Henry A Waxman.

The Supreme Court reiterated in *Saucier v. Katz*, 533 U.S. 194, (2001) that courts should use a two-step process in ruling on qualified immunity. First, the Court must consider whether the facts alleged, taken in the light most favorable to Plaintiffs, show that Defendants' conduct violated a constitutional right.

#### 1.  Fourth Amendment originated from Customs Enforcement abuses in Boston

"[I]n a long opinion Mr. Justice Bradley pointed out that the Fourth Amendment to the Constitution, prohibiting unreasonable searches and seizures, had its roots in the struggle for liberty in the Colonies, one famous incident of which was the attack in Boston in 1761 by James Otis on the *writs of assistance* issued to revenue officers." *Colyer v Skeffington,* 265 F. 17 (D Mass. 1920) quoting *Boyd v United States*, 116 U.S. 616

"[T]he Supreme Court, as in other areas, refers to English common law known to the Framers in defining the parameters of Fourth Amendment rights." *Martinez- Aguero v Gonzales,* 2005 U.S. Dist LEXIS 2412(W.D.Tex. Feb 2 2005).

### B.  Assessing Claim of Qualified Immunity

1.  "[I]n assessing a qualified immunity defense, the first inquiry a court must make is whether a constitutional right would have been violated on the facts alleged. *Bailey v US Marshal Service*, 584 F. Supp. 2d 128  (DDC. 2008) quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Barham v. Ramsey*, 434 F.3d at 572.

4

## 2. Busch violated Cohen's Fourth Amendment Right.

"[T]he Fourth Amendment prohibits arrests made without probable cause." *Bailey v US Marshal Service*, 584 F. Supp. 2d 128  (DDC. 2008)

Busch does not even claim that he had probable cause to make the arrest.

## 3. Busch's arrest of Cohen was entirely unreasonable

"[i]f a constitutional right has been violated, then the officer must demonstrate that "a reasonable officer could have believed" that the actions were lawful "in light of clearly established law and the information the . . . officer[ ] possessed." *Bailey v US Marshal Service*, 584  F.Supp.  2d  128   (DDC.  2008)  quoting *Anderson v. Creighton*, 483 U.S. at 641;

 "[T]he inquiry in assessing wrongful arrest is one of objective reasonableness. Objective reasonableness requires assessment of the actions at issue measured against what a reasonable officer would do under the circumstances. *Martinez-Aguero v Gonzales*, 2005 U.S. LEXIS 2412 (W.D.Tex. Feb 2 2005) quoting *Graham v Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

"[t]he Supreme Court held, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Mazloum v Dist of Columbia Met Police*, 522 F. Supp 2d (DDC. 2007) quoting *Saucier v Katz*, 533 U.S. 194, (2001)

## 4. Established law violated
DC law states that US Capitol Police may not arrest someone in the office of a Congressman unless they refuse to leave. *Hemmati*

Busch prevented Cohen from leaving and from proceedings to Rep Barney Frank's office.

5

### C. Tort Claim

"Common-law and constitutional claims of false arrest are generally analyzed as though they comprise a single cause of action. . . . Indeed, the elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim." *Bailey v US Marshal Service, 584 F. Supp. 2d 128  (DDC. 2008)* quoting *Dingle   District of Columbia*, 571 F. Supp. 2d 87, 95 (D.D.C. 2008).

### Bivens damages originates with Magna Charta

"[A]mercements were an "all-purpose" royal penalty; they were used not only against plaintiffs who failed to follow the complex rules of pleading11 and against defendants who today would be liable in tort, but also against an entire township {**106 L. Ed. 2d 235**} which failed to live up to its obligations, or **against a sheriff who neglected his duties,** *BFI v Kelco,* 492 U.S. 257 (1989).

"[t]hese individuals were required to pay an "amercement" to the Crown, its representative, or {**492 U.S. 288**} a feudal lord. *Tumey* v. *Ohio*, 273 U.S. 510, 525 (1927); Massey 1252-1253, and n. 111. But cf. R. Stringham, Magna Carta: Fountainhead of Freedom 40 (1966) (<u>a share of the amercement went to the victim or the victim's family).</u>

Because the amercement originated at a time when there was little distinction between criminal law and tort law, it was "neither strictly a civil nor a criminal sanction." As one commentator has noted, the "amercement was assessed most commonly as a civil sanction for..... wrongfully defending a civil lawsuit." *BFI v Kelco,* 492 U.S. 257 (1989).  Quoting Massey 1251

After Magna Carta, the amount of an amercement was initially set by the court.

**D.  Busch violated Fourth Amendment by seizing Cohen and imprisoning him in his office for USICE to come and arrest him.**

Authority of Police to arrest for Immigration Violation. Only in the case of criminal immigration violations not "overstays' see Gonzales v City of Peoria, 722 F.2d 468   (9th Cir. 1983).

In *United States of America v Khan*,  324 F. Supp. 2d 1177 (D Colo, 2004),  this Court ruled:

> "[I] conclude Khan's arrest was in violation of 8 U.S.C. § 1357(a)(2), and Khan was seized in violation of his Fourth Amendment right to be secure in his person against unreasonable seizures."

And

> "[The relevant inquiry in determining whether a defendant has standing to challenge evidence as fruit of a poisonous tree is whether his or her Fourth Amendment rights were violated, not the defendant's reasonable expectation of privacy in the evidence alleged to be poisonous fruit.]"*United States of America,   v   Olivares-Ranger,* 458 F.3d 1104 (10th Cir. 2006)

## III.    Time Bar

Plaintiff argues that this action is not time- barred.

Plaintiff first became aware of his civil rights, existence of *Bivens* remedy doctrine of 'Fruit of the Poisonous Tree' when, after being declared Incompetent to Proceed, he attended classes by Dr Kelly at Colorado Mental Health Institute at Pueblo from November 19th 2007- March 31st 2008.

7

**CONCLUSION**

WHEREFORE Plaintiff respectfully requests that this Court deny Defendant Fred Busch's

Motion to Dismiss.

I affirm under penalty of perjury that to the best of my knowledge the above statements are true

and accurate.

Respectfully submitted,

Date: ___02/02/2010___                    Signed: _____

                                          Solomon B Cohen MA(*Cantab*) pro-se

# CERTIFICATE OF SERVICE

I hereby certify that on this    02/02/2010 , service of the attached document was effected

by placing a true and correct copy of each of the same in the United States mail, first class

postage prepaid, addressed to the following:

Counsel for Fred Busch, United States Postal Inspection Service,  Boston Division
495 Summer St, Suite 600,  Boston,  MA 02210-2114

Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202

Date:  February 2, 2010                    Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 447

447

# APPLICABLE LAW

(a) Application of laws.   Laws and regulations of the District of Columbia for the protection of

public or private property and the preservation of peace and order are extended to all public

buildings and public grounds belonging to the Federal Government in the District of Columbia.

2 U.S.C. § 1966

POWERS AND DUTIES § 1961.   Policing of Capitol Grounds and Buildings [Caution: See prospective amendment note below.]Text(a) The Capitol Police shall police the United States Capitol Buildings and Grounds under the direction of the Capitol Police Board, consisting of the Sergeant at Arms of the United States Senate, the Sergeant at Arms of the House of Representatives, and the Architect of the Capitol, and shall have the power to enforce the provisions of this Act (and regulations promulgated under section 14 of this Act (2 U.S.C. 1969)), and chapter 51 of title 40, United States Code [40 USCS §§ 5101 et seq.], and to make arrests within the United States Capitol Buildings and Grounds for any violations of any law of the United States, of the District of Columbia, or of any State, or any regulation promulgated pursuant thereto: Provided, That for the fiscal year for which appropriations are made by this Act the Capitol Police shall have the additional authority to make arrests within the District of Columbia for crimes of violence, as defined in section 16 of title 18, committed within the Capitol Buildings and Grounds and shall have the additional authority to make arrests, without a warrant, for crimes of violence, as defined in section 16 of title 18, committed in the presence of any member of the Capitol Police performing official duties: Provided further, That the Metropolitan Police force of the District of Columbia are authorized to make arrests within the United States Capitol Buildings and Grounds for any violation of any such laws or regulations, but such authority shall not be construed as authorizing the Metropolitan Police force, except with the consent or upon the request of the Capitol Police Board, to enter such buildings to make arrests in response to complaints or to serve warrants or to patrol the United States Capitol Buildings and Grounds. For the purpose of this section, the word "grounds" shall include the House Office Buildings parking areas and that part or parts of property which have been or hereafter are acquired in the District of

11

448

Columbia by the Architect of the Capitol, or by an officer of the Senate or the House, by lease, purchase, intergovernment transfer, or otherwise, for the use of the Senate, the House, or the Architect of the Capitol.

(b) For purposes of this section, "the United States Capitol Buildings and Grounds" shall include any building or facility acquired by the Sergeant at Arms of the Senate for the use of the Senate for which the Sergeant at Arms of the Senate has entered into an agreement with the United States Capitol Police for the policing of the building or facility.

(c) For purposes of this section, "the United States Capitol Buildings and Grounds" shall include any building or facility acquired by the Chief Administrative Officer of the House of Representatives for the use of the House of Representatives for which the Chief Administrative Officer has entered into an agreement with the United States Capitol Police for the policing of the building or facility.

2 U.S.C. § 1967   Law enforcement authority

(a) Scope.   Subject to such regulations as may be prescribed by the Capitol Police Board and approved by the Committee on House Oversight of the House of Representatives and the Committee on Rules and Administration of the Senate, a member of the Capitol Police shall have authority to make arrests and otherwise enforce the laws of the United States, including the laws of the District of Columbia--

(1) within the District of Columbia, with respect to any crime of violence committed within the United States Capitol Grounds;

(2) within the District of Columbia, with respect to any crime of violence committed in the presence of the member, if the member is in the performance of official duties when the crime is committed;

(3) within the District of Columbia, to prevent imminent loss of life or injury to person or property, if the officer is in the performance of official duties when the authority is exercised;

(4) within the area described under subsection (b)(1); and

(5) within the area described under subsection (b)(2)--

12

449

(A) with respect to any crime of violence committed in the presence of the member, if the member is in the performance of official duties, as defined under such regulations, when the crime is committed; and

(B) to prevent imminent loss of life or injury to person or property, if the officer is in the performance of official duties, as defined under such regulations, when the authority is exercised.

(b) Area.

(1) The area referred to in subsection (a)(4) is that area bounded by the north curb of H Street from 3rd Street, N.W. to 7th Street, N.E., the east curb of 7th Street from H Street, N.E., to M Street, S.E., the south curb of M Street from 7th Street, S.E. to 1st Street, S.E., the east curb of 1st Street from M Street, S.E. to Potomac Avenue S.E., the southeast curb of Potomac Avenue from 1st Street, S.E. to South Capitol Street, S.W., the west curb of South Capitol Street from Potomac Avenue, S.W. to P Street, S.W., the north curb of P Street from South Capitol Street, S.W. to 3rd Street, S.W., and the west curb of 3rd Street from P Street, S.W. to H Street, N.W.

(2) The area referred to under subsection (a)(5) is that area bounded by the north curb of Constitution Avenue from 14th Street, N.W., to 3rd Street, N.W., the east curb of 3rd Street from Constitution Avenue, N.W., to Independence Avenue, S.W., the south curb of Independence Avenue from 3rd Street, S.W., to 14th Street, S.W., and the west curb of 14th Street from Independence Avenue, S.W., to Constitution Avenue, N.W.

40 U.S.C. § 8103

Application of District of Columbia laws to public buildings and grounds

(a) Application of laws.   Laws and regulations of the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the Federal Government in the District of Columbia.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB- CBS

SOLOMON BEN- TOV COHEN,    pro-se
       Plaintiff

V

REPRESENTATIVE  HENRY A WAXMAN,
       US Congress,

UNITED STATES CAPITOL POLICE,

FRED BUSCH, Special Agent
       US Capitol Police

       Defendants

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**FEB 0 8 2010**

GREGORY C. LANGHAM
CLERK

---

## MOTION TO REQUEST RULE 54(b) CERTIFICATION

---

Plaintiff, Solomon B Cohen pro- se moves the court to grant certification demanded by 10th Circuit Court of Appeals to allow him to Appeal dismissal of Defendants Congressman Henry A Waxman and US Capitol Police by this court.

### i. Orders of 10th Circuit Court of Appeals

2. Attached are two orders of the 10th Circuit Court of Appeals.

3. Plaintiff proceeding pro- se apparently misunderstood the initial order.

4. 10th Circuit is asking for **RULE 54(b) CERTIFICATION** of the dismissal of all claims against Representative Henry Waxman and US Capitol Police effectively with prejudice and without right of appeal.

1

### i. Misconduct by US Attorney David Gaouette

5. While Plaintiff was a Federal detainee at El Paso County Sheriff's Department, both mail clerk and Lieutenant Brandt refused to send legal mail to this court.

6. Federal detention resulted from Counsel David Gaouette, US Attorney misleading the court in Habeas Corpus 1:08-cv-01844-LTB-CBS, over Plaintiff's $3,000 Immigration Bond which has remained valid.

7. As a result whilst a Federal detainee, Sheriff's denied Plaintiff access to the Court.

8. David Gaouette, US Attorney in subsequent filings, instead of upholding the law and Constitution of the United States with regard to documented denial of access to this court during the period for filing objections to US Magistrate's Report, has sought to **use willful civil and federal violations within his jurisdiction as US Attorney, to the advantage of his clients**.

**Did Congressman Waxman violate separations of Powers mandated by US Constitution?**

9. In these proceedings, Representative Waxman's counsel:-

    i. Failed to provide Plaintiff with a copy of his filings;

    ii. Ignored Order by US Magistrate Judge to participate in a status conference;

    <u>and, it is alleged,</u>

    iii. Ordered El Paso County Sheriff's not to send mail to this court so that Congressman Waxman's name would be removed

Case 1:08-cv-02188-LTB-CBS Document       Filed 2/4/2010 USDC Colorado Page 3 of 4

**Congressman and US Capitol Police have been dismissed with prejudice and without right of Appeal.**

1. The case was filed within one year of Plaintiff becoming aware that his rights had been violated.

2. The case has proceeded in this Court for more than a year.

3. The District of Columbia statute of limitations is one year. Therefore, this action becomes time- barred unless transferred by the court so that the filing is tolled.

**Failure to file is not Plaintiff's fault.**

WHEREFORE Plaintiff Solomon B Cohen respectfully asks that the court grant this motion..

Respectfully submitted,

Signed:

SOLOMON B COHEN MA (*Cantab*) pro-se

Dated: February 4, 2010

3

453

Case 1:08-cv-02188-LTB-CBS   Document 104   Filed 02/08/10   Page 4 of 11

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 454
Case 1:08-cv-02188-LTB-CBS Document      Filed 2/4/2010 USDC Colorado Page 4 of 4

**CERTIFICATE OF SERVICE**

I hereby certify that on this     4th     day of ~~January~~ February 2010, service of the attached document

was effected by placing a true and correct copy of each of the same in the United States mail,

first class postage prepaid, addressed to the following:


Counsel for: Fred Busch, United States Postal Inspection Service, Boston Division, 495 Summer

St, Suite 600, Boston, MA 02210-2114:-


Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
CO 80202


Date:  02/04/2010          Signed:_____

                                    Solomon B Cohen MA(*Cantab*) pro-se

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 455

# ORDER

FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS January 29, 2010

FOR THE TENTH CIRCUIT

Elisabeth A. Shumaker
Clerk of Court

SOLOMON BEN-TOV COHEN,

    Plaintiff - Appellant,

v.

REPRESENTATIVE HENRY
WAXMAN, United States Congress; U.S.
CAPITOL POLICE; FRED BUSCH,
Agent U.S. Capitol Police,

    Defendants - Appellees.

No. 09-1510
(D.C. No. 1:08-CV-02188-LTB-CBS)

ORDER

Before **BRISCOE, MURPHY**, and **O'BRIEN**, Circuit Judges.

This appeal is before the court based on a show cause order challenging appellate jurisdiction and directing the parties to obtain a district court order either granting certification under Fed. R. Civ. P. 54(b) as to the October 21, 2009 Order appealed by Plaintiff Solomon Ben-Tov Cohen or explicitly adjudicating the claims against the remaining Defendant, Fred Busch. *See Stockman's Water Company, LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005); *Lewis v. B. F. Goodrich Co.*, 850 F.2d 641, 645-46 (10th Cir. 1988).

456

This court lacks jurisdiction. The parties failed to move in the district court for a Rule 54(b) certification. Plaintiff's claims against Defendant Busch remain unresolved in the underlying civil rights action. Consequently, the October 21, 2009 Order appealed by Plaintiff is interlocutory and not immediately appealable under 28 U.S.C. § 1291 or under any recognized exception to the final judgment rule.

The appeal is **DISMISSED** for lack of appellate jurisdiction.

Entered for the Court,
Elisabeth A. Shumaker, Clerk

*Kathleen T. Clifford*

Kathleen T. Clifford
Attorney - Deputy Clerk

**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
OFFICE OF THE CLERK**

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

February 01, 2010

Douglas E. Cressler
Chief Deputy Clerk

Mr. Solomon Ben-Tov Cohen
Geo/I.C.E. Processing Center
11901 East 30th Avenue
Aurora, CO 80010-0000
A# 077 309 675

Mr. Paul Farley
Office of the United States Attorney
District of Colorado
1225 17th Street, Suite 700
Denver, CO 80202

Ms. Katherine E. McCarron
U.S. House of Representatives
Office of the General Counsel
219 Cannon House Office Building
Washington, DC 20515

RE:     09-1510, Cohen v. Waxman, et al
        Dist/Ag docket: 1:08-CV-02188-LTB-CBS

Dear Appellant and Counsel:

Enclosed please find an order issued today by the court.  Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

EAS/klp

459

# ORDER

FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

December 1, 2009

Elisabeth A. Shumaker
Clerk of Court

---

SOLOMON BEN-TOV COHEN,

　　　Plaintiff - Appellant,

v.

REPRESENTATIVE HENRY
WAXMAN, United States Congress, et al.,

　　　Defendants - Appellees.

No. 09-1510
(D.C. No. 1:08-CV-02188-LTB-CBS)

---

ORDER

---

Briefing on the merits is **TOLLED** pending further written order of this court. *See* 10th Cir. R. 27.2(C).

This appeal is before the court based on the district court's *November 4, 2009 Order* denying reconsideration of the October 21, 2009 Order dismissing some of Plaintiff's claims. The order appealed by Plaintiff Cohen does not constitute a final or immediately appealable decision under 28 U.S.C. § 1291 or under any recognized exception to the final judgment rule. Plaintiff's claims against *Defendant Fred Busch* remain unresolved in the district court.

Within **30 days** of the date on this order, the parties must file in this court a copy of a district court order containing a final judgment under Fed. R. Civ. P. 54(b) in

compliance with *Stockman's Water Company, LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005) ("courts entering a Rule 54(b) certification should 'clearly articulate their reasons and make careful statements based on the record supporting their determination of "finality" and "no just reason for delay" so that we [can] review a 54(b) order more intelligently[] and thus avoid jurisdictional remand'"), as to the *November 4, 2009 Order*. *Or*, the parties must file a district court order explicitly resolving the claims against the remaining Defendant Fred Busch. *See Lewis v. B. F. Goodrich Co.*, 850 F.2d 641 (10th Cir. 1988); *Nolan v. U.S. Dept. of Justice*, 973 F.2d 843, 846-847 (10th Cir. 1992).

If a district court order containing a final judgment under Rule 54(b) in accordance with *Stockman or* a final dispositive adjudication is not filed in this court within **30 days** of the date on this order, this appeal will be dismissed. *See Lewis*, 850 F.2d. at 645-46.

Entered for the Court,
Elisabeth A. Shumaker, Clerk

Kathleen T. Clifford
Attorney - Deputy Clerk

-2-

461

**District of Colorado**

**Notice of Electronic Filing**

The following transaction was entered on 2/11/2010 at 8:58 AM MST and filed on 2/11/2010

| | |
|---|---|
| **Case Name:** | Cohen v. Busch |
| **Case Number:** | 1:08−cv−2188 |
| **Filer:** | |
| **Document Number:** | 107(No document attached) |

**Docket Text:**
**ORDER granting [103] "Motion to Amend Memorandum of Law and Points." Plaintiff's "Memorandum of Law and Points in Opposition to Defendant Fred Busch's Motion to Dismiss" (doc. # 103−2) is hereby accepted as Plaintiff's Amended Response to "Defendant Fred Busch's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)" (doc. # 61). By Magistrate Judge Craig B. Shaffer on 02/11/2010.TEXT ONLY ENTRY − NO DOCUMENT ATTACHED (cbslc1)**

**1:08−cv−2188 Notice has been electronically mailed to:**

Marcy Elizabeth Cook marcy.cook@usdoj.gov, Mary.Leistikow@usdoj.gov, William_emory@cap−police.senate.gov, usaco.ecfcivil@usdoj.gov

Katherine E. McCarron katherine.mccarron@mail.house.gov, rachel.sussman@mail.house.gov, shaida.safai@mail.house.gov

**1:08−cv−2188 Notice has been mailed by the filer to:**

Solomon Ben−Tov Cohen
#L2580
ICE Processing Center−GEO Detention Facility
11901 East 30th Avenue
Aurora, CO 80010

Case 1:08-cv-2188-LTB-CBS  Document      Filed 2/2/2010      USCD Colorado

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No 08-cv-02188-LTB-CBS

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SOLOMON BEN- TOV COHEN,

**FEB 0 8 2010**

    Plaintiff

**GREGORY C. LANGHAM**
CLERK

    v

FRED BUSCH, Former Special Agent US Capitol Police

    Defendant

---

## MEMORANDUM OF LAW AND POINTS IN OPPOSITION TO DEFENDANT FRED BUSCH'S MOTION TO DISMISS

---

Plaintiff, Solomon B Cohen pro- se hereby files this Memorandum in Opposition to Defendant

Fred Busch's Motion to Dismiss.

Respectfully submitted,

Date: _07/02/2010_             Signed: _____

Solomon B Cohen MA(*Cantab*) pro-se
Alien # 77 309 675
GEO-ICE Detention Facility
11901 E30th Ave
Aurora
CO 80010-1525

Tel: (303) 361-6612

Case 1:08-cv-2188-LTB-CBS  Document        Filed 2/2/2010      USCD Colorado

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................... ii

OBJECTIVE OF THIS LITIGATION............................................ 1

SUMMARY OF ARGUMENT................................................... 2

ARGUMENT..................................................................... 3

   I.   PERSONAL JURISDICTION

   II.  NO VALID CLAIM OF QUALIFIED IMMUNITY

        A.  Busch fails to even assert probable cause for false arrest

CONCLUSION.................................................................. 8

CERTIFICATE OF SERVICE................................................ 9

APPENDIX ..................................................................... 10

i

Case 1:08-cv-2188-LTB-CBS   Document          Filed 2/2/2010   USCD Colorado

## TABLE OF AUTHORITIES

### Federal and State Cases

*Bailey v US Marshal Service,*
    *584 F. Supp. 2d 128  (DDC. 2008)* ....................................................... 4, 6,

*Bivens v. Six Unknown Named Agents,*
    403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)............................... 7

*BFI v Kelco,*
    492 U.S. 257 (1989) ........................................................................ 6

*Colyer v Skeffington,*
    265 F. 17  (D Mass. 1920) ................................................................ 4

*Gonzales v City of Peoria,*
    722 F.2d 468   (9th Cir. 1983) ....................................................... 7

*In Re: Morris,*
    12 B.R. 321 (N.D.IL. 1981) ............................................................... 3

*Martinez- Aguero v Gonzales,*
    2005 U.S. LEXIS 2412 (W.D.Tex. Feb 2 2005) ......................................... 4, 5

*Mazloum v Dist of Columbia Met Police,*
    522 F. Supp 2d (DDC. 2007) ............................................................. 5

*Saucier v. Katz,*
    533 U.S. 194, (2001) ...................................................................... 4

*United States v Khan,*
    324 F. Supp. 2d 1177 (D Colo. 2004) ................................................... 7

*United States of America,  v  Olivares-Ranger,*
    458 F.3d 1104 (10th Cir. 2006) .......................................................... 7

Case 1:08-cv-2188-LTB-CBS   Document          Filed 2/2/2010   USCD Colorado

**Constitutional Provisions**

U.S. Const Amend I, IV, V, XIV...................................................................1

**Acts of Congress**

Legal Immigration Family Equity Act (LIFE)  Pub. L. No. 106-553, Title XI, 114 Stat. 2762, 2762A-142 to 149 (Dec. 21, 2000)

INA  § 245(i)   [codified at 8 U.S.C.A.  § 1255 (i)] ...........................................   1

**Statutes and Rules**

2 U.S.C. § 1961 *et seq*

28 U.S.C. § 1391..........................................................................................3

28 U.S.C. § 1406..........................................................................................3

40 U.S.C. § 8103

**Publications**

Robert Koppel *Bulls Bears & Millionaires* (Dearborn Financial Pub, 1996)

Jaye Scholl, *Gazelle Global Fund Tops Chart*, (Dow Jones Newswire, Jan 27, 1996)

Jaye Scholl, *Opportunity Seized: In '95 focus on US stocks paid off for some hedge funds*, (Barron's, Jan 29 1996)

Linda Keslar, *Solomon's Choice*, Financial Trader (magazine) (April issue 1996)

iii

Case 1:08-cv-2188-LTB-CBS  Document   Filed 2/2/2010   USCD Colorado   Page 1/13

## OBJECTIVE OF THIS LITIGATION

The objective of this litigation is to restore Plaintiff, Solomon Ben-Tov Cohen, to where he was, as far as possible, on the morning of November 25 2003.

## THE QUEEN & REPRESENTATIVE HENRY A WAXMAN Et al

Both had Cohen arrested for complaining that, as a result of a letter they received from New York City Loft Board, Cohen's landlords with links to Organized Crime had forced him to abandon his home and stolen his passport.

On November 22 2000, Cohen was falsely ordered detained in London after delivering a Petition to Buckingham Palace addressed to The Queen (which included photo with Princess Diana).

On November 25 2003, Defendant Fred Busch falsely arrested Plaintiff inside the offices of Rep Henry Waxman for the same reason.

From The English Crown, Cohen is forced to seek asylum and from Henry Waxman, Busch & US Capitol Police redress via this Action[1].

H1-B visa is for aliens with advanced degrees, specialty occupations. Transition to Lawful Permanent Resident was automatic and guaranteed prior to enactment of the LIFE ACT 12/21/2000[2]. Cohen needs a Private Bill to become a US Citizen (leader in his profession.)

---

[1] Note: The UK Bill of Rights AD1689 which allows Commoner to petition the Monarch is also First Amendment as well as Eighth Amendment to the US Constitution. However, since 1994, Cohen pays his taxes in the US.

[2] On 12/21/2000 Cohen was a refugee in Switzerland having fled from false imprisonment in the UK.

1

## SUMMARY OF ARGUMENT

Plaintiff is allowed to sue in the US District Court for the district in which he resides because Defendant Fred Busch is a Federal Government employee and the controversy does not involve real property.

Although Busch acted in his official capacity when he arrested Plaintiff, he is not entitled to qualified immunity because Busch did not have <u>probable cause</u> to make an arrest.

He violated several of Cohen's rights, including not allowing Cohen to leave the Congressman's office.

Police can arrest for <u>criminal violations</u> of immigration laws only, not 'overstays' which are civil.

Busch's handing Cohen over to USICE via unlawful seizure and false imprisonment in his office, is a violation of Cohen's civil rights as decided by this court in <u>United States v Khan</u>.

Case 1:08-cv-2188-LTB-CBS   Document      Filed 2/2/2010    USCD Colorado   Page 3/13


# ARGUMENT

## I.   PERSONAL JURISDICTION


28 U.S.C. § 1391.   Venue

> e) <u>A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which</u> (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) <u>the plaintiff resides if no real property is involved in the action.</u>


Avoidance of Personal Service

> "[T]he form which Anglo-American bankruptcy statutes have followed from 1542 to 1978 is the result of early adherence to the fundamental principal of English jurisprudence that an *in personam* judgment could not be obtained against an individual unless he had been served personally.
>
> In medieval England a man's house was his castle, and if a person remained within his own house and did not venture outside, he could not be served with process." *In Re: Morris,* 12 B.R. 321 (N.D.Il. 1981)


Busch has been served.


28 U.S.C. § 1406.   Cure or waiver of defects

> (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.


This action will be time- barred under DC one year statute of limitations unless transferred.


3

## II.   NO VALID CLAIM OF QUALIFIED IMMUNITY

### A.   Defendant Fred Busch has no valid claim of Qualified Immunity.

Busch, acting in his official capacity, violated constitutional right and acted unreasonably when he refused to allow Cohen to leave the office of Congressman Henry A Waxman.

The Supreme Court reiterated in *Saucier v. Katz*, 533 U.S. 194, (2001) that courts should use a two-step process in ruling on qualified immunity. First, the Court must consider whether the facts alleged, taken in the light most favorable to Plaintiffs, show that Defendants' conduct violated a constitutional right.

### 1.   Fourth Amendment originated from Customs Enforcement abuses in Boston

"[I]n a long opinion Mr. Justice Bradley pointed out that the Fourth Amendment to the Constitution, prohibiting unreasonable searches and seizures, had its roots in the struggle for liberty in the Colonies, one famous incident of which was the attack in Boston in 1761 by James Otis on the *writs of assistance* issued to revenue officers." *Colyer v Skeffington,* 265 F. 17 (D Mass. 1920) quoting *Boyd v United States*, 116 U.S. 616

"[T]he Supreme Court, as in other areas, refers to English common law known to the Framers in defining the parameters of Fourth Amendment rights." *Martinez- Aguero v Gonzales,* 2005 U.S. Dist LEXIS 2412(W.D.Tex. Feb 2 2005).

### B.   Assessing Claim of Qualified Immunity

1.   "[I]n assessing a qualified immunity defense, the first inquiry a court must make is whether a constitutional right would have been violated on the facts alleged. *Bailey v US Marshal Service*, 584 F. Supp. 2d 128 (DDC. 2008) quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Barham v. Ramsey*, 434 F.3d at 572.

## 2.  Busch violated Cohen's Fourth Amendment Right.

"[T]he Fourth Amendment prohibits arrests made without probable cause." *Bailey v US Marshal Service*, 584 F. Supp. 2d 128  (DDC. 2008)

Busch does not even claim that he had probable cause to make the arrest.

## 3.  Busch's arrest of Cohen was entirely unreasonable

"[i]f a constitutional right has been violated, then the officer must demonstrate that "a reasonable officer could have believed" that the actions were lawful "in light of clearly established law and the information the . . . officer[ ] possessed." *Bailey v US Marshal Service*, 584  F.Supp.  2d  128   (DDC.  2008)  quoting *Anderson v. Creighton*, 483 U.S. at 641;

 "[T]he inquiry in assessing wrongful arrest is one of objective reasonableness. Objective reasonableness requires assessment of the actions at issue measured against what a reasonable officer would do under the circumstances. *Martinez-Aguero v Gonzales*, 2005 U.S. LEXIS 2412 (W.D.Tex. Feb 2 2005) quoting *Graham v Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

"[t]he Supreme Court held, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Mazloum v Dist of Columbia Met Police*, 522 F. Supp 2d (DDC. 2007) quoting *Saucier v Katz*, 533 U.S. 194, (2001)

## 4.  Established law violated

DC law states that US Capitol Police may not arrest someone in the office of a Congressman unless they refuse to leave. *Hemmati*

Busch prevented Cohen from leaving and from proceedings to Rep Barney Frank's office.

5

## C. Tort Claim

"Common-law and constitutional claims of false arrest are generally analyzed as though they comprise a single cause of action. . . . Indeed, the elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim." *Bailey v US Marshal Service, 584 F. Supp. 2d 128  (DDC. 2008)* quoting *Dingle   District of Columbia,* 571 F. Supp. 2d 87, 95 (D.D.C. 2008).

### Bivens damages originates with Magna Charta

"[A]mercements were an "all-purpose" royal penalty; they were used not only against plaintiffs who failed to follow the complex rules of pleading11 and against defendants who today would be liable in tort, but also against an entire township {106 L. Ed. 2d 235} which failed to live up to its obligations, or **against a sheriff who neglected his duties,** *BFI v Kelco,* 492 U.S. 257 (1989).

"[t]hese individuals were required to pay an "amercement" to the Crown, its representative, or {492 U.S. 288} a feudal lord. *Tumey* v. *Ohio,* 273 U.S. 510, 525 (1927); Massey 1252-1253, and n. 111. But cf. R. Stringham, Magna Carta: Fountainhead of Freedom 40 (1966) (a share of the amercement went to the victim or the victim's family).

Because the amercement originated at a time when there was little distinction between criminal law and tort law, it was "neither strictly a civil nor a criminal sanction." As one commentator has noted, the "amercement was assessed most commonly as a civil sanction for..... wrongfully defending a civil lawsuit." *BFI v Kelco,* 492 U.S. 257 (1989). Quoting Massey 1251

After Magna Carta, the amount of an amercement was initially set by the court.

6

**D.  Busch violated Fourth Amendment by seizing Cohen and imprisoning him in his office for USICE to come and arrest him.**

Authority of Police to arrest for Immigration Violation. Only in the case of criminal immigration violations not "overstays' see Gonzales v City of Peoria, 722 F.2d 468  (9th Cir. 1983).

In *United States of America v Khan,*  324 F. Supp. 2d 1177 (D Colo, 2004),  this Court ruled:

> "[I] conclude Khan's arrest was in violation of 8 U.S.C. § 1357(a)(2), and Khan was seized in violation of his Fourth Amendment right to be secure in his person against unreasonable seizures."

And

> "[The relevant inquiry in determining whether a defendant has standing to challenge evidence as fruit of a poisonous tree is whether his or her Fourth Amendment rights were violated, not the defendant's reasonable expectation of privacy in the evidence alleged to be poisonous fruit.]"*United States of America,   v   Olivares-Ranger,* 458 F.3d 1104 (10th Cir. 2006)

## III.    Time Bar

Plaintiff argues that this action is not time- barred.

Plaintiff first became aware of his civil rights, existence of *Bivens* remedy doctrine of 'Fruit of the Poisonous Tree' when, after being declared Incompetent to Proceed, he attended classes by Dr Kelly at Colorado Mental Health Institute at Pueblo from November 19th 2007- March 31st 2008.

7

473

## CONCLUSION

WHEREFORE Plaintiff respectfully requests that this Court deny Defendant Fred Busch's

Motion to Dismiss.

I affirm under penalty of perjury that to the best of my knowledge the above statements are true

and accurate.

Respectfully submitted,

Date: _02/02/2010_                     Signed: _____

                                       Solomon B Cohen MA(*Cantab*) pro-se

**CERTIFICATE OF SERVICE**

I hereby certify that on this     02 /02 /2010 , service of the attached document was effected

by placing a true and correct copy of each of the same in the United States mail, first class

postage prepaid, addressed to the following:


Counsel for Fred Busch, United States Postal Inspection Service, Boston Division
495 Summer St, Suite 600, Boston, MA 02210-2114


Marcy E Cook, Assistant US Attorney
US Attorney's Office
1225 17th St, Suite 700
Denver
Co 80202


Date:   February 2, 2010                    Signed:   _____

                                                       Solomon B Cohen MA(*Cantab*) pro-se

9

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 476

# APPLICABLE LAW

(a) Application of laws.   Laws and regulations of the District of Columbia for the protection of

public or private property and the preservation of peace and order are extended to all public

buildings and public grounds belonging to the Federal Government in the District of Columbia.

2 U.S.C. § 1966

POWERS AND DUTIES § 1961.   Policing of Capitol Grounds and Buildings [Caution: See prospective amendment note below.]Text(a) The Capitol Police shall police the United States Capitol Buildings and Grounds under the direction of the Capitol Police Board, consisting of the Sergeant at Arms of the United States Senate, the Sergeant at Arms of the House of Representatives, and the Architect of the Capitol, and shall have the power to enforce the provisions of this Act (and regulations promulgated under section 14 of this Act (2 U.S.C. 1969)), and chapter 51 of title 40, United States Code [40 USCS §§ 5101 et seq.], and to make arrests within the United States Capitol Buildings and Grounds for any violations of any law of the United States, of the District of Columbia, or of any State, or any regulation promulgated pursuant thereto: Provided, That for the fiscal year for which appropriations are made by this Act the Capitol Police shall have the additional authority to make arrests within the District of Columbia for crimes of violence, as defined in section 16 of title 18, committed within the Capitol Buildings and Grounds and shall have the additional authority to make arrests, without a warrant, for crimes of violence, as defined in section 16 of title 18, committed in the presence of any member of the Capitol Police performing official duties: Provided further, That the Metropolitan Police force of the District of Columbia are authorized to make arrests within the United States Capitol Buildings and Grounds for any violation of any such laws or regulations, but such authority shall not be construed as authorizing the Metropolitan Police force, except with the consent or upon the request of the Capitol Police Board, to enter such buildings to make arrests in response to complaints or to serve warrants or to patrol the United States Capitol Buildings and Grounds. For the purpose of this section, the word "grounds" shall include the House Office Buildings parking areas and that part or parts of property which have been or hereafter are acquired in the District of

11

Columbia by the Architect of the Capitol, or by an officer of the Senate or the House, by lease, purchase, intergovernment transfer, or otherwise, for the use of the Senate, the House, or the Architect of the Capitol.

(b) For purposes of this section, "the United States Capitol Buildings and Grounds" shall include any building or facility acquired by the Sergeant at Arms of the Senate for the use of the Senate for which the Sergeant at Arms of the Senate has entered into an agreement with the United States Capitol Police for the policing of the building or facility.

(c) For purposes of this section, "the United States Capitol Buildings and Grounds" shall include any building or facility acquired by the Chief Administrative Officer of the House of Representatives for the use of the House of Representatives for which the Chief Administrative Officer has entered into an agreement with the United States Capitol Police for the policing of the building or facility.

---

2 U.S.C. § 1967   Law enforcement authority

(a) Scope.   Subject to such regulations as may be prescribed by the Capitol Police Board and approved by the Committee on House Oversight of the House of Representatives and the Committee on Rules and Administration of the Senate, a member of the Capitol Police shall have authority to make arrests and otherwise enforce the laws of the United States, including the laws of the District of Columbia--

(1) within the District of Columbia, with respect to any crime of violence committed within the United States Capitol Grounds;

(2) within the District of Columbia, with respect to any crime of violence committed in the presence of the member, if the member is in the performance of official duties when the crime is committed;

(3) within the District of Columbia, to prevent imminent loss of life or injury to person or property, if the officer is in the performance of official duties when the authority is exercised;

(4) within the area described under subsection (b)(1); and

(5) within the area described under subsection (b)(2)--

(A) with respect to any crime of violence committed in the presence of the member, if the member is in the performance of official duties, as defined under such regulations, when the crime is committed; and

(B) to prevent imminent loss of life or injury to person or property, if the officer is in the performance of official duties, as defined under such regulations, when the authority is exercised.


(b) Area.

(1) The area referred to in subsection (a)(4) is that area bounded by the north curb of H Street from 3rd Street, N.W. to 7th Street, N.E., the east curb of 7th Street from H Street, N.E., to M Street, S.E., the south curb of M Street from 7th Street, S.E. to 1st Street, S.E., the east curb of 1st Street from M Street, S.E. to Potomac Avenue S.E., the southeast curb of Potomac Avenue from 1st Street, S.E. to South Capitol Street, S.W., the west curb of South Capitol Street from Potomac Avenue, S.W. to P Street, S.W., the north curb of P Street from South Capitol Street, S.W. to 3rd Street, S.W., and the west curb of 3rd Street from P Street, S.W. to H Street, N.W.

(2) The area referred to under subsection (a)(5) is that area bounded by the north curb of Constitution Avenue from 14th Street, N.W., to 3rd Street, N.W., the east curb of 3rd Street from Constitution Avenue, N.W., to Independence Avenue, S.W., the south curb of Independence Avenue from 3rd Street, S.W., to 14th Street, S.W., and the west curb of 14th Street from Independence Avenue, S.W., to Constitution Avenue, N.W.


40 U.S.C. § 8103


Application of District of Columbia laws to public buildings and grounds


(a) Application of laws.   Laws and regulations of the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the Federal Government in the District of Columbia.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

FRED BUSCH,

     Defendant.

---

**DEFENDANT'S STATUS REPORT**

---

Defendant Fred Busch, through undersigned counsel, hereby files this status report to inform the Court of his position regarding the briefing on his Motion to Dismiss (Doc. 61). Defendant Busch submits that no further briefing on his Motion to Dismiss is required, unless requested by the Court.

Defendant Busch filed a Motion to Dismiss on October 5, 2009 (Doc. 61). Plaintiff responded on January 5, 2010 (Doc. 89), and Defendant Busch replied on January 19, 2010 (Doc. 96). Thus, at that time, the briefing on Defendant Busch's Motion to Dismiss was complete. Nevertheless, on January 29, 2010, Plaintiff filed another response to Defendant Busch's Motion to Dismiss (Doc. 101), followed on February 8, 2010, by a motion to amend the January 29, 2010, response (Doc. 103). On February 11, 2010, the Court granted Plaintiff's motion to amend his response, and accepted Doc. 103-2 as Plaintiff's Amended Response to Defendant Busch's Motion to Dismiss. See Doc. 107. On February 11, 2010, Docket No. 103-2 was docketed as Plaintiff's Response (Doc. 108).

Defendant Busch submits that he does not require additional briefing to reply to Plaintiff's Amended Response, unless requested by the Court, and that the briefing on his Motion to Dismiss (Doc. 61) is complete.  Defendant Busch respectfully requests that the Court consider his Motion to Dismiss (Doc. 61) and his Reply (Doc. 96) as his complete briefing.

Respectfully submitted this 16th day of February, 2010.

> DAVID M. GAOUETTE
> United States Attorney
>
> s/ Marcy E. Cook
> Marcy E. Cook
> Assistant United States Attorney
> 1225 Seventeenth Street, Suite 700
> Denver, Colorado  80202
> Telephone:  (303) 454-0171
> Fax: (303) 454-0404
> E-mail: marcy.cook@usdoj.gov
> Counsel for Defendant Busch

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of February, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 16th day of February, 2010, I have mailed or served the foregoing document and copies of all unpublished cases to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Reg. No. L2580
ICE/GEO Det. Facility
11901 E. 30th Avenue
Aurora, CO  80010-1525

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

FRED BUSCH,

     Defendant.

---

### DEFENDANT'S RESPONSE OPPOSING PLAINTIFF'S MOTION TO REQUEST RULE 54(b) CERTIFICATION (Doc. 104)

---

Defendant Fred Busch, through undersigned counsel, and pursuant to the Court's February 10, 2010, Order (Doc. 106), hereby responds to Plaintiff's "Motion to Request Rule 54(b) Certification" (Doc. 104) [hereinafter "Motion"].  The Motion should be denied because the claims on which Plaintiff seeks a Rule 54(b) certification are not final within the meaning of Rule 54(b) and the interests of sound judicial administration favor denial of a Rule 54(b) certification.

### BACKGROUND

In this action, Plaintiff alleges that he was wrongfully arrested by former Agent Busch of the United States Capitol Police when he visited Representative Waxman's office in Washington, D.C. in November 2003.[1]  See generally Doc. 12.  In his Amended Complaint, he named the U.S. Capitol Police, Representative Waxman, and former Agent Busch as defendants.  See id. at 1.

---

[1]  When he filed this action, Plaintiff was in the custody of Immigration and Customs Enforcement.  See Doc. 12 at 2.  To the best of undersigned counsel's knowledge, Plaintiff has been taken into the custody of the United States Marshals Service.

Plaintiff seeks only monetary relief for his claims.  See id. at 15.  On October 21, 2009, the Court

granted the U.S. Capitol Police's and Representative Waxman's motions to dismiss, leaving

former Agent Busch as the only Defendant.  See Doc. 67.

On November 3, 2009, Plaintiff filed a notice of appeal of the Court's October 21, 2009,

Order.  (Doc. 72.)  Plaintiff's appeal was docketed on November 16, 2009, and assigned case

number 09-1510 in the Tenth Circuit.  (Doc. 79.)  On December 1, 2009, the Tenth Circuit tolled

briefing on the merits of Plaintiff's appeal, and ordered that "[w]ithin 30 days of the date on this

order, the parties must file in this court a copy of a district court order containing a final

judgment under Fed. R. Civ. P. 54(b)."  (Doc. 80.)  Thus, the Tenth Circuit required a Rule 54(b)

certification by December 31, 2009.  On February 1, 2010, after noting that "[t]he parties failed

to move in the district court for a Rule 54(b) certification," the Tenth Circuit dismissed

Plaintiff's appeal "for lack of appellate jurisdiction."  (Doc. 102.)

After the Tenth Circuit had already dismissed his appeal, Plaintiff filed the instant motion

for a Rule 54(b) certification on February 8, 2010.  (Doc. 104.)

## ARGUMENT

**I.      Rule 54(b) Standard**

Fed. R. Civ. P. 54(b) provides, in relevant part, that:

> When an action presents more than one claim for relief … or when multiple
> parties are involved, the court may direct entry of a final judgment as to one or
> more, but fewer than all, claims or parties only if the court expressly determines
> that there is no just reason for delay.

In determining whether to grant a Rule 54(b) certification, the court must make two

determinations: (1) that the judgment at issue is final and (2) that "no just reason for delay of

-2-

entry of its judgment exists." Stockman's Water Co., LLC v. Vaca Partners, L.P., 425 F.3d 1263, 1265 (10th Cir. 2005) (citing Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7, 8 (1980)).

The purpose of Rule 54(b) is a limited one: protecting litigants from undue hardship and delay in lawsuits involving multiple parties or multiple claims. See Jordan v. Pugh, 425 F.3d 820, 829 (10th Cir. 2005) (citing Okla. Turnpike Auth. v. Bruner, 259 F.3d 1236, 1242 (10th Cir. 2001)). As a result, "Rule 54(b) entries are not to be made routinely." Bruner, 259 F.3d at 1242 (quotations omitted).

## II.    No Rule 54(b) Certification Should Issue

Here, the Court should deny Plaintiff's Motion for a Rule 54(b) certification because the claims on which Plaintiff seeks Rule 54(b) certification are not final within the meaning of Rule 54(b) and the interests of sound judicial administration favor denial of a Rule 54(b) certification.

### A.    No Finality

For the purposes of Rule 54(b), a judgment is not final "unless the claims resolved are distinct and separable from the claims left unresolved." Id. at 1243. Courts generally consider two factors in evaluating the separability of claims: first, whether the remaining claims overlap factually with the disposed of claims, and second, whether the remaining claims seek separate relief from the disposed of claims. See id. at 1242.

Here, Plaintiff's claims against all three defendants are premised on the same set of facts: Plaintiff's arrest at Representative Waxman's office in November 2003. Based on these same facts, Plaintiff alleges that each of the named defendants violated the same set of Plaintiff's constitutional rights (the First, Fourth, Fifth, Sixth, and Fourteenth Amendments). As a result, although the named defendants are different, the legal claims are identical, and there is

-3-

485

necessarily a significant factual overlap among Plaintiff's claims.[2]  Plaintiff's claims are thus not separable.  Cf. McKibben v. Chubb, 840 F.2d 1525, 1529 (10th Cir. 1988) (holding that where claims against separate defendants were based on common facts, but distinct wrongful actions, claims were separable).  Because Plaintiff's claims are not separable, the Court's October 21, 2009, Order dismissing Plaintiff's claims against the U.S. Capitol Police and Representative Waxman was not "final" for the purposes of Rule 54(b) and no Rule 54(b) certification should issue.

**B.    Just Reason for Delay**

But even if Plaintiff's claims were separable and "final" within the meaning of Rule 54(b), he is not entitled to a Rule 54(b) certificate.  See Curtiss-Wright, 446 U.S. at 8.  Only if the court finds that there is no just reason for delay of entry of its judgment should a Rule 54(b) certification issue.  In evaluating whether there is no just reason to delay the appeal, the role of the district court under is one of a  "dispatcher," id., where the court conducts a balancing between the "policy of preventing piecemeal appeals against the hardship or injustice that might be inflicted on a litigant because of the delay."  McKibben v. Chubb, 840 F.2d 1525, 1528 (10th Cir. 1988).  The district court must exercise its discretion to determine the appropriate time that a claim is ready for appeal, considering the interests of sound judicial administration.  See Curtiss-Wright, 446 U.S. at 8.  Some of the factors the Court should evaluate include whether the claims under review are separable from the remaining claims and whether the nature of the claims under

---

[2]  The second factor – the relief sought by Plaintiff – indicates that while Plaintiff seeks only monetary relief, the source of that monetary relief would be different from each defendant.

review is such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.  Id.

 Here, Plaintiff's Motion for a Rule 54(b) certification should be denied because issuing a Rule 54(b) certification would be inefficient and a waste of judicial resources, and is therefore not in the interests of sound judicial administration.  First, Plaintiff's request for a Rule 54(b) certification is untimely.  Plaintiff was provided ample opportunity to seek a Rule 54(b) certification for his appeal by the Tenth Circuit.  See Doc. 80.  Plaintiff failed to do so within the time frame established by the Tenth Circuit, and his appeal has already been dismissed.  See Doc. 102.  Granting Plaintiff a Rule 54(b) certification now would undermine the Tenth Circuit's ability to control its docket.[3]

Second, as set forth above, Plaintiff's claims are not separable.  If Plaintiff were to appeal his claims against the U.S. Capitol Police and Representative Waxman now, the Tenth Circuit would be required to address and decide many of the same factual and legal issues a second time in the event that Plaintiff were to appeal his remaining claim against former Agent Busch.

Finally, Plaintiff will not be prejudiced by a delay.  Plaintiff's only remaining claim is ripe for resolution.  A motion to dismiss his claim against former Agent Busch is fully briefed.[4] See Doc. 61 (motion); Doc. 89 (response); Doc. 96 (reply); Doc. 101 (supplemental response);

---

[3] Presumably, if granted a Rule 54(b) certification now, Plaintiff could file a new appeal. This Court has already denied Plaintiff leave to proceed in forma pauperis on appeal, noting that Plaintiff's appeal was "not taken in good faith because Plaintiff has not shown the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." (Doc. 83.)

[4] Plaintiff has also filed a motion to transfer venue, which is fully briefed. See Doc. 85 (motion); Doc. 90 (response).  Plaintiff's deadline to file a reply was January 25, 2010.

Doc. 103-2 (amended supplemental response).  It is likely that all claims in Plaintiff's action will be final within a reasonable time.

For the above reasons, this Court should deny Plaintiff's Motion for a Rule 54(b) certification.

Respectfully submitted this 24th day of February, 2010.

DAVID M. GAOUETTE
United States Attorney

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

489

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 24th day of February, 2010, I have mailed or served the foregoing document and copies of all unpublished cases to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
Inmate # 2010-00000796
Douglas County Jail
4000 Justice Way
Castle Rock, CO  80109

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, JUDGE**

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

            Plaintiff,

v.

FRED BUSCH, Agent, U.S. Capitol Police,

            Defendant.

_____

**ORDER**

_____

        On Plaintiff's Motion for Entry of Judgment Under Rule 54(b) (Doc 104), and

Defendant's Response (Doc 110), the Court concludes that the motion should be denied

because the claims on which Plaintiff seeks a Rule 54(b) certification are not final within the

meaning of Rule 54(b) and the interests of sound judicial administration favor denial of a

Rule 54(b) certification.   Accordingly,

        Plaintiff's Motion (Doc 104) is DENIED.

                                            BY THE COURT:


                                              s/Lewis T. Babcock
                                            Lewis T. Babcock, Judge

DATED:   February 25, 2010

SOLOMON B COHEN
ID 2010-0000796
DOUGLAS COUNTY JAIL
4000 JUSTICE WAY
CASTLE ROCK
CO 80109

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 10 2010

GREGORY C. LANGHAM
CLERK

TO: CLERK OF THE COURT, US DISTRICT COURT

RE: CASE No 08-CV-02188-LTB-CBS

DEAR CLERK OF THE COURT

I WISH TO APPEAL THE COURTS

LATEST ORDER, DENYING R-54 CERTIFICATION.

PLEASE SEND ME THE NECESSARY

FORMS.

THANK YOU FOR YOUR ATTENTION,

SINCERELY,

SOLOMON B COHEN pro se                      03/05/10

THE JAIL IS REFUSING TO PROVIDE FOR CERTIFY
INMATE ACCOUNT. ANOTHER LAWSUIT AGAINST
COUNTY JAIL SHERIFFS LIKELY — THIS IS SHOCKING

CC. MARCY COOK & ASST US ATTORNEY

491

Case 1:08-cv-02188-LTB-CBS   Document 113-1   Date Filed: 08/16/2010   Page 1 of 1

Appellate Case: 10-1283   Document: 21   Date Filed: 03/10/10   Page 1 of 1   Page: 492



Inmate _COHEN_
Douglas County Jail
4000 Justice Way
Castle Rock, CO  80109

08CV2188

DENVER CO 802

09 MAR 2010 PM 3 L

USA 44

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 10 2010

GREGORY C. LANGHAM
CLERK

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
901  19th ST
Room  A-105
DENVER
CO  802\#94

80294+2500

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,
    Plaintiff,
v.

FRED BUSCH, Agent, U.S. Capitol Police,
    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action is before the court on: (1) "Defendant Fred Busch's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)" (filed October 5, 2009) (doc. # 61); (2) Mr. Cohen's "Motion for Change of Venue" (filed December 21, 2009) (doc. # 85); and (3) Mr. Cohen's "Motion to Amend Complaint" (filed January 20, 2010) (doc. # 97). Pursuant to the Order of Reference dated November 12, 2008 (doc. # 9) and the memoranda dated October 6, 2009, December 30, 2009, and January 21, 2010 (docs. # 62, # 87, and # 99), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, Mr. Cohen's "Opposition to Fred Busch's Motion to Dismiss" ("Response") (filed January 5, 2010) (doc. # 89), Mr. Cohen's additional "Memorandum of Law and Points of Opposition to Defendant Fred Busch's Motion to Dismiss" (filed January 29, 2010) (doc. # 101), Mr. Cohen's amended "Memorandum of Law and Points of Opposition to Defendant Fred Busch's Motion to Dismiss" (filed February 11, 2010) (doc. # 108), Defendant Busch's responses (filed January 11, 2010 and January 28, 2010) (docs. # 90 and # 100), Defendant Busch's Reply (filed January 19, 2010)

(doc. # 96), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Plaintiff Mr. Cohen brings this civil action in his *pro se* capacity.  Mr. Cohen alleges pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), that he was wrongfully arrested by former Agent Busch of the United States Capitol Police when he went to Representative Waxman's office in Washington, D.C. in November 2003.  (*See* Second Amended Prisoner Complaint ("SAPC") (doc. # 12) at p. 3 of 28).  Mr. Cohen named the U.S. Capitol Police, Representative Waxman, and former Agent Busch as Defendants.  (*See id.*).  On October 21, 2009, the court granted the U.S. Capitol Police's and Representative Waxman's Motions to Dismiss, leaving former Agent Busch as the only Defendant. (*See* Order (doc. # 67)).  Mr. Cohen seeks only monetary relief for his claims.  (*See id.* at p.15 of 28).

Mr. Cohen alleges that he traveled to Congressman Waxman's Washington, D.C. congressional office on November 25, 2003 to complain to Congressman Waxman about his treatment at the hands of local officials in West Hollywood, California. (*See* SAPC (doc. # 12) at pp. 3-4 of 28).  Mr. Cohen apparently intended to hand-deliver to Congressman Waxman "a letter asking for the Congressman's support in becoming a US Citizen after 10+ years in the United States." (*See* doc. # 12 at p. 4 of 28).  Mr. Cohen alleges that Defendant Busch "illegally wrongfully and maliciously arrested Plaintiff in the office of Defendant representative Henry Waxman at the Rayburn Office

2

Building, Washington, District of Columbia on November 25th 2003 on a fabricated and false charge of '*making threats against a Congressman*' which he later dropped [sic]." (*See* SAPC (doc. # 12) at p. 4 of 28) (emphasis in original).  Mr. Cohen was detained by ICE on November 26, 2003 in Virginia after a referral by the U.S. Capitol Police.  (*See* initial Prisoner Complaint (doc. # 3) at p. 28 of 77).[1]

Mr. Cohen alleges nine claims: (1) violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments; (2) deprivation of constitutional rights, privileges, and immunities resulting in psychological harm; (3) extreme mental distress caused by the Defendants' actions; (4) violation of the First and Sixth Amendment communication privilege between Mr. Cohen and Representative Waxman; (5) intentional arrest without probable cause; (6) damage in the form of loss of personal freedom, pain and suffering, and loss of reputation; (7) conspiracy; (8) improper refusal by Agent Busch to disclose his badge number; and (9) bad faith or, alternatively, negligent investigation.  (*See id.* at pp. 5-8, 19-24 of 28).  Mr. Cohen sues Defendant Busch "individually and in his official capacity."  (*See* doc. # 12 at p. 3 of 28).

II.     Defendant Busch's Motion to Dismiss

A.      Lack of Personal Jurisdiction Over Defendant Busch

Defendant Busch moves to dismiss the SAPC pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  When a court's power to exercise personal

---

[1]     At the time he filed this action, Mr. Cohen was in the custody of ICE.  Upon information and belief, Mr. Cohen is currently in the custody of the United States Marshal Service.  (*See* doc. # 110 at n. 1).

jurisdiction over a nonresident defendant is challenged by a motion under Fed. R. Civ. P. 12(b)(2), and the question of jurisdiction is resolved based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing of a sufficient basis for jurisdiction. *Mylan Labs., Inc. v. Akzon, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). *See also Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) ("Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists."). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). It is the plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution. *United Elec. Radio and Mach. Workers of America (UE) v. 163 Pleasant Street Corporation*, 987 F.2d 39, 43-44 (1st Cir. 1993) (internal quotation marks and citation omitted).

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (internal quotation marks and citation omitted). "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether

4

the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation omitted).

Where the federal statute at issue does not authorize nationwide service of process, a court may assert personal jurisdiction to "the extent allowed by the state in which the district court sits."  Fed. R. Civ. P. 4(k)(1)(A); *SCC Communications Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002).  Because *Bivens*, 403 U.S. at 388, does not confer nationwide service of process, Rule 4(k)(1)(A) governs this court's authority to exercise personal jurisdiction over Defendant Busch as an out-of-state defendant.  Rule 4(k)(1)(A) provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

> When authorized by Federal Rule of Civil Procedure 4(k)(1)(A), service of process sufficient to exercise jurisdiction over a defendant is limited by state law, so that any challenge to the personal jurisdiction requires [the court] to assess the jurisdiction of the courts in the state where the district court is located. . . .
>
> Since in personam jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment, [the court must] inquire whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant. If it does, [the court] must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. . . .

*ESAB Group, Inc. v. Centricut, Inc.* 126 F.3d 617, 622-23 (4th Cir. 1997) (citations omitted).

"Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause.  Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident

5

defendant."  *Benton v. Cameco Corp.*, 375 F. 3d 1070, 1075 (10th Cir. 2004) (citation

omitted).  *See also United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002)

(question of whether court can exercise personal jurisdiction "collapses into a single due

process analysis under the Constitution") (internal quotation marks and citation omitted).

The Tenth Circuit has "carefully and succinctly la[id] out the well-established

constitutional analysis for personal jurisdiction."  *Benton*, 375 F. 3d at 1075.

> The Due Process Clause protects an individual's liberty interest in not
> being subject to the binding judgments of a forum with which he has
> established no meaningful contacts, ties, or relations.  Therefore, a court
> may exercise personal jurisdiction over a nonresident defendant only so
> long as there exist minimum contacts between the defendant and the
> forum state. . . .
>
> The minimum contacts standard may be met in two ways. First, a
> court may, consistent with due process, assert specific jurisdiction over a
> nonresident defendant if the defendant has purposefully directed his
> activities at residents of the forum, and the litigation results from alleged
> injuries that arise out of or relate to those activities.  Where a court's
> exercise of jurisdiction does not directly arise from a defendant's
> forum-related activities, the court may nonetheless maintain general
> personal jurisdiction over the defendant based on the defendant's general
> business contacts with the forum state.

*OMI Holdings*, 149 F.3d at 1090-91 (internal quotation marks and citations omitted).

Defendant Busch argues that he does not have minimum contacts with the

District of Colorado for purposes of specific jurisdiction.  "In determining whether a

defendant has established minimum contacts with the forum state, we examine whether

the defendant purposefully avail[ed] itself of the privilege of conducting activities within

the forum State."  *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation

omitted).  "A defendant's contacts are sufficient if the defendant purposefully directed its

activities at residents of the forum, and . . . the plaintiff's claim arises out of or results

6

from actions by the defendant himself that create a substantial connection with the forum state." *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted). The court "must consider whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559 (1986). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws." *Trujillo*, 465 F.3d at 1219 (internal quotation marks and citation omitted) (emphasis in original).

Mr. Cohen does not allege or demonstrate that Defendant Busch conducted any activities in Colorado or had any contact with him in Colorado. All of the events constituting the alleged unconstitutional conduct occurred in Washington, D.C. (*See* doc. # 12). Regarding this argument raised by Defendant Busch, Mr. Cohen responds merely that the "Court has Personal Jurisdiction over Defendant Fred Busch" and that "Busch has been served." (*See* doc. # 89 at p. 4 of 38; doc. # 108 at p. 7 of 17). Mr. Cohen has not shown that Defendant Busch has minimum contacts with the District of Colorado for purposes of specific jurisdiction. Nor has Mr. Cohen asserted or demonstrated grounds for maintaining general personal jurisdiction over Defendant Busch based on any general business contacts with the forum state. Mr. Cohen's allegations and arguments do not suffice to make a prima facie showing of personal jurisdiction over Defendant Busch. The court thus lacks personal jurisdiction over Defendant Busch and Mr. Cohen's claims against Defendant Busch are properly

dismissed pursuant to Fed. R. Civ. P. 12(b)(2).[2]

B.      Whether Mr. Cohen Fails to State Plausible Claim for Relief under *Bivens*

Defendant Busch further moves to dismiss the SAC pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief can be granted under *Bivens*.

Defendant Busch argues that Mr. Cohen's claims are barred by the statute of

limitations, that Mr. Cohen does not state a plausible claim for relief under *Bivens*, and

that he is entitled to qualified immunity.

> Under Rule 12(b)(6), [d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face. A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.
>
> Although plaintiffs need not provide detailed factual allegations to survive a motion to dismiss, they must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Furthermore, conclusory allegations are not entitled to the assumption of truth.

---

[2]     To the extent that Mr. Cohen argues in his Response that "[r]esult of defendants tortious acts continues in The State of Colorado [sic]," (*see* doc. # 89 at p. 6 of 38), he has not sufficiently alleged or demonstrated that Defendant Busch engaged in intentional and tortious actions in Washington, D.C., expressly directed at causing a harmful effect within Colorado, so as to establish a sufficient nexus between Defendant Busch and Colorado. *See Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 237 (Colo. 1992) ("The United States Supreme Court has addressed the issue of what contacts are necessary to satisfy due process in the context of an intentional tort.") (internal quotation marks and citation omitted). "[T]he Court approved an 'effects' test and held that where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the Defendant and the state so as to satisfy due process." *Id.* (citations omitted).

*Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1037 (D. Colo. 2009) (internal quotation marks and citations omitted).

1.      Statute of Limitations

Defendants argue that Mr. Cohen's claims are barred by the applicable statute of limitations.  It is undisputed that Mr. Cohen filed his initial Prisoner Complaint on or about October 9, 2008 and that Mr. Cohen's claims arise from an incident that occurred on November 25, 2003, almost five years before Mr. Cohen filed his Complaint.  (*See* Complaint (doc. # 3)).

"A *Bivens* action is subject to the limitation period for an action under 42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state where the cause of action accrues."  *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007) (citations omitted).  In Colorado, the limitation on personal injury claims is two years.  *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided");  *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying § 13-80-102 to § 1983 claim).

"Although state law establishes the statute of limitations, federal law determines when plaintiffs' federal *Bivens* claims accrued."  *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004) (citation omitted).  "Under federal law, the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  *Van Tu*, 364 F.3d at

1199 (internal quotation marks and citation omitted).  *See also Kripp v. Luton*, 466 F.3d

1171, 1175 (10th Cir. 2006) ("[F]or *Bivens* actions (the federal analogue to § 1983

claims), we have held that a claimant's cause of action accrues when the claimant knew

or had reason to know 'of the existence and cause of injury which is the basis for his

action.'") (citation omitted).

As an affirmative defense, the statute of limitations may be subject to certain

defenses such as waiver, estoppel, or equitable tolling.  *See Rotella v. Wood*, 528 U.S.

549, 560 (2000) (federal statutes of limitations "are generally subject to equitable

principles of tolling").  However equitable tolling is employed as an "exception, not the

rule." *Rotella*, 528 U.S. at 561.  Mr. Cohen's claims appear to be barred by the statute

of limitations, unless Mr. Cohen shows a basis for tolling the limitations period.

Mr. Cohen seems to argue that the statute of limitations should be tolled because

he was under a mental disability, having been "declared Incompetent to Proceed" until

his competency was restored while he was housed at the Colorado Mental Health

Institute ("CMHI") between November 19th, 2007 and March 31, 2008.   (*See* SAPC

(doc. # 12) at p. 7 of 28 ("On December 7th, 2007, Defendant US Capitol Police

telephoned Sarah Morgan LSW at Colorado Mental Health Institute at Pueblo, Colorado

("CMHIP") to which [Mr. Cohen] had been ordered for Competency Restoration . . . Prior

to this Competency Restoration, Plaintiff was not fit to file this Complaint Action").  *See*

*also* Mr. Cohen's Response (doc. # 89) at p. 6 of 38; Motion for Change of Venue (doc.

# 85) at p. 1 of 3 ("Plaintiff first became aware that his civil rights had been violated

when he attended competency restoration classes given by Dr. Sean Kelly in Colorado.

Plaintiff was declared Competent to Proceed by Denver District Judge Sheila

Rappaport, Denver District Court, State of Colorado March 30, 2008."); doc. # 108

("Plaintiff first became aware of his civil rights, existence of *Bivens* remedy . . . when,

after being declared Incompetent to Proceed, he attended classes by Dr. Kelly at

Colorado Mental Health Institute at Pueblo from November 19th 2007-March 31st

2008.").

A defendant's argument that a claim is barred by the statute of limitations raises

an affirmative defense, and "[i]t is beyond dispute that the defendants have the burden

of proof in establishing the elements of the affirmative defense of the statute of

limitation." *Tello v. Dean Witter Reynolds, Inc.* 410 F.3d 1275, 1292 (11th Cir. 2005).

*See also Kingman Reef Atoll Investments, L.L.C. v. U.S.*, 541 F.3d 1189, 1197 (9th Cir.

2008) (ordinarily the defendant bears the burden of proving an affirmative statute of

limitations defense)*; Roberts v. Barreras*, 484 F.3d at 1240-41 ("failure to exhaust is an

affirmative defense under the PLRA, and . . . the burden of proof for the exhaustion of

administrative remedies in a suit governed by the PLRA lies with the defendant")

(internal quotation marks and citations omitted);  *Vega-Encarnacion v. Babilonia*, 344

F.3d 37, 42 (1st Cir. 2003) (statute of limitations as to a *Bivens* action against individual

federal officers is an affirmative defense) (citations omitted);  *Fontenot v. Upjohn Co.*,

780 F.2d 1190, 1194 (5th Cir. 1986) ("if the movant bears the burden of proof on an

issue, either because he is the plaintiff or as a defendant he is asserting an affirmative

defense, he must establish beyond peradventure all of the essential elements of the

claim or defense to warrant judgment in his favor").

Dismissal based on the affirmative statute of limitations defense cannot usually

be made on pleadings without proof.  "At the motion-to-dismiss stage, a complaint may

be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello*, 410 F.3d at 1288 n. 13 (internal quotation marks and citations omitted). *See also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaint may be dismissed where the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (citation omitted); *Bullington v. United Air Lines Co.*, 186 F.3d 1301, 1310 n. 3 (10th Cir. 1999) (noting "that Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period") (citation omitted), *implicitly overruled on other grounds as recognized by Boyer v. Cordant Technologies*, 316 F.3d 1137, 1140 (10th Cir. 2003); *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1116 (D.C. Cir. 1985) (a defense based on the statute of limitations is an affirmative defense that cannot succeed on a Rule 12(b)(6) motion unless it is unequivocally apparent from the face of the complaint that the statute precludes the action).

Defendant Busch has not presented evidence to refute Mr. Cohen's allegation that the statute of limitations should be tolled because he was under a mental disability until March 31, 2008. Based upon the pleadings, the court cannot determine whether Mr. Cohen's claims are barred by the statute of limitations or Mr. Cohen's mental disability sufficiently tolled the statute of limitations bar. Defendants' request for dismissal of Mr. Cohen's claims pursuant to Fed. R. Civ. P. 12 based on the statute of limitations is properly denied at this time.

2.      Sovereign Immunity from *Bivens* Claims

Mr. Cohen is suing Defendant Busch "individually and in his official capacity." (*See* doc. # 12 at p. 3 of 28).  To the extent Mr. Cohen brings his claims against Defendant Busch in his official capacity, such claims must be dismissed.

"*Bivens* claims allow plaintiffs to recover from individual federal agents for constitutional violations these agents commit against plaintiffs."  *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002).  *See also Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001) (in *Bivens*, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights").  A *Bivens* action alleging that a federal employee violated a plaintiff's constitutional rights cannot be maintained against the United States or an agency of the United States.  *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (direct action for damages against federal agencies not recognized under *Bivens*).  *See also Malesko*, 534 U.S. at 72 ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. . . The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP.");  *Simmat v. U.S. Bureau of Prisons* 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity – not . . . against officials in their official capacity").  To the extent that Mr. Cohen is alleging his *Bivens* claims against Defendant Busch in his official capacity, such claims are barred by sovereign immunity and are thus properly dismissed with prejudice for lack of subject matter jurisdiction.

13

3.      First Amendment Claim

The Supreme Court has not expressly extended *Bivens* liability to First Amendment claims.  In *Ashcroft v. Iqbal*, the Supreme Court noted that in *Bush v. Lucas*, 462 U.S. 367 (1983), it had "declined to extend *Bivens* to a claim sounding in the First Amendment." --- U.S. ----, 129 S. Ct. 1937, 1948 (2009).[3]  *See also Malesko*, 534 U.S. at 68 (declining to extend *Bivens* "into any new context").  For this reason, Mr. Cohen does not state a plausible claim for violation of the First Amendment against Defendant Busch.

Even if the court were to recognize a First Amendment claim against Defendant Busch under *Bivens*, Mr. Cohen has not pled a plausible First Amendment claim.  Mr. Cohen asserts that his "right under the First Amendment … to freedom of expression and to petition the government for a redress of grievance" has been violated.  (*See* doc. # 12 at p. 5 of 28).  Mr. Cohen does not allege how his right to "freedom of expression" or right to "petition the government for redress" were restricted by Defendant Busch. Mr. Cohen makes no allegations that specifically link Defendant Busch to any First Amendment violation or allege how Defendant Busch's actions restricted or infringed upon his protected First Amendment rights.  Without specific allegations, a *Bivens* claim for money damages against an individual cannot survive.  *See Ashcroft v. Iqbal*, 129 S. Ct. at 1948 (noting that a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  As Mr.

---

[3]      However, because "Petitioners [did] not press this argument" the Court "assume[d], without deciding, that respondent's First Amendment claim is actionable under *Bivens*."  *Ashcroft v. Iqbal*,  --- U.S. ----, 129 S. Ct. at 1948.

14

Cohen's conclusory allegations do not provide any facts to support his First Amendment claim against Defendant Busch, his First Amendment claim is properly dismissed.

4.      Fourth Amendment Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, . . . , against unreasonable searches and seizures . . . ."  U.S. CONST. Amend. IV.  The Supreme Court has recognized liability of individual federal officers for violations of the Fourth Amendment.  *See Bivens*, 403 U.S. at 388 (recognizing for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights and permitting a victim of a Fourth Amendment violation by federal officers to bring suit for money damages against the officers in federal court).

Contrary to Defendant Busch's argument that Mr. Cohen does not provide any specific factual allegations to support a Fourth Amendment violation, the court concludes that Mr. Cohen has adequately alleged the nature of his Fourth Amendment claim.  "A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause."  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citation omitted).  Mr. Cohen alleges that Defendant Busch "illegally[,] wrongfully[,] and maliciously arrested Plaintiff in the office of Defendant [R]epresentative Henry Waxman at the Rayburn Office Building, Washington, District of Columbia on November 25th 2003 on a fabricated and false charge of '*making threats against a Congressman*,'" in violation of his Fourth Amendment rights.  (*See* SAPC (doc. # 12) at p. 4 of 28

15

(emphasis in original); *see also* p. 5 of 28; p. 6 of 28 ("Defendant then took Plaintiff in handcuffs out of the Congressman's office and detained him in his office, although there were no grounds for his arrest.")).  At this stage of the litigation, on a motion to dismiss pursuant to Rule 12, Mr. Cohen's allegations are at least minimally sufficient to state a cognizable claim under the Fourth Amendment.  Defendant Busch's Motion to Dismiss is properly denied at this time as to Mr. Cohen's Fourth Amendment claim.

5.      Fifth Amendment Claim

Mr. Cohen conclusorily alleges violation of his Fifth Amendment rights.  (*See* SAPC (doc. # 12) at p. 5 of 28).  The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. Amend. V.  The Supreme Court has recognized *Bivens* liability for violations of the Fifth Amendment Due Process Clause.  *See Davis v. Passman*, 442 U.S. 228 (1979) (finding implied damages remedy under the Due Process Clause of the Fifth Amendment).

Mr. Cohen does not specify the nature of the Fifth Amendment violation he alleges or provide any specific factual allegations to support a Fifth Amendment violation.  Mr. Cohen provides no facts suggesting how Defendant Busch's conduct violated his Fifth Amendment rights.  Mr. Cohen's allegations do not provide any underlying facts to state a plausible claim for violation of the Fifth Amendment by Defendant Busch.  Mr. Cohen's Fifth Amendment claim is properly dismissed.

16

6.      Sixth Amendment Claim

Mr. Cohen alleges violation of his Sixth Amendment rights.  (*See* SAPC (doc. # 12) at pp. 5, 19 of 28).  The Sixth Amendment provides certain rights "[i]n all criminal prosecutions."  U.S. CONST. Amend. VI.  The Supreme Court has not expressly extended *Bivens* liability to Sixth Amendment claims.  *See Malesko*, 534 U.S. at 66-68 (2001) (explaining that Supreme Court has recognized *Bivens* causes of action only in Fourth, Fifth, and Eighth Amendment cases and declining to extend *Bivens* "into any new context").  For this reason, Mr. Cohen does not state a plausible claim for violation of the Sixth Amendment against Defendant Busch.

Even if the court were to recognize a Sixth Amendment claim against Defendant Busch under *Bivens*, Mr. Cohen has not pled a plausible Sixth Amendment claim.  Mr. Cohen does not adequately allege any basis for his Sixth Amendment claim, *i.e.*, right to criminal counsel, Confrontation Clause, speedy trial, etc.  Mr. Cohen has not alleged any facts suggesting that Defendant Busch's conduct did not meet the Sixth Amendment's requirements.  The only allegation relating to Defendant Busch is that he arrested Mr. Cohen without probable cause on November 25, 2003.  Mr. Cohen does not allege any facts pertaining to a criminal prosecution; in fact, Mr. Cohen alleges that the charge against him was "later dropped" and "[n]o criminal charges were ever filed against the Plaintiff."   (*See* doc. # 12 at pp. 4, 6 of 28).  Mr. Cohen makes no allegations that specifically link Defendant Busch's conduct to any Sixth Amendment violation or indicate how Defendant Busch's actions restricted or infringed upon his protected Sixth Amendment rights.  As Mr. Cohen's allegations do not provide any facts to support his Sixth Amendment claim against Defendant Busch, the Sixth Amendment

17

claim is properly dismissed.

7.     Other Claims

Mr. Cohen alleges additional claims and makes general references to possible additional claims.  (*See* SAPC (doc. # 12) at pp. 5 of 28 ("fourteenth amendment[ ]"), p. 22 of 28 (conspiracy), p. 23 of 28 ("Defendant refused to give Plaintiff his name or badge number"), p. 24 of 28 (negligence)).

To the extent that Mr. Cohen alleges violation of the Fourteenth Amendment, at the time of the alleged conduct, Defendant Busch was a federal employee.  The Fourteenth Amendment applies only to state violations.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (since the Fourteenth Amendment applies only to state action, discrimination by federal authorities may be brought as violations of the Due Process Clause of the Fifth Amendment).  "The Supreme Court has consistently applied the same standards to determine deprivation of liberty without due process under the fifth and the fourteenth amendments." *Doe v. U.S. Dept. of Justice*, 753 F.2d at 1105 n. 13 (citation omitted).  As Mr. Cohen fails to state a plausible claim for relief against Defendant Busch under the Fourteenth Amendment, his *Bivens* claim alleging violation of the Fourteenth Amendment is properly dismissed.

Mr. Cohen further alleges that Defendant Busch conspired to violate his constitutional rights.  (*See* SAPC (doc. # 12) at p. 22 of 28).  Civil conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another; and an

18

overt act that results in damage." *Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) (internal quotation marks and citation omitted).  Mr. Cohen fails to allege facts with sufficient specificity to suggest the existence of any of the elements of a conspiracy.  As Mr. Cohen has made nothing more than a conclusory and vague allegation of a conspiracy, his claim is properly dismissed for failure to state a claim upon which relief can be granted.  *See Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) ("[C]onclusory allegations that defendants acted in concert, or conspired without specific factual allegations to support such assertions are insufficient.") (internal quotation marks and citation omitted);  *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1221 (S.D. Cal. 1997) (Where a complaint contains merely conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights, it must be dismissed.") (citations omitted).

As to Mr. Cohen's allegation that Defendant Busch refused to give his name or badge number, Mr. Cohen has not provided any legal basis that such a claim is constitutional in nature or cognizable under *Bivens.*  To the extent that Mr. Cohen alleges that Defendant Busch was negligent, "negligence claims against government agents are not cognizable under *Bivens*, . . . ."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n. 4 (10th Cir. 2001) (citations omitted).

8.    Qualified Immunity

Defendant Busch raises the defense of qualified immunity.  The Supreme Court has recognized a qualified immunity defense for *Bivens* claims against federal officials. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997).  In both § 1983 claims against state

officials and *Bivens* claims against federal officials, "officials performing discretionary function[s], generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 914-15 (internal quotation marks and citation omitted). The "qualified immunity analysis is identical under" section 1983 and *Bivens* causes of action. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

To the extent that the court recommends dismissal of all but Mr. Cohen's Fourth Amendment claim, Defendant Busch is entitled to qualified immunity from all of Mr. Cohen's claims except his Fourth Amendment claim. To the extent that the court recommends denial of Defendant Busch's Motion to Dismiss Mr. Cohen's Fourth Amendment claim, the court determines that at this stage of the litigation, on a motion to dismiss, Defendant Busch is not entitled to qualified immunity. "It has long been established that an arrest and search without probable cause that a crime has been

20

committed violates the Fourth Amendment." *Shroff v. Spellman*, ___ F.3d ___, 2010 WL 1767216 (10th Cir. 2010) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007) ("The law was and is unambiguous: a government official must have probable cause to arrest an individual.")).[4]  The "court must grant a police officer qualified immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff."  *Olsen v. Layton Hills Mall*, 312 F.3d at 1312 (internal quotation marks and citation omitted).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (internal quotation marks and citation omitted).  *See also Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (inquiry is whether "it would be clear to a reasonable officer that what he is doing violates that right").

Mr. Cohen alleges that Defendant Busch "illegally[,] wrongfully[,] and maliciously arrested Plaintiff in the office of Defendant [R]epresentative Henry Waxman at the Rayburn Office Building, Washington, District of Columbia on November 25th 2003 on a fabricated and false charge of '*making threats against a Congressman.*'" (*See* SAPC (doc. # 12) at p. 4 of 28 (emphasis in original); *see also* pp. 5, 6 of 28).  The court having concluded that Mr. Cohen adequately states a claim for violation of the Fourth Amendment based on his allegations that Defendant Busch arrested him without a warrant or probable cause, Defendant Busch has not demonstrated entitlement to qualified immunity on a motion to dismiss.  Because the right to be free from an arrest

---

[4]   Copies of unpublished decisions cited are attached to this Recommendation.

without probable cause was clearly established under the Fourth Amendment at the time and at this stage of the litigation Mr. Cohen's allegations are minimally sufficient to state a *Bivens* claim for violation of the Fourth Amendment for arrest without probable cause, Defendant Busch's Motion to Dismiss on the basis of qualified immunity on the Fourth Amendment claim is properly denied at this time.

III.   Mr. Cohen's Motion for Change of Venue

Mr. Cohen moves for change of venue to the United States District Court for the District of Columbia.  (*See* Motion (# 85); *see also* Response (doc. # 89) at p. 5 of 38 ("To the extent that Plaintiff is unable to successfully argue against Defendant's claim of lack of jurisdiction in the attached Memorandum, Plaintiff asks for Change of Venue to US District Court for the District of Columbia.")).

"Congress enacted 28 U.S.C. § 1404(a) in 1948 to allow for the easy change of venue within a united federal system." *Knapp v. Romer*, 909 F. Supp. 810, 812 (D. Colo. 1995).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A party moving to transfer a case bears the burden of showing that the existing forum is inconvenient.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  A motion to transfer is within the discretion of the trial court and its action will be disturbed only when there has been an abuse of discretion.  *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972).

A motion to transfer pursuant to § 1404(a) calls upon the district court to consider

22

a number of case-specific factors. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (motions for transfer must be adjudicated according to an "individualized, case-by-case consideration of convenience and fairness") (internal quotation marks and citation omitted). Among the factors a district court should consider are:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler*, 928 F.2d at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)). "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co.*, 467 F.2d at 664.

Defendant Busch concedes that this action could have originally been brought in the District Court for the District of Columbia. It is undisputed that the incident giving rise to the SAPC occurred in Washington, D.C. on November 25, 2003. The primary, if not the only, witnesses to the incident are Mr. Cohen and Defendant Busch. Mr. Cohen has not presented any specific grounds for a transfer of venue based on convenience or fairness. Mr. Cohen concedes that he originally filed this action in the District of Colorado "because the plaintiff is incarcerated within the jurisdiction of this court. . . ." Mr. Cohen remains incarcerated in the District of Colorado. Defendant Busch currently resides in Massachusetts. There is no basis to question the enforceability of a judgment obtained in the District of Colorado or to conclude that all of the parties cannot

23

obtain a fair trial in the District of Colorado.  There is no evidence that the dockets are congested in the District of Colorado.  The law to be applied in the case is federal law, which can be equally applied by the District Court in Colorado or the District Court in Washington, D.C.  Mr. Cohen argues that "if the case is not transferred, the action will be time-barred." (*See* doc. # 85 at p. 2 of 3).  The court has addressed Defendant Busch's statute of limitations argument in section II. B. 1. of this Recommendation, above.  The balance of considerations is not in favor of transferring venue.  In its discretion, the court finds that a transfer of venue would not be in the interest of justice and declines to transfer the action.

IV.     Mr. Cohen's Motion to Amend Complaint

Mr. Cohen moves to "amend section G of second amended complaint (SAC) to ask for jury trial and specific damages." (*See* doc. # 97 at p. 1 of 7).  Motions to amend are committed to the trial court's discretion.  *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).  While Fed. R. Civ. P. 15 requires leave to amend be given freely, *see* Fed. R. Civ. P. 15(a)(2), a motion to amend may be denied because of "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Foman v. Davis,* 371 U.S. 178, 182 (1962).  *See also Bauchman v. West High School,* 132 F.3d 542, 559 (10th Cir. 1997) (affirming district court's denial of motion to amend based on futility); *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984) ("In determining whether to allow amendment of a complaint, the court typically considers several factors," such as undue prejudice, undue delay, bad

24

faith, or failure to state a claim) (citation omitted).

Mr. Cohen filed his initial Prisoner Complaint on or about October 9, 2008. (*See* doc. # 3). At the court's direction, Mr. Cohen filed his Amended Prisoner Complaint on October 31, 2008. (*See* doc. # 6). On December 22, 2008, the court permitted Mr. Cohen to again amend his pleading. (*See* Courtroom Minutes/Minute Order (doc. # 11). Mr. Cohen filed his SAPC on February 17, 2009. Mr. Cohen seeks to amend his pleading more than one year after the court permitted him to file his SAPC. Mr. Cohen offers no explanation for his failure to include these matters in his previous pleadings. "[A] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Te-Moak Bands of Western Shoshone Indians of Nevada v. United States*, 948 F.2d 1258, 1261 (Fed. Cir. 1991) (internal quotation marks and citation omitted). Mr. Cohen does not indicate that the information necessary to add these matters to his pleading was unavailable to him prior to the filing of his Motion to Amend on January 20, 2010.

The Tenth Circuit has "often found untimeliness alone a sufficient reason to deny leave to amend." *See Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001) (internal quotation marks and citation omitted).

> A district court evaluates the reasons for the delay and assesses whether they amount to excusable neglect. Untimeliness is sufficient cause for denying leave [to amend], especially when the movant offers no adequate explanation for the delay. A district court may deny leave if the movant knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint.

*Cuenca v. University of Kansas*, 205 F. Supp.2d 1226, 1230 (D. Kan. 2002) (internal quotation marks and citations omitted). *See also First City Bank, N.A. v. Air Capitol*

25

*Aircraft Sales, Inc.*, 820 F.2d 1127, 1132 (10th Cir. 1987) (finding that trial court properly exercised its discretion in denying motion to amend where the moving party belatedly raised issues that should or could have been presented earlier).  *Cf. Wildauer v. Frederick County*, 993 F.2d 369, 371-72 (4th Cir. 1993) (motion to amend properly denied where plaintiff had access to necessary information as early as April 29, 1991, but did not file his motion to amend until July 17, 1991, after the deadline established in the scheduling order had passed).  The court concludes that Mr. Cohen's attempt to amend his pleading is untimely.

The court may also deny a motion to amend a complaint for failure to submit the proposed amendment.  *See Lambertson v. Utah Dept. of Corrections*, 79 F.3d 1024, 1029  (10th Cir. 1996) (district court did not abuse its discretion in denying plaintiff's motion to amend for failure to provide adequate explanation for delay in seeking amendment and for failure to provide a copy of the proposed amended pleading).  *See also Zaidi v. Ehrlich*, 732 F.2d 1218, 1220 (5th Cir. 1984) (district court should have held motion to amend in abeyance pending submission of plaintiff's proposed amendment); *Bownes v. City of Gary, Indiana*, 112 F.R.D. 424, 425 (N.D. Ind. 1986) ("common sense" dictates that a party seeking leave to amend should accompany his motion with a copy of the proposed amended complaint);  *Williams v. Wilkerson*, 90 F.R.D. 168, 170 (E.D. Va. 1981) (where plaintiff sought leave to amend, a copy of the proposed amended pleading must be attached to the motion).  While Mr. Cohen has cursorily described the amendments he seeks to allege, his intended amendments are not completely clear (*see* doc. # 97 at pp. 3-4 of 7) and he has not attached a copy of a complete proposed Amended Complaint.

Mr. Cohen's proposed Amendment is also futile.  Nothing in Mr. Cohen's proposed amendment alters the court's analysis and recommendation herein.  Further, the amendments Mr. Cohen seeks are unnecessary.  To the extent he seeks to amend to demand costs associated with his medical treatment, compensatory damages in a specific sum, and "[a]ll costs associated with this action, including reasonable attorneys' fees" (*see* doc. # 97 at p. 2 of 7), he has already requested such relief in his SAPC (*see* doc. # 12 at p. 15 of 28).  In any event, to the extent that Mr. Cohen seeks "reasonable attorneys' fees," he does not specify any legal authority for recovery of attorney fees in this case and as a *pro se* litigant, he is not entitled to attorney fees as he has not incurred any attorney fees.  *See Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991) (pro se litigants are not entitled fees under 42 U.S.C. § 1988, the civil rights statute's attorney's fees provision);  *Pitts v. Vaughn*, 679 F.2d 311 (3d Cir. 1982) (pro se plaintiff alleging civil rights violations not entitled to attorney's fees under 42 U.S.C. § 1988(b));  *Cunningham v. F.B.I.*, 664 F.2d 383 (3d Cir. 1981) (pro se plaintiff proceeding under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) not entitled to recover attorney's fees).  As for Mr. Cohen's request for "[t]rial by jury as to all issues so triable," Mr. Cohen may demand a jury trial without seeking to amend his pleading.  Fed. R. Civ. P. 38(b) provides in pertinent part:

> a party may demand a jury trial by (1) serving the other parties with a written demand – which may be included in a pleading – no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d).

"The 'last pleading directed to such issue' will generally be an answer or reply . . . and is determined on a claim by claim basis."  *In re Kaiser Steel Corp.*, 911 F.2d 380, 388

27

(10th Cir.1990) (citations omitted).  Here, the only operative pleading filed is Mr. Cohen's SAPC.  No Defendant has answered.  Mr. Cohen need not amend his pleading in order to make a jury demand.  Mr. Cohen's proposed amendment may also be properly denied as futile.  See *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992) (a court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted);  *Schepp v. Fremont County*, 900 F.2d 1448, 1451 (10th Cir. 1990) (A motion to amend may be denied as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim.").

Accordingly, IT IS RECOMMENDED that:

1.      "Defendant Fred Busch's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)" *either* be GRANTED pursuant to Fed. R. Civ. P. 12(b)(2) and this civil action be dismissed in its entirety for lack of personal jurisdiction over Defendant Busch *or alternatively* be GRANTED in part and DENIED in part pursuant to Fed. R. Civ. P. 12(b)(6) and all claims in the Second Amended Prisoner Complaint (doc. # 12) be dismissed *except* the Fourth Amendment claim for arrest without probable cause.

2.      Mr. Cohen's "Motion for Change of Venue" (filed December 21, 2009) (doc. # 85) be DENIED.

3.      Mr. Cohen's "Motion to Amend Complaint" (filed January 20, 2010) (doc. # 97) be DENIED.

28

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated at Denver, Colorado this 10th day of May, 2010.

BY THE COURT:


    s/Craig B. Shaffer       
United States Magistrate Judge

Westlaw.

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

**H**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Tenth Circuit.
Amy SHROFF; Laila Kruse, a minor by her mother
and next friend Amy Shroff, Plaintiffs-Appellees,
v.
Frank SPELLMAN, in his official and individual
capacity, Defendant-Appellant.
**No. 09-1084.**

May 4, 2010.

Appeal from the United States District Court for the
District of Colorado (D.C. No.
07-CV-01466-REB-KMT).
Suzanne A. Fasing, Assistant City Attorney, Office
of the Denver City Attorney, Denver, CO, (Michael
T. Lowe of Bruno, Colin, Jewell, & Lowe, P.C.,
Denver, CO, on the briefs) for Defendant-Appel-
lant.

Qusair Mohamedbhai, (David A. Lane, with him on
the brief) Killmer, Lane & Newman, LLP, Denver,
CO, for Plaintiffs-Appellees.

Before TACHA, ALARCÓN,[FN*] and
TYMKOVICH, Circuit Judges.

> FN* Honorable Arthur L. Alarcón, Senior
> Circuit Judge, U.S. Court of Appeals for
> the Ninth Circuit, sitting by designation.

**ORDER**

ALARCÓN, Circuit Judge.

**\*1** Appellee's motion to correct the opinion is gran-
ted. The corrected opinion filed nunc pro tunc to
March 23, 2010, is attached to this order.

Frank Spellman, a Denver Police Officer, has ap-
pealed from the denial of his motion for summary
judgment based on his defense of qualified im-
munity in this civil rights action filed against him
by Amy Shroff pursuant to 42 U.S.C. § 1983. Of-
ficer Spellman contends that Ms. Shroff failed to
demonstrate that he violated her federal constitu-
tional rights by arresting her without probable
cause and invading her right to privacy by requiring
her to be in the presence of a female police cadet
while she exposed her breasts to pump milk for her
baby.

We affirm because we conclude that the district
court did not err in concluding that Officer Spell-
man arrested Ms. Shroff without probable cause,
and subjected her to a strip search in violation of
the Fourth Amendment.

**I**

**A**

In response to Officer Spellman's motion for sum-
mary judgment, Ms. Shroff presented the following
evidence to demonstrate that Officer Spellman is
not entitled to qualified immunity as a matter of
law.[FN1]

> FN1. In determining whether the district
> court erred in denying a motion for sum-
> mary judgment based on the defense of
> qualified immunity, we review the evid-
> ence in the light most favorable to the non-
> moving party. Medina v. Cram, 252 F.3d
> 1124, 1128 (10th Cir.2001).

Ms. Shroff and Greg Kruse engaged in a sexual re-
lationship. During that time, she bore a child named
Laila Kruse ("Laila"). Laila was born on November
7, 2005. During this relationship, Mr. Kruse subjec-
ted Ms. Shroff to several acts of physical violence.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

Mr. Kruse choked her and threw her against a wall. He also broke the wrist of a friend of Ms. Shroff. During a Thanksgiving dinner party in 2005, Mr. Kruse was extremely intoxicated and was out of control "swinging his fists around." The police were called because of his conduct.

Ms. Shroff filed an action in the County Court, City and County of Denver ("County Court") to obtain a civil protection order to restrain Mr. Kruse from committing further violent acts against her or harassing her. The County Court issued a temporary protection order ("restraining order"). It was served on Mr. Kruse.

The restraining order provides as follows:

THE COURT ORDERS THAT YOU THE RESTRAINED PARTY shall not contact, harass, stalk, injure, intimidate, threaten or molest the Petitioner(s) or any of the children if so noted; or otherwise violate this Order. You shall not use, attempt to use or threaten to use physical force against the Petitioner(s) or any of the children if so noted; that would reasonably be expected to cause bodily injury. You shall not engage in any conduct that would place the Petitioner or any of the children if so noted; in resonable [sic] fear of bodily injury.

/ You must keep a distance of at least 100 yards from the Protected Party and or the below named children.

1. *No Contact Provisions*

/ It is ordered that you shall have no contact of any kind and stay at least 100 yards from the Petitioner(s) or any of the children if so noted; and you shall not attempt to contact the Petitioner(s) or any of the children if so noted; through any third person, except your attorney, except as follows:

*2 *NO EXCEPTIONS*

IMPORTANT INFORMATION ABOUT PRO-

TECTION ORDERS

GENERAL INFORMATION

/ This Order or injunction shall be accorded full faith and credit and be enforced in every civil or criminal [court] of the United States, Indian Tribe or United States Territory pursuant to 18[§ ] USC 2265.

/ The Restrained Party may be subject to Pursuant [sic] to 18 USC § 922(d)(g), which makes it unlawful for any person to possess or transfer a firearm who is subject to a Court Order that restrains such person from harassing, stalking or threatening an intimate partner of such person or a child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child.

NOTICE TO RESTRAINED PARTY:

/ You are directed to appear before this Court on the date shown on the front of this form to show cause, if any exists, why this Temporary Protection Order shall not be made permanent.

/ This Temporary Protection Order shall be made permanent without further notice of service or the Court may continue the Temporary Protection Order to a certain date. You are notified that Permanent Civil Protection Order shall remain [in] effect until further Order of the Court. Such Permanent Order will subject you to Federal Laws restricting firearms possession and sale 18 USC § 922(g)(8), § 924(a)(2).

/ A violation of a Protection Order may be a misdemeanor, municipal ordinance violation or a delinquent act (if committed by a juvenile) and is a deportable offense. Anyone over the age of 18 who violates this Order may be subject to fines of up to $5,000.00 and up to 18 months in jail. Violation of this Order may constitute contempt of Court. Anyone under the age of 18 who violates this Order may be subject to commitment to the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

Department of Human Services for up to two years.

/ You may be arrested or taken into custody without notice if a law enforcement officer has probable cause to believe that you violated this Order.

/ If you violate this Order thinking that the other party or anyone else has given you permission, YOU ARE WRONG, and can be arrested and prosecuted. The terms of this Order can not be changed by agreement of the [sic] ONLY THE COURT CAN CHANGE THIS ORDER.

/ Possession of a firearm while this Protection Order is in effect may constitute a felony under the Federal law, 18 USC § 922(d)(8).

NOTICE TO PETITIONER/PROTECTED PARTY:

/ You are hearby informed that if this Order is violated you may call law enforcement.

/ You may initiate contempt proceedings against the Restrained Person.

/ You can not give the Restrained Person permission to change or ignore this Order in any way. ONLY THE COURT CAN CHANGE THIS ORDER.

/ $46.00 dollars filing fee

NOTICE TO LAW ENFORCEMENT OFFICIALS:

/ If the Order has not been personally served, the law enforcement officer responding to a call of assistance, shall serve a copy of said order on the person named/Restrained Person therin [sic] and shall write the time, date, and manner of service on the Protected Person[']s copy of such Order and shall sign such statement. The officer shall provide the Court with a completed return of service form. (§ 13-14-102(11-12))

**\*3** / You shall use every reasonable means to enforce this Protection Order.

/ You shall arrest or take into custody, or if an arrest would be impractical under the circumstances, seek a warrant for the arrest of the Restrained Person when you have information amounting to probable cause that the Restrained Person has violated or attempted to violate any provision of this Order subject to criminal sanctions pursuant to § 18-6-803.5 CRS or municipal ordinance, and the Restrained Person has been properly served with a copy of this Order or the Restrained Person has received actual notice of the existence and substence [sic] of such Order.

/ You shall enforce this Order even if there is no record of it in the Protection Order Central Registry.

/ You shall take the Restrained Person to the nearest jail or detention facility.

/ You are authorized to use every reasonable effort to protect the Protected Party and named children to prevent further violence.

Approximately two weeks after the restraining order was issued, a hearing was held to determine Mr. Kruse's visitation rights. The County Court ordered that Ms. Shroff deliver Laila to Mr. Kruse's mother at the Denver Police Department District 3 ("District 3") station, located at University Boulevard and Interstate 25 so that Mr. Kruse could visit Laila in his mother's presence for two hours on Saturday, Sunday, and Monday mornings.

On Monday, February 26, 2006, Ms. Shroff and her stepfather drove to the District 3 police station to deliver Laila to Mr. Kruse's mother. As she traveled down University Boulevard, Ms. Shroff saw Mr. Kruse's truck parked outside of the Campus Lounge, a bar, a few blocks from District 3. Ms. Shroff parked her car behind Mr. Kruse's truck and took a picture of the license plate, the Campus Lounge sign, and the clock on her dashboard. She

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

photographed his truck to record the fact that it was parked outside a bar a few minutes before he was scheduled to exercise his visitation rights with his infant daughter. She did not see Mr. Kruse come out of the bar. Ms. Shroff then took her daughter into the District 3 police station and handed her over to Mr. Kruse's parents. Ms. Shroff left the police building and entered her car. Mr. Kruse parked his truck behind her car thereby preventing her from backing up. Ms. Shroff took a picture of Mr. Kruse talking to his parents whose car was parked one or two spaces away.

Ms. Shroff retrieved the restraining order from her automobile and ran back to the police station. She told two officers that Mr. Kruse was in the parking lot in violation of the restraining order. The officers went out to the parking lot to look for Mr. Kruse, however, he had left. The officers telephoned Mr. Kruse at his home which was near the police station. Mr. Kruse returned to the police station in five minutes.

Ms. Shroff and her stepfather explained to Officer Spellman that Mr. Kruse had violated the restraining order by coming to the District 3 police station and parking his truck behind her car so that she could not leave. They also told Officer Spellman that the restraining order was not reciprocal and that it applied only to Mr. Kruse. After reading the restraining order, Officer Spellman stated: "You know it looks like you're going to be arrested. I knew this was going to happen. I see you guys every weekend."

**\*4** On the date she was arrested by Officer Spellman, Ms. Shroff was nursing her baby. When she was placed in a holding cell, she told Officer Spellman that her daughter was nursing and she did not have enough breast milk at home. She asked Officer Spellman if she could use her breast pump before she was transported to the city jail. Officer Spellman told her that this situation would not have occurred if she had not caused problems by coming to the District 3 police station on multiple occasions.

Ms. Shroff told Officer Spellman repeatedly:

> Please don't do this. I don't have any way of feeding my child. She's nursing. She really can't tolerate formula. We've already had her in the pediatrician's office for these issues in the past ... [t]here's something in her digestive system that she just can't digest it and it would make her sick."

Officer Spellman replied: "She better start liking formula." Ms. Shroff's stepfather returned to her home and retrieved her breast pump. Officer Spellman permitted Ms. Shroff to go to a conference room that had no windows or cameras to pump her breasts in the presence of a female cadet. The supervising nurse at the city jail testified in her deposition that the pumping of breasts after childbirth is a medical necessity in order to relieve pain.

Being required to expose her breasts in the presence of the female officer was extremely embarrassing to Ms. Shroff. She had a hard time with her milk "letting down." The milk she expressed was turned over to her stepfather. He cared for Laila until Ms. Shroff was released from the city jail. After she pumped her breasts, Officer Spellman drove her to the city jail where she was incarcerated for approximately twenty-four hours.

**B**

Officer Spellman offered the following evidence in support of his motion for summary judgment based on his defense of qualified immunity. While he was on patrol on February 26, 2006, he received a message from a police dispatcher that Mr. Kruse had reported that Ms. Shroff was stalking and photographing him in violation of a restraining order.

Officer Spellman testified in his deposition that when he arrived at the District 3 police station, Ms. Shroff and her stepfather "may have" told him that the order was not a reciprocal restraining order. Officer Spellman also interrogated Mr. Kruse. He also looked at a photograph taken by Ms. Shroff that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

showed that she "got within one hundred yards" of Mr. Kruse.

After Ms. Shroff informed Officer Spellman that Mr. Kruse had violated the restraining order by blocking her car in the police station parking lot, Officer Spellman told her: "I'm not going to arrest somebody for coming to the police station to make a complaint...." [FN2] Officer Spellman stated that he concluded that Ms. Shroff was in contempt of the instructions to the protected party in the restraining order that provide as follows: "You cannot give the restrained party permission to change or ignore this order in any way." Officer Spellman also testified, however, that Ms. Shroff did not give Mr. Kruse permission to change or ignore the restraining order. Officer Spellman stated that "I was always under the impression that they can't-*if she's restrained,* you can't unilaterally go over there and violate the same order." (emphasis added.) Mr. Kruse did not tell Officer Spellman that the restraining order required that Ms. Shroff stay 100 yards away from him. Officer Spellman did not check the database "to see if Greg Kruse had a restraining order against Amy Shroff."

> FN2. There is no evidence in the record that Mr. Kruse went to the District 3 police station to make a complaint. To the contrary, the record shows that Mr. Kruse left the parking lot after Ms. Shroff returned to the police station to report that he had prevented her from leaving the parking lot.

**\*5** After Officer Spellman arrested Ms. Shroff, she told him she was nursing her child and needed to pump breast milk for her baby. Officer Spellman permitted her stepfather to go to her home to retrieve her breast pump.

When Ms. Shroff's stepfather returned with the breast pump, Officer Spellman escorted Ms. Shroff to a windowless conference room. He also ordered that a female cadet be present while she pumped her breasts. He testified during his deposition that: "She was a prisoner so I had to have somebody with her at all times or leave her in the holding cell. I was doing her a favor."

## II

A criminal complaint alleging that Ms. Shroff had violated the Municipal Code of the City and County of Denver was prepared by a law enforcement officer. The signature on the complaint is illegible. It provides as follows:

> The probable cause for the arrest of the above-named individual is as follows: "The suspect Amy Shroff 9-23-76 parked her car behind victim's parked car at University Blvd and Exposition Ave and took pictures of victim's vehicle and victim as he walked out of the Campus Lounge.
>
>   Suspect violated restraining order 05-W1696, Denver Court 124d.
>
>   Victim identified suspect at District 3."

Judge John M. Marcucci signed the complaint and checked a box on the form which states "Probable Cause Found." [FN3] The criminal charge against Ms. Shroff was dismissed several days after it was filed.

> FN3. The indication on the complaint that there was probable cause to arrest Ms. Shroff was apparently based solely on the allegations set forth by the officer on the complaint, instead of a finding made by Judge Marcucci after an evidentiary hearing. Colorado law does not provide for a preliminary hearing to determine probable cause for a Municipal Code violation. *See* C.R.S. § 16-5-301.

## III

The complaint in this matter was filed on July 13, 2007. Ms. Shroff alleged, *inter alia,* that she was entitled to damages against the Defendants for violating the Fourth Amendment by subjecting her to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))

**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

an illegal search and seizure "without any basis for believing that she was engaged in criminal activity." She also alleged in the first count that Defendant Spellman "intentionally, knowingly, and recklessly subjected her to an illegal, demeaning, and invasive seizure without any reasonable justification." In count two she alleged that her Fourth Amendment right to freedom from unlawful and unreasonable searches was violated by Officer Spellman because he subjected her to a "strip search" in violation of C.R.S. § 16-3-405(5), (6).

In her third claim for relief, she alleged that she was deprived of her constitutionally protected liberty interest in familial association. In her fourth claim for relief, she alleged that Officer Spellman, the City and County of Denver, Undersheriff William Lovingier, and unknown Denver Deputy Sheriffs were liable as policy makers for the failure to train and supervise officers of the Denver Sheriff Department adequately with respect to the right of a nursing woman to use a breast pump privately and that this failure violated her constitutional rights.

Officer Spellman filed a motion for summary judgment on August 6, 2008. He alleged that he was entitled to qualified immunity on Ms. Shroff's first claim because he reasonably believed he had probable cause to arrest her. He also contended that he was entitled to qualified immunity as to the second count because § 1983 "does not provide a basis for legal redress for an alleged 'strip search' performed in violation of C.R.S § 16-3-405."

**\*6** The district court denied Officer Spellman's August 6, 2008 motion for summary judgment. It dismissed with prejudice Ms. Shroff's third claim against the City and County of Denver for violation of the right to familial association and her fourth claim for supervisory and municipal liability for the alleged violation of the right to familial association. The same claims against the unknown defendants were dismissed for failure to prosecute. The district court also ordered that the caption in this case be amended to drop the City and County of Denver, Undersheriff Lovingier, and the Unknown Denver

Deputy Sheriffs because the claims asserted against them were dismissed.

Officer Spellman filed a timely notice of appeal regarding the denial of his motion for summary judgment based on qualified immunity on Ms. Shroff's first and second claims. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### IV

### A

In this appeal, Officer Spellman contends that we should vacate the district court's order denying his motion for summary judgment because the undisputed evidence demonstrates that there was probable cause to arrest Ms. Shroff and require her to expose her breasts in the presence of a female cadet because Ms. Shroff was a prisoner. Alternatively, he argues that the law was not clearly established that he lacked probable cause to arrest Ms. Shroff, or that requiring her to expose her breasts constituted a strip search in violation of the Fourth Amendment.

Ms. Shroff maintains that we lack jurisdiction to consider this interlocutory appeal because Officer Spellman's arguments on appeal are based on disputed issues of fact. Relying on *DeAnzona v. City and County of Denver,* 222 F.3d 1229 (10th Cir.2009), she argues that this Court may exercise its appellate jurisdiction only "[i]f the defendant argues that she is entitled to qualified immunity under the plaintiff's version of the facts because the plaintiff has not demonstrated a violation of clearly established law...." *Id.* at 1233.

The record in this case demonstrates that there are no genuine issues of fact in dispute. Officer Spellman testified during his deposition that he arrested Ms. Shroff because he saw a photograph taken by Ms. Shroff that shows that she parked her car less that 100 yards from Mr. Kruse.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

Ms. Shroff testified that she photographed Mr. Kruse's truck outside the Campus Lounge bar. She also that testified she did not see Mr. Kruse when she photographed his truck. She did not deny, however, that she was within 100 yards of Mr. Kruse. Thus, there is no conflict regarding whether Ms. Shroff was within 100 yards of Mr. Kruse outside the Campus Lounge bar.

This Court held in *Foote v. Spiegel,* 118 F.3d 1416 (10th Cir.1997), that

> [a] determination that the law allegedly violated by the defendant was clearly established at the time of the challenged actions is an abstract issue of law that is immediately appealable. A determination that under either party's version of the facts the defendant violated clearly established law is also immediately appealable.

**\*7** *Id.* at 1422, (citing *Behrens v. Pelletier,* 516 U.S. 299, 312-13 (1996)); *Johnson v. Jones,* 515 U.S. 304, 312-14 (1995); *Mitchell v. Forsyth,* 472 U.S. 511, 522 (1985).

Officer Spellman testified that he arrested Ms. Shroff because she violated the terms of the restraining order. The sole issue before this Court is whether Officer Spellman violated clearly established law in arresting Ms. Shroff based on either party's version of the facts. Accordingly, we have jurisdiction to review this interlocutory appeal.[FN4]

> FN4. In its "ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT," the district court stated that "the following facts are not disputed." In its summary of the facts, the district court stated that Ms. Shroff parked her automobile within 100 yards of Mr. Kruse when she photographed his truck in front of the Campus Lounge. The district court also noted that Officer Spellman arrested her after reading the order restraining Mr. Kruse from coming within 100 yards of Ms. Shroff. We agree that these facts are undisputed. In denying

the motion for summary judgment, however, the district court stated: "Viewing the evidence in the current record in the light most favorable to Shroff, I conclude that there remain genuine issues of material fact that are relevant to her Fourth Amendment unlawful seizure claim."

Ms. Shroff argues that this Court has no jurisdiction to consider this interlocutory appeal because "[t]his Court does not have jurisdiction to review a denial of summary judgment based on qualified immunity if the claim on appeal is based on disputed facts ."

The district court did not identify the facts it considered to be disputed regarding Ms. Shroff's unlawful seizure claim. As discussed above, we have concluded we have jurisdiction because the facts relied upon by the parties are not in dispute. The only issue presented in this appeal is whether, as a matter of law, they demonstrate that Officer Spellman lacked probable cause to arrest and search Ms. Shroff. It is possible that the district court's amorphous statement that there are genuine issues of material fact in dispute was meant to reflect that there may be, for example, disputed facts regarding the amount of damages, if any, that should be awarded if this matter goes to trial. In any event, we may "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Weitzel v. Div. of Occupational & Prof'l Licensing,* 240 F.3d 871, 876 (10th Cir.2001). We have jurisdiction over this interlocutory appeal because the record before us is sufficient to permit us to decide the pure question of law

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

presented by the undisputed facts.

**B**

Officer Spellman contends that the district court erred in determining that he was not entitled to qualified immunity because he had probable cause to arrest Ms. Shroff based on the totality of the circumstances. He argues that the district court erred in relying solely on the terms of the restraining order in determining whether he had probable cause to arrest Ms. Shroff. Officer Spellman maintains that the district court erred in failing to consider the undisputed fact that he was informed by a police dispatcher that Ms. Shroff had violated a restraining order, and Mr. Kruse's complaint that Ms. Shroff had been within 100 yards of him outside the Campus Lounge bar.

The district court's denial of qualified immunity is a question of law we review *de novo. Cortez v. Mc-Cauley,* 478 F.3d 1108, 1115 (10th Cir.1995) (en banc). We must review the evidence in the light most favorable to the non-moving party. *Id.*

Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file and affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law."

In *Swanson v. Town of Mountain View, Colo.,* 577 F.3d 1196 (10th Cir.2009), this Court explained the procedure that should be followed in determining whether summary judgment should be granted based on qualified immunity.

In qualified immunity cases at the summary judgment stage, a plaintiff must clear two hurdles. The plaintiff must demonstrate on the facts alleged (1) that the defendant violated his constitutional or statutory rights, and (2) that the constitutional right was clearly established at the time of the alleged unlawful activity. *Pearson v. Callahan,* --- U.S.----, [ 129 S.Ct. 808, 815-16,

818; *Saucier v. Katz,* 533 U.S. 194, 200, (2001).]

Recognizing the complexities of resolving the question of constitutional liability, the Supreme Court allows us the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 129 S.Ct. at 817-18; *see Christensen v. Park City Mun. Corp.,* 554 F.3d 1271, 1277 (10th Cir.2009) (by explaining that *Pearson* granted discretion to determine which qualified immunity prong to address first).

**\*8** Here, the district court denied the police officers' motion for summary judgment, finding that the plaintiffs satisfied their two-part burden. To affirm, we must agree that the plaintiffs cleared both hurdles-we must thus address both. To reverse, however, we need only find that the plaintiffs failed either requirement.

*Id.* at 1199. Because we have concluded that Ms. Shroff has cleared both of the *Saucier* hurdles, we address each of them.

**V**

**A**

It has long been established that an arrest and search without probable cause that a crime has been committed violates the Fourth Amendment. *See Cortez,* 478 F.3d at 1117 ("The law was and is unambiguous: a government official must have probable cause to arrest an individual."). In this matter, it is undisputed that Officer Spellman arrested Ms. Shroff without a warrant and required her to expose her breasts in the presence of a female cadet.

Prior to arresting Ms. Shroff, Officer Spellman had been informed by a police dispatcher that Mr. Kruse had reported that Ms. Shroff had violated a restraining order. After being confronted at the po-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

lice station by Ms. Shroff who demanded that Mr. Kruse be arrested for blocking her car from exiting the police station parking lot, Officer Spellman interrogated Mr. Kruse, Ms. Shroff, and her stepfather. Mr. Kruse, Ms. Shroff, and her stepfather informed Officer Spellman that Ms. Shroff had parked her car behind Mr. Kruse's truck outside a bar. Ms. Shroff told Officer Spellman that she photographed Mr. Kruse's truck because he apparently was in a bar a few minutes before he was scheduled to exercise his visitation rights with their infant daughter.

Ms. Shroff showed Officer Spellman the restraining order that directed Mr. Kruse to keep a distance of at least 100 yards from Ms. Shroff. She explained to Officer Spellman that, as the protected party in the restraining order, she was not barred from being within 100 yards of Mr. Kruse because it was not a reciprocal restraining order.

Officer Spellman read the restraining order. He concluded that Ms. Shroff had violated the provisions of the restraining order that provides that the protected party "can not give the Restrained Person permission to change or ignore this Order."

None of the witnesses interrogated by Officer Spellman, including Mr. Kruse, stated that Ms. Shroff gave him permission to come within 100 yards of her. It is also undisputed that Ms. Shroff did not see Mr. Kruse approach her from the bar as she photographed his truck.

Thus, there is no evidence in this record that supports Officer Spellman's conclusion that he had probable cause to arrest Ms. Shroff for being in contempt of the order restraining Mr. Kruse from coming within 100 yards of her. Furthermore, the restraining order does not authorize a law enforcement officer to arrest a protected party. The portion of the restraining order entitled "NOTICE TO LAW ENFORCEMENT OFFICIALS" expressly provides as follows: "You shall arrest or take into custody, or if an arrest would be impractical under the circumstances, seek a warrant for the *Restrained Per-*

*son* when you have information amounting to *probable* cause that the *Restrained Person* has violated or attempted to violate any provision of this Order...." Accordingly, we are persuaded that Ms. Shroff has met her burden of demonstrating that Officer Spellman violated her Fourth Amendment right to be free from an unreasonable search and seizure.

**B**

**\*9** Officer Spellman contends that "[e]ven if the court were to find that Shroff demonstrated a Fourth Amendment violation for unlawful seizure, Spellman is nonetheless entitled to qualified immunity because Shroff has failed to establish the second prong of the analysis, i.e., that the right at issue was clearly established at the time of the alleged violation." He maintains that there is no United States Supreme Court or Tenth Circuit decision that has held that the arrest of a protected person without probable cause for violation of a restraining order violates the Fourth Amendment. In support of this proposition, Officer Spellman relies on this Court's statement in *Medina v. City and County of Denver,* 960 F.2d 1493 (10th Cir.1992), that "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Id.* at 1498. In *Hope v. Pelzer,* 536 U.S. 730 (2002), the Supreme Court held, however, that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has not previously been held unlawful.' " *Id.* at 741.

In *Casey v. City of Fed. Heights,* 509 F.3d 1278 (10th Cir.2007), this Court observed that "there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern." *Id.* at 1284. This Court further held

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

Page 10

that "[t]The *Hope* decision 'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.' " *Id.* (quoting *Gomez v. Wood,* 451 F.3d 1122, 1134 (10th Cir.2006)).

In *Fogarty v.Gallegos,* 523 F.3d 1147 (10th Cir.2008), this Court held that "our circuit uses a sliding scale to determine when a law is clearly established. Under this approach, '[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.' " *Id.* at 1161 (quoting *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir .2004)) (alteration in original).

In *Saucier,* 533 U.S. at 202, the Supreme Court held that in determining whether an official is entitled to qualified immunity, once it is established that a constitutional right was violated, a trial court must determine whether the right was clearly established, i.e., "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted ."

In deciding whether Officer Spellman is entitled to qualified immunity under the second *Saucier* requirement that the law must be clearly established, we must determine whether it would have been clear to a reasonable officer that the facts known to Officer Spellman did not constitute probable cause to arrest Ms. Shroff for violating the order restraining Mr. Kruse from coming within 100 yards of her. *See Beck v. Ohio,* 379 U.S. 89, 96 (1964) ("When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief that an offense has been committed.' ") (quoting *Carroll v. United States,* 267 U.S. 132 (1925)).

**\*10** Officer Spellman did not arrest Ms. Shroff until

he had interviewed her, her stepfather, and Mr. Kruse. Ms. Shroff complained to Officer Spellman that Mr. Kruse had parked his truck behind her automobile in the police station's parking lot in violation of the restraining order. Ms. Shroff provided Officer Spellman with a copy of the restraining order that had been issued against Mr. Kruse. It prohibits Mr. Kruse from contacting, harassing, stalking, injuring, intimidating, threatening, molesting, or placing her or her child in reasonable fear of bodily injury or coming within 100 yards of her. The restraining order authorizes law enforcement officials to arrest the restrained person for a violation of any provision of the order. It does not authorize the arrest of the protected person for giving the restrained person permission to change or ignore the order. Ms. Shroff pointed out to Officer Spellman that the restraining order was not reciprocal, that is, it did not restrain her from contacting, stalking, or molesting Mr. Kruse, or coming within 100 yards of him. Instead of arresting Mr. Kruse for parking his truck at the District 3 police station behind Ms. Shroff's automobile in clear violation of the express terms of the restraining order, Officer Spellman arrested Ms. Shroff.

Officer Spellman claims that he relied on the provision in the restraining order that a protected person cannot give a restrained person "permission to change or ignore this Order in any way." None of the persons interviewed by Officer Spellman, however, including Mr. Kruse, stated that Ms. Shroff gave Mr. Kruse permission to come within 100 yards of her.

We are persuaded that under these undisputed circumstances, no reasonable officer would determine that he or she had probable cause to arrest Ms. Shroff after reading the restraining order and being informed that Ms. Shroff was not a restrained person. Accordingly, we conclude that Officer Spellman did not have arguable probable cause to arrest Ms. Shroff for a violation of the restraining order.

**VI**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))
**(Cite as: 2010 WL 1767216 (C.A.10 (Colo.)))**

Officer Spellman also seeks reversal of the district court's denial of his motion for summary judgment on the second count in Ms. Shroff's complaint. He contends that his conduct in ordering a female deputy to be present while Ms. Shroff exposed her breasts was not an unreasonable search in violation of the Fourth Amendment. Instead, Officer Spellman argues that he merely acquiesced in her request to use a breast pump.

Officer Spellman required Ms. Shroff to expose her breasts in front of a female cadet solely because she was a prisoner. As discussed above, Ms. Shroff had been arrested without probable cause under clearly established law. Therefore, but for the unlawful seizure of her person by Officer Spellman, she would not have been subjected to an invasion of her personal right not to be required to expose her breasts before another person.

In *Chapman v. Nichols,* 989 F.2d 393 (10th Cir.1993), this court held that "[i]t is axiomatic that a strip search represents a serious intrusion upon personal rights." *Id.* at 395. "In a civilized society, one's anatomy is draped with constitutional protections." *United States v. Afanador,* 567 F.2d 1325, 1331 (5th Cir.1978).

**\*11** In *Bell v. Wolfish,* 441 U.S. 520 (1979), a case involving a search of body cavities in a prison facility, the Supreme Court instructed as follows:

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559

In this matter, Officer Spellman has not demonstrated any justification for requiring Ms. Shroff to expose her breasts to a female cadet while she performed an essential bodily function in providing milk for her baby. He did not testify, for example, that she might attempt to escape without the presence of a female cadet. Obviously, if Officer Spellman was concerned that she might attempt to escape, he could have ordered a guard outside the conference room when she pumped her breasts.

Because Officer Spellman failed to present any justification for requiring Ms. Shroff to expose her breasts in the presence of another person, we conclude that Officer Spellman violated Ms. Shroff's Fourth Amendment right to personal privacy by requiring her to expose her breasts after arresting her without probable cause.

### Conclusion

We AFFIRM the district court's order denying Officer Spellman's motion for summary judgment. The record viewed in the light most favorable to Ms. Shroff demonstrates that her Fourth Amendment rights to be free from an unlawful seizure and an unreasonable search that required a woman to expose her breasts were violated by Officer Spellman.

C.A.10 (Colo.),2010.
Shroff v. Spellman
--- F.3d ----, 2010 WL 1767216 (C.A.10 (Colo.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

FRED BUSCH,

     Defendant.

---

**DEFENDANT'S OBJECTIONS TO RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

---

Defendant Fred Busch, in his individual capacity, through undersigned counsel, hereby respectfully objects to the Magistrate's Recommendation (Doc. 119).  Defendant Busch objects only to the Magistrate's Recommendation that Plaintiff's Fourth Amendment claim be permitted to proceed.[1]

Plaintiff's Second Amended Complaint alleges that around November 2003, Plaintiff traveled from California to Washington, DC, to meet with Representative Waxman.  See Doc. 12 at 4.  Upon arriving at Representative Waxman's Office, on November 25, 2003, Plaintiff alleges that he was "wrongfully and maliciously arrested" by Agent Busch.  Id.  Plaintiff alleges that these actions constitute: (1) a violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments (Claim One); (2) a deprivation of constitutional rights, privileges, and immunities resulting in psychological harm (Claim Two); (3) extreme mental distress caused by the

---

[1] Magistrate Judge Shaffer's Recommendation also included recommendations on Plaintiff's motion to change venue (Doc. 85) and motion to amend his complaint (Doc. 97). Defendant Busch does not object to the Recommendation on either of these motions.

constitutional violations (Claim Three); (4) a violation of the First and Sixth Amendment communication privilege between Plaintiff and Representative Waxman (Claim Four); (5) intentional arrest without probable cause (Claim Five); (6) loss of personal freedom, pain and suffering, and loss of reputation (Claim Six); (7) conspiracy (Claim Seven); (8) an improper refusal by Agent Busch to disclose his badge number (Claim Eight); and (9) bad faith investigation (Claim Nine). Id. at 5-8; 19-24.

Defendant Busch moved to dismiss Plaintiff's Second Amended Complaint on the grounds that the Court lacked personal jurisdiction over him, and on the grounds that Plaintiff's claims are time-barred. See generally Doc. 61. Further, Defendant Busch argued that Plaintiff failed to state a plausible claim to relief and that he was entitled to qualified immunity. See id.

In his Recommendation, Magistrate Judge Shaffer recommended dismissing the Second Amended Complaint in its entirety because the Court lacks personal jurisdiction over Defendant Busch. See Doc. 119 at 3-8. Magistrate Judge Shaffer then recommended, in the alternative, that the statute of limitations had been tolled and Plaintiff's Fourth Amendment claim be permitted to proceed. See id. at 9-30.

Defendant Busch does not object to the dismissal of the Second Amended Complaint based on the Court's lack of personal jurisdiction over him. Defendant Busch does object to Plaintiff's Fourth Amendment claim proceeding as an alternative. First, the Court must "always satisfy itself first that it does in fact have jurisdiction before proceeding in any case." Kennedy v. Lubar, 273 F.3d 1293, 1301 n.10 (10th Cir. 2001) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)). Thus, this Court must determine whether it has personal jurisdiction over Defendant Busch first. Here, as Magistrate Judge Shaffer correctly concluded, this Court

-2-

lacks personal jurisdiction over Defendant Busch, and this case must be dismissed in its entirety

for that reason.  See Doc. 119 at 7-8.  Such a result would also be consistent with this Court's

previous Order in this case dismissing Plaintiff's claims against Defendant Waxman – also a

non-resident of Colorado accused of conduct that occurred in Washington, DC – on grounds of

personal jurisdiction.  See Doc. 67 (Order adopting Recommendation to dismiss Defendant

Waxman) & Doc. 60 at 4-11 (Recommendation to dismiss Defendant Waxman for lack of

personal jurisdiction).  Thus, this Court should dismiss the Second Amended Complaint for lack

of personal jurisdiction.

For these reasons, and those set forth in the Motion to Dismiss, this Court should adopt

the Recommendation and dismiss the Second Amended Complaint for lack of personal

jurisdiction over Defendant Busch.

Respectfully submitted this 24th day of May, 2010.

> DAVID M. GAOUETTE
> United States Attorney
>
> s/ Marcy E. Cook
> Marcy E. Cook
> Assistant United States Attorney
> 1225 Seventeenth Street, Suite 700
> Denver, Colorado  80202
> Telephone:  (303) 454-0171
> Fax: (303) 454-0404
> E-mail: marcy.cook@usdoj.gov
> Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of May, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

William Emory
William_emory@cap-police.senate.gov
Counsel for the U.S. Capitol Police

I also hereby certify that on this 24th day of May, 2010, I have mailed or served the foregoing document and copies of all unpublished cases to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

Solomon Ben-Tov Cohen (U.S. Mail)
#36792-013
Federal Detention Center
9595 W. Quincy Avenue
Littleton, CO 80123

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendant Busch

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN

        Plaintiff,

v.

FRED BUSCH, Agent, U.S. Capitol Police,

        Defendant.

_____

**ORDER**

_____

In his thorough and comprehensive recommendation, the Magistrate Judge recommends that Defendant Fred Busch's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (Doc 61) either be granted pursuant to Fed. R. Civ. P. 12(b)(2) and this civil action be dismissed in its entirety for lack of personal jurisdiction over Defendant Busch, or alternatively, be granted in part and denied in part pursuant to Fed. R. Civ. P. (12)(b)(6) and all claims in the Second Amended Prisoner Complaint (Doc 12) be dismissed except the Fourth Amendment Claim for Arrest Without Probable Cause.  The Magistrate Judge further recommends that Plaintiff's Motion for Change of Venue (Doc 85) be denied and his Motion to Amend Complaint (Doc 97) be denied.

The Plaintiff has filed no timely written objections to the Magistrate Judge's recommendations and therefore is barred from *de novo* review.  Defendant has filed his limited objection to the Magistrate Judge's recommendation contending that the Second Amended Complaint must be dismissed in his entirety for lack of personal jurisdiction.  I have therefore reviewed the recommendation *de novo* in light of the file and record in this

case.  On *de novo* review, I conclude that pursuant to Fed. R. Civ. P. 12(b)(2), this action must be dismissed in its entirety for lack of personal jurisdiction over Defendant. Accordingly

IT IS ORDERED that Defendant Fred Busch's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) (Doc 61) is GRANTED and the action is DISMISSED IN ITS ENTIRETY.

IT IS FURTHER ORDERED that Plaintiff's Motion for Change of Venue (Doc 85) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend Complaint (Doc 97) is DENIED.

BY THE COURT:

s/Lewis T. Babcock
Lewis T. Babcock, Judge

DATED:   June 23, 2010

SOLOMON B COHEN
# 36792-013
FEDERAL DETENTION FACILKITY
9595 W QUINCY AVE
LITTLETON, CO 80123

LEGAL MAIL

Clerk of the Court

US District Court

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL – 6 2010

GREGORY C. LANGHAM
CLERK

07-01-2010

Case No 1:08-cv-02188-LTB-CBS, Cohen v Waxman et al

Dear Clerk of the COurt

I wish to APPEAL the court's decsions inlcuding dismissing wiutho wuuthout prejudice of claim,s against Congressman Waxman which was ½previously ruled not to bne ripe for reveiw.

Thank yuou for your attention.

Sincerely

S B Cohen MA (Cantab) pro-se



Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 542

542

543

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

FRED BUSCH, Agent, U.S. Capitol Police,

     Defendant.

_____

JUDGMENT

_____

     I.     PURSUANT TO and in accordance with the Order entered by the

Honorable Lewis T. Babcock, United States District Judge, on October 21, 2009,

     IT IS ORDERED that the Motion to Dismiss of Defendant Henry Waxman is

GRANTED and Defendant Waxman is dismissed from this civil action, without prejudice

to Plaintiff refiling his claims in another venue.  Defendant the U.S. Capitol Police's

Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) 20 is GRANTED and Defendant

U.S. Capitol Police is dismissed without prejudice from this civil action.

     II.     PURSUANT TO and in accordance with the Order entered by the

Honorable Lewis T. Babcock, United States District Judge, on June 23, 2010,

     IT IS ORDERED that Defendant Fred Busch's Motion to Dismiss Pursuant to

Fed. R. Civ. P. 12(b)(2) (Doc 61) is granted.

     IT IS FURTHER ORDERED that judgment is entered for Defendant and against

the Plaintiff and the action is dismissed in its entirety.

Appellate Case: 10-1283   Document: 21   Date Filed: 08/16/2010   Page: 544

544

DATED at Denver, Colorado, this __8th__ day of July, 2010.

FOR THE COURT:

Gregory C. Langham, Clerk


By: s/ Edward P. Butler
           Edward Butler
           Deputy Clerk

2

544

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   08-cv-02188-LTB-CBS

SOLOMON BEN-TOV COHEN,

                    Plaintiff,

v.

FRED BUSCH, Agent, U.S. Capitol Police,

                    Defendant.

---

ORDER DENYING LEAVE TO PROCEED ON APPEAL
PURSUANT TO 28 U.S.C. § 1915 AND FED. R. APP. P. 24

---

Babcock, Senior Judge

Plaintiff has submitted a Prisoner's Motion and Affidavit for Leave to Proceed on Appeal Pursuant to 28 U.S.C. § 1915 and Fed. R. App. P. 24. The court has examined the file and has determined that the motion must be denied. Pursuant to 28 U.S.C. § 1915(a)(3), the court finds that this appeal is not taken in good faith because Plaintiff has not shown the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal. Accordingly, it is

ORDERED that the Prisoner's Motion and Affidavit for Leave to Proceed on Appeal Pursuant to 28 U.S.C. § 1915 and Fed. R. App. 24 is denied.

DATED at Denver, Colorado this   9th   day of August, 2010.

BY THE COURT:

      s/Lewis T. Babcock
SENIOR JUDGE, UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO